1  FELIX T. WOO (CA SBN 208107)
   fwoo@ftwlawgroup.com
2  FTW LAW GROUP
   601 South Figueroa Street, Suite 1950
3  Los Angeles, California 90017
   Telephone:  (213) 335-3960
4  Facsimile:   (213) 344-4498

5  Attorney for Appellant Kevin Moda

6

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  In re:                          District Court Case No.: 25-cv-02230-SSS

13  MAHVASH MAZGANI,                Bankruptcy Case No.: 2:19-bk-21655-BR

14           Debtor-in-Possession.  Adversary Case No. 2:20-ap-01637-BR

                                    Chapter 11
15
                                    **APPELLANT'S OPENING BRIEF**
16  KEVIN MODA,
                                    Judge: Sunshine S. Sykes
17              Appellant,

18       vs.

19  MAHVASH MAZGANI,

20              Appellee.

21

22

23

24

25

26

27

28

                                    i

1

## I.     <u>CORPORATE DISCLOSURE STATEMENT</u>

2

Appellant is not required to submit a corporate disclosure statement.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument pursuant to Federal Rule of Bankruptcy Procedure 8019 because the appeal is not frivolous and the decisional process would be significantly aided by oral argument.

# III.    TABLE OF CONTENTS

Page

I.    CORPORATE DISCLOSURE STATEMENT.............................................. II

II.    STATEMENT REGARDING ORAL ARGUMENT................................... III

III.    TABLE OF CONTENTS .............................................................IV

IV.    TABLE OF AUTHORITIES.......................................................... V

V.    JURISDICTIONAL STATEMENT................................................. 1

VI.    STATEMENT OF ISSUES PRESENTED ...................................... 2

VII.    STATEMENT OF THE CASE ....................................................... 2

VIII.    SUMMARY OF ARGUMENT.................................................... 11

IX.    STANDARD OF REVIEW ......................................................... 13

X.    ARGUMENT.......................................................................... 13

    A.    The Order was Manifestly Unjust ..................................... 13

        1.    There Was No Unreasonable Delay That Would Affect the Expeditious Resolution of Litigation......................................... 14

        2.    The Impact On the Bankruptcy Court's Need to Manage Its Docket Was Not Present Here. .................................................. 16

        3.    There Was No Risk of Prejudice to Appellee........................... 18

        4.    Public Policy Favors the Disposition of Cases on Their Merits. ................................................................... 19

        5.    Less Drastic Sanctions Were Available................................... 20

    B.    Terminating Sanctions Were Not Warranted...................... 21

XI.    CONCLUSION ...................................................................... 22

XII.    CERTIFICATE OF COMPLIANCE ............................................ 23

# IV.    <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Bessler*
  2016 WL 6441235 (B.A.P. 9th Cir. Nov. 1, 2016) ......................................21, 27

*In re Black*
  487 B.R. 202 (B.A.P. 9th Cir. 2013) .................................................................26

*Carey v. King*
  856 F.2d 1439 (9th Cir. 1988) .........................................................................20

*Cnty. Off. of Children's Couns. v. Arizona*
  716 F. App'x 716 (9th Cir. 2018) .....................................................................21

*Dahl v. City of Huntington Beach*
  84 F.3d 363, 367 (9th Cir. 1996) .....................................................................20

*In re Downey Reg'l Med. Ctr.-Hosp., Inc.*
  441 B.R. 120 (B.A.P. 9th Cir. 2010) ................................................................23

*In re Edelman*
  237 B.R. 146 (B.A.P. 9th Cir. 1999) ..................................................................8

*In re Eisen*
  31 F.3d 1447 (9th Cir. 1994) ....................................................................21, 23

*In re Franceschi*
  43 F. App'x 87 (9th Cir. 2002) ..........................................................................8

*Johnson v. U.S. Dep't of Treasury*
  939 F.2d 820 (9th Cir. 1991) ...........................................................................21

*Los Angeles Cnty. Treasurer & Tax Collector v. Mainline Equip., Inc. (In re Mainline Equip., Inc.)*
  539 B.R. 165 (9th Cir. BAP 2015) ...................................................................20

*In re Mastro*
  585 B.R. 587 (B.A.P. 9th Cir. 2018) ................................................................20

*In re McAuley*
  66 B.R. 696 (B.A.P. 9th Cir. 1986) ....................................................................8

*Raiford v. Pounds*
640 F.2d 944 (9th Cir. 1981) ...............................................................21

*In re Roessler-Lobert*
567 B.R. 560 (2017) ............................................................... Passim

*In re Singh*
2016 WL 770195 (B.A.P. 9th Cir. Feb. 26, 2016) ...................................... 23-24

*Televideo Systems, Inc. v. Heidenthal*
826 F.2d 915 (9th Cir. 1987) ...............................................................20

*In re Victoria Station, Inc.*
875 F.2d 1380 (9th Cir. 1989) ...............................................................20

*W. Emps. Ins. Co. v. Jefferies & Co.*
958 F.2d 258 (9th Cir. 1992) ...............................................................23

*Zambrano v. City of Tustin*
885 F.2d 1473, 1480 (9th Cir. 1989) ...............................................................28

**Federal Statutes**

11 U.S.C. § 523(a)(2)(A) ...............................................................9

11 U.S.C. § 523(a)(4) ...............................................................9

11 U.S.C. § 523(a)(6) ...............................................................9

11 U.S.C. § 727(a)(2) ...............................................................10

11 U.S.C. § 727(a)(3) ...............................................................10

11 U.S.C. § 727(a)(4) ...............................................................10

11 U.S.C. § 727(a)(4)(A) ...............................................................10

28 U.S.C. § 157(a) ...............................................................8

28 U.S.C. § 158(a)(1) ...............................................................8

28 U.S.C. § 1334 ...............................................................8

28 U.S.C. § (b)(2)(A) ...............................................................8

**State Statutes**

Cal. Civ. Code § 3439.04(a) ........................................................................9

Cal. Civ. Code § 3439.07(A)(1) ..................................................................9

**Rules**

Fed. R. Civ. P. 59(e) ...................................................................................8

# V.    JURISDICTIONAL STATEMENT

The United States Bankruptcy Court for the Central District ("Bankruptcy Court") had jurisdiction to enter the Order Dismissing Adversary Proceeding with prejudice (the "Order")[1] in the above captioned bankruptcy case ("Bankruptcy Case"), dated October 15, 2024, pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(a) and (b)(2)(A), as a core proceeding concerning administration of the estate.

This Court has jurisdiction to examine the Order pursuant to 28 U.S.C. § 158(a)(1), which grants jurisdiction to district courts to consider appeal from "final judgments, orders, and decrees" of the Bankruptcy Court.  The appeal is from a final order because it "terminated the litigation and left nothing for the court to do but enter judgment."[2]

The appeal is timely.  An appeal filed before entry of an order or judgment "is treated as filed on the date of and after the entry."[3]  A motion to reconsider an order or judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 59(e) tolls the deadline to file a notice of appeal.[4]

Appellant filed a motion to reconsider ("Motion to Reconsider") pursuant to FRCP 59(e) on October 29, 2024,[5] after the Bankruptcy Court entered the Order on October 15, 2024,[6] thereby tolling any deadline to appeal the Order until the Bankruptcy Court entered an order adjudicating the Motion to Reconsider.

On March 5, 2025, the Bankruptcy Court entered an order denying the Motion to Reconsider ("Reconsideration Order").[7]  On March 11, 2025, Appellant filed a

---

[1] Appellant's Appendix (Excerpts of Record), Volume 1, No. 2-4.  Appellant's Appendix (Excerpts of Record) is cited as "___-ER-___".

[2] *In re Franceschi*, 43 F. App'x 87, 89 (9th Cir. 2002).

[3] FRBP 8002(a).

[4] *In re McAuley*, 66 B.R. 696, 699 (B.A.P. 9th Cir. 1986); *In re Edelman*, 237 B.R. 146, 150 (B.A.P. 9th Cir. 1999).

[5] 6-ER-704-895.

[6] 1-ER-2-4.

[7] 6-ER-967-988.

notice of appeal.[8]  Appellant thereby filed the Appeal within the fourteen-day deadline to appeal the Order pursuant to FRBP 8002.  Therefore, the Appeal is timely.

## VI.     STATEMENT OF ISSUES PRESENTED

Whether the Bankruptcy Court erred in dismissing the Adversary Proceeding.

## VII.     STATEMENT OF THE CASE

On February 5, 2016, Appellee Mahvash Mazgani ("Appellee") filed a *First Amended Verified Complaint For: 1. Quiet Title (Against all Defendants); 2. Declaratory Relief (Against all Defendants); 3. Slander of Title (Against all Defendants); 4. Cancellation of Written Instruments (Against all Defendants); 5. Intentional Infliction of Emotional Distress* (the "FAC") in the Superior Court of the State of California, County of Los Angeles against among others, Appellant.[9]

On October 16, 2017, Appellant filed a *First Amended Consolidated Cross-Complaint For: 1. Breach of Fiduciary Duty of Trustee; 2. Civil Conspiracy; 3. Breach of Fiduciary Duty of Counsel [;] 4. Aiding and Abetting and Knowingly Benefiting from Breach of Trust; 5. Unjust Enrichment; 6. Conversion; 7. Accounting; 8. Fraud In Inducement; 9. Money Had and Received; 10. Declaratory Relief; 11. Set Aside Voidable Transaction [Civ. Code § 3439.07(A)(1)] and For Damages Based on Fraudulent-Transfer [Civ. Code § 3439.04(a)]; and 12. Twelfth Cause of Action for Conspiracy to Defraud Creditor* in the Superior Court of the State of California, County of Los Angeles (the "Cross-Complaint") (collectively with the FAC, the "State Court Action") against Appellee.[10]

On October 2, 2019, a bankruptcy action was commenced as to Appellee.[11]

On October 2, 2020, Appellant filed a *Complaint For: Non-Dischargeability of Debt Pursuant to: 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), 11 U.S.C.*

---

[8] 6-ER-989-991.

[9] *Mazgani v. Moda,* Los Angeles Superior Court Case No. BC607465.

[10] *Mazgani v. Moda,* Los Angeles Superior Court Case No. BC607465; 2-ER-35-181.

[11] *In Re Mahvash Mazgani*, United States Bankruptcy Court, Central District of California Case No.: 2:19-bk-21655-BR.

*§ 523(a)(6) Denial of Discharge Pursuant to: 11 U.S.C. § 727(a)(2), 11 U.S.C. § 727(a)(3), 11 U.S.C. § 727(a)(4)* ("Adversary Proceeding") against Appellee.[12]

On October 7, 2020, the Bankruptcy Court issued a *Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1].*[13]  The Bankruptcy Court scheduled a status conference for the adversary proceeding for December 1, 2020 ("Status Conference").[14]

On November 6, 2020, Appellee filed a *Motion to Stay Plaintiff's Adversary Proceeding* ("Stay Motion")[15] and a *Motion to Dismiss Plaintiff's Claims for Relief in his Complaint for Denial of Discharge Under 11 U.S.C. §§ 727(a)(2) & (a)(4)(A)* ("Motion to Dismiss").[16]

On December 1, 2020, Appellant filed a *Joint Status Report*.[17]  In response to the question regarding trial readiness, Appellant advised the Bankruptcy Court that this status was not known until the Stay Motion and Motion to Dismiss was resolved.[18]  Appellee also advised the Bankruptcy Court that it was not known "until the issues in state court action (BC607465) are resolved" and the Bankruptcy Court agreed.[19]

On December 15, 2020, the Bankruptcy Court held a hearing on the Motion to Dismiss, Stay Motion, and Status Conference.[20]

---

[12] 2-ER-6-181.

[13] 2-ER-182-190.

[14] 2-ER-182-190.

[15] 2-ER-191-215.

[16] 2-ER-216-267.  The Status Conference was initially set for December 1, 2020.  2-ER-182-190.  The parties stipulated to continue the Status Conference to December 15, 2020.  2-ER-268-275.

[17] 2-ER-276-280.

[18] 2-ER-276-280.

[19] 2-ER-276-280; 3-ER-50.

[20] 5-ER-680-702.

On December 28, 2020, the Bankruptcy Court issued orders denying the Motion to Dismiss[21] and granting the Stay Motion.[22]  Pursuant to the *Order Granting Defendant's Motion to Stay Plaintiff's Adversary Proceeding* ("Stay Order")*,* the Bankruptcy Court ordered the Adversary Proceeding stayed until the resolution of State Court Action.[23]  The Bankruptcy Court also continued the Status Conference to March 16, 2021.[24]

On March 1, 2021, Appellant filed an *Amended Status Report Re State Court Litigation* advising the Bankruptcy Court that a jury trial in the State Court Action was tentatively scheduled for July 26, 2021.[25]

Between March 2, 2021 and January 9, 2024, the Bankruptcy Court held numerous status conferences.[26]  Appellant filed at least fourteen (14) status reports.[27] Each time the Bankruptcy Court continued the Status Conference pending resolution of the State Court Action.[28]

On July 7, 2023, Appellant obtained a judgment (the "State Court Judgment") in his favor against Appellee in the State Court Action.[29]

On July 12, 2023, Appellee filed a notice of appeal of the State Court Judgment (the "State Court Appeal").[30]

---

[21] 2-ER-281-282.

[22] 2-ER-283-284.

[23] 2-ER-283-284.

[24] 2-ER-283-284.  Defendant answered on January 14, 2021.  3-ER-286-306.

[25] 3-ER-362-364.

[26] 6-ER-1039-1055.

[27] 3-ER-362-379; 3-ER-412-420; 4-ER-422-441; 4-ER-475-477; 4-ER-479-482.  On November 21, 2023, Appellant's counsel filed a *Notice of Motion and Motion to Withdraw as Counsel for Plaintiff* ("Motion to Withdraw") which the Court granted on November 30, 2023.  4-ER-478.

[28] 6-ER-1039-1055.

[29] 4-ER-433-435.

[30] 4-ER-433-435.

On January 9, 2024, the Bankruptcy Court held a hearing on the continued Status Conference.[31]  Attorney Vip Bhola ("Bhola") appeared on behalf of Appellant and Nazanin Mazgani ("Nazanin") appeared on behalf of Appellee.[32]  In light the State Court Appeal, the Bankruptcy Court continued the Status Conference to March 12, 2024.[33]

On February 28, 2024, Appellant filed a *Substitution of Attorney* to proceed in pro per.[34]

On February 28, 2024, Appellant filed a *Status Report Re Superior Court*.[35]

On February 29, 2024, Appellee filed a *Unilateral Status Report Re State Court Litigation*.[36]  Appellee advised the Bankruptcy Court that the State Court Appeal was still pending.[37]

On March 12, 2024, the Bankruptcy Court held a hearing on the continued Status Conference.  Appellant appeared in *pro per* and Nazanin appeared for Appellee.[38]  The Bankruptcy Court indicated that it would adjudicate the Adversary Proceeding "but [the State Court Judgment] has to be a final order" and the Bankruptcy Court "read the judgment, and on its face it would pretty obviously be nondischargeable…if it's affirmed, then no doubt, Mr. Moda, you'll be filing a motion for summary judgment here."[39]  Due to the pending State Court Appeal, the Bankruptcy Court continued the Status Conference to June 4, 2024 (the "June 4, 2024 Status Conference").[40]

---

[31] 5-ER-484-503.

[32] 5-ER-485.

[33] 5-ER-501-503.

[34] 5-ER-504-506.

[35] 5-ER-507-515.

[36] 6-ER-1039-1055.

[37] 6-ER-1039-1055.

[38] 6-ER-989-1004.

[39] 6-ER-995:18-25; 6-ER-996:1-10.

[40] 6-ER-1003:16.

On May 21, 2024, Appellee filed a *Status Report re State Court Litigation*.[41] Again, Appellee advised the Bankruptcy Court that the State Court Appeal was still pending.[42]

Appellant's former attorney, Bhola, specially "agreed to represent Mr. Moda on June 4, 2024…" as a special appearance given the State Court Action was still on appeal and the matter had been continued repeatedly without any substantive activity.[43]

However, unbeknownst to Appellant or the Bankruptcy Court, on his way to appear at the June 4, 2024 Status Conference, Bhola "arrived at the Los Angeles Courthouse wheelchair ramp with nearly 25 minutes to spare to make it from that building to the Courthouse.  On the way up the wheelchair ramp, [Bhola] tipped sideways and fell off [his] chair and [his] chair landed atop [him].  [Bhola] could not move and had no way of alerting anyone of my fall as the chair was atop [him]."[44] Bhola's medical emergency prevented him from appearing at the June 4, 2024 Status Conference.[45]

At the June 4, 2024 Status Conference, James R. Selth, Esq. ("Selth") specially appeared for Appellee.[46]  Because Bhola did not appear, as he had intended, on Appellant's behalf, the Bankruptcy Court set an *Order to Show Cause Why Complaint Should Not Be Dismissed for Plaintiff's Failure to Attend Status Conference* for August 6, 2024 ("August 6 OSC").[47]  Appellee was ordered to give notice and Appellant was ordered to filed a response to the August 6 OSC by July 23, 2024.[48]

---

[41] 6-ER-1039-1055.

[42] 6-ER-1039-1055.

[43] 5-ER-570-582.

[44] 5-ER-570-582.

[45] 5-ER-570-582.

[46] 5-ER-520:7-9.

[47] 5-ER-532:18-19; 5-ER-516-517.

[48] 5-ER-516-517.

On July 29, 2024, Appellee filed a *Unilateral Status Report in Adversary Proceeding Re State Court Litigation* advising the Bankruptcy Court that the State Court Appeal was still pending and the Adversary Proceeding remained stayed.[49] Appellee also filed a *Notice of No Response to Order to Show Cause Why Complaint Should Not Be Dismissed For Plaintiff's Failure to Attend Status Conference*.[50]

On August 6, 2024, Appellant appeared for hearings scheduled in the *In Re: Mahvash Mazgani,* 2:19-bk-21655-BR ("Bankruptcy Case").[51]  At that hearing, the Bankruptcy Court asked Appellant whether he received notice of the August 6 OSC.[52] Appellant advised the Bankruptcy Court he did not.[53]  Accordingly, the Bankruptcy Court continued the August 6 OSC to September 24, 2024.[54]  Appellant was ordered to file a response to the August 6 OSC by September 10, 2024.[55]

On September 10, 2024, Bhola filed a *Response to OSC Issued on August 6, 2024, for Failing to Appear on June 4, 2024, At Status Conference Set on That Day* ("Response").[56]  Bhola indicated in the Response that he was submitting it on his "own behalf and on behalf of Mr. Moda."[57]  Bhola explained to the Bankruptcy Court that:

> On June 4, 2024, I arrived at the Los Angeles Courthouse wheelchair ramp with nearly 25 minutes to spare to make it from that building to the Courthouse. On the way up the wheelchair ramp, I tipped sideways and fell off my chair and my chair landed atop me. I could not move and had no way of alerting anyone of my fall as the chair was atop me.

---

[49] 6-ER-1039-1055.

[50] 6-ER-1039-1055.

[51] 5-ER-537-567.

[52] 5-ER-559:2-4.

[53] 5-ER-559:5.

[54] 5-ER-559:6-9.

[55] 5-ER-568-569.

[56] 5-ER-570-582.

[57] 5-ER-570-582.

My failure to appear at the June 4, 2024, status conference, which resulted in Mr. Moda's subsequent nonappearance, was due to a physical disability that required urgent medical attention. I have attached the corresponding medical record hereto and incorporate it herein by reference as **Exhibit A.**[58]

On September 16, 2024, Appellee filed a reply to the Response ("Reply").[59]

On September 24, 2024, Appellant appeared *in pro per*, Bhola appeared via Zoom from the hospital, and Nazanin appeared for the Appellee.[60]  At the hearing, the Bankruptcy Court inquired about Bhola's representation of Appellant:

Mr. Bhola has not -- you've been in pro -- you -- he -- you substituted -- or Mr. Bhola substituted out sometime ago. He does not represent you in the 523 in the adversary proceeding, is that correct? You already substituted out. Be very careful, Mr. Moda."

I'm asking you a simple question. I could put you under oath, and then there could be other consequences. I'm not going to do that. He does not represent you in the 523 action, does he?

MR. MODA: In the adversary proceeding, no. No one does.

THE COURT: Okay. No one does. Therefore, is the -- the OSC, whether or not I should dismiss it, Mr. Bhola has no ability -- he doesn't represent you –

MR. MODA: He -- your Honor, that day you had two status conferences.

THE COURT: No, no. Let me stop you there. So, the record is quite clear.  Mr. Bhola, you know you did not represent Mr. -- Mr. Moda in the -- in the complaint, in the adversary proceeding. You understand that Is that correct?

MR. BHOLA: Yes. My purpose of filing was to clarify because there were -- there were two hearing that day, and –

…

---

[58] 5-ER-573 at ¶¶ 10-11 (emphasis in original).

[59] 6-ER-1039-1055.

[60] 5-ER-590; 5-ER-595:12-21.

THE COURT: Mr. Bhola, I want you to answer my question. You have a
habit of not answering my questions. You did not represent Mr. -- Mr.
Moda in the adversary proceeding, is that correct?

MR. BHOLA: I don't represent him in the adversary proceeding.

THE COURT: Right. And -- and, so, your – your response to a -- to a
OSC to dismiss that, you don't represent him in that, do you?

MR. BHOLA: My response was for the reason I -- that I stated, uh –
THE COURT: Well, your response, basically, you were falling on your
sword –

MR. BHOLA: -- two different -- two separate hearings.[61]

The Bankruptcy Court then indicated that it would dismiss the Adversary

Proceeding because:

So, twice, Mr. Moda, you have not responded to the original OSC, which
you were properly served by the -- by the clerk's office in Washington,
and you haven't responded to this one.  So -- so, that ends the discussion.
So, there's nothing left -- there's nothing left to discuss. I'm going to
dismiss your -- your complaint. I -- and I really thought about -- for -- for
lack of prosecution. It really dawned on me why in the world would you
just do what you did or not do, and it occurred to me the reality of it is I
don't think you really care about the adversary proceeding.  I think what
you care about, legitimately so, is what's going on in the State Court,
namely, who owns those two buildings. And I think that's why you
simply have not -- you have not responded to either the -- to -- you've
been served twice properly with the OSC to dismiss. And, therefore, I am
going to grant the motion. Basically, it's a lack of prosecution. You've
had two opportunities to respond. You haven't, and it's my opinion --
you can obviously -- you don't have to agree with anything I say, but it's
pretty clear what's really going on is -- what's going on in the State
Court. I have no opinion, by the way, on the appeal. What I do know, as
I've stated many times, it's not a final order. And, so, all the things that
you and Mr. Bhola did in violation of that have -- have been taken care of
as far as contempt, but as far as the merits of it, whatever -- I'll keep

---

[61] 5-ER-605:18-25; 5-ER-606:1-25; 5-ER-607:1-11.

9

repeating. Whatever, ultimately on the appeal -- and it could apparently now take years -- whatever the State Court does, that -- that's it.  If they -- if that order is upheld, then ultimately I will have to agree with that, that the -- if it's -- if it's upheld on appeal, that you own those properties. I think that's really what's going on. It doesn't require any response from you, Mr. Moda. The record -- the record is quite clear. Just to make it clear, you've been -- you've been served twice, properly served with OSCs why this – why this should not be dismissed, that is, the adversary proceeding. And you did not respond to either of them.

…

Let me stop you. I'm not going to allow you to -- to say -- to -- first of all, you're not testifying. You're not under oath, and you -- the OSCs, you did not respond. I'm not going to allow now -- now have you just talk to me and tell me what you think why I shouldn't have granted it. You had an opportunity. You had two opportunities. So, I'm not going to let you say anything further, Mr. -- Mr. Moda. You were properly served. You ignored the service. And, therefore, I'm going to grant the motion to dismiss this adversary proceeding for – basically for lack of prosecution, period. This is not the time to suddenly start talking. I'm not going to allow you to say anything further, Mr. Moda.[62]

On September 26, 2024, Appellee filed a *Notice of Lodgment of Order or Judgment in Adversary Proceeding Re: Order to Show Cause Why Complaint Should Not Be Dismissed for Plaintiff's Failure to Attend Status Conference*.[63]

On October 3, 2024, Appellant filed an *Objection to Proposed Order on Order to Show Cause Why Complaint Should Not Be Dismissed for Plaintiff's Failure to Attend Status Conference.*[64]

On October 15, 2024, the Bankruptcy Court issued the Order.[65]

On October 29, 2024, Appellant filed a Motion for Reconsideration.[66]

---

[62] 5-ER-607:17-25; 5-ER-608:1-25; 5-ER-609:9-21.

[63] 5-ER-583-588.

[64] 5-ER-616-627.

[65] 1-ER-2-4.

[66] 6-ER-704-895.

On January 21, 2025, the Bankruptcy Court held oral argument on the Motion for Reconsideration.[67]

On March 5, 2025, the Bankruptcy Court issued the Reconsideration Order finding that "it would be manifestly unjust to allow Moda to continue with his abuse of the judicial system by his willful conduct where the only possible effective sanctions was dismissal with prejudice."[68]

## VIII.    SUMMARY OF ARGUMENT

On October 15, 2024, the Bankruptcy Court dismissed the Adversary Proceeding for failure to prosecute.[69]  However, there is substantial evidence that Appellant actively prosecuted the Adversary Proceeding by filing at least seventeen (17) status reports and appearing at eleven (11) status conferences while the Adversary Proceeding remained stayed.  More importantly, Appellant explained to the Bankruptcy Court that he did not appear at the June 4, 2024 Status Conference because his former counsel, who had agreed to specially appear for Appellant as counsel was already going to be in the Bankruptcy Court's courtroom to appear at a status conference in the Bankruptcy Case, suffered a medical emergency outside the courthouse.[70]  That was the only status conference at which Appellant did not appear.[71]

Therefore, Appellant requests that the Court reverse the Order, because dismissal of the Adversary Proceeding was manifestly unjust for the following reasons:

---

[67] 6-ER-896-897.

[68] 6-ER-967-988.

[69] 1-ER-2-4.

[70] 5-ER-570-582.

[71] The Court indicated that Appellant failed to appear at two status conferences, however Appellant did not receive notice of the August 6 OSC, defined below.  5-ER-608:8-9.  Moreover, it is insignificant relative to the eleven (11) status conferences he did appear at.

- There was no unreasonable delay that would affect the expeditious resolution of litigation; indeed there was no delay at all given the Adversary Proceeding had been stayed for years while the State Court Action remained on appeal (and continues to remain on appeal).
- The need to dismiss the Adversary Proceeding as part of the Bankruptcy Court's management of its docket was negligible and not a basis to dismiss because the Adversary Proceeding has been stayed for years and no substantive activity had, or has, taken place.
- There was no risk of prejudice to the Appellee because there was no trial scheduled, no substantive action taken, and the Adversary Proceeding remained stayed at Appellee's request.
- Public policy favors disposition of the Adversary Proceeding, as with any contested matter, on its merits.
- The Bankruptcy Court's dismissal of the Adversary Proceeding, where Appellant had already obtained a judgment in the State Court Action deprived Appellant of valuable property interests without due process, and effectively granted Appellee a discharge of liability for fraud, and willful and tortious conduct.
- Less drastic sanctions were available.

Terminating sanctions were also not warranted under United States Bankruptcy Court, Central District Local Rule ("LBR") 7016-1 because there is no evidence of willfulness, bad faith, or gross negligence, and the punishment is not proportionate to Appellant not appearing at a single status conference at which no substantive activity was intended to be taken in the matter. Indeed, while respect for the Bankruptcy Court's docket, schedule and status conference should always be maintained, as reflected in the case filings, the setting of status conferences in the Adversary Proceeding was purely a formality given no substantive activity was expected to occur while the State Court Action remained on appeal.

12

1    For the foregoing reasons, the Order should be reversed.

2    ### IX.    STANDARD OF REVIEW

3    When reviewing a decision of the Bankruptcy Court, this Court functions as an

4    appellate court and applies the standards of review generally applied in federal courts

5    of appeal.

6    A bankruptcy court's legal conclusions are reviewed *de novo.  Los Angeles*

7    *Cnty. Treasurer & Tax Collector v. Mainline Equip., Inc. (In re Mainline Equip.,*

8    *Inc.)*, 539 B.R. 165, 167 (9th Cir. BAP 2015).

9    It is well settled that the standard for review of a dismissal for failure to

10    prosecute is whether the lower court abused its discretion. *Carey v. King*, 856 F.2d

11    1439, 1440 (9th Cir. 1988).  "A bankruptcy court abuses its discretion if it applies the

12    wrong legal standard, misapplies the correct legal standard, or makes factual findings

13    that are illogical, implausible, or without support in inferences that may be drawn

14    from the facts in the record."  *In re Mastro,* 585 B.R. 587*,* 591 (B.A.P. 9th Cir. 2018)

15    (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

16    Because an appeal of a dismissal for failure to prosecute necessarily involves a

17    question of due process, *see, e.g., Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915,

18    916 (9th Cir. 1987), the question of whether the appellant has been afforded due

19    process is reviewed *de novo.  In re Victoria Station, Inc.*, 875 F.2d 1380, 1382 (9th

20    Cir. 1989).

21    Hence, the Bankruptcy Court's incorrect decision, which dismissed the

22    Adversary Proceeding for failure to prosecute, is reviewed *de novo*.

23    ### X.    ARGUMENT

24    **A.    The Order was Manifestly Unjust**

25    Dismissal with prejudice – especially with respect to an adversary proceeding –

26    is "the most severe penalty and is authorized only in extreme circumstances."

27    circumstances."  *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996)

28    (internal quotes omitted) (trial court dismissed case because attorney failed to pay

sanctions and a timely joint exhibit and witness list was reversed, appellate court reversed finding that public policy favored resolution of dispute on the merits); *see also* Pima *Cnty. Off. of Children's Couns. v. Arizona*, 716 F. App'x 716, 717 (9th Cir. 2018) (internal quotes omitted) (trial court dismissed for lack of prosecution because plaintiff's counsel experienced personal problems and neglected the case for three months, appellate court reversed finding that dismissal for failure to prosecute was too harsh); *Johnson v. U.S. Dep't of Treasury*, 939 F.2d 820, 825 (9th Cir. 1991) (trial court dismissed for lack of prosecution because plaintiff failed to appeal for court ordered deposition, appellate court reversed finding that dismissal was the harshest available penalty and unwarranted). "Dismissals have been reversed when the district court failed to consider less severe penalties." *Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981).

Courts are required to "weigh five factors to determine whether to dismiss a case for lack of prosecution: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Eisen*, 31 F.3d 1447, 1451 (9th Cir. 1994).

### 1.    <u>There Was No Unreasonable Delay That Would Affect the Expeditious Resolution of Litigation.</u>

"In dismissing a case for lack of prosecution, the court must find unreasonable delay." *In re Eisen*, 31 F.3d 1447, 1451 (9th Cir. 1994).[72] "Not any delay will justify dismissal; rather the deficient conduct must result in **unreasonable** delay." *In re Roessler-Lobert*, 567 B.R. 560, 568 (2017) (emphasis in original) (finding plaintiff's

---

[72] In *Eisen*, the bankruptcy court dismissed an adversary proceeding for failure to prosecute. *In re Eisen*, 31 F.3d 1447, 1450 (9th Cir. 1994). The district court affirmed the bankruptcy court's dismissal finding that the four-year delay, plaintiff's failure to take any affirmative action to prosecute his adversary proceeding, and inadequate excuse for the delay (i.e. lack of insufficient funds) was inherently unreasonable. *In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994). That is not the case here.

conduct was dilatory but delay was short and not unreasonable); *see also In re Bessler*, 2016 WL 6441235, at *4 (B.A.P. 9th Cir. Nov. 1, 2016) (despite trial court dismissing case for lack of prosecution because plaintiff failed to appear at multiple scheduling and status conferences and failed to respond to an order to show cause, appellate court reversed finding there was no unreasonable delay).

There was no unreasonable delay in this case. At the Appellee's request, the Bankruptcy Court stayed the Adversary Proceeding pending resolution of the State Court Action.[73] There were no pretrial deadlines or a trial on schedule. The Bankruptcy Court continued the Status Conference on numerous occasions pending the adjudication of the State Court Action. Each of the approximately twenty-two (22) status reports filed by the Appellant and Appellee advised the Bankruptcy Court that the State Court Action and subsequent State Court Appeal was pending and the Adversary Proceeding remained stayed.

Even if the Bankruptcy Court determined there was some delay (which it could not have based on the record of this matter given the stay), Appellant responded to the August 6 OSC, by explaining that Bhola, who agreed to specially appear for Appellant at the June 4, 2024 Status Conference, suffered a medical emergency and was unable to appear.[74] Appellee argued that Bhola's filing or appearance cannot be made on behalf of Appellant.[75] However, Appellee's argument is wrong and elevates form over substance where Bhola was already going planning to appear at the status

---

[73] 2-ER-191-215; 2-ER-283-284.

[74] 5-ER-570-582.

[75] Appellee argued that Bhola could not, as former counsel, submit a response to the August 6 OSC for Appellant. The Court agreed and reasoned that because Appellant was in *pro per*, and Bhola had been substituted out of the Adversary Proceeding, that Bhola could not appear at the status conference for Appellant, nor could be explain why he did not appear at the June 4, 2024 Status Conference. However, at that same June 4, 2024 Status Conference, Selth specially appeared for Nazanin (the Appellee's daughter and counsel of record). Thus, the reason Bhola submitted a declaration in response to the August 6 OSC regarding Appellant's failure to appear at the June 4, 2024 Status Conference is because Bhola had agreed to specially appear for Appellant. Thus, it made logical sense for Bhola to explain why he did not appear for Appellant given his medical emergency outside the courthouse.

conference in the main bankruptcy case, and nothing of substance was anticipated to occur at the status conference for the Adversary Proceeding.[76]

The Bankruptcy Court's finding that "there is no public interest in the expeditious resolution of this litigation" fails to apply the applicable standard.[77]  The correct standard is not merely whether there is a public interest in expeditious resolution, but whether there was unreasonable delay that hindered such an interest in the expeditious resolution of the Adversary Proceeding.  Here, there was no such delay or hindrance.

Hence, there was no unreasonable delay that affected the expeditious resolution of litigation and this factor did not weigh in favor of dismissal.

## 2.    **The Impact On the Bankruptcy Court's Need to Manage Its Docket Was Not Present Here.**

This factor is "usually reviewed in conjunction with the public's interest in expeditious resolution of litigation to determine if there is unreasonable delay." *In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994).  While the court is usually best situated to decide when its docket may become unmanageable, nothing in the record nor in the Bankruptcy Court's findings in its Order suggest that this was or is an issue.  *In re Roessler-Lobert*, 567 B.R. 560, 568 (2017).

In *In re Singh*, 2016 WL 770195, at *9 (B.A.P. 9th Cir. Feb. 26, 2016), the appellate court disagreed with the bankruptcy court's finding that the plaintiff "flouted the local rules governing the filing of a status report. Disregard for the local rules, particularly governing the filing of status reports, [was] a systemic problem, which

---

[76] *W. Emps. Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261 (9th Cir. 1992) (finding that court's focus on timeliness of the request to vacate the arbitration award instead of whether the parties had contractual right to arbitrate elevated form over substance); *In re Downey Reg'l Med. Ctr.-Hosp., Inc.*, 441 B.R. 120, 127 (B.A.P. 9th Cir. 2010) (finding that the court's decision to not require an adversary proceeding did not cause prejudice and thus form should not be elevated over substance).

[77] 5-ER-570-582.

significantly affect[ed] this Court's ability to manage its docket."  The appellate court reasoned that:

> the *bankruptcy court's attempt to correct systemic non-compliance issues in this case was disproportionate, given the parties' agreement to stay the Taylor proceeding* in light of the UST action.  In an appropriate case, a bankruptcy court has discretion to issue terminating sanctions for non-compliance with the local rules, but here, the failure to *provide information to the bankruptcy court prior to the status conference was mitigated*. The bankruptcy court was aware of the parties' intent to stay the proceeding prior to the status hearing based on the proposed order lodged. Thus, the impact on the bankruptcy court's docket was limited and, in effect, caused by its own decision to deny the proposed order and proceed forward with the status conference.

*In re Singh*, 2016 WL 770195, at *9 (B.A.P. 9th Cir. Feb. 26, 2016) (emphasis added).

Similar to *In re Singh*, the Adversary Proceeding has remained stayed pending the resolution of the State Court Action since December 28, 2020.  From December 28, 2020 to the June 4, 2024 Status Conference, the Bankruptcy Court was aware of the stay of the Adversary Proceeding, the ongoing status of the State Court Action, and the State Court Appeal.  The status of the Adversary Proceeding has remained unchanged from December 28, 2020 and the Bankruptcy Court was well aware that no substantive action was expected to be taken while the State Court Action is on appeal.

Furthermore, the Bankruptcy Court's finding that dismissal of the Adversary Proceeding "with prejudice will relieve the Court of the possibility of having to deal with future abuses of Moda regarding the adversary proceeding" is unsupported by the record.[78]  Aside from a single non-appearance at a status conference where no substantive activity was going to take place, Appellant prosecuted the Adversary Proceeding diligently by attending status conferences and filing status reports, all while the Adversary Proceeding remained stayed.  There is no evidence of any abusive conduct by Appellant in the Adversary Proceeding.  The Appellant's conduct

---

[78] 6-ER-967-986.

in the Bankruptcy Case is not at issue here and was not the result of Appellant's
failure to prosecute.

Thus, the impact on the Bankruptcy Court's docket was minimal, if not
nonexistent, and this factor did not weigh in favor of dismissal.

### 3. There Was No Risk of Prejudice to Appellee.

In determining whether a defendant has been prejudiced, courts examine
whether the plaintiff's actions "impair the defendant's ability to go to trial or threaten
to interfere with the rightful decision of the case." *In re Roessler-Lobert*, 567 B.R.
560, 568 (2017).

That is not the case here. The Adversary Proceeding had been stayed for years,
had not been set for trial and the Appellee had no desire advance that litigation or to
try the case, given the Appellee's request to stay the proceeding until the resolution of
the State Court Action. Despite his more recent temporary difficulties concerning this
specific non-appearance where Mr. Bhola had intended to specially appear for
Appellant, Appellant had been proactive in his efforts to comply with the orders of the
Bankruptcy Court by filing approximately seventeen (17) status reports and having
appeared at approximately eleven (11) status conferences. Appellant failed to file one
status report and only missed one status conference, and his nonappearance was
adequately explained by Bhola, who had agreed to specially appear for him in that one
instance.

The Bankruptcy Court's finding that Appellant's abusive conduct "has resulted
in damages to the [Appellee]" and "it would be a manifest injustice for the [Appellee]
to have to deal with future possible abuses of" Appellant in the Adversary Proceeding
also fails to acknowledge that Appellant has – until determined otherwise in the State
Court Action – a $20,987,105.40 judgment against Appellee.[79] That State Court
Judgment, which is the subject of the Adversary Proceeding, is the result of

---

[79] 6-ER-967-986.

18

Appellee's abusive, fraudulent, and pilfering conduct, and is a substantial property interest to which the Bankruptcy Court, even when advised of that fact, gave no weight in assessing this and the other factors.

Thus, this factor did not weigh in favor of dismissal.

### 4.    Public Policy Favors the Disposition of Cases on Their Merits.

"The public policy in favor of disposition of the case on the merits normally weighs strongly against dismissal." *In re Roessler-Lobert*, 567 B.R. 560, 568 (2017) (internal quotes omitted).

As alleged in the Adversary Proceeding, Appellee committed intentional fraud against Appellant.[80]  Normally, a state court's judgment of fraud is non-dischargeable.[81]  In fact, the State Court Action resulted in a State Court Judgment against Appellee for egregious mishandling of the trust, and awarded real properties and damages to Appellant in the amount of $12,242,478.20, including treble damages for civil theft and fraud in the amount of $20,987,105.40.  Except for the pending State Court Appeal, which Appellee has strategically used as her basis for seeking to stay this case, the Bankruptcy Court would likely already have found Appellee's debt to be non-dischargeable.  Dismissal of the Adversary Proceeding effectively rewarded the Appellee with a discharge for debts that a jury had found stemmed from fraud, willful misconduct and criminal violations.

A dismissal of Appellant's Adversary Proceeding also deprives him of the substantial property rights imbued in the judgment he obtained, and is, by definition, a finding against him that is not on the merits.

Thus, public policy favors a disposition of the Adversary Proceeding on the merits, especially in light of the findings in the State Court Judgment.

---

[80] 2-ER-6-181.

[81] *In re Black*, 487 B.R. 202, 214 (B.A.P. 9th Cir. 2013); ECF No. 61 at 16:7-10 (THE COURT: "…yeah, on its face, if, indeed, the Debtor did what -- what the jury found, you'd -- that looks like it would be nondischargeable."); March 12, 2024 Transcript at 6:5-7 (THE COURT: "I've read the judgment, and on its face it would pretty obviously be nondischargeable if -- if -- at least reading what it holds.").

### 5. __Less Drastic Sanctions Were Available__

"The [trial] court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *In re Roessler-Lobert*, 567 B.R. 560, 568 (2017) (internal quotes omitted); *see also In re Bessler*, 2016 WL 6441235, at *5 (B.A.P. 9th Cir. Nov. 1, 2016) (finding that less drastic sanctions were appropriate when plaintiff missed several status conferences because "dismissal was effectively with prejudice because any nondischargeability action would be time-barred if refiled. Thus, [plaintiff] has lost the opportunity to have his claims heard on the merits.").

Here, there were less drastic sanctions available.[82]  The Adversary Proceeding was stayed and this was the first time Appellant failed to appear at a status conference. The Bankruptcy Court could have imposed monetary or disciplinary sanctions against Appellant, or could have made orders requiring Appellant to meet certain heightened requirements for proceeding as a pro se plaintiff, or ordered Appellant to retain counsel to represent him in the Adversary Proceeding (to avoid issues such as failing to appear at a status conference or failing to file a status report), instead of the harsh sanction of dismissal.  Because the Order was with prejudice, Appellant effectively lost the opportunity to have his claims – which are based on a state court jury verdict and judgment in his favor worth tens of millions of dollars – heard on the merits.

The Bankruptcy Court's finding that "the only appropriate sanction is the dismissal of the adversary proceeding, with prejudice, there be no less drastic sanctions being available" is unsupported by the record.[83]  As the Bankruptcy Court

---

[82] Appellant's counsel is aware of the history of the Bankruptcy Case and the positions taken by Appellant and Bhola, which were not well taken by the Court.  However, the history of the Adversary Proceeding demonstrates that Appellant actively prosecuted the case and, thus should be considered separately.  Moreover, Appellant has retained counsel in the Adversary Proceeding to ensure compliance with the Court's orders and local rules.

[83] 6-ER-967-986.

discussed, Appellant did comply with an outstanding monetary order in the Bankruptcy Case.[84]

Thus, this factor did not weigh in favor of dismissal.

## B.    Terminating Sanctions Were Not Warranted[85]

LBR 7016-1(a) sets forth certain requirements concerning status conferences. LBR 7016-1(f) and (g) authorize the imposition of various sanctions for failure to comply with LBR 7016-1(a), including, but not limited to, monetary sanctions and terminating sanctions.

A terminating sanction for noncompliance with a local rule is appropriate if only three elements are met:

First, the noncompliance must involve an enhanced degree of fault, such as willfulness, bad faith, recklessness, or gross negligence, as compared to mere negligence or oversight…..Second, the sanction must pass muster under the five-factor test of [*Eisen*]….Third, the court must consider whether the punishment is proportionate to the offense.

*In re Roessler-Lobert*, 567 B.R. 560, 573 (B.A.P. 9th Cir. 2017).

The Response explained that Appellant's nonappearance at the June 4, 2024 Status Conference was the result of Bhola's medical emergency.[86]  There is no evidence of willfulness, bad faith, recklessness, or gross negligence, let alone mere negligence or oversight.  Further, as explained above, dismissal is not warranted under the factors outlined in *Eisen*.

The punishment was also not proportionate to the offense.  To determine whether a sanction is proportionate, the court must consider the relative culpability of the party and party's counsel.  *In re Roessler-Lobert*, 567 B.R. 560, 573 (B.A.P. 9th

---

[84] 6-ER-967-986.

[85] At the September 24, 2024 hearing, the Court dismissed the Adversary Proceeding for lack of prosecution.  5-ER-609:17-19.  The Court did not make an explicit finding that it dismissed Adversary Proceeding because Appellant did not comply with the local rules.  However, out of an abundance of caution, Appellant addresses this argument.

[86] 5-ER-570-582.

Cir. 2017); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989) ("any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power. This last principle includes a responsibility to consider the usefulness of more moderate penalties before imposing a monetary sanction.").  Here, the Order was disproportionate to Appellant's failure to appear, at one status conference, because terminating sanctions are the harshest of penalties and Appellant stands to lose his right to prosecute claims grounded in fraud and deception against the Appellee.  Moreover, Appellant's failure to appear was the result of Bhola's medical emergency[87], not due to any culpable acts by Appellant.

Thus, terminating sanctions were not warranted.

## XI.    <u>CONCLUSION</u>

WHEREFORE, based on the foregoing, Appellant respectfully requests that the Court reverse the Order.

Dated: May 29, 2025                         FTW LAW GROUP


By: *Felix T . Woo*
   FELIX T. WOO
   Attorney for Appellant  Kevin Moda

---

[87] 5-ER-570-582.

## XII.    <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of FRBP 8015(a)(7) because, excluding the parts of the document exempted by FRBP 8015(g), this document contains 6,529 words and 22 pages.

This document complies with the typeface requirements of FRBP 8015(a)(5) and the type-style requirements of FRBP 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2007 or higher and in Times New Roman, 14-point sized font.

Dated: May 29, 2025                    FTW LAW GROUP

                                       By: */s/ Felix T. Woo*
                                           FELIX T. WOO
                                           Attorney for Appellant  Kevin Moda