1  FELIX T. WOO (CA SBN 208107)
   fwoo@ftwlawgroup.com
2  FTW LAW GROUP
   601 South Figueroa Street, Suite 1950
3  Los Angeles, California 90017
   Telephone:  (213) 335-3960
4  Facsimile:   (213) 344-4498

5  Attorney for Appellant Kevin Moda

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11

12 In re:                          District Court Case No.: 25-cv-02230-SSS

   MAHVASH MAZGANI,                Bankruptcy Case No.: 2:19-bk-21655-BR
13
              Debtor-in-Possession. Adversary Case No.: 2:20-ap-01637-BR
14
                                   Chapter 11
15
                                   **APPELLANT'S APPENDIX
16 KEVIN MODA,                     (EXCERPTS OF RECORD)
                                   VOLUME 2 OF 6**
17            Appellant,
                                   Judge: Sunshine S. Sykes
18      vs.

19 MAHVASH MAZGANI,

20            Appellee.

21

22

23

24

25

26

27

28

**ER-5**

1  Donald W. Reid – SBN 281743
   LAW OFFICE OF DONALD W. REID
2  PO Box 2227
   Fallbrook, CA 92088
3  (951) 777-2460
   don@donreidlaw.com
4

5  Counsel for Plaintiff

6              **UNITED STATES BANKRUPTCY COURT**

7      **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

8

9  |                          | Case No. 2:19-bk-21655-BR

10 In re                      | Chapter 11

11 MAHVASH MAZGANI,           | Adv. No. 2:20-ap-_____

12           Debtor.          | **COMPLAINT FOR:**

13                            | **NON-DISCHARGEABILITY OF DEBT
                               PURSUANT TO:**

14                            | • **11 U.S.C. § 523(a)(2)(A)**

15 KEVIN MODA,                | • **11 U.S.C. § 523(a)(4)**
                               • **11 U.S.C. § 523(a)(6)**
16           Plaintiff,

17 v.                         | **DENIAL OF DISCHARGE PURSUANT
                               TO:**
18 MAHVASH MAZGANI,           | • **11 U.S.C. § 727(a)(2)**

19           Defendant.       | • **11 U.S.C. § 727(a)(3)**
                               • **11 U.S.C. § 727(a)(4)**
20

21

22

23

24

25

26

27

28

1

**ER-6**

Kevin Moda ("Plaintiff") is informed and believes and alleges as follows:

**STATEMENT OF JURISDICTION AND PROCEEDINGS**

1.     The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding under 28 U.S.C. § 157(b)(1)(I) and (J).

2.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because the instant proceeding is related to the debtor's pending bankruptcy case.

3.     Plaintiff has standing to bring this adversary proceeding.  This Complaint seeks to (1) determine the dischargeability of the debtor's debt owed to Plaintiff, and (2) deny the debtor a discharge.

4.     Plaintiff consents to final orders and judgment by this Court.

**PARTIES**

5.     Plaintiff is and at all times herein mentioned was a resident of the County of Los Angeles, California.

6.     Mahvash Mahjani ("Defendant") is, on information and belief, a resident of the County of Los Angeles, California.  Defendant is the debtor in the above captioned bankruptcy case, *In re Mahjani*, Case No. 2:19-bk-21655-BR.

**GENERAL ALLEGATIONS[1]**

7.     Defendant is Plaintiff's paternal aunt who emigrated to the United States in 1981, with her now deceased husband and two daughters.  Given their financial status, the Mazgani family boarded with Plaintiff's parental home for one year and next into the homes of other relatives.  The Mazgani family struggled throughout the years and endured foreclosure proceedings and bankruptcy filings. The Mazgani family only survived with the assistance of public welfare, and funds from family and relatives.  Mr. Mazgani passed away in the year 2002, and Defendant was left to her own device to sustain a living as a social worker.

---

[1] The following allegations are made in the Defendant and Cross-Complainant Kevin Moda's First Amended Consolidated Cross-Complaint in the action styled *Mazgani v. Moda*, Case No. BC622117, Los Angeles Superior Court.  A copy of the Cross-Complaint (with exhibits) is attached hereto as **Exhibit 1** and incorporated herein by reference.

**ER-7**

8. In or about the same time, from 2000 to 2003, Defendant and Plaintiff significantly bonded with one other.  Defendant had been ultra-supportive of Plaintiff's efforts to change his life around, and in turn had effectively gained his trust and praise for her efforts as a maternal figure.

9. By 2006, Defendant was privy to and had gained first-hand knowledge of Plaintiff's lavish lifestyle and wasteful leisurely activities without a care for his future or investment.  In and around 2006 and 2007, the two had a close and trusting familial relationship; Plaintiff considered Defendant his closest family member and Defendant represented herself to Plaintiff and others as a maternal figure in Plaintiff's life.

10. Defendant has two adult daughters, Neyaz Mazgani ("Neyaz") and Nazanin Mazgani ("Nazanin"), who Plaintiff's cousins. Plaintiff thought he had a close familial relationship with his cousins who were taking advantage of his contacts as they were fond of Plaintiff's lavish ways and enjoyed the nightlife with him; He effectively served as their primary source and contact to entertainment.

11. Nazanin is a licensed California attorney (SBN  270258), who at all times material herein, was actively practicing law before the State Courts of California.

12. Basing a feigned opinion of care for Plaintiff presumably founded on the close and familial relationship, Defendant approached Plaintiff during Christmas season in 2006, and told Plaintiff that he should entrust her with his money. Defendant told him to do so as Plaintiff was spending too heavily on leisure activities and wasting his money.

13. Defendant told Plaintiff that his money would be kept segregated from all other monies and kept in a trust account.

14. Defendant told Plaintiff that the trust account was accessible to no one but her and that only the money of Plaintiff would be placed therein.

15. Defendant told Plaintiff that his money would bear interest while in her care, and that he could have it back whenever he so requested but that since it was in a trust account, the money would not be accessible for frivolous expenditures as the time between a spontaneous desire to purchase an unneeded luxury to the time that the cash was made available would be

**ER-8**

1     sufficient time for reflection and the lack of need for the purchase. Stated differently, Plaintiff's

2     prior impulsive wasteful expenditures would come to an end.

3           16.    Based on the strong family ties with his aunt and the trust reposed in Defendant,

4     Plaintiff gave Defendant cash and other assets to be held in safekeeping for Plaintiff's future

5     benefit.

6           17.    Unbeknownst to Plaintiff though, Defendant and her immediate family, harbored

7     an intent to make their own family a victim and they found that victim in Defendant.

8           18.    Unbeknownst to Plaintiff, at the time that Defendant made the representations of

9     good faith and fidelity to Plaintiff, the Mazgani family were financially strapped and they saw

10    their own financial need multi-levels more important than a family bond and felt their oath to kin

11    worthless.

12          19.    This harbored intent to induce and defraud first manifested in late 2006, when

13    Defendant and Plaintiff were both at a holiday party at Defendant's home.  At that party,

14    Defendant approached Plaintiff and expressed a maternal-like concern about how Defendant was

15    managing his financial affairs.  She told him he was wasting his money by overspending on lavish

16    accessories and personal property, leisure activities, and not thinking about his future.

17          20.    Defendant told Plaintiff that he should manage his financial affairs more prudently

18    and should save money for his future so he would have enough money for retirement by giving

19    that money to Defendant to hold in trust.

20          21.    Defendant represented that she had a trust set up for herself and that Plaintiff

21    should deposit his monies with her in the trust and those funds would be available for Plaintiff to

22    use anytime he wanted, but the monies would not be as accessible as funds in a bank account, and

23    therefore the entrustment of monies with her would put an end to Plaintiff's impulsive spending.

24    Defendant stated all of Plaintiff's monies (checks) would be deposited into one single account that

25    would solely have Defendant as its owner and sole account holder and that she was the only

26    person who could access the account; i.e. the account would be as safe as "Fort Knox".  She

27    represented she would hold those monies for him in a trust for his benefit (the "Trust").

28

**ER-9**

22.     Defendant further represented that Plaintiff's cash and other valuable personal property would also be safeguarded for him and held in a safety deposit box that Defendant maintained at her bank and the other safe kept in her house and no other person but her had access to either the safety deposit box or the home safe.

23.     When Plaintiff asked, what would happen to his money and other assets if something were to befall Defendant, Defendant stated that she would keep a ledger of all funds and assets that Plaintiff would give her (in cash and in checks and personal property) and that ledger would be kept internally for her daughters to know to give the money and other assets to Plaintiff if something were to happen to Defendant.

24.     During the same conversation at the holiday party, Defendant assured Plaintiff that the Trust would be designed to conserve Plaintiff's assets, and that the Trust assets would be invested conservatively and prudently with an eye towards long-term benefits rather than short-term gains.  Specifically, she represented that she would purchase certificates of deposit that would earn interest for Plaintiff's future benefit if Plaintiff agreed to the particular CD that Defendant said she would tell him about at a later time.

25.     Defendant further assured Plaintiff that because of their close familial relationship, she would act as his fiduciary, and assured Plaintiff that Plaintiff's assets would be well-protected and secure.

**TRUST ASSETS**

26.     Beginning in January 2007, Plaintiff started entrusting Defendant with his monies in cash and in checks to hold in trust as a fiduciary. He began delivering his cash earnings to her intermittently together with endorsement of checks made payable to him, to Plaintiff, or the Trust in his stead.

27.     Unbeknownst to Plaintiff, Defendant did not have a trust account in the name of any trust as she had represented at the holiday party in 2006, and she was depositing all of Plaintiff's monies either in her personal accounts, accounts shared with her daughters, or not depositing them at all.

**ER-10**

28.     Defendant used the cash monies given to her by Plaintiff to pay all her daily living expenses and if she would charge something on her credit card, she would pay the account off with cash deposits.

29.     Defendant made the representations regarding Plaintiff's retirement to Plaintiff so she could take his money for her own retirement. With the money stolen from Plaintiff, Defendant opened an IRA in 2009.

30.     In or around March 2007, Defendant reinforced her false assurances and false representations when Plaintiff and she attended a family gathering to celebrate Nowruz, the Persian New Year together.  At that family celebration, Defendant told Plaintiff that he should increase the amount of monies that he had started giving her so that more of his money would be there for Plaintiff's later years.

31.     During both of the in-person discussions in late 2006 and March 2007, Defendant expressly but falsely represented to Plaintiff that the Trust was already in operation and entitled the "Mazgani Family Trust" and that Plaintiff was the beneficiary of the Trust.  Further Defendant expressly represented to Plaintiff that she was the sole individual who had access to the Trust assets.

32.     With the intent to defraud Plaintiff, in April 2007, Defendant created the "Mahvash Mazgani Family Trust." A true and correct copy of the Certification of Trust is attached to the Cross-Complaint as Exhibit A. The Mahvash Mazgani Family Trust was set up so that checks made out to "Mazgani Trust" could then be deposited into a trust account as they could not be deposited into Defendant's personal account.  Further, the Mahvash Mazgani Family Trust was used as an artifice of fraud and as a tool to further fraud on Plaintiff, for when Plaintiff would negotiate real estate transactions, he would do so in the name of the non-existent "Mazgani Family Trust" and Defendant would then take the asset (or the proceeds of the sale of property) under the "Mahvash Mazgani Family Trust."

33.     Plaintiff had no reason to know or suspect that his closest family member was practicing fraud on him. Defendant continuously reinforced the initial representations by continually representing and referencing the Trust as the Mazgani Family Trust, with further

**ER-11**

representations that Plaintiff was the beneficiary of the Trust, from 2007 through 2015, in effort to continually induce him to transfer his monies and assets to her and to further conceal the location of Defendant's monies and her intent to defraud him.

34.     Between 2007 and 2015, in communications that took place in person and on the phone each time Plaintiff would present or plan to transfer his monies to be held in trust, Defendant repeatedly reassured Plaintiff that she was the sole individual who had access to the Trust assets, inclusive of the safety deposit box.

35.     In reliance on these representations, Plaintiff continued to give cash and endorse checks to Defendant to put into the Trust for Plaintiff's benefit.  From 2008 forward, Plaintiff began instructing third parties who owed money to Plaintiff to write checks to "Mazgani" or "Mazgani Family Trust," which checks he gave to Defendant to deposit into the Trust and hold for his benefit. From 2010 forward, cash deposits with Defendant took on a uniform pattern at the rate of no less than $5,000.00 per week.

36.     In further reliance on these representations and from approximately 2006 to 2014, Plaintiff also gave Defendant personal property for her to hold in safekeeping for Plaintiff's benefit.  Said personal property includes but is not limited to, name-brand watches, lighters, bracelets, gold rings, and cufflinks (collectively, "Plaintiff's Watches and Jewelry").

37.     In further reliance on these representations made by Defendant, between 2007 and 2015, Plaintiff gave Defendant in excess of $1,500,000 to deposit for safekeeping in the Trust account.  Plaintiff gave these deposits to Defendant in the form of:

- Checks made out directly to the Mazgani Family Trust;
- Checks made out to the Mazgani Family Trust at Plaintiff's direction;
- Cash; and
- Proceeds from Plaintiff's real estate and business investments.

38.     To date, Defendant admits to having received no more than three hundred and forty-four thousand and one hundred dollars ($344,100.00) of Plaintiff's monies.

39.     Unbeknownst to Plaintiff, his cousins, Neyaz and Nazanin, and another relative, Hooshang Mazgani ("Hooshang"), were also signatories on the Trust account.  Moreover, another

**ER-12**

1  bank account had been opened in the name of Hooshang, believed to be a cousin of the deceased

2  husband of Defendant who resides out of the country, in which account monies of Plaintiff were

3  being transferred. All Mazgani family members were provided with powers of attorney with full

4  access to monies in said account at all times material herein and all had that access without

5  authorization from Plaintiff and in contravention of the promise of singular access that Defendant

6  had represented. Attached to the Cross-Complaint as Exhibit B are sample copies of no less than

7  three bank statements where Plaintiff's funds were presumably deposited, one of which is opened

8  in the name of Hooshang.

9      40.    Had Plaintiff known Defendant was depositing his monies in her personal bank

10  account or been informed of the additional signatories on the trust account or the existence of

11  another account in the name Hooshang, he would not have given his cash and other assets to

12  Defendant to be held in the Trust since he did not believe Neyaz and Nazanin were financially

13  prudent, and he did not even come to know Hooshang until 2015.

14      41.    Plaintiff trusted that the cash and other assets he gave to Defendant to deposit in the

15  Trust would be secure and trusted that Defendant would invest his assets conservatively by

16  purchasing certificates of deposit for Plaintiff's benefit.  Plaintiff trusted that Defendant would do

17  these things because she is Plaintiff's aunt and they had a close, trusting familial relationship.

18  Defendant held herself out to be a maternal figure in Plaintiff's life, and Plaintiff in turn believed

19  Defendant genuinely cared about him and would protect his financial well-being.

20      42.    Instead, Plaintiff is informed and believes and thereon alleges that Defendant

21  deposited cash and other assets that Plaintiff gave to her into her personal accounts and used them

22  for her personal expenses.

23      43.    Moreover, between 2007 and 2015, in communications that took place in person

24  and on the phone, Defendant repeatedly encouraged Plaintiff to give her additional money for

25  safekeeping and repeatedly assured Plaintiff that Plaintiff's money and other assets were in fact

26  deposited into the Trust account and that everything was in order.  Defendant further repeatedly

27  assured Plaintiff that his money and other assets were safe and accessible to him whenever he

28  should need them.  In response to repeated inquiries between 2007 and 2015, Plaintiff was

**ER-13**

explicitly advised by Defendant in-person and on the phone that Plaintiff's money and other assets

were safe in the Trust and were being held for his benefit.  Plaintiff did not know, nor did he have

reason to know, that this was false.

**$70,000-Net Settlement Proceeds from Notes & Bankruptcy – (2008)**

44.     In addition to the monies entrusted, Plaintiff also entrusted and collaborated with

Defendant on his other investments, beginning in the year 2008.

45.     Plaintiff entrusted certain Promissory Notes and 2nd Deeds of Trust on certain real

properties and settlement proceeds ultimately derived therefrom to Defendant in June of 2008.

More specifically, Plaintiff caused at least three (3) promissory notes and deeds of trust to real

properties to be purchased for the amount of $57,500, and subsequently assigned to the Mazgani

Family Trust for the benefit of Plaintiff and for his safekeeping. In support thereof and collectively

attached to the Cross-Complaint as Exhibit C are true and correct copies of (1) check number 3529

issued from the personal checking account of Defendant at Wells Fargo Bank ending 494, dated

June 23, 2008, in the amount of $57,500 with reference to a "loan", made payable to Trust

Account of Gina Lesitsa, Esq., the attorney handling the transaction, (2)  trust account check

number 1225 from Lisitsa Law Corporation, dated June 23, 2008, in the same amount of $57,500,

made payable to Jin Hwa Jaw and Ling Chan Tsai, with a notation of 229 & 239 2nd Trust Deed,

(3) trust account check number 1226 from Lisitsa Law Corporation, dates July 10, 2008, in the

same amount of $57,500 made payable back to Mahvash Mazgani. Those three properties are

more commonly known as:

- 229 West 25th Street, Los Angeles, CA 90007 (229 West 25th Street Property);

- 239 West 25th Street, Los Angeles, CA 90007 (239 West 25th Street Property); and

- 1117 Westlake Ave, Los Angeles, CA 90006 (Westlake Ave Property).

46.     Plaintiff caused the pertinent notes and deeds of trust associated with the real

properties to be assigned to the Mazgani Family Trust from his friend and former title holder, Mr.

David Behrend, with the cooperation Defendant in her capacity as trustee. A lienholder then

attempted to foreclose on the real properties but failed to do so in a timely fashion, leaving

Plaintiff to battle for his right to the same in the bankruptcy case, *In re David J. Behrend*, Court

**ER-14**

No. 1:11-bk-11379-VK. Eventually that matter resulted in settlement with the lienholder who took title to the aforementioned real properties in consideration for the net recovery in the amount of $70,000, payable to holder of notes at issue, Mazgani Family Trust. The net recovery of $70,000 was given directly by Peter Masten, Chapter 7 Trustee to Defendant who assured Plaintiff that the money would be deposited in the "trust account" for the benefit of Plaintiff. Moreover, Plaintiff paid all attorney's fees thereto and was the sole cause for the acquisition of the notes and deeds of trust and net settlement proceeds payable to Mazgani Family Trust derived therefrom to be held for the benefit of Plaintiff.

### $200,000 Outstanding Rents Collected-16943 Dolce Yenez Lane, Pacific Palisades, CA 90272 (2008-2012)

47.    Plaintiff also entrusted, collaborated with, and caused Defendant to receive no less than a total Two Hundred Thousand Dollars ($200,000.00) from 2008 through 2012, on his behalf to hold in trust, in outstanding rent payments collected in part from appointment of a receiver regarding property more commonly known as 16943 Dolce Yenez Lane, Pacific Palisades, CA 90272, in the unlawful detainer action entitled, *Malcolm Bennett, State Court Receiver vs. Razavi et al,* bearing LASC Case No. SC114009. In support thereof, attached to the Cross-Complaint as Exhibit D is a true and correct copy of First Amended Complaint-Unlawful Detainer together with associated exhibits related to the proceedings. Said collection efforts culminated with a lump sum payout to JKDM, LLC, an entity which Plaintiff is the principal, which was in turn transferred to Defendant to be held in trust for Plaintiff through Plaintiff's former employer.

### 859 3rd Street, Los Angeles, CA 90006-$140,000 in Sales Proceeds - (2008-2009)

48.    By November 2008, Plaintiff had given and had caused to be given to Defendant no less than $461,050.00 in cash and checks.

49.    In addition to the West 25th Street Properties and Westlake Ave Property, Plaintiff also negotiated and consummated an all cash short sale involving a property located at 859 3rd Street, Los Angeles, CA 90006 (3rd Street Property) with his monies he believed was held in the Mazgani Family Trust. That property was owned by Plaintiff's friend and coworker, Mr. Omar

**ER-15**

1  and Daniel Zavala. In or about October 2008 Plaintiff informed Defendant that he wished to

2  purchase 3rd Street Property from his friend and co-worker, the Zavala Family for $430,000.00.

3         50.    With the full cooperation of Defendant, Plaintiff caused and effected an all cash

4  purchase of the 3rd Street Property in the name of the Mazgani Family Trust. Plaintiff negotiated

5  the short sale with HomeEq Servicing for the purchase of the property and the deal was solidified

6  on October 30, 2008.  The 3rd Street Property was purchased in the name of the Mazgani Family

7  Trust on an all cash basis on November 14, 2008. Attached to the Cross-Complaint as Exhibits E

8  & F are copies of seller's closing statement and memo reflecting agreement and terms of short-

9  sale.

10         51.    On March 10, 2009, less than 4-months later, Plaintiff negotiated and caused the

11  immediate all cash sale of the 3rd Street Property by the Mazgani Family Trust with the full

12  cooperation of Defendant in her capacity as trustee to the Lee family for Five Hundred and

13  Seventy Thousand Dollars ($570,000.00), resulting in an approximate profit of One Hundred and

14  Forty Thousand Dollars ($140,000.00) in the name of the Mazgani Family Trust and for the

15  benefit of Plaintiff. Every initial and signature that is on the California Residential Purchase

16  Agreement and Joint Escrow Instructions on behalf of the Seller are borne thereon by Plaintiff

17  with the full knowledge and consent of Defendant.  None of the documents were signed by or

18  executed by Defendant.  Attached to the Cross-Complaint as Exhibit G are copies of both the

19  California Residential Purchase Agreement and Joint Escrow Instructions.

20         52.    All of the $140,000.00 proceeds of sale of 859 3rd Ave, Los Angeles, CA 90005

21  were to be deposited in the what was believed to be the Mazgani Family Trust believed to have

22  been maintained for the benefit of Plaintiff.

23         53.    Plaintiff had decided to make Defendant a "partner" in the 859 3rd Ave, Los

24  Angeles, CA 90005 and award her half the profits from the transaction in consideration of the near

25  decade long devotion and fidelity that he thought that Defendant and her daughters had

26  presumptively given him.

27

28

**ER-16**

**E-Trade Account-3668-Profits of $150,000 – (2008-2010)**

54.     As yet another example of Plaintiff's property entrusted to Defendant, in or about late 2008, Plaintiff requested that a trading account be opened for him at E*TRADE Securities so that he could trade stock.  Per his instruction, Defendant opened the account ending in 3668 with a seed deposit of $50,000.00 from the "trust account" that held monies of Plaintiff.  Plaintiff was provided passwords for online trading and he was successful in his trading of securities. The account was opened by an in-branch deposit at E*TRADE in Brentwood, California, after Plaintiff set the account up electronically. Each trade was made by Plaintiff at either his home or office and for his sole benefit.  On a near weekly basis Plaintiff ordered that E*TRADE withdraw $5,000 from the account and send that amount back.  Those checks were to have been credited to the "trust account" to have been held for the benefit of Plaintiff.

55.     The account would return a profit of approximately $5,000 per week and earned a total net profit of approximately $150,000. Each trade was made by Plaintiff at his office and for his sole benefit.

56.     The E*TRADE account was closed on or about August 20, 2010, and Plaintiff ceased his trading with a profit well over $50,000.00.  He was assured by Defendant that all the proceeds of the E*TRADE account were deposited in the "trust account".  The account was entrusted to Defendant in name only, yet Defendant has also seized this account and refused to return proceeds of the trade to Plaintiff.

**141 South Clark Drive-#320, Los Angeles, CA 90048-Purchase Monies and FMV-(2010-2015)**

57.     In 2010, Plaintiff decided to include Defendant in another one of his real-estate transactions, not knowing that the Mazgani Family was robbing him and divesting him of all of his assets.

58.     The 2010 deal concerned property located at 141 South Clark Drive, Apt No. 320, Los Angeles, CA 90048 (Clark Property), and Plaintiff discovered the opportunity as his then girlfriend, Maria Sanchez lived in the apartment complex.

**ER-17**

59.     Plaintiff caused and effected the short sale of Clark Property to what he believed to be the Mazgani Family Trust for his benefit.  It was initially agreed between Defendant and Plaintiff that each would invest half of the purchase money to buy the Property and then maintain it for rental (splitting the rental profit) as the Clark property is adjacent to Cedars-Sinai Hospital and is coveted by staff physicians at Cedars-Sinai Hospital for its proximity to the hospital and the fact that it is a new build in the neighborhood and populated with thirty (30) professionals.

60.     Both Defendant and Plaintiff intended to have joint legal and/or beneficial title to the Clark Property. Plaintiff's purchase money contribution was to come from monies held in trust for his benefit in the Mazgani Family Trust and Defendant was to finance the other half of purchase monies needed.

61.     On April 24, 2010, the California Residential Purchase Agreement, and Joint Escrow Instructions was entered into between Mazgani Family Trust and the (short) seller, Debra Ricci. All of buyer's signatures and initials borne thereon are solely those of Plaintiff, with full knowledge and consent of Defendant. A copy of the California Residential Purchase Agreement, and Joint Escrow Instructions is attached to the Cross-Complaint as Exhibit H.

62.     Defendant could not come up with her own cash and indicated that she wished to borrow her portion of the money for a lending institution.  She went to Intercap Lending to borrow the money.  Intercap Lending told her it could not loan money to a trust, but they could loan her the money against the property.

63.     On the same day, August 9, 2010, Plaintiff requested that Defendant release his portion of the money to buy the Clark Property to escrow.

64.     On August 12, 2010, Neyaz wired $239,640.50 from account number ending with 6505 held at Wells Fargo to Diamond Quality Escrow.  A copy of the August 12, 2010, Outgoing Wire Transfer Request is attached to the Cross-Complaint as Exhibit I. Plaintiff did not know that Neyaz had access to the account that held his money nor that account number ending with 6505 held at Wells Fargo was another account into which his monies were deposited. None of the Mazgani Family told Plaintiff of these facts and since the accounts were totally in control of the Mazgani Family, Plaintiff did not come to discover these facts until 2015.

**ER-18**

65.    On August 13, 2010, Suburban Mortgage wired $104,911.37 into Chicago Title Company to fund the portion of Defendant's purchase of the property in part. A copy of the Escrow Receipt and Disbursement Authorization is attached to the Cross-Complaint as Exhibit J. Yet on August 14, 2010, Suburban Mortgage wrote the Chicago Title and asked that the August 13, 2010, wire be rescinded. A copy of the August 14, 2010 email from Intercap Lending Operations Officer requesting retraction of funds is attached to the Cross-Complaint as Exhibit K. Defendant was thus without funds of her own to purchase the property and monies of Plaintiff were already deposited with title company.

66.    Fearing that his money would be lost and the deal would not close, on August 17, 2010, Plaintiff negotiated with the real estate agents on the deal to take less commission in order to close the deal. A copy of the August 17, 2010, email chain memorializing said reduction in commission agreement is attached to the Cross-Complaint as Exhibit L.

67.    The real-estate agents agreed to taking less and on August 17, 2010, at 10:38 AM, Plaintiff agreed to send the remainder of the funds to close the deal. A copy of the August 17, 2010, email from Plaintiff confirming the wire is attached to the Cross-Complaint as Exhibit M.

68.    On the same day, August 17, 2010, Hoshang, an individual with access to Plaintiff's monies, whose identity was unknown to Plaintiff, wired $106,000.00 Wells Fargo Bank account ending with 4796. A copy of the transaction history for the Wells Fargo account ending with 4796 and reflecting the August 17, 2010 transfer is attached to the Cross-Complaint as Exhibit N. (see also Exhibit J to the Cross-Complaint reflecting the same). At all times material herein, Plaintiff was under the impression that the property was to be purchased and held by the Mazgani Family Trust for his benefit. In support thereof, Exhibit J to the Cross-Complaint, which is a copy of document from Chicago Title titled "Escrow Receipt and Disbursement Authorization," identifies the buyer as the "Mazgani Family Trust." Yet Defendant purchased the property in her own name and then transferred the property to "Mahvash Mazgani Family Trust," unbeknownst to Plaintiff. Attached to the Cross-Complaint as Exhibit O, are copies of two recorded grant deeds reflective of transfers of title in Clark Property from former owner Debra C. Ricci to Mahvash Mazgani, a widow on August 18, 2010, and a subsequent transfer by Mahvash

**ER-19**

Mazgani, a widow, to the Mahvash Mazgani Family Trust, dated April 17, 2007, on August 27, 2010. Plaintiff did not discover these facts until 2015 but believed he had caused the purchase of Clark Properties with all of his own monies. Plaintiff believed all purchase monies, totaling Three Hundred and Fifty-Two Thousand Dollars ($352,000.00) were funded with his monies held in the Mazgani Family Trust for his benefit, with the understanding that Clark Property was purchased for his sole beneficial legal interest.

69.    On account of Defendant, it was agreed by and between Plaintiff and Defendant that the beneficial title and interest together with all proceeds for rental income of the property would be for the benefit of Plaintiff and held into "trust account" until Defendant was able to pay for her purchasing cost of the Clark Property with a deposit into the "trust account" held for Plaintiff. Such a payment was never made nor disclosed to Plaintiff at any time material herein.

70.    Defendant filed suit in the matter entitled Mazgani v. SBS Trust Deed, and bearing LASC case number BC474307, alleging the same failure to procure financing, all to no avail.

71.    Since August 2010, the property has had a fair market rental value of no less than $2,500.00 per month. The rental proceeds should have been deposited into the "trust account" of Plaintiff until such time the purchase price equalization was made by Defendant. Yet rather than forwarding the same to Plaintiff, Defendant converted the rental income. It is unknown whether Plaintiff's funds still sit in Plaintiffs' account(s) or have been drained and diverted elsewhere.

72.    On information and belief Clark Property presently has a fair market value of no less than Seven Hundred and Fifty Thousand Dollars ($750,000.00) based on comparable sales in the community.

73.    In or around October 2015, in the course of pending litigation, in the matter entitled *Mazgani Family Trust v. Notis* et al, in SC122246, Plaintiff discovered for the first time that his monies and assets from the Trust account to have been held for his benefit, had been improperly transferred to other accounts. Plaintiff subsequently discovered that Defendant was using the Trust assets for her own benefit. Said discovery was brought to light by virtue of documents elicited from the Mazgani Family Trust and subpoenas issued to various banks, inclusive of Wells Fargo Bank and Comerica Bank, during discovery.

**ER-20**

74. Plaintiff is informed and believes and thereon alleges that Defendant engaged in certain acts of self-dealing, from which she profited personally, at the expense of the Trust, including but not limited to the following:

    a. Depositing checks intended for the Trust into different accounts;

    b. Lending money from the Trust account to third parties, and then depositing the third parties' repayment into different accounts;

    c. Commingling her personal assets with the Trust assets;

    d. Improperly transferring title of properties in the Trust to individuals and other entities; and

    e. Retaining rents from the Trust-owned properties for personal use;

    f. Letting her daughter live rent free in a house paid for by Plaintiff; and

    g. Retaining monies and profits derived from the E*TRADE account.

75. By way of example, and certainly not as an exhaustive list, attached to the Cross-Complaint as Exhibit P are front and back copies of four cancelled checks issued to Defendant from the personal checking accounts of Plaintiff at Citibank ending with 5573 and 5306 in the year 2010 which were diverted and transferred into the personal accounts of Defendant, Neyaz, or Hooshang for personal gain, and one transaction receipt evidencing Defendant's deposit of a check in the amount of $13,000.00, unbeknownst to Plaintiff, to wit:

- Check number 103 dated April 10, 2010 in the amount of $10,000 was deposited by Defendant into her personal checking account at Wells Fargo bank, bearing account number ending with 3494.

- Check number 109 dated May 9, 2010, in the amount of $30,000, made payable to "M Mazgani" was deposited into the personal checking account of Neyaz at Wells Fargo bank, bearing account ending with 6505.

- Check number 116 dated May 21, 2010, in the amount of $10,000, made payable to the order of "M Mazgani" was deposited in personal checking account of Hooshang at Wells Fargo bank bearing, account number ending with 4796, to which Defendant and her daughters had powers of attorney.

- Check number 104 dated December 6, 2010 in the amount of $5000 paid to the

**ER-21**

Order of "M. Mazgani" was deposited into what is believed to be another personal checking or money market savings account of Defendant bearing account number ending with 1206.

- Transaction Receipt dated May 29, 2013, reflective of a deposit in the amount of $13,000 by Defendant into her personal checking account at Wells Fargo bank, bearing account number ending with 3494. Said monies are believed to be monies given to her or caused to have been issued to her by Plaintiff to be held in trust for his benefit.

76. Plaintiff hereby alleges on information and belief that the Defendant deposited monies of Plaintiff entrusted to her at all times material herein, into no less than seven bank accounts alone at Wells Fargo Bank as well as other banks, all with the intent to steal and profit from Plaintiff's monies. Until such time that Plaintiff is permitted to review and analyze each and every bank account, he will not be able to assess and prove the full amount of monies divested from him.

77. Plaintiff is informed and believes that Nazanin actively participated in, and knowingly benefited from, Defendant's acts of self-dealing at the expense of the Trust. Specifically, Nazanin knowingly benefited from Defendant's acts of self-dealing at the expense of the Trust by residing rent-free since approximately 2013 at the Clark Drive Property, one of the properties purchased with assets from and therefore properly owned by the Trust. Nazanin also actively participated in Defendant's acts of self-dealing at the expense of the Trust by taking money from the Trust and giving it to third parties.

78. Plaintiff is informed and believes that Neyaz actively participated in, and knowingly benefited from, Defendant's acts of self-dealing at the expense of the Trust. Specifically, Neyaz engaged in certain acts of self-dealing, from which she profited personally, at the expense of the Trust, including but not limited to using the Trust assets to pay off her personal credit cards. Attached to the Cross-Complaint as Exhibit Q are excerpts of the bank statement of Neyaz for her personal checking account at Wells Fargo Bank bearing account number ending with 8148, reflective of the transfer of monies in increments of $1500.00 into her personal checking account from the savings account of Mazgani Family Trust in or about November 20, 2013.

**ER-22**

79.     Prior to October 2015, Plaintiff was unaware that Defendant was engaging in the acts of self-dealing described above and had no reason to discover them.

80.     In or around late 2015, Plaintiff repeatedly requested, in person, and through text messages, phone calls, and emails, that Defendant provide an accounting of the Trust's assets, and Defendant refused to provide an accounting.  In or around January 2016, Plaintiff also repeatedly requested that Defendant return Plaintiff's assets to him, and Defendant refused to return his assets. Instead, Plaintiff has compiled a list of monies she has incurred in the total amount of **$1,058,337.78** claiming monies were paid on behalf of Plaintiff, the majority of which are none other than her own personal obligations, inclusive of the following notable payments:

    a.   Monies personally loaned to Attorney Gina Lisitsa in the amount of $200,000 for a real estate transaction wholly independent of any investment or business of Plaintiff, which monies were paid back by Lisitsa, Esq.

    b.   Monies Loaned to Notis in the amount of $297,500 which is the subject matter of the lawsuit entitled Mazgani v. Notis, bearing LASC Case No. SC122246 which she most recently dismissed against Notis (with Prejudice) and Moda (without prejudice) respectively, without result.

    c.   Monies paid for on behalf of Cookies n Cream, LLC, an entity Defendant admitted having created and owned.

    d.   Annual Life Insurance premium payments made for policies obtained on behalf of Plaintiff without his consent

    e.   Monies paid to Audi Financial for purported car payments on behalf of Plaintiff for purchase of a 2013 Audi A8, bearing California license plate no. 7BEB133, when she claimed the same vehicle was vandalized and stolen from her by Plaintiff, as evidenced by no less than two police reports filed by Defendant in the year 2016, when she had possession of the vehicle, which are collectively attached to the Cross-Complaint as Exhibit R.

81.      In or around January 2016, Plaintiff requested that Defendant return Plaintiff's Watches and Jewelry, and Defendant refused to return these valuable personal items to Plaintiff. Prior to this date, Plaintiff did not know, and had no reason to know, that Defendant would refuse

**ER-23**

1  to return these items.

2      82.     Plaintiff is informed and believes that Defendant has sold some of Plaintiff's

3  Watches and Jewelry without Cross-Complainant's permission.  The proceeds from these sales

4  were neither added to the Trust nor given to Cross-Complainant.

5                              **THE NON-TRUST ASSETS**

6      83.     In or around February 2014, while Defendant and Plaintiff were attending a funeral,

7  Defendant requested a personal loan of $60,000 to pay off a second loan on a property located at

8  10950-10954 Massachusetts Avenue, Los Angeles, CA 90024.  In reliance on assurances that she

9  would pay him back, Plaintiff gave Defendant a personal loan of $60,000.  Defendant has not paid

10 Plaintiff back for this personal loan, and Plaintiff is informed and believes that Defendant does not

11 intend to pay Cross-Complainant back for this loan.

12                             **THE CIVIL CONSPIRACY**

13     84.     Plaintiff alleges that Defendant, Nazanin, Neyaz, and Hoshang individually and

14 collectively, jointly conspired to defraud, withold monies of Plaintiff, and divest Plaintiff of his

15 assets, all the while breaching their respective duties as fiduciaries, and duties of trust and loyalty.

16 Upon information and belief, it is alleged that the conspiracy was joined by all actors no later than

17 2010 based on the evidence possesed to date.

18     85.     While Defendant successfully induced Plaintiff to divest his assets and collaborate

19 with her to make real estate purchases and investments using Plaintiff's contacts and know how

20 under the guise of trust and beneficial interest, she entered into an elaborate scheme and agreement

21 with her daughters and Hoshang to defraud Moda by depositing his monies into a trust account

22 held for her in her own name and for her own benefit as well as various personal accounts of her

23 own and her co-conspirators with the intent to enrich all conspirators with future investments as

24 they arose and/or use those monies for self gain, at the expense of Plaintiff. Said agreement and

25 concealed transfer of Plaintiff's funds is evidenced by cancelled checks, reflecting the deposit of

26 checks issued from Plaintiff's personal account made payable to Defendant as early as April 2010

27 through December 2010, into the various personal accounts of: Defendant (Acct. Ending 494),

28 Neyaz (Acct. Ending 505), and Hoshang (Acct. Ending 796) instead of the represented trust

account to have been held for Moda's exlcusive benefit. (See Cross-Complaint, Exhibit P).

**ER-24**

86.    In furtherance of this conspiracy, Plaintiff's assets held in trust and other accounts were readily accessible to Defendant's daughters, Neyaz and Nazanin, and Hoshang who were additional signatories on the Trust account with full powers of attorney while Nazanin and Neyaz were also appointed successor trustees of the Trust.

87.    Neyaz further manifested her conspiracy and agreement to defraud Plaintiff of his assets by and through her involvement with the purchase of the Clark Property.  When funding the purchase of Clark under the guise that it was on Moda's behalf, Neyaz caused the transfer of approximately $239,640.50 in funds from her personal checking account ending with 6505, into escrow. (See Cross-Complaint, Exhibit I). Plaintiff was not aware that his funds had been diverted to Neyaz's account, let alone that his purchase monies for the Clark Property were routed from the same. Neyaz's conspiracy to defraud is further evidenced by her transfer of funds held in Trust into to her own personal account, for personal use and self-gain in the year 2013. (See Cross-Complaint, Exhibits I, Q).

88.    In doing so, Neyaz acted to further her own individual economic interests, in knowing breach of trust.  Plaintiff did not discover that his cousin, Neyaz, had engaged in these activities until approximately late 2015.

89.    Nazanin conspired with Defendant to divert over $100,000 in settlement funds to the Trust and to live rent free at the Clark Property. Nazanin also, on information and belief, took money from the Trust and lent it to third parties all without the knowledge or authorization of Plaintiff, and has failed to repay the same. Specifically, in or about late 2012, Plaintiff's company was the party plaintiff in the matter entitled  *JKDM, LLC v. Razavi* et al, Los Angeles Superior Court case number SC114009. JKDM, LLC settled it's claim with defendant and the settlement proceeds in excess of $100,000.00 were deposited into the Mazgani Family Trust at the urging of Moda's then lawyer, Nazanin. In face of repeated requests for return of the funds, the Mazgani group have not returned the money of Plaintiff.

90.    Nazanin further conspired against Plaintiff when she agreed to, actively participated in, and knowingly benefited from, Defendant's breach of fiduciary duties by residing on the Clark Property rent-free and, on information and belief, taking money from the Trust and lending the same to third parties. Plaintiff did not discover that his cousin, Nazanin, had engaged

**ER-25**

in these activities until approximately 2015.

91.     Hoshang further conspired against Plaintiff by knowingly accepting Plaintiff's funds in Hoshang's own Wells Fargo bank account ending with 4796 and then knowingly allowing for the same to be drained and directed elsewhere at the discretion of their leader, Defendant, for mutual gain.

92.     Plaintiff did not know, nor did he have reason to discover, that these individuals were wrongfully retaining the benefits described above until October 2015, at which time he found that the they had acted in concert and by common design to profit by, inter alia, conspiring with one another against Plaintiff, inclusive of breach of fiduciary duty owed by Nazanin in her capacity as counsel, to JKDM.

93.     As a proximate cause of said wrongful conduct, Plaintiff has been damaged in an amount according to proof at the time of trial.

### FIRST CLAIM FOR RELIEF

### Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)

### (Fraud)

94.     Plaintiff repeats and realleges the allegations in paragraphs above as though fully set forth herein.

95.     Section 523(a)(2)(A) excepts from discharge debts for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud.

96.     Defendant harbored an intent to divest and defraud Plaintiff of all of his monies, personal properties, and assets, bit by bit for self-gain, knowing that she had earned his trust by caring for him as his paternal aunt at such dire and desolate times when no other family member of Plaintiff would tolerate Plaintiff's laissez faire lifestyle, lavish expenditures, and waste of his monies and financial resources. In furtherance of this intent to defraud, Defendant embarked on a mission to usurp Plaintiff's monies and assets under the auspices of a trust, ensurer, and manager of Plaintiff's future.

97.     In furtherance of this fraudulent intent, in late 2006, March 2007, and at multiple

**ER-26**

additional times between 2007 and 2015, Defendant falsely and fraudulently represented to Plaintiff that she would deposit Plaintiff's cash and other assets in the Trust for Plaintiff's benefit so that he cannot readily access or spend those monies with ease; that the cash and assets would be invested conservatively and prudently for Plaintiff's benefit; that any profits from the Trust investments would be deposited into the Trust, and that Plaintiff's assets would be well-protected and secure. Defendant also falsely and fraudulently represented to Plaintiff that she was the sole individual who would have access to the Trust account assets.

98.     Defendant made these false representations to Plaintiff in-person at family events, on the phone, and via text messages.

99.      Defendant's harbored intent to defraud Plaintiff was further manifested by the following conduct, all unbeknownst to Plaintiff:

      a.  In or around April 17, 2007, Defendant created the Mahvash Mazgani Family Trust, an act concealed from Plaintiff who was under the belief his monies were being deposited into the Mazgani Family Trust instead.

      b.  Defendant's daughters, Neyaz and Nazanin, and another relative, Hooshang, were also signatories on the Trust account with full access to Plaintiff's monies.

      c.  Defendant had caused another bank account to be opened in the name of Hooshang, a cousin who resides out of the country, in which account monies of Plaintiff were being transferred for personal use and self-gain. All Mazgani family members had powers of attorney with full access to monies in said account.

      d.  Defendant took checks given to her by Plaintiff and deposited the funds into at least (7) seven different bank accounts instead of the Trust account to have been held for Moda's benefit.

      e.  Defendant fully cooperated and collaborated with Plaintiff to cause the purchase of 859 3rd Avenue, Los Angeles CA 90005 with Plaintiff's own monies and realize $140,000.00 in profits from a flip sale in or about March 10, 2009, with the intent to divest the profits from the trust and transfer the monies

**ER-27**

1  to other accounts for self-gain.

2  f.  Defendant fully cooperated and collaborated with Plaintiff to cause receipt of

3  **$200,000.00** in outstanding rents from appointment of receiver and lump sum

4  paid to JKDM, LLC, related to the property more commonly known as 16943

5  Dolce Yenez Lane, Pacific Palisades, CA 90272, in the Unlawful Detainer

6  Matter entitled, *Malcolm Bennett, State Court Receiver vs. Razavi et al,* bearing

7  LASC Case No. SC114009, with the intent to divest said monies from the Trust

8  and transfer the monies to other accounts for self-gain.

9  g.  Defendant fully cooperated and collaborated with Plaintiff to cause receipt of

10  **$70,000.00** in settlement proceeds from United States Trustee with the intent to

11  divest the profits from the trust and transfer the monies to other accounts for

12  self-gain.

13  h.  Defendant fully cooperated and collaborated with Plaintiff to cause transfer of

14  title to Clark Property under the Trust using Plaintiff's monies and without any

15  intentions of holding Clark Property in trust or recognizing Plaintiff's beneficial

16  legal interest and title in Clark property, and all for self-gain.

17  i.  Defendant knowingly permitted a total of **$143,500.00** in unauthorized

18  withdrawals from monies of Plaintiff in her possession from Wells Fargo

19  Account ending 796.

20  j.  Defendant knowingly caused the receipt of **$100,000.00** representative of

21  Plaintiff's Settlement Monies in the matter of *JKDM v. RAZAVI* in or about

22  2012, for self-gain and personal use.

23  k.  Defendant fully cooperated and collaborated with Plaintiff in causing an

24  E*TRADE account to be made and allow Plaintiff to make online trades with

25  her passwords with the intent of withholding all profits in the amount of

26  $150,000 from about 2009-2013 for self-gain

27  l.  Defendant caused Plaintiff to loan her **$60,000.00** to pay off a Promissory Note

28  secured with a 2nd Deed of Trust for the property more commonly known as

**ER-28**

1          10950 Massachusetts Avenue, Los Angeles, CA 90024 with no intentions of

2          paying him back

3      m.  Defendant received approximately **$252,000.00** in rent proceeds for rental

4          premises of Unit #320 at 141 South Clark Drive, Los Angeles, CA 90048 from

5          date of purchase 2010 to present all for self-gain.

6      100.    The representations made by Defendant were in fact false.

7      101.    The true facts were that Defendant did not intend to deposit Plaintiff's cash and

8  other assets in the Trust for Plaintiff's benefit, nor did she intend to invest the assets

9  conservatively and prudently for Plaintiff's benefit, nor did she intend to deposit profits from the

10 Trust investments into the Trust, nor did she intend that Plaintiff's assets would be well-protected

11 and secure.  Instead, she intended to engage in self-dealing and personally profit from Plaintiff's

12 assets.  In addition, the true facts were that there were additional signatories on the Trust account

13 and that Neyaz and Nazanin, as successor trustees of the Trust and signatories on the Trust

14 account, intended to engage in self-dealing and profit from Plaintiff's assets.

15     102.    When Defendant made these representations, she knew them to be false, and these

16 representations were made by Defendant with the intent to defraud and deceive Plaintiff and with

17 the intent to induce Plaintiff to act in the manner herein alleged.

18     103.    At the time that Defendant promised to deposit Plaintiff's cash and other assets into

19 the Trust for Plaintiff's benefit, she had no intention of performing this promise.  Indeed, in or

20 around October 2015, Plaintiff discovered that Defendant was engaging in certain acts of self-

21 dealing, from which she profited personally, at the expense of the Trust, including depositing

22 checks intended for the Trust into a different account, lending money from the Trust to third

23 parties and then depositing the third parties' repayment into a personal account, commingling

24 personal assets with the Trust assets, improperly transferring title of properties in the Trust to

25 individuals and other financial entities, and retaining rents from the Trust-owned properties for

26 personal use.

27     104.    Plaintiff, at the time these representations were made by Defendant, was ignorant of

28 the falsity of Defendant's representations and believed them to be true.  In reliance on these false

**ER-29**

1    and fraudulent representations, beginning in or around April 2007 and continuing until late 2015,

2    Plaintiff gave Defendant cash, checks, third party checks made payable to her, personal properties,

3    and other assets and investment to deposit into the Trust or to be held in trust for his benefit.

4         105.    In reliance on these representations, Plaintiff was induced to give substantial sums

5    of money and valuable property to Defendant to deposit in the Trust.  Had Plaintiff known that

6    Defendant had no intention of holding the money in the Trust for Plaintiff's benefit, Plaintiff

7    would not have given her his cash and other assets.  In addition, had Plaintiff been informed of the

8    additional signatories on the account, other accounts and associated powers of attorney, he would

9    not have given his cash and other assets to Defendant to put in the Trust account since he did not

10   know the other account holder or believe the additional signatories to be financially prudent.

11        106.    Plaintiff's reliance on Defendant's representations was justified because they had a

12   close, trusting familial relationship, Defendant held herself out to be a maternal figure in

13   Plaintiff's life, and Plaintiff in turn believed Defendant genuinely cared about him and would

14   protect his assets.  Moreover, Defendant repeatedly assured Plaintiff that Plaintiff's assets were in

15   fact deposited into the Trust account and that his assets were safe in the Trust.

16        107.    As a proximate result of Defendant's fraud and deceit and the facts herein alleged,

17   Plaintiff has been damaged in an amount to be proven at trial.

18        108.    Accordingly, all debt owed by Defendant to Plaintiff is non-dischargeable pursuant

19   to 11 U.S.C. § 523(a)(2)(A).

20                 **SECOND CLAIM FOR RELIEF**

21       **Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)**

22      **(Fraud or Defalcation While Acting in a Fiduciary Capacity / Embezzlement)**

23        109.    Plaintiff repeats and realleges the allegations in paragraphs above as though fully

24   set forth herein.

25        110.    Section 523(a)(4) excepts from discharge debts for fraud or defalcation while

26   acting in a fiduciary capacity, embezzlement, or larceny.

27        111.    An express trust existed between Plaintiff and Defendant and, as a result,

28   Defendant acted in a fiduciary capacity for the benefit of Plaintiff.

**ER-30**

112.     As trustee of the Trust, Defendant owes fiduciary duties, including, but not limited to, the duty of good faith, the duty of undivided loyalty, and the duty of care, to the Trust and its beneficiaries.  As trustee of the Trust, Defendant must act in accordance with these fiduciary duties and must not act in bad faith or in disregard of the purposes of the Trust.

113.     Defendant breached her fiduciary duties to Plaintiff by, among other things, depositing checks intended for the Trust into a different account, lending money from the Trust to third parties and then depositing the repayment of these amounts into different accounts, and engaging in self-dealing.  Plaintiff learned of these breaches in or around October 2015 and had no reason to discover them prior to that date.

114.     As a proximate cause of said wrongful conduct, Plaintiff has been damaged in an amount according to proof at the time of trial.

115.     Accordingly, all debt owed by Defendant to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

### THIRD CLAIM FOR RELIEF

### Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)

### (Willful and Malicious Injury)

116.     Plaintiff repeats and realleges the allegations in paragraphs above as though fully set forth herein.

117.     Section 523(a)(6) excepts from discharge debts for willful and malicious injury by the debtor to another entity or to the property of another entity.

118.     Defendant "willfully" injured Plaintiff by committing the wrongful acts described herein.

119.     Defendant "maliciously" injured Plaintiff because she intentionally committed the wrongful acts described herein without just cause or excuse and which necessarily caused Plaintiff injury.

120.     Accordingly, all debt owed by Defendant to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**ER-31**

# FOURTH CLAIM FOR RELIEF

## Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)

### (Transfer or Concealment of Property)

121.    Plaintiff repeats and realleges the allegations in paragraphs above as though fully set forth herein.

122.    Section 727(a)(2) denies a discharge to an individual debtor who, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

123.    Defendant willfully concealed property of the debtor within one year before the filing of the bankruptcy petition (October 2, 2019), specifically the real estate located at 10950–10954 Massachusetts Ave., Los Angeles, CA 90024 ("Massachusetts Property") by keeping legal title in the name of the Wesson Trust and or her daughters, Nazanin and Neyaz.  On June 24, 2020, the Massachusetts Property was deeded back to Defendant so that "it could be administered as part of Debtor's bankruptcy estate."  Doc. 283.  The postpetition transfer of the Massachusetts Property, by far Defendant's most valuable asset, shows that Defendant always maintained an ownership interest therein and that within one year of the petition date Defendant concealed her ownership of the Massachusetts Property for the purpose of hindering, delaying and defrauding her creditors.

124.    Defendant willfully concealed property of the estate after the filing of the bankruptcy petition (October 2, 2019), specifically the funds held in her annuity with American Equity Investment Life Insurance Co. ("American Equity Annuity").  On February 6, 2019, the American Equity Annuity had a cash surrender value of $322,517.08.  On her second amended Schedule A/B [Doc. 225] filed June 26, 2020, Defendant lists the cash surrender value as $63,730.11.  Defendant's SOFA [Doc. 190] filed May 26, 2020 does not disclose how $258,787 vanished from the American Equity Annuity.  On information and belief, Defendant has

**ER-32**

transferred or concealed funds in the American Equity Annuity for the purpose of hindering, delaying and defrauding her creditors.

125. Accordingly, Defendant should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2).

## FIFTH CLAIM FOR RELIEF

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3)

### (Concealment, Falsification, or Failure to Keep Recorded Information)

126. Plaintiff repeats and realleges the allegations in paragraphs above as though fully set forth herein.

127. Section 727(a)(3) denies a discharge to an individual debtor who has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

128. As discussed herein, Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which Defendant's financial condition or business transactions might be ascertained. Specifically, Defendant of failed to keep or preserve any recorded information regarding he custodianship of the Trust's assets and Plaintiff's property.

129. Accordingly, Defendant should be denied a discharge pursuant to 11 U.S.C. § 727(a)(3).

## SIXTH CLAIM FOR RELIEF

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A)

### (False Oath)

130. Plaintiff repeats and realleges the allegations in paragraphs above as though fully set forth herein.

131. Section 727(a)(4)(A) denies a discharge to an individual debtor who has knowingly and fraudulently, in or in connection with the case made a false oath or account.

**ER-33**

132.    Defendant made false oaths in her Schedules A/B filed on May 26, 2020 [Doc. 190] and June 5, 2020 [Doc. 213] by intentionally failing to disclose her ownership interest in the Massachusetts Property, by far the most valuable asset of Defendant's bankruptcy estate.

133.    On information and belief, Plaintiff alleges that Defendant falsely testified during her 341(a) examination that loans she made to Mordecai Notis and Notis Enterprises, Inc. ("Notis Loans") were funded with Plaintiff's monies.  However, in prior proceedings, Defendant has represented that the Notis Loans were funded only with her monies.

134.    Accordingly, Defendant should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

**WHEREFORE,** Plaintiff prays for Judgment as follows:

1.    On the First Claim for Relief, for a determination that all debts owed by Defendant to Plaintiff are non-dischargeable under 11 U.S.C. § 523(a)(2)(A);

2.    On the Second Claim for Relief, for a determination that all debts owed by Defendant to Plaintiff are non-dischargeable under 11 U.S.C. § 523(a)(4);

3.    On the Third Claim for Relief, for a determination that all debts owed by Defendant to Plaintiff are non-dischargeable under 11 U.S.C. § 523(a)(6);

4.    On the Fourth Claim for Relief, for denial of Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2);

5.    On the Fifth Claim for Relief, for denial of Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3);

6.    On the Sixth Claim for Relief, for denial of Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4); and

7.    For any other and further relief that the Court deems appropriate and just.

Respectfully submitted by,

Dated: October 2, 2020                    LAW OFFICE OF DONALD W. REID

By: /s/Donald W. Reid
Donald W. Reid, Counsel for
Plaintiff Kevin Moda

**ER-34**

1  KASEY DIBA, ESQ. (SBN 171081)
   MATTHEW M. SICHI, ESQ. (SBN 306165)
2  **FINNEGAN & DIBA, A LAW CORPORATION**
   3660 Wilshire Boulevard, Suite 710
3  Los Angeles, California 90010
   Telephone: (213) 480-0292
4  Facsimile: (213) 480-0805

5  Attorneys for Defendant and Cross-Complainant, Kevin Moda,
   and Defendants Hoffman La Brea, LLC, and JKDM, LLC

6

**FILED**
Superior Court of California
County of Los Angeles

OCT 16 2017

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
    Nancy Alvarez

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                        COUNTY OF LOS ANGELES

9

10  MAHVASH MAZGANI individually and as
    Trustee of the MAHVASH MAZGANI
11  FAMILY TRUST; NAZANIN MAZGANI
    and NEYAZ MAZGANI, individually and as
12  the Trustees of the WESSON TRUST,

13                      Plaintiffs,

14             vs.

15  KEVIN MODA, an individual, HOFFMAN
    LA BREA, LLC, a California Limited
16  Liability Company; JKDM, LLC, a California
    Limited Liability Company; and DOES 1-100
17  inclusive,

18                      Defendants.

19  KEVIN MODA,

20                      Cross-Complainant,

21             vs.

22  MAHVASH MAZGANI, an individual and as
    Trustee of the Mahvash Mazgani Family
23  Trust; NAZANIN MAZGANI, an individual
    and as Trustee of the Wesson Trust; NEYAZ
24  MAZGANI, an individual and as Trustee of
    the Wesson Trust; HOSHANG MAZGANI,
25  an individual; and ROES 1-10 inclusive,

26                      Cross-Defendants.

| | |
|---|---|
| Case No. BC607465 | |

*Consolidated with Case No. BC622117*

*Assigned to Hon. Elizabeth Allen White*
*Dept. 48*

**DEFENDANT AND CROSS-COMPLAINANT KEVIN MODA'S FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT FOR:**

1.  **BREACH OF FIDUCIARY DUTY OF TRUSTEE;**
2.  **CIVIL CONSPIRACY;**
3.  **BREACH OF FIDUCIARY DUTY OF COUNSEL**
4.  **AIDING AND ABETTING AND KNOWINGLY BENEFITING FROM BREACH OF TRUST;**
5.  **UNJUST ENRICHMENT;**
6.  **CONVERSION;**
7.  **ACCOUNTING;**
8.  **FRAUD IN INDUCEMENT;**
9.  **MONEY HAD AND RECEIVED;**
10. **DECLARATORY RELIEF;**
11. **SET ASIDE VOIDABLE TRANSACTION [CIV. CODE § 3439.07(A)(1)] AND FOR DAMAGES BASED ON FRAUDULENT—TRANSFER[CIV. CODE § 3439.04(A)]; AND**

---

1

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

ER-35

**12. TWELFTH CAUSE OF
ACTION FOR CONSPIRACY
TO DEFRAUD CREDITOR**

Complaint Filed:  January 19, 2016
Trial Date:  June 25, 2018

Defendant and Cross-Complainant, Kevin Moda ("Moda" or "Cross-Complainant")

alleges as follows against Plaintiffs and Cross-Defendants Mahvash Mazgani, individually and as

trustee of the Mahvash Mazgani Family Trust; Nazanin Mazgani, Neyaz Mazgani, and Hoshang

Mazgani (Collectively "Cross-Defendants"):

## PARTIES

1.      Cross-Complainant, Kevin Moda is and at all times herein mentioned was a

resident of the County of Los Angeles, California.

2.      Cross-Defendant Mahvash Mazgani is, on information and belief, the trustee of the

Mahvash Mazgani Family Trust.  This action is brought against Cross-Defendant Mahvash

Mazgani in her individual capacity as well as in her capacity as trustee of the Mahvash Mazgani

Family Trust.

3.      Cross-Defendant Mahvash Mazgani is, on information and belief, a resident of the

County of Los Angeles, California.

4.      Cross-Defendant Nazanin Mazgani is, on information and belief, a resident of the

County of Los Angeles, California.  This action is brought against Cross-Defendant Nazanin

Mazgani in her individual capacity as well as in her capacity as trustee of the Wesson Trust.

5.      Cross-Defendant Neyaz Mazgani is, on information and belief, a resident of the

County of Los Angeles, California. This action is brought again Cross-Defendant Neyaz Mazgani

in her individual capacity as well as in her capacity as trustee of the Wesson Trust.

6.      Cross-Defendant Hoshang Mazgani is an individual who, at all times relevant

herein, was a resident of the County of Los Angeles but has since, on information and belief,

relocated out of state with an address unknown.

7.      The true names and capacities of cross-defendants ROES 1 through 10, inclusive,

are unknown to Cross-Complainant, who therefore sues said cross-defendants by such fictitious

<center>2</center>

1  names pursuant to California Code of Civil Procedure section 474.  Cross-Complainant is

2  informed and believes and thereon alleges that each of the cross-defendants designated herein as

3  "ROE" is legally and/or equitably responsible in some manner for the events, transactions,

4  occurrences, and happenings alleged herein.  Cross-Complainant will seek leave of the court to

5  amend this Cross-Complaint when said true names and capacities have been ascertained.

<div align="center"><b>JURISDICTION AND VENUE</b></div>

7       8.      This Court has jurisdiction over this action pursuant to California Code of Civil

8  Procedure section 410.10.

9       9.      This action arises under California law and the amount in controversy exceeds

10  $25,000.00.

11      10.     Venue is proper in this Court because at all times material herein, the Cross-

12  Defendants resided in Los Angeles County and continue to reside in Los Angeles County with the

13  exception of Hoshang Mazgani who has since on information and belief, relocated out of state,

14  and because all of the material events and transactions giving rise to this action took place in Los

15  Angeles County.

<div align="center"><b>FACTUAL ALLEGATIONS</b></div>

17      11.     Cross-Defendant Mahvash Mazgani is Cross-Complainant's paternal aunt who

18  emigrated to the United States in 1981, with her now deceased husband and two daughters.

19  Given their financial status, the Mazgani family boarded with Cross-Complainant's parental

20  home for one year and next into the homes of other relatives.  The Mazgani family struggled

21  throughout the years and endured foreclosure proceedings and bankruptcy filings. The Mazgani

22  family only survived with the assistance of public welfare, and funds from family and relatives.

23  Mr. Mazgani passed away in the year 2002, and Mahvash Mazgani was left to her own device to

24  sustain a living as a social worker.

25      12.     In or about the same time, from 2000 to 2003, Mahvash Mazgani and Cross-

26  Complainant Kevin Moda significantly bonded with one other.  Mahvash Mazgani had been

27  ultra-supportive of Kevin Moda's efforts to change his life around, and in turn had effectively

28  gained his trust and praise for her efforts as a maternal figure.

       13.     By 2006, Mahvash Mazgani was privy to and had gained first-hand knowledge of

<div align="center">3</div>

Kevin Moda's lavish lifestyle and wasteful leisurely activities without a care for his future or

investment. In and around 2006 and 2007, the two had a close and trusting familial relationship;

Cross-Complainant considered Cross-Defendant Mahvash Mazgani his closest family member

and Cross-Defendant Mahvash Mazgani represented herself to Cross-Complainant and others as a

maternal figure in Cross-Complainant's life.

14.     Cross-Defendants Neyaz Mazgani and Nazanin Mazgani are Cross-Defendant

Mahvash Mazgani's daughters, and Cross-Complainant's cousins. Cross Complainant thought he

had a close familial relationship with his cousins who were taking advantage of his contacts as

they were fond of Moda's lavish ways and enjoyed the nightlife with him; He effectively served

as their primary source and contact to entertainment.

15.     Cross-Defendant, Nazanin Mazgani is a licensed California attorney (SBN

270258), who at all times material herein, was actively practicing law before the State Courts of

California.

16.     Basing a feigned opinion of care for Mr. Moda presumably founded on the close

and familial relationship, Mahvash Mazgani approached Mr. Moda during Christmas season in

2006, and told Mr. Moda that he should entrust her with his money. Mahvash Mazgani told him

to do so as Moda was spending too heavily on leisure activities and wasting his money.

17.     Mahvash Mazgani told Mr. Moda that his money would be kept segregated from

all other monies and kept in a trust account.

18.     Mahvash Mazgani told Mr. Moda that the trust account was accessible to no one

but her and that only the money of Mr. Moda would be placed therein.

19.     Mahvash Mazgani told Mr. Moda that his money would bear interest while in her

care, and that he could have it back whenever he so requested but that since it was in a trust

account, the money would not be accessible for frivolous expenditures as the time between a

spontaneous desire to purchase an unneeded luxury to the time that the cash was made available

would be sufficient time for reflection and the lack of need for the purchase. Stated differently,

Mr. Moda's prior impulsive wasteful expenditures would come to an end.

20.     Based on the strong family ties with his aunt and the trust reposed in Mahvash

Mazgani, Cross-Complainant gave Cross-Defendant cash and other assets to be held in

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

ER-38

1   safekeeping for Cross-Complainant's future benefit.

2       21.    Unbeknownst to Cross-Complainant though, the Mahvash Mazgani and her

3   immediate family, harbored an intent to make their own family a victim and they found that

4   victim in Kevin Moda.

5       22.    Unbeknownst to Mr. Moda, at the time that Mahvash Mazgani made the

6   representations of good faith and fidelity to Mr. Moda, the Mazgani family were financially

7   strapped and they saw their own financial need multi-levels more important than a family bond

8   and felt their oath to kin worthless.

9       23.    This harbored intent to induce and defraud first manifested in late 2006, when

10   Cross-Defendant Mahvash Mazgani and Cross-Complainant were both at a holiday party at

11   Cross-Defendant Mahvash Mazgani's home.  At that party, Cross-Defendant Mahvash Mazgani

12   approached Cross-Complainant and expressed a maternal-like concern about how Cross-

13   Complainant was managing his financial affairs.  She told him he was wasting his money by

14   overspending on lavish accessories and personal property, leisure activities, and not thinking

15   about his future.

16       24.    Cross-Defendant Mahvash Mazgani told Cross-Complainant that he should

17   manage his financial affairs more prudently and should save money for his future so he would

18   have enough money for retirement by giving that money to Mahvash Mazgani to hold in trust.

19       25.    Cross-Defendant Mahvash Mazgani represented that she had a trust set up for

20   herself and that Kevin Moda should deposit his monies with her in the trust and those funds

21   would be available for Kevin Moda to use anytime he wanted, but the monies would not be as

22   accessible as funds in a bank account, and therefore the entrustment of monies with her would put

23   an end to Kevin Moda's impulsive spending.  Mahvash Mazgani stated all of his monies (checks)

24   would be deposited into one single account that would solely have Mahvash Mazgani as its owner

25   and sole account holder and that she was the only person who could access the account; i.e. the

26   account would be as safe as "Fort Knox".  She represented she would hold those monies for him

27   in a trust for his benefit (the "Trust").

28       26.    Mahvash Mazgani further represented that Kevin Moda's cash and other valuable

personal property would also be safeguarded for him and held in a safety deposit box that

1    Mahvash Mazzani maintained at her bank and the other safe kept in her house and no other

2    person but her had access to either the safety deposit box or the home safe.

3         27.    When he asked, what would happen to his money and other assets if something

4    were to befall Ms. Mazzani, Ms. Mazzani stated that she would keep a ledger of all funds and

5    assets that Kevin Moda would give her (in cash and in checks and personal property) and that

6    ledger would be kept internally for her daughters to know to give the money and other assets to

7    Kevin Moda if something were to happen to Mahvash Mazzani.

8         28.    During the same conversation at the holiday party, Cross-Defendant Mahvash

9    Mazzani assured Cross-Complainant that the Trust would be designed to conserve Cross-

10   Complainant's assets, and that the Trust assets would be invested conservatively and prudently

11   with an eye towards long-term benefits rather than short-term gains.  Specifically, she represented

12   that she will purchase certificates of deposit that would earn interest for Cross-Complainant's

13   future benefit if Mr. Moda agreed to the particular CD that Mahvash Mazzani said she would tell

14   him about at a later time.

15        29.    Cross-Defendant Mahvash Mazzani further assured Cross-Complainant that

16   because of their close familial relationship, she would act as his fiduciary, and assured Cross-

17   Complainant that Cross-Complainant's assets would be well-protected and secure.

18                                **TRUST ASSETS**

19        30.    Beginning in January 2007, Cross-Complainant started entrusting Mahvash

20   Mazzani with his monies in cash and in checks to hold in trust as a fiduciary. He began delivering

21   his cash earnings to her intermittently together with endorsement of checks made payable to him,

22   to Mahvash Mazzani, or the Trust in his stead.

23        31.    Unbeknownst to Mr. Moda, Mahvash Mazzani did not have a trust account in the

24   name of any trust as she had represented at the holiday party in 2006, and she was depositing all

25   of Moda's monies either in her personal accounts, accounts shared with her daughters, or not

26   depositing them at all.

27        32.    Mahvash Mazzani used the cash monies given to her by Cross-Complainant to pay

28   all her daily living expenses and if she would charge something on her credit card, she would pay

     the account off with cash deposits.

                                        6

**ER-40**

33.    Mahvash Mazani made the representations regarding Moda's retirement to Moda so she could take his money for her own retirement. With the money stolen from Moda, Mahvash Mazani opened an IRA in 2009.

34.    In or around March 2007, Mahvash Mazani reinforced her false assurances and false representations when Moda and she attended a family gathering to celebrate Nowruz, the Persian New Year together.  At that family celebration, Cross-Defendant Mahvash Mazani told Moda that he should increase the amount of monies that he had started giving her so that more of his money would be there for Moda's later years.

35.    During both of the in-person discussions in late 2006 and March 2007, Cross-Defendant Mahvash Mazani expressly but falsely represented to Cross-Complainant that the Trust was already in operation and entitled the "Mazani Family Trust" and that Cross-Complainant was the beneficiary of the Trust.  Further Mahvash Mazani expressly represented to Cross-Complainant that she was the sole individual who had access to the Trust assets.

36.    With the intent to defraud Moda, in April 2007, Mahvash Mazani created the "Mahvash Mazani Family Trust." A true and correct copy of the Certification of Trust is attached hereto as **Exhibit A** and incorporated herein by reference as though fully set forth. The Mahvash Mazani Family Trust was set up so that checks made out to "Mazani Trust" could then be deposited into a trust account as they could not be deposited into her personal account. Further, the Mahvash Mazani Family Trust was used as an artifice of fraud and as a tool to further fraud on Mr. Moda, for when Mr. Moda would negotiate real estate transactions, he would do so in the name of the none existent and falsely represented to exit "Mazani Family Trust" and Mahvash Mazani would then take the asset (or the proceeds of the sale of property) under the "Mahvash Mazani Family Trust."

37.    Cross-Complainant had no reason to know or suspect that his closest family member was practicing fraud on him. Mahvash Mazani continuously reinforced the initial representations by continually representing and referencing the Trust as the Mazani Family Trust, with further representations that Cross-Complainant was the beneficiary of the Trust, from 2007 through 2015, in effort to continually induce him to transfer his monies and assets to her and to further conceal the location of Moda' monies and her intent to defraud him.

<center>7</center>

38. Between 2007 and 2015, in communications that took place in person and on the phone each time Cross-Complainant would present or plan to transfer his monies to be held in trust, Cross-Defendant Mahvash Mazgani repeatedly reassured Cross-Complainant that she was the sole individual who had access to the Trust assets, inclusive of the safety deposit box.

39. In reliance on these representations, Kevin Moda continued to give cash and endorse checks to Cross-Defendant Mahvash Mazgani to put into the Trust for Cross-Complainant's benefit. From 2008 forward, Cross-Complainant began instructing third parties who owed money to Cross-Complainant to write checks to "Mazgani" or "Mazgani Family Trust," which checks he gave to Cross-Defendant Mahvash Mazgani to deposit into the Trust and hold for his benefit. From 2010 forward, cash deposits with Mahvash Mazgani took on a uniform pattern at the rate of no less than $5,000.00 per week.

40. In further reliance on these representations and from approximately 2006 to 2014, Cross-Complainant also gave Cross-Defendant Mahvash Mazgani personal property for her to hold in safekeeping for Cross-Complainant's benefit. Said personal property includes but is not limited to, name-brand watches, lighters, bracelets, gold rings, and cufflinks (collectively, "Cross-Complainant's Watches and Jewelry").

41. In further reliance on these representations made by Cross-Defendant Mahvash Mazgani, between 2007 and 2015, Cross-Complainant gave Cross-Defendant Mahvash Mazgani in excess of $1,500,000 to deposit for safekeeping in the Trust account. Cross-Complainant gave these deposits to Cross-Defendant Mahvash Mazgani in the form of:

    a. Checks made out directly to the Mazgani Family Trust;

    b. Checks made out to the Mazgani Family Trust at Cross-Complainant's direction;

    c. Cash; and

    d. Proceeds from Cross-Complainant's real estate and business investments.

42. To date, Mahvash Mazgani admits to having received no more than three hundred and forty-four thousand and one hundred dollars ($344,100.00) of Moda's monies.

43. Unbeknownst to Cross-Complainant, Cross-Complainant's cousins, Cross-Defendants Neyaz Mazgani and Nazanin Mazgani, and another relative, Hooshang Mazgani, were also signatories on the Trust account. Moreover, another bank account had been opened in

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

1   the name of Hooshang Mazgani, believed to be a cousin of the deceased husband of Mahvash

2   Mazgani who resides out of the country, in which account monies of Kevin Moda were being

3   transferred. All Mazgani family members were provided with powers of attorney with full access

4   to monies in said account at all times material herein and all had that access without authorization

5   from Moda and in contravention of the promise of singular access that Mahvash Mazgani had

6   represented. Attached hereto collectively and incorporated herein by reference as **Exhibit B**, are

7   sample copies of no less than three bank statements where Mr. Moda's funds were presumably

8   deposited, one of which is opened in the name of Hooshang Mazgani.

9       44.    Had Cross-Complainant known Mahvash was depositing his monies in her

10   personal bank account or been informed of the additional signatories on the trust account or the

11   existence of another account in the name Hooshang Mazgani, he would not have given his cash

12   and other assets to Cross-Defendant Mahvash Mazgani to be held in the Trust since he did not

13   believe Cross-Defendants Neyaz Mazgani and Nazanin Mazgani were financially prudent, and he

14   did not even come to know Hooshang Mazgani until 2015.

15       45.    Cross-Complainant trusted that the cash and other assets he gave to Cross-

16   Defendant Mahvash Mazgani to deposit in the Trust would be secure, and trusted that Cross-

17   Defendant Mahvash Mazgani would invest his assets conservatively by purchasing certificates of

18   deposit for Cross-Complainant's benefit.  Cross-Complainant trusted that Cross-Defendant

19   Mahvash Mazgani would do these things because she is Cross-Complainant's aunt and they had a

20   close, trusting familial relationship.  Cross-Defendant Mahvash Mazgani held herself out to be a

21   maternal figure in Cross-Complainant's life, and Cross-Complainant in turn believed Cross-

22   Defendant Mahvash Mazgani genuinely cared about him and would protect his financial well-

23   being.

24       46.    Instead, Cross-Complainant is informed and believes and thereon alleges that

25   Cross-Defendant Mahvash Mazgani deposited cash and other assets that Cross-Complainant gave

26   to her into her personal accounts and used them for her personal expenses.

27       47.    Moreover, between 2007 and 2015, in communications that took place in person

28   and on the phone, Cross-Defendant Mahvash Mazgani repeatedly encouraged Cross-Complainant

to give her additional money for safekeeping and repeatedly assured Cross-Complainant that

<center>9</center>

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

Cross-Complainant's money and other assets were in fact deposited into the Trust account and that everything was in order. Cross-Defendant Mahvash Mazgani further repeatedly assured Cross-Complainant that his money and other assets were safe and accessible to him whenever he should need them. In response to repeated inquiries between 2007 and 2015, Cross-Complainant was explicitly advised by Cross-Defendant Mahvash Mazgani in-person and on the phone that Cross-Complainant's money and other assets were safe in the Trust and were being held for his benefit. Cross-Complainant did not know, nor did he have reason to know, that this was false.

**$70,000-Net Settlement Proceeds from Notes & Bankruptcy – (2008)**

48.     In addition to the monies entrusted, Moda also entrusted and collaborated with Cross-Defendant, Mahvash Mazgani on his other investments, beginning in the year 2008.

49.     Moda entrusted certain Promissory Notes and 2nd Deeds of Trust on certain real properties and settlement proceeds ultimately derived therefrom to Mahvash Mazgani in June of 2008. More specifically, Moda caused at least three (3) promissory notes and deeds of trust to real properties to be purchased for the amount of $57,500, and subsequently assigned to the Mazgani Family Trust for the benefit of Moda and for his safekeeping. In support thereof and collectively attached hereto as **Exhibit C** as though fully set forth herein, are true and correct copies of (1) check number 3529 issued from the personal checking account of Mahvash Mazgani at Wells Fargo Bank ending 494, dated June 23, 2008, in the amount of $57,500 with reference to a "loan", made payable to Trust Account of Gina Lesitsa, Esq., the attorney handling the transaction, (2)  trust account check number 1225 from Lisitsa Law Corporation, dated June 23, 2008, in the same amount of $57,500, made payable to Jin Hwa Jaw and Ling Chan Tsai, with a notation of 229 & 239 2nd Trust Deed, (3) trust account check number 1226 from Lisitsa Law Corporation, dates July 10, 2008, in the same amount of $57,500 made payable back to Mahvash Mazgani. Those three properties are more commonly known as:

1.     229 West 25th Street, Los Angeles, CA 90007 (229 West 25th Street Property);

2.     239 West 25th Street, Los Angeles, CA 90007 (239 West 25th Street Property) and

3.     1117 Westlake Ave, Los Angeles, CA 90006 (Westlake Ave Property).

Moda caused the pertinent notes and deeds of trust associated with the real properties to be assigned to the Mazgani Family Trust from his friend and former title holder, Mr. David Behrend,

with the cooperation Cross-Defendant in her capacity as trustee. A lienholder then attempted to foreclose on the real properties but failed to do so in a timely fashion, leaving Mr. Moda to battle for his right to the same in the bankruptcy court matter entitled *In re David J. Behrend* and bearing US Dist. BK Court No. 1:11-bk-11379-VK. Eventually that matter resulted in settlement with the lienholder who took title to the aforementioned real properties in consideration for the net recovery in the amount of $70,000, payable to holder of notes at issue, Mazgani Family Trust. The net recovery of $70,000 was given directly by Peter Masten, Chapter 7 Trustee to Mahvash Mazgani who assured Moda that the money would be deposited in the "trust account" for the benefit of Moda. Moreover, Moda paid all attorney's fees thereto and was the sole cause for the acquisition of the notes and deeds of trust and net settlement proceeds payable to Mazgani Family Trust derived therefrom to be held for the benefit of Moda.

**$200,000 Outstanding Rents Collected-16943 Dolce Yenez Lane, Pacific Palisades, CA 90272 (2008-2012)**

50.    Moda also entrusted, collaborated with, and caused Cross-Defendant, Mahvash Mazgani to receive no less than a total Two Hundred Thousand Dollars ($200,000.00) from 2008 through 2012, on his behalf to hold in trust, in outstanding rent payments collected in part from appointment of a receiver regarding property more commonly known as 16943 Dolce Yenez Lane, Pacific Palisades, CA 90272, in the Unlawful Detainer Matter entitled, *Malcolm Bennett, State Court Receiver vs. Razavi et al,* bearing LASC Case No. SC114009. In support thereof, attached hereto is **Exhibit D**, and made part hereof as though fully set forth herein is a true and correct copy of First Amended Complaint-Unlawful Detainer together with associated exhibits related to the proceedings. Said collection efforts culminated with a lump sum payout to JKDM, LLC, an entity which Moda is the principal, which was in turn transferred to Mahvash Mazgani to be held in trust for Moda through Moda's former employer.

**859 3rd Street, Los Angeles, CA 90006-$140,000 in Sales Proceeds - (2008-2009)**

51.    By November 2008, Moda had given and had caused to be given to Mahvash Mazgani no less than $461,050.00 in cash and checks.

52.    In addition to the West 25th Street Properties and Westlake Ave Property, Moda also negotiated and consummated an all cash short sale involving a property located at 859 3rd

ER-45

Street, Los Angeles, CA 90006 (3rd Street Property) with his monies he believed was held in the Mazgani Family Trust. That property was owned by Mr. Moda's friend and coworker, Mr. Omar and Daniel Zavala. In or about October 2008 Moda informed Mahvash Mazgani that he wished to purchase 3rd Street Property from his friend and co-worker, the Zavala Family for $430,000.00.

53.     With the full cooperation of Mazgani, Moda caused and effected an all cash purchase of the 3rd Street Property in the name of the Mazgani Family Trust. Moda negotiated the short sale with HomeEq Servicing for the purchase of the property and the deal was solidified on October 30, 2008.  The 3rd Street Property was purchased in the name of the Mazgani Family Trust on an all cash basis on November 14, 2008. Attached hereto as **Exhibits E & F** are true and correct copies of seller's closing statement and memo reflecting agreement and terms of short-sale, respectively incorporated herein by reference as though fully set forth.

54.     On March 10, 2009, less than 4-months later, Moda negotiated and caused the immediate all cash sale of the 3rd Street Property by the Mazgani Family Trust with the full cooperation of Mazgani in her capacity as trustee to the Lee family for Five Hundred and Seventy Thousand Dollars ($570,000.00), resulting in an approximate profit of One Hundred and Forty Thousand Dollars ($140,000.00) in the name of the Mazgani Family Trust and for the benefit of Moda. Every initial and signature that is on the California Residential Purchase Agreement and Joint Escrow Instructions on behalf of the Seller are borne thereon by Moda with the full knowledge and consent of Mahvash Mazgani.  None of the documents were signed by or executed by Mahvash Mazgani.  Attached hereto as **Exhibit G** are true and correct copies of both the California Residential Purchase Agreement and Joint Escrow Instructions, incorporated herein by reference as though fully set forth.

55.     All of the $140,000.00 proceeds of sale of 859 3rd Ave, Los Angeles, CA 90005 were to be deposited in the what was believed to be the Mazgani Family Trust believed to have been maintained for the benefit of Moda.

56.     Moda had decided to make Mahvash Mazgani a "partner" in the 859 3rd Ave, Los Angeles, CA 90005 and award her half the profits from the transaction in consideration of the near decade long devotion and fidelity that he thought that Mahvash Mazgani and her daughters had presumptively given him.

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

ER-46

**E-Trade Account-3668-Profits of $150,000 – (2008-2010)**

57.     As yet another example of Moda's property entrusted to Mazgani, in or about late 2008, Moda requested that a trading account be opened for him at E*TRADE Securities so that he could trade stock.  Per his instruction, Mahvash Mazgani opened the account ending in 3668 with a seed deposit of $50,000.00 from the "trust account" that held monies of Moda.  Moda was provided passwords for online trading and he was successful in his trading of securities. The account was opened by an in-branch deposit at E*TRADE in Brentwood, California, after Mr. Moda set the account up electronically. Each trade was made by Moda at either his home or office and for his sole benefit.  On a near weekly basis Moda ordered that E*TRADE withdraw $5,000 from the account and send that amount back.  Those checks were to have been credited to the "trust account" to have been held for the benefit of Moda.

58.     The account would return a profit of approximately $5,000 per week, and earned a total net profit of approximately $150,000. Each trade was made by Mr. Moda at his office and for his sole benefit.

59.     The E*TRADE account was closed on or about August 20, 2010, and Moda ceased his trading with a profit well over $50,000.00.  He was assured by Mahvash Mazgani that all the proceeds of the E*TRADE account were deposited in the "trust account".  The account was entrusted to Mazgani in name only, yet Mazgani has also seized this account and refuses to return proceeds of the trade to Moda.

**141 South Clark Drive-#320, Los Angeles, CA 90048-Purchase Monies and FMV-(2010-2015)**

60.     In 2010, Moda decided to include Mahvash Mazgani in another one of his real-estate transactions, not knowing that the Mazgani Family was robbing him and divesting him of all of his assets.

61.     The 2010 deal concerned property located at 141 South Clark Drive, Apt No. 320, Los Angeles, CA 90048 (Clark Property), and Moda discovered the opportunity as his then girlfriend, Maria Sanchez lived in the apartment complex.

62.     Moda caused and effected the short sale of Clark Property to what he believed to be the Mazgani Family Trust for his benefit.  It was initially agreed between Mahvash Mazgani

ER-47

and Moda that each would invest half of the purchase money to buy the Property and then maintain it for rental (splitting the rental profit) as the Clark property is adjacent to Cedars-Sinai Hospital and is coveted by staff physicians at Cedars-Sinai Hospital for its proximity to the hospital and the fact that it is a new build in the neighborhood and populated with thirty (30) professionals.

63. Both Mazgani and Moda intended to have joint legal and/or beneficial title to the Clark Property. Moda's purchase money contribution was to come from monies held in trust for his benefit in the Mazgani family trust and Mazgani was to finance the other half of purchase monies needed.

64. On April 24, 2010, the California Residential Purchase Agreement, and Joint Escrow Instructions was entered into between Mahvash Mazgani Family Trust and the (short) seller, Debra Ricci. All of buyer's signatures and initials borne thereon are solely those of Moda, with full knowledge and consent of Mahvash Mazgani. A true and correct copy of the California Residential Purchase Agreement, and Joint Escrow Instructions is attached hereto as **Exhibit H**, and incorporated herein by reference.

65. Mahvash Mazgani could not come up with her own cash and indicated that she wished to borrow her portion of the money for a lending institution. She went to Intercap Lending to borrow the money. Intercap Lending told her it could not loan money to a trust, but they could loan her the money against the property.

66. On the same day, August 9, 2010, Moda requested that Mahvash Mazgani release his portion of the money to buy the Clark Property to escrow.

67. On August 12, 2010, Neyaz Mazgani wired $239,640.50 from account number ending with 6505 held at Wells Fargo to Diamond Quality Escrow. A true and correct copy of the August 12, 2010, Outgoing Wire Transfer Request is attached hereto as **Exhibit I** and incorporated herein by reference as though fully set forth. Mr. Moda did not know that Neyaz Mazgani had access to the account that held his money nor that account number ending with 6505 held at Wells Fargo was another account into which his monies were deposited. None of the Mazgani Family told Moda of these facts and since the accounts were totally in control of the Mazgani Family, Moda did not come to discover these facts until 2015.

**14**

68.     On August 13, 2010, Suburban Mortgage wired $104,911.37 into Chicago Title Company to fund the portion of Mahvash Mazgani purchase of the property in part. A true and correct copy of the Escrow Receipt and Disbursement Authorization is attached hereto as **Exhibit J**, and incorporated herein by reference. Yet on August 14, 2010, Suburban Mortgage wrote the Chicago Title and asked that the August 13, 2010, wire be rescinded. A true and correct copy of the August 14, 2010 email from Intercap Lending Operations Officer requesting retraction of funds is attached hereto as **Exhibit K** and incorporated herein by reference. Mahvash Mazgani was thus without funds of her own to purchase the property and monies of Moda were already deposited with title company.

69.     Fearing that his money would be lost and the deal would not close, on August 17, 2010, Moda negotiated with the real estate agents on the deal to take less commission in order to close the deal. A true and correct copy of the August 17, 2010, email chain memorializing said reduction in commission agreement is attached hereto and incorporated herein by reference as **Exhibit L**.

70.     The real-estate agents agreed to taking less and on August 17, 2010, at 10:38 AM, Moda agreed to send the remainder of the funds to close the deal. A true and correct copy of the August 17, 2010, email from Moda confirming the wire is attached hereto and incorporated herein by reference as **Exhibit M**.

71.     On the same day, August 17, 2010, Hoshang Mazgani, an individual with access to Moda's monies, whose identity was unknown to Moda, wired $106,000.00 Wells Fargo Bank account ending with 4796. A true and correct copy of the transaction history for the Wells Fargo account ending with 4796 and reflecting the August 17, 2010 transfer is attached hereto and incorporated herein by reference as **Exhibit N**. (see also **Exhibit J** reflecting the same). At all times material herein, Moda was under the impression that the property was to be purchased and held by the Mazgani Family Trust for his benefit. In support thereof, **Exhibit J**, which is a true and correct copy of document from Chicago Title titled "Escrow Receipt and Disbursement Authorization," identifies the buyer as the "Mazgani Family Trust." Yet Mahvash Mazgani purchased the property in her own name and then transferred the property to "Mahvash Mazgani Family Trust," unbeknownst to Moda. Attached hereto collectively as **Exhibit O**, are true and

<center>15</center>

1    correct copies of two recorded grant deeds reflective of transfers of title in Clark Property from

2    former owner Debra C. Ricci to Mahvash Mazgani, a widow on August 18, 2010, and a

3    subsequent transfer by Mahvash Mazgani, a widow, to the Mahvash Mazgani Family Trust, dated

4    April 17, 2007, on August 27, 2010.  Moda did not discover these facts until 2015, but believed

5    he had caused the purchase of Clark Properties with all of his own monies. Moda believed all

6    purchase monies, totaling Three Hundred and Fifty-Two Thousand Dollars ($352,000.00) were

7    funded with his monies held in the Mazgani family trust for his benefit, with the understanding

8    that Clark Property was purchased for his sole beneficial legal interest.

9        72.    On account of Mahvash Mazgani, it was agreed by and between Moda and

10   Mahvash Mazgani that the beneficial title and interest together with all proceeds for rental income

11   of the Property would be for the benefit of Moda and held into "trust account" until Mahvash

12   Mazgani was able to pay for her purchasing cost of the Clark Property with a deposit into the

13   "trust account" held for Moda.  Such a payment was never made nor disclosed to Moda at any

14   time material herein.

15       73.    Mazgani filed suit in the matter entitled Mazgani v. SBS Trust Deed, and bearing

16   LASC case number BC474307, alleging the same failure to procure financing, all to no avail.

17       74.    Since August 2010, the Property has had a fair market rental value of no less than

18   $2,500.00 per month.  The rental proceeds should have been deposited into the "trust account" of

19   Moda until such time the purchase price equalization was made by Mahvash Mazgani.  Yet rather

20   than forwarding the same to Moda, Cross-Defendants converted the rental income. It is unknown

21   whether Moda's funds still sit in Plaintiffs' account(s) or have been drained and diverted

22   elsewhere.

23       75.    On information and belief Clark Property presently has a fair market value of no

24   less than Seven Hundred and Fifty Thousand Dollars ($750,000.00) based on comparable sales in

     the community.

25       76.    In or around October 2015, in the course of pending litigation, in the matter

26   entitled *Mazgani Family Trust v. Notis* et al, in SC122246, Cross-Complainant discovered for the

27   first time that his monies and assets from the Trust account to have been held for his benefit, had

28   been improperly transferred to other accounts.  Cross-Complainant subsequently discovered that

1 Cross-Defendants were using the Trust assets for their own benefit. Said discovery was brought

2 to light by virtue of documents elicited from the Mazgani Family Trust and subpoenas issued to

3 various banks, inclusive of Wells Fargo bank and Comerica Bank, during discovery.

4       77.     Cross-Complainant is informed and believes and thereon alleges that Cross-

5 Defendant Mahvash Mazgani engaged in certain acts of self-dealing, from which she profited

6 personally, at the expense of the Trust, including but not limited to the following:

7       a.   Depositing checks intended for the Trust into different accounts;

8       b.   Lending money from the Trust account to third parties, and then depositing the

9           third parties' repayment into different accounts;

10       c.   Commingling her personal assets with the Trust assets;

11       d.   Improperly transferring title of properties in the Trust to individuals and other

12           entities; and

13       e.   Retaining rents from the Trust-owned properties for personal use;

14       f.   Letting her daughter live rent free in a house paid for by Mr. Moda; and

15       g.   Retaining monies and profits derived from the E*TRADE account.

16       78.     By way of example, and certainly not as an exhaustive list, attached hereto

17 collectively as **Exhibit P** and made part hereof, are true and correct front and back copies of four

18 cancelled checks issued to Mahvash Mazgani from the personal checking accounts of Moda at

19 Citibank ending with 5573 and 5306 in the year 2010 which were diverted and transferred into

20 the personal accounts of Mahvash Mazgani, Neyaz Mazgani, or Hooshang Mazgani for personal

21 gain, and one transaction receipt evidencing Mazgani's deposit of a check in the amount of

22 $13,000.00, unbeknownst to Moda, to wit:

23     •   Check number 103 dated April 10, 2010 in the amount of $10,000 was deposited

24        by Mahvash Mazgani into her personal checking account at Wells Fargo bank,

25        bearing account number ending with 3494.

26     •   Check number 109 dated May 9, 2010, in the amount of $30,000, made payable to

27        "M Mazgani" was deposited into the personal checking account of Neyaz Mazgani

28        at Wells Fargo bank, bearing account ending with 6505.

    •   Check number 116 dated May 21, 2010, in the amount of $10,000, made payable

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT** ER-51

to the order of "M Mazgani" was deposited in personal checking account of Hooshang Mazgani at Wells Fargo bank bearing, account number ending with 4796, to which Mahvash Mazgani and her daughters had powers of attorney.

- Check number 104 dated December 6, 2010 in the amount of $5000 paid to the Order of "M. Mazgani" was deposited into what is believed to be another personal checking or money market savings account of Mahvash Mazgani bearing account number ending with 1206.

- Transaction Receipt dated May 29, 2013, reflective of a deposit in the amount of $13,000 by Mahvash Mazgani into her personal checking account at Wells Fargo bank, bearing account number ending with 3494. Said monies are believed to be monies given to her or caused to have been issued to her by Moda to be held in trust for his benefit.

79. Cross-complainant hereby alleges on information and belief that the Cross-Defendant, Mahvash Mazgani, deposited monies of Moda entrusted to her at all times material herein, into no less than seven bank accounts alone at Wells Fargo bank as well as other banks maintained in the name of all Cross-Defendants, all with the intent to steal and profit from Moda's monies. Until such time that Moda is permitted to review and analyze each and every bank account of Cross-Defendants, he will not be able to assess and prove the full amount of monies divested from him.

80. Cross-Complainant is informed and believes that Cross-Defendant Nazanin Mazgani actively participated in, and knowingly benefited from, Mahvash Mazgani's acts of self-dealing at the expense of the Trust. Specifically, Cross-Defendant Nazanin Mazgani knowingly benefited from Mahvash Mazgani's acts of self-dealing at the expense of the Trust by residing rent-free since approximately 2013 at the Clark Drive Property, one of the properties purchased with assets from and therefore properly owned by the Trust. Cross-Defendant Nazanin Mazgani also actively participated in Mahvash Mazgani's acts of self-dealing at the expense of the Trust by taking money from the Trust and giving it to third parties.

81. Cross-Complainant is informed and believes that Cross-Defendant Neyaz Mazgani actively participated in, and knowingly benefited from, Mahvash Mazgani's acts of self-dealing at

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**  ER-52

1   the expense of the Trust. Specifically, Cross-Defendant Neyaz Mazgani engaged in certain acts

2   of self-dealing, from which she profited personally, at the expense of the Trust, including but not

3   limited to using the Trust assets to pay off her personal credit cards. Attached hereto as **Exhibit Q**

4   and made part hereof as though fully set forth, is excerpts of the bank statement of Neyaz

5   Mazgani for her personal checking account at Wells Fargo Bank bearing account number ending

6   with 8148, reflective of the transfer of monies in increments of $1500.00 into her personal

7   checking account from the savings account of Mazgani Family Trust in or about November 20,

8   2013.

9       82.     Prior to October 2015, Cross-Complainant was unaware that Cross-Defendants

10  were engaging in the acts of self-dealing described above and had no reason to discover them.

11      83.     In or around late 2015, Cross-Complainant repeatedly requested, in person, and

12  through text messages, phone calls, and emails, that Cross-Defendant Mahvash Mazgani provide

13  an accounting of the Trust's assets, and Cross-Defendant Mahvash Mazgani refused to provide an

14  accounting. In or around January 2016, Cross-Complainant also repeatedly requested that Cross-

15  Defendant Mahvash Mazgani return Cross-Complainant's assets to him, and Cross-Defendant

16  Mahvash Mazgani refused to return his assets. Instead, Cross-Complainant has compiled a list of

17  monies she has incurred in the total amount of **$1,058,337.78** claiming monies were paid on

18  behalf of Moda, the majority of which are none other than her own personal obligations, inclusive

19  of the following notable payments:

20      a.  Monies personally loaned to Attorney Gina Lisitsa in the amount of $200,000 for a

21          real estate transaction wholly independent of any investment or business of Moda,

22          which monies were paid back by Lisitsa, Esq.

23      b.  Monies Loaned to Notis in the amount of $297,500 which is the subject matter of

24          the lawsuit entitled Mazgani v. Notis, bearing LASC Case No. SC122246 which

25          she most recently dismissed against Notis (with Prejudice) and Moda (without

26          prejudice) respectively, without result.

27      c.  Monies paid for on behalf of Cookies n Cream, LLC, an entity she admitted having

28          created and owned

        d.  Annual Life Insurance premium payments made for policies obtained on behalf of

**19**

Moda without his consent

    e.   Monies paid to Audi Financial for purported car payments on behalf of Moda for purchase of a 2013 Audi A8, bearing California license plate no. 7BEB133, when she claimed the same vehicle was vandalized and stolen from her by Moda, as evidenced by no less than two police reports filed by Mahvash Mazgani in the year 2016, when she had possession of the vehicle, which are collectively attached hereto and made part hereof as though fully set forth herein as **Exhibit R**.

84.    In or around January 2016, Cross-Complainant requested that Cross-Defendant Mahvash Mazgani return Cross-Complainant's Watches and Jewelry, and Cross-Defendant Mahvash Mazgani refused to return these valuable personal items to Cross-Complainant.  Prior to this date, Cross-Complainant did not know, and had no reason to know, that Cross-Defendant Mahvash Mazgani would refuse to return these items.

85.    Cross-Complainant is informed and believes that Cross-Defendant Mahvash Mazgani has sold some of Cross-Complainant's Watches and Jewelry without Cross-Complainant's permission.  The proceeds from these sales were neither added to the Trust nor given to Cross-Complainant.

## THE NON-TRUST ASSETS

86.    In or around February 2014, while Cross-Defendant Mahvash Mazgani and Cross-Complainant were attending a funeral, Cross-Defendant Mahvash Mazgani requested a personal loan of $60,000 to pay off a second loan on a property located at 10950-10954 Massachusetts Avenue, Los Angeles, CA 90024.  In reliance on assurances that she would pay him back, Cross-Complainant gave Cross-Defendant Mahvash Mazgani a personal loan of $60,000.  Cross-Defendant Mahvash Mazgani has not paid Cross-Complainant back for this personal loan, and Cross-Complainant is informed and believes that Cross-Defendant Mahvash Mazgani does not intend to pay Cross-Complainant back for this loan.

## FIRST CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY OF TRUSTEE
### (Against Cross-Defendant Mahvash Mazgani)

87.    Cross-Complainant realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 86 of this Cross-Complaint.

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

ER-54

88.     As trustee of the Trust, Cross-Defendant Mahvash Mazgani owes fiduciary duties, including, but not limited to, the duty of good faith, the duty of undivided loyalty, and the duty of care, to the Trust and its beneficiaries.  As trustee of the Trust, Cross-Defendant Mahvash Mazgani must act in accordance with these fiduciary duties and must not act in bad faith or in disregard of the purposes of the Trust.

89.     Cross-Defendant Mahvash Mazgani breached her fiduciary duties by, among other things, depositing checks intended for the Trust into a different account, lending money from the Trust to third parties and then depositing the repayment of these amounts into different accounts, and engaging in self-dealing.  Cross-Complainant learned of these breaches in or around October 2015 and had no reason to discover them prior to that date.

90.     As a proximate cause of said wrongful conduct, Cross-Complainant has been damaged in an amount according to proof at the time of trial.

91.     Cross-Complainant is informed and believes and thereon alleges that, in committing the acts and undertaking the conduct alleged herein, Cross-Defendant Mahvash Mazgani acted oppressively, maliciously, and/or fraudulently, with a conscious disregard of Cross-Complainant's rights and with the intent of benefiting herself or others financially, and with the intent of causing, or recklessly disregarding the probability of causing, injury to Cross-Complainant, thereby entitling Cross-Complainant to exemplary and punitive damages.

### SECOND CAUSE OF ACTION FOR CONSPIRACY

### (Against All Cross-Defendants and Roes 1-5)

92.     Cross-Complainant realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 91 of this Cross-Complaint.

93.     Cross-Complainant alleges that Mahvash Mazgani, Nazanin Mazgani, Neyaz Mazgani, and Hoshang Mazgani individually and collectively, jointly conspired to defraud, withold monies of Moda, and divest Mr. Moda of his assets, all the while breaching their respective duties as fiduciaries, and duties of trust and loyalty. Upon information and belief, it is alleged that the conspiracy was joined by all actors no later than 2010 based on the evidence possesed to date.

94.     While Mahvash Mazgani successfully induced Moda to divest his assets and

<div align="center">21</div>

collaborate with her to make real estate purchases and investments using Moda's contacts and

know how under the guise of trust and beneficial interest, she entered into an elaborate scheme

and agreement with her daughters and Hoshang Mazgani to defraud Moda by depositing his

monies into a trust account held for her in her own name and for her own benefit as well as

various personal accounts of her own and her co-conspirators with the intent to enrich all

conspirators with future investments as they arose and/or use those monies for self gain, at the

expense of Moda. Said agreement and concealed transfer of Moda's funds is evidenced by

cancelled checks, reflecting the deposit of checks issued from Moda's personal account made

payable to M. Mazganin as early as April 2010 through December 2010, into the various personal

accounts of: Mahvash Mazgani (Acct. Ending 494), Neyaz Mazgani (Acct. Ending 505), and

Hoshang Mazgani (Acct. Ending 796) instead of the represented trust account to have been held

for Moda's exlcusive benefit. (**See Exhibit P**).

      95.     In furtherance of this conspiracy, Cross-Complainant's assets held in trust and

other accounts were readily accessible to Mahvash Mazgani's daughters, Cross-Defendants,

Neyaz Mazgani, Nazanin Mazgani, and Hoshang Mazgani who were additional signatories on the

Trust account with full powers of attorney while Nazanin and Neyaz Mazgani were also

appointed successor trustees of the Trust.

      96.     Neyaz Mazgani further manifested her conspiracy and agreement to defraud Moda

of his assets by and through her involvement with the purchase of the Clark Property.  When

funding the purchase of Clark under the guise that it was on Moda's behalf, Neyaz Mazgani

caused the transfer of approximately $239,640.50 in funds from her personal checking account

ending with 6505, into escrow. (**See Exhibit I**). Moda was not aware that his funds had been

diverted to Neyaz Mazgani's account, let alone that his purchase monies for the Clark Property

were routed from the same. Cross-Defendant, Neyaz Mazgani's conspiracy to defraud is further

evidenced by her transfer of funds held in Trust into to her own personal account, for personal use

and self-gain in the year 2013. (**See Exhibits I, Q**).

      97.     In doing so, Cross-Defendant Neyaz Mazgani acted to further her own individual

economic interests, in knowing breach of trust.  Cross-Complainant did not discover that his

cousin, Cross-Defendant Neyaz Mazgani, had engaged in these activities until approximately late

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT** ER-56

2015.

98.     Cross-Defendant Nazanin Mazgani conspired with Mahvash Mazgani to divert over $100,000 in settlement funds to the Trust and to live rent free at the Clark Property. Nazanin Mazgani also, on information and belief, took money from the Trust and lent it to third parties all without the knowledge or authorization of Moda, and has failed to repay the same. Specifically, in or about late 2012, Mr. Moda's company was the party plaintiff in the matter entitled *JKDM, LLC v. Razavi* et al, Los Angeles Superior Court case number SC114009. JKDM, LLC settled it's claim with defendant and the settlement proceeds in excess of $100,000.00 were deposited into the Mazgani Family Trust at the urging of Moda's then lawyer and Cross-Defendant, Ms. Nazanin Mazgani. In face of repeated requests for return of the funds, the Mazgani group have not returned the money of Mr. Moda.

99.     Nazanin Mazgani further conspired against Moda when she agreed to, actively participated in, and knowingly benefited from, Cross-Defendant Mahvash Mazgani's breach of fiduciary duties by residing on the Clark Property rent-free and, on information and belief, taking money from the Trust and lending the same to third parties. Moda did not discover that his cousin, Cross-Defendant Nazanin Mazgani, had engaged in these activities until approximately 2015.

100.    Cross-Defendant Hoshang Mazgani further conspired against Cross-Complainant by knowingly accepting Cross-Complainant's funds in Hoshang Mazgani's own Wells Fargo bank account ending with 4796 and then knowingly allowing for the same to be drained and directed elsewhere at the discretion of their leader, Mahvash Mazgani, for mutual gain.

101.    Cross-Complainant did not know, nor did he have reason to discover, that Cross-Defendants were wrongfully retaining the benefits described above until October 2015, at which time he found that the three cross-defendants had acted in concert and by common design to profit by, inter alia, conspiring with one another against Moda, inclusive of breach of fiduciary duty owed by cross-defendant, Nazanin Mazgani, in her capacity as counsel, to JKDM.

102.    As a proximate cause of said wrongful conduct, Cross-Complainant has been damaged in an amount according to proof at the time of trial. Cross-Complainant seeks an award of all benefits that have been conferred on Cross Defendants and by which they have illegally

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

ER-57

1    profited, in an amount to be proven at trial.

2    103.    Cross-Complainant is informed and believes and thereon alleges that, in

3    committing the acts and undertaking the conduct alleged herein, Cross-Defendants acted

4    oppressively, maliciously, and/or fraudulently, with a conscious disregard of Cross-

5    Complainant's rights and with the sole intent to benefit themselves, and each of them, financially,

6    and with the intent of causing, or recklessly disregarding the probability of causing, injury to

7    Cross-Complainant, thereby entitling Cross-Complainant to exemplary and punitive damages.

8    **THIRD CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY OF COUNSEL**

9    **(Against Nazanin Mazgani and Roes 6-7)**

10    104.    Cross-Complainant re-alleges and incorporates by reference as though fully set

11    forth herein each of the allegations of paragraphs 1 through 103 of the general allegations of this

12    Cross Complaint.

13    105.    Nazanin Mazgani was retained as counsel for Mr. Moda, as the managing member

14    of JKDM, LLC in case entitled *JKDM, LLC v. Razavi* et al, Los Angeles Superior Court case

15    number SC114009. See **Exhibit S** attached hereto and incorporated herein by reference. Her

16    duites commenced on October 23, 2011, and ended no earlier than August  2012. See **Exhibit T**

17    attached hereto and incorporated herein by reference.

18    106.    Kevin Moda was the sole member (i.e., the "managing member") of JKDM LLC.

19    Mr. Moda retained Ms. Nazanin Mazgani to represent JKDM LLC and Mr. Moda's interests in

20    the aforesaid litigation. Ms. Nazanin Mazgani occupied the position of the fiduciary of Mr. Moda

21    as the lawyer for his solely owned LLC (JKDM).  Their fiduciary relationship required Ms.

22    Nazanin Mazgani to act with the utmost good faith for the benefit of Kevin Moda as the

23    managing member of JKDM LLC. Confidence was reposed by Mr. Moda in the integrity of Ms.

24    Nazanin Mazgani, who voluntarily accepted or assumed the confidence, and once placed, was

25    prohibited from taking advantage of her position her without her client's knowledge or consent.

26    Simultaneously with the actions alleged herein, Nazanin Mazgani also represented the interests of

27    her mother, Mahvash Mazgani and her sister, Neyaz Mazgani in various general transactional

28    matters, and specifically her mother, Mahvash Mazgani in litigation pending in the Superior
     Court of California, Los Angeles County, entitled *Mazgani v.  SBS Trust Deed Network*, et al,

24

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT** **ER-58**

BC474307, filed on November 28, 2011. See **Exhibit U**, attached hereto and incorporated herein by reference.

107.     Ms. Nazanin Mazgani breached her duty of care, confidence and loyalty to her client by, inter alia, agreeing with her mother and sister to jointly convert Mr. Moda's settlement proceeds for their own use and gain; and not informing Mr. Moda that she had access to, and was spending funds that Mr. Moda had deposited into the Mazgani Family Trust that had been placed in the Trust for safe-keeping.

108.     Additionally, Nazanin Mazgani never informed Mr. Moda that she was a "trustee" or "successor trustee". See **Exhibit A** attached hereto and incorporated herein by reference, a copy of which Trust Instrument wherein Ms. Nazanin Mazgani is identified a successor-trustee of the Trust. Nor did Nazanin Mazgani inform Moda that she had unfettered access with full power of attorney to the very funds that she was advising be deposited into that account. See **Exhibit B** attached hereto and incorporated herein by reference, which are three sample copies of no less than three bank statements where presumably Mr. Moda's funds were deposited.

109.     Ms. Nazanin Mazgani also failed to disclose the conflict of interest and failed to obtain written authorization that permitted her to act on behalf of Mr. Moda or on behalf of his wholly owned LLC in violation of Cal Rules of Prof. Conduct, Rule 3-310, and a breach of her fiduciary duties under Cal Rules of Prof. Conduct, Rule 3-300 and American Bar Association Rule 1.8).

110.     Cross-Complainant initially learned of these breaches in or around late 2015 and had no reason to discover them prior to that date. At that time, documents came into Mr Moda's possession (e.g., bank records of Wells Fargo Bank) that demonstrated Ms. Nazanin Mazgani's access to the trust assets, and the subsequent conversion of those funds by Nazanin Mazgani, Neyaz.

111.     As a proximate cause of said wrongful conduct, Cross-Complainant has been damaged in an amount according to proof at the time of trial.

112.     Cross-Complainant is informed and believes and thereon alleges that, in committing the acts and undertaking the conduct alleged herein, Cross-Defendants acted oppressively, maliciously, and/or fraudulently, with a conscious disregard of Cross-

1  Complainant's rights and with the intent of benefiting themselves or others financially, and with

2  the intent of causing, or recklessly disregarding the probability of causing, injury to Cross-

3  Complainant, thereby entitling Cross-Complainant to exemplary and punitive damages.

4  **FOURTH CAUSE OF ACTION FOR AIDING AND ABETTING AND**

5  **KNOWINGLY BENEFITING FROM BREACH OF TRUST**

6  **(Against Cross-Defendants Nazanin Mazgani, Neyaz Mazgani, and Hoshang Mazgani)**

7  113.    Cross-Complainant realleges and incorporates by reference as though fully set

8  forth herein each of the allegations of paragraphs 1 through 112 of this Cross-Complaint.

9  114. ·  Cross-Defendant Nazanin Mazgani actively participated in, and knowingly

10  benefited from, Cross-Defendant Mahvash Mazgani's breach of fiduciary duties by knowingly

11  receiving and retaining money belonging to the Trust and using it for her own personal benefit.

12  Specifically, Cross-Defendant Nazanin Mazgani took money from the Trust and lent it to third

13  parties and resided rent-free at the Clark Drive Property, one of the properties purchased with

14  assets from and owned by the Trust, and engaged in self-dealing with Trust assets.  In doing so,

15  Cross-Defendant Nazanin Mazgani acted to further her own individual economic interests, in

16  knowing breach of trust.  Cross-Complainant did not discover that his cousin, Cross-Defendant

17  Nazanin Mazgani, had engaged in these activities until approximately 2015.  Prior to this date,

18  Cross-Complainant did not have any reason to discover that Cross-Defendant Nazanin Mazgani

19  was living rent-free at the Clark Drive Property or otherwise actively participating in and

20  knowingly benefiting from Cross-Defendant Mahvash Mazgani's breach of fiduciary duties.

21  115.    Cross-Defendant Neyaz Mazgani also actively participated in, and knowingly

22  benefited from, Cross-Defendant Mahvash Mazgani's breach of fiduciary duties by taking money

23  from the Trust and lending it to third parties and by using the Trust assets to pay off her personal

24  credit cards.  In doing so, Cross-Defendant Nazanin Mazgani acted to further her own individual

25  economic interests, in knowing breach of trust.  Cross-Complainant did not discover that his

26  cousin, Cross-Defendant Neyaz Mazgani, had engaged in these activities until approximately late

27  2015.  Prior to that date, Cross-Complainant did not have any reason to discover that Cross-

28  Defendant Neyaz Mazgani was using the Trust assets to pay off her personal credit cards or

otherwise actively participating in and knowingly benefiting from Cross-Defendant Mahvash

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT** **ER-60**

1    Mazgani's breach of fiduciary duties.

2    116.    As a proximate cause of said wrongful conduct, Cross-Complainant has been

3    damaged in an amount according to proof at the time of trial.

4    117.    Cross-Complainant is informed and believes and thereon alleges that, in

5    committing the acts and undertaking the conduct alleged herein, Cross-Defendants Nazanin

6    Mazgani and Neyaz Mazgani acted oppressively, maliciously, and/or fraudulently, with a

7    conscious disregard of Cross-Complainant's rights and with the intent of benefiting themselves or

8    others financially, and with the intent of causing, or recklessly disregarding the probability of

9    causing, injury to Cross-Complainant, thereby entitling Cross-Complainant to exemplary and

10   punitive damages.

## FIFTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

### (Against All Cross-Defendants)

13   118.    Cross-Complainant re-alleges and incorporates by reference as though fully set

14   forth herein each of the allegations of paragraphs 1 through 117 of this Cross-Complaint.

15   119.    Cross-Complainant has given Cross-Defendant Mahvash Mazgani substantial

16   sums of money to deposit into the Trust account for Cross-Complainant's benefit.  Cross-

17   Complainant has also given Cross-Defendant Mahvash Mazgani personal property, including

18   Cross-Complainant's Watches and Jewelry, for safekeeping.

19   120.    Cross-Defendant Nazanin Mazgani has resided rent-free since approximately 2013

20   at the Clark Drive Property, one of the properties purchased with assets from and owned by the

21   Trust.

22   121.    Cross-Defendant Neyaz Mazgani has used the Trust assets to pay off her personal

23   credit cards.

24   122.    Cross-Complainant is informed and believes and thereon alleges that, due to

25   Cross-Defendants' wrongful conduct as alleged herein, Cross-Defendants have been unjustly

26   enriched.  Cross-Defendants have wrongfully retained a benefit in the form of money and

27   interests in assets, and in the form of Cross-Complainant's Watches and Jewelry, the retention of

28   which would be inequitable and unjust and at Cross-Complainant's expense.

123.    Cross-Complainant did not know, nor did he have reason to discover, that Cross-

27

1  Defendants were wrongfully retaining the benefits described above until in or about October

2  2015.

3       124.    Cross-Complainant seeks an award of all benefits that have been conferred on

4  Cross-Defendants and by which they have been unjustly enriched, in an amount to be proven at

5  trial.

6  ## SIXTH CAUSE OF ACTION FOR CONVERSION

7  ### (Against Cross-Defendant Mahvash Mazgani)

8       125.    Cross-Complainant re-alleges and incorporates by reference as though fully set

9  forth herein each of the allegations of paragraphs 1 through 124 of this Cross-Complaint.

10       126.    At all times herein mentioned, Cross-Complainant owned, possessed, and/or had a

11  right to possess the following personal property:

12      a.  Cross-Complainant's Watches and Jewelry; and

13      b.  The proceeds from the sales of the 3rd Street Property, the West 25th Street

14         Property, and the Westlake Avenue Property, including the specific funds and

15         properties held for the benefit of Cross-Complainant.

16       127.    Cross-Defendant Mahvash Mazgani has intentionally and substantially interfered

17  with Cross-Complainant's personal property by wrongfully withholding the property, by refusing

18  to return the property to Cross-Complainant after he demanded the return of the property, and by

19  preventing Cross-Complainant from having access to the property.

20       128.    Cross-Complainant did not know, nor did he have reason to discover, that Cross-

21  Defendant Mahvash Mazgani would refuse to return his property until in or around January 2016.

22       129.    Cross-Complainant has not consented to Cross-Defendant Mahvash Mazgani

23  taking his personal property from him.

24       130.    The conduct of Cross-Defendant Mahvash Mazgani was a substantial factor in

25  causing Cross-Complainant's harm.

26       131.    Cross-Complainant has been harmed in an amount according to proof at trial.

27  ## SEVENTH CAUSE OF ACTION FOR ACCOUNTING

28  ### (Against All Cross-Defendants)

     132.    Cross-Complainant re-alleges and incorporates by reference as though fully set

forth herein each of the allegations of paragraphs 1 through 131 of this Cross-Complaint.

133. As trustee of the Trust, Cross-Defendant Mahvash Mazgani owes Cross-Complainant fiduciary duties, including, but not limited to, the duty of good faith, the duty of undivided loyalty, and the duty of care.

134. As third-party participants in the Trust who have actively participated in, and knowingly benefited from, Cross-Defendant Mahvash Mazgani's breach of fiduciary duties, Cross-Defendants Nazanin Mazgani and Neyaz Mazgani have a relationship with Cross-Complainant that requires an accounting.

135. Cross-Defendants have received cash and other assets that are due to Cross-Complainant. Cross-Defendants promised to pay Cross-Complainant the cash and other assets in the Trust, as well as the proceeds therefrom, and have not done so.

136. A balance is due from Cross-Defendants to Cross-Complainant from the above-described transactions that is unknown and can only be ascertained by an accounting.

137. Cross-Defendant has requested an accounting of the above-described transactions from Cross-Defendants and payment of the amount found due, but Cross-Defendants have failed and refused, and continue to fail and refuse, to render such an accounting and to pay such sum.

## EIGHTH CAUSE OF ACTION FOR FRAUD IN INDUCEMENT

### (Against Cross-Defendant Mahvash Mazgani)

138. Cross-Complainant re-alleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 137 of this Cross-Complaint.

139. Defendant, Mahvash Mazgani harbored an intent to divest and defraud Moda of all of his, monies, personal properties, and assets, bit by bit for self-gain, knowing that she had earned his trust by caring for him as his paternal aunt at such dire and desolate times when no other family member of Moda would tolerate Moda's laissez faire lifestyle, lavish expenditures, and waste of his monies and financial resources. In furtherance of this intent to defraud, Mahvash Mazgani embarked on a mission to usurp Moda's monies and assets under the auspices of a trust, ensurer, and manager of Moda's future.

140. In furtherance of this fraudulent intent, in late 2006, March 2007, and at multiple additional times between 2007 and 2015, Cross-Defendant, Mahvash Mazgani falsely and

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT** ER-63

fraudulently represented to Cross-Complainant that she would deposit Cross-Complainant's cash and other assets in the Trust for Cross-Complainant's benefit so that he cannot readily access or spend those monies with ease; that the cash and assets would be invested conservatively and prudently for Cross-Complainant's benefit; that any profits from the Trust investments would be deposited into the Trust, and that Cross-Complainant's assets would be well-protected and secure. Cross-Defendant Mahvash Mazgani also falsely and fraudulently represented to Cross-Complainant that she was the sole individual who would have access to the Trust account assets.

141.    Cross-Defendant Mahvash Mazgani made these false representations to Cross-Complainant in-person at family events, on the phone, and via text messages.

142.    Cross-Defendant Mahvash Mazgani's harbored intent to defraud Moda was further manifested by the following conduct, all unbeknownst to Moda:

a. In or around April 17, 2007, Cross-Defendant Mahvash Mazgani created the Mahvash Mazgani Family Trust, an act concealed from Cross-Complainant who was under the belief his monies were being deposited into the Mazgani Family Trust instead.

b. Cross-Defendants Neyaz Mazgani and Nazanin Mazgani, and another relative, Hooshang Mazgani, were also signatories on the Trust account with full access to Moda's monies.

c. Mahvash Mazgani had caused another bank account to be opened in the name of Hooshang Mazgani, a cousin who resides out of the country, in which account monies of Kevin Moda were being transferred for personal use and self-gain. All Mazgani family members had powers of attorney with full access to monies in said account.

d. Mahvash Mazgani took checks given to her by Moda and deposited the funds into at least (7) seven different bank accounts instead of the Trust account to have been held for Moda's benefit.

e. Mahvash Mazgani fully cooperated and collaborate with Moda to cause the purchase of 859 3rd Avenue, Los Angeles CA 90005 with Moda's own monies and realize $140,000.00 in profits from a flip sale in or about March 10, 2009, with

the intent to divest the profits from the trust and transfer the monies to other accounts for self-gain.

f. Mahvash Mazgani fully cooperated and collaborated with Moda to cause receipt of **$200,000.00** in outstanding rents from appointment of receiver and lump sum paid to JKDM, LLC, related to the property more commonly known as 16943 Dolce Yenez Lane, Pacific Palisades, CA 90272, in the Unlawful Detainer Matter entitled, *Malcolm Bennett, State Court Receiver vs. Razavi et al,* bearing LASC Case No. SC114009, with the intent to divest said monies from the trust and transfer the monies to other accounts for self-gain.

g. Mahvash Mazgani fully cooperated and collaborated with Moda to cause receipt of **$70,000.00** in settlement proceeds from United States Trustee with the intent to divest the profits from the trust and transfer the monies to other accounts for self-gain.

h. Mahvash Mazgani fully cooperated and collaborated with Moda to cause transfer of title to Clark Property under the Trust using Moda's monies and without any intentions of holding Clark property in trust or recognizing Moda's beneficial legal interest and title in Clark property, and all for self-gain.

i. Mahvash Mazgani knowingly permitted a total of **$143,500.00** in unauthorized withdrawals from monies of Moda in her possession from Wells Fargo Account ending 796

j. Mahvash Mazgani knowingly caused the receipt of **$100,000.00** representative of Moda's Settlement Monies in the matter of *JKDM v. RAZAVI* in or about 2012, for self-gain and personal use.

k. Mahvash Mazgani fully cooperated and collaborated with Moda in causing an E*TRADE account to be made and allow Moda to make online trades with her passwords with the intent of withholding all profits in the amount of $150,000 from about 2009-2013 for self-gain

l. Mahvash Mazgani caused Moda to loan her **$60,000.00** to pay off a Promissory Note secured with a 2nd Deed of Trust for the property more commonly known as

1    10950 Massachusetts Avenue, Los Angeles, CA 90024 with no intentions of

2    paying him back

3    m.    Mahvash Mazgani received approximately **$252,000.00** in rent proceeds for rental

4    premises of Unit #320 at 141 South Clark Drive, Los Angeles, CA 90048 from

5    date of purchase 2010 to present all for self-gain.

6  The representations made by Cross-Defendant Mahvash Mazgani were in fact false.

7    143.    The true facts were that Cross-Defendant Mahvash Mazgani did not intend to

8  deposit Cross-Complainant's cash and other assets in the Trust for Cross-Complainant's benefit,

9  nor did she intend to invest the assets conservatively and prudently for Cross-Complainant's

10  benefit, nor did she intend to deposit profits from the Trust investments into the Trust, nor did she

11  intend that Cross-Complainant's assets would be well-protected and secure.  Instead, she intended

12  to engage in self-dealing and personally profit from Cross-Complainant's assets.  In addition, the

13  true facts were that there were additional signatories on the Trust account and that Cross-

14  Defendants Neyaz Mazgani and Nazanin Mazgani, as successor trustees of the Trust and

15  signatories on the Trust account, intended to engage in self-dealing and profit from the Cross-

16  Complainant's assets.

17    144.    When Cross-Defendant Mahvash Mazgani made these representations, she knew

18  them to be false, and these representations were made by Cross-Defendant Mahvash Mazgani

19  with the intent to defraud and deceive Cross-Complainant and with the intent to induce Cross-

20  Complainant to act in the manner herein alleged.

21    145.    At the time that Cross-Defendant Mahvash Mazgani promised to deposit Cross-

22  Complainant's cash and other assets into the Trust for Cross-Complainant's benefit, she had no

23  intention of performing this promise.  Indeed, in or around October 2015, Cross-Complainant

24  discovered that Cross-Defendant Mahvash Mazgani was engaging in certain acts of self-dealing,

25  from which she profited personally, at the expense of the Trust, including depositing checks

26  intended for the Trust into a different account, lending money from the Trust to third parties and

27  then depositing the third parties' repayment into a personal account, commingling personal assets

28  with the Trust assets, improperly transferring title of properties in the Trust to individuals and

other financial entities, and retaining rents from the Trust-owned properties for personal use.

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

ER-66

146.     Cross-Complainant, at the time these representations were made by Cross-Defendant Mahvash Mazgani, was ignorant of the falsity of Cross-Defendant Mahvash Mazgani's representations and believed them to be true.  In reliance on these false and fraudulent representations, beginning in or around April 2007 and continuing until late 2015, Cross-Complainant gave Cross-Defendant Mahvash Mazgani cash, checks, third party checks made payable to her, personal properties, and other assets and investment to deposit into the Trust or to be held in trust for his benefit.

147.     In reliance on these representations, Cross-Complainant was induced to give substantial sums of money and valuable property to Cross-Defendant Mahvash Mazgani to deposit in the Trust.  Had Cross-Complainant known that Cross-Defendant Mahvash Mazgani had no intention of holding the money in the Trust for Cross-Complainant's benefit, Cross-Complainant would not have given her his cash and other assets.  In addition, had Cross-Complainant been informed of the additional signatories on the account, other accounts and associated powers of attorney, he would not have given his cash and other assets to Cross-Defendant Mahvash Mazgani to put in the Trust account since he did not know the other account holder or believe the additional signatories to be financially prudent.

148.     Cross-Complainant's reliance on Cross-Defendant Mahvash Mazgani's representations was justified because they had a close, trusting familial relationship, Cross-Defendant Mahvash Mazgani held herself out to be a maternal figure in Cross-Complainant's life, and Cross-Complainant in turn believed Cross-Defendant Mahvash Mazgani genuinely cared about him and would protect his assets.  Moreover, Cross-Defendant Mahvash Mazgani repeatedly assured Cross-Complainant that Cross-Complainant's assets were in fact deposited into the Trust account and that his assets were safe in the Trust.

149.     As a proximate result of Cross-Defendant Mahvash Mazgani's fraud and deceit and the facts herein alleged, Cross-Complainant has been damaged in an amount to be proven at trial.

150.     Cross-Complainant learned of Cross-Defendant Mahvash Mazgani's fraud in or around October 2015 and had no reason to discover it prior to this date.

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT** ER-67

151.    Cross-Complainant is informed and believes and thereon alleges that, in committing the acts and undertaking the conduct alleged herein, Cross-Defendant Mahvash Mazgani acted oppressively, maliciously, and/or fraudulently, with a conscious disregard of Cross-Complainant's rights and with the intent of benefiting herself or others financially, and with the intent of causing, or recklessly disregarding the probability of causing, injury to Cross-Complainant, thereby entitling Cross-Complainant to exemplary and punitive damages.

## NINTH CAUSE OF ACTION FOR MONEY HAD AND RECEIVED

### (Against All Cross-Defendants)

152.    Cross-Complainant re-alleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 151 of this Cross-Complaint.

153.    Cross-Defendants received money in the total amount of no less than two million seven hundred seventy-five thousand two hundred and forty dollars and fifty cents ($2,775,240.50), that was intended to be for the use and benefit of Cross-Complainant. Said monies were comprised of the following sums:

a.    $430,000.00 of Moda's Monies in the possession of Plaintiff utilized for the purchase of 859 3rd Avenue, Los Angeles CA 90005 in or about November 14, 2008

b.    $140,000.00 in Net Proceeds of Sale from the Flip Sale of 859 3rd Avenue, Los Angeles CA 90005 in or about March 10, 2009

c.    $200,000.00 in outstanding rents from appointment of receiver and lump sum paid to JKDM, LLC, related to the property more commonly known as 16943 Dolce Yenez Lane, Pacific Palisades, CA 90272, in the Unlawful Detainer Matter entitled, Malcolm Bennett, State Court Receiver vs. Razavi et al, bearing LASC Case No. SC114009.

d.    $70,000.00-in settlement proceeds paid to Plaintiff through bankruptcy proceedings relating to real properties more commonly known as 239 West 25th Street, Los Angeles, CA 90007 (239 West 25th Street Property), and 1117 Westlake Ave, Los Angeles, CA 90006 (Westlake Ave Property) in the year 2011.

e.    $239,640.50- Moda's Monies in the possession of Plaintiff used for the purchase of

141. S. Clark Drive #320, Los Angeles, CA 90048 in or about August 12, 2010

f.  $113,000.00-Moda's Monies in the possession of Plaintiff used for the balance of the purchase of 141. S. Clark Drive #320, Los Angeles, CA 90048 in or about August 12, 2010.

g.  $143,500.00-Unauthorized withdrawals from monies of Moda in the possession of Plaintiff from Wells Fargo Account ending 796

h.  $100,000.00-Settlement Monies in the possession of Plaintiffs arising from representation in the matter of *JKDM v. RAZAVI* in or about 2012

i.  $200,000.00-monies of Moda invested in E*TRADE account and trades made with profits withheld in the amount of $150,000 from about 2009-2013

j.  $60,000.00-loan from Monies of Moda in the possession of Plaintiff to pay off, certain promissory note secured with a 2nd Deed of Trust for the property more commonly known as 10950 Massachusetts Avenue, Los Angeles, CA 90024

k.  $344,100.00 received in checks from February 6, 2009 through February 22, 2012, by Mahvash Mazgani's own admission, verified in discovery responses.

l.  $735,000.00 representative of additional monies of Moda in the possession of Mahvash Mazgani held in deposit and comprised of cash monies, checks and proceeds from investment.

154.    The money Cross-Defendants received was not used for the benefit of Cross-Complainant. Instead, Cross-Defendants have used the money for their own benefit as described herein.

155.    Cross-Defendants have refused to give the money to Cross-Complainant.

156.    Cross-Complainant is informed and believes and thereon alleges that there is now owing to Cross-Complainant an amount to be proven at trial, with interest at the legal rate.

**TENTH CAUSE OF ACTION FOR DECLARATORY RELIEF**

**(Against All Cross-Defendants)**

157.    Cross-Complainant re-alleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 156 of this Cross-Complaint.

158.    An actual and justiciable controversy has arisen and now exists between Cross-

35

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

Complainant and Cross-Defendants concerning their respective rights and duties on the following matters:

    a. Cross-Defendants contend that the funds and other assets in the Trust are not for Cross-Complainant's benefit, whereas Cross-Complainant disputes these contentions and contends that the funds and other assets in the Trust are for his sole benefit;

    b. Cross-Defendants contend that the proceeds from real estate purchased with the Trust assets, including the rental income from those properties, are not for Cross-Complainant's benefit, whereas Cross-Complainant disputes these contentions and contends that the proceeds from real estate purchased with the Trust assets, including the rental income from those properties, are for his sole benefit;

    c. Cross-Defendants contend that Cross-Complainant's Watches and Jewelry given to Cross-Defendant Mahvash Mazgani for safekeeping were gifts and are not for Cross-Complainant's benefit, whereas Cross-Complainant disputes these contentions and contends that Cross-Complainant's Watches and Jewelry are for his sole benefit;

    d. Cross-Defendants contend that that they do not need to repay the personal loan of $60,000 that Cross-Complainant gave to Cross-Defendant Mahvash Mazgani, whereas Cross-Complainant disputes these contentions and contends that the loan must be repaid; and

    e. Other issues to be shown according to proof.

159.    A judicial determination of these controversies is necessary and appropriate at this time so that the parties can ascertain their respective rights and duties.

160.    Cross-Complainant has no plain, speedy or adequate remedy at law.

161.    Without such a judicial determination, Cross-Complainant will incur damages through the loss of the assets in the Trust account and the loss of his personal effects.

FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT

**ELEVENTH CAUSE OF ACTION FOR SET ASIDE OF VOIDABLE TRANSACTION**

**[CIV. CODE § 3439.07(A)(1)] AND FOR DAMAGES BASED ON FRAUDULENT**

**TRANSFER[CIV. CODE § 3439.04(A)]**

**(Against Mahvash Mazgani in her individual capacity and in her capacity as the**

**Trustee of the Mahvash Mazgani Family Trust; Nazanin Mazgani in her individual capacity**

**and in her capacity as the Trustee of the Wesson Trust; Neyaz Mazgani in her individual**

**capacity and in her capacity as Trustee of the Wesson Trust; Roes 5-10)**

162.    Cross-Complainant re-alleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 161 of this Cross-Complaint.

163.    At all times mentioned herein Cross complainant Moda has been owed $2,775,240.50 from Mahvash Mazgani which consist of:

    a.    $430,000.00 of Moda's Monies in the possession of Plaintiff utilized for the purchase of 859 3rd Avenue, Los Angeles CA 90005 in or about November 14, 2008

    b.    $140,000.00 in net proceeds of sale of the real property located at 859 3rd Avenue, Los Angeles CA 90005 in or about March 10, 2009

    c.    $200,000.00 in outstanding rents from appointment of receiver and lump sum paid to JKDM, LLC, related to the real property located at 16943 Dolce Yenez Lane, Pacific Palisades, CA 90272, in the Unlawful Detainer Matter entitled *Malcolm Bennett, State Court Receiver vs. Razavi et al.*, and bearing LASC Case No. SC114009.

    d.    $70,000.00-in settlement proceeds paid to Plaintiff through bankruptcy proceedings relating to real properties more commonly known as 239 West 25th Street, Los Angeles, CA 90007 (239 West 25th Street Property), and 1117 Westlake Ave, Los Angeles, CA 90006 (Westlake Ave Property) in the year 2011.

    e.    $239,640.50 of Mr. Moda's monies in the possession of Plaintiff used for the purchase of the real property located at 141. S. Clark Drive #320, Los Angeles, CA 90048 (Clark Property) in or about August 12, 2010.

    f.    $113,000.00 of Mr. Moda's monies in the possession of Plaintiff used for the balance of the purchase of the Clark Property in or about August 12, 2010.

    g.    $143,500.00-Unauthorized withdrawals of Mr. Moda's monies in the

<div align="center">37</div>

1    possession of Plaintiff from Wells Fargo account ending with 796.

2           h.    $100,000.00-Settlement monies in the possession of Plaintiffs arising from

3    representation in the matter of JKDM v. RAZAVI in or about 2012.

4           i.    $200,000.00-monies of Mr. Moda invested in E*TRADE account and

5    trades made with profits withheld in the amount of $150,000 from about 2009-2013

6           j.    $60,000.00-loan from Mr. Moda's monies in the possession of Plaintiff in

7    order to pay off a certain promissory note secured with a 2nd Deed of Trust for the

8    property more commonly known as 10950 Massachusetts Avenue, Los Angeles, CA

9    90024 (Massachusetts Property).

10          k.    $344,100.00 received in checks from February 6, 2009 through February

11   22, 2012, by Mahvash Mazgani's own admission, verified in discovery responses.

12          l.    $735,000.00 representative of additional monies of Mr. Moda's, in the

13   possession of Mahvash Mazgani held in deposit and comprised of cash monies, checks

14   and proceeds from investment.

15   164.    Since 2015, Mr. Moda has been demanding that Mahvash Mazgani perform an

16   accounting and to return to him the monies listed above. Mahvash Mazgani has refused to pay

17   any of the money that is due to Mr. Moda.

18   165.    From 2007 to February 29, 2016, the Mahvash Mazgani Family Trust was the

19   owner and possessor of the real property located at 10950 Massachusetts Ave., Los Angeles, CA

20   90024-5518, with Assessor's Parcel Number 4324-029-001 with the legal description of   LOT I

21   IN BLOCK 6 OF TRACT NO. 1 0021, IN THE CITY OF LOS ANGELES, COUNTY OF LOS

22   ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 145, PAGES 1

23   AND 2 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

24   (Massachusetts Property).

25   166.    On February 29, 2016, Cross-Defendants Neyaz Mazgani and Nazanin Mazgani,

26   and Mahvash Mazgani formed the Wesson Trust.

27   167.    On February 29, 2016, Mahvash Mazgani as Trustee of the Mahvash Mazgani

28   Family Trust, transferred by  Grant Deed, the above referenced Massachusetts Property to the

    Wesson Trust via instrument number 20160219326 recorded with the County Recorder of Los

<center>38</center>

Angeles.  See **Ex. V** attached hereto and incorporated herein by reference.

168.    Although on the date of the aforementioned transfer no part of Mr. Moda's claim against Defendant Mahvash Mazgani or the Mahvash Mazgani Family Trust had been reduced to a judgment, Moda alleges that the transfer was made with an actual intent to hinder, delay, and defraud then and future creditors, including Moda, in the collection of their claims and Mr. Moda thus stands as a claimant-creditor against Cross-Defendants.

169.    In exchange for the aforementioned transfer, Defendant Mahvash Mazgani received no consideration from the Wesson Trust or Nazanin Mazgani or Neyaz Mazgani. *See* **Ex. V** attached hereto and incorporated herein by reference.

170.    Based on information and belief, at the time of the transfer, the Massachusetts Property, less all encumbrances, had a value over $2,000,000.00, but less than $2,500,000.00.

171.    Outside of the Massachusetts Property, Mahvash Mazgani Family Trust has no other valuable asset or money sufficient to come remotely close to satisfy the debt owed to Kevin Moda.

172.    The Massachusetts property was received by the Wesson Trust, Nazanin Mazgani, and Neyaz Mazgani with actual knowledge that Mahvash Mazgani and the Mahvash Mazgani Family Trust intended to hinder, delay, and defraud the collection of Mr. Moda's claims and the claims of future creditors of Mahvash Mazgani and the Mahvash Mazgani Family Trust. Nazanin Mazgani and Neyaz Mazgani had such knowledge by the virtue of the fact that they were aware and are complicit in the fraud that Mahvash Mazgani perpetrated on Moda and they personally profited by the fraud.

173.    Wherefore, Moda prays for Judgment as follows hereunder.

**TWELFTH CAUSE OF ACTION FOR CONSPIRACY TO DEFRAUD CREDITOR**

**(Against Mahvash Mazgani in her individual capacity and in her capacity as the Trustee of the Mahvash Mazgani Family Trust; Nazanin Mazgani in her individual capacity and in her capacity as the Trustee of the Wesson Trust; Neyaz Mazgani in her individual capacity and in her capacity as the Trustee of the Wesson Trust; Roes 5-10)**

174.    Cross-Complainant re-alleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 173 of this Cross-Complaint.

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT** **ER-73**

175.    As alleged above, on February 29, 2016, Cross-Defendants Mahvash Mazgani, Nazanin Mazgani (individually and as Trustee of the Wesson Trust) and Neyaz Mazgani (individually and as Trustee of the Wesson Trust) agreed and knowingly and willfully conspired between themselves to hinder, delay, and defraud Mr. Moda in the collection of his claim against defendant Mahvash Mazgani and the Mahvash Mazgani Family Trust.

176.    Under this conspiracy, Cross-Defendants Mahvash Mazgani, Nazanin Mazgani (individually and as Trustee of the Wesson Trust) and Neyaz Mazgani (individually and as Trustee of the Wesson Trust) intended to transfer ownership of the property from the reach of the cross-complainant, Moda, to a newly created fictitious entity entitled the Wesson Trust that was not financially indebted to Mr. Moda, nor did Mr. Moda know to exist..

177.    Cross-Defendants Mahvash Mazgani, Nazanin Mazgani (individually and as Trustee of the Wesson Trust) and Neyaz Mazgani (individually and as Trustee of the Wesson Trust) transferred the Massachusetts property on or about February 29, 2016, and created the fictitious new entity called the Wesson Trust in furtherance of the conspiracy and agreement alleged above.

178.    Mr. Moda has been damaged in being forced to retain attorneys and incur substantial costs in setting aside the fraudulent conveyance. Furthermore, feeling immune to having to pay for an eventual judgment for other fraud not related to the fraudulent conveyance that the Cross-Defendants have perpetrated, Cross-Defendants have mounted a scorched earth defense costing Mr. Moda hundreds of thousands of dollars in attorneys' fees and Cross-Defendants have obstructed discovery on the extent of the fraud.

179.    At all times mentioned herein, Cross-Defendants Nazanin Mazgani and Neyaz Mazgani knew of Mr. Moda's claim against Mahvash Mazgani and knew that Mr. Moda's claims could only be satisfied out of the sale of the Massachusetts Property. As a result, shortly after Mr. Moda demanded a return of his money and an accounting from Mahvash Mazgani throughout the months December 2015-January 2016, the Wesson Trust was created in February 2016, and the Massachusetts property was transferred for the benefit of Nazanin Mazgani and Neyaz Mazgani for zero compensation to the Wesson Trust in February 2016.

180.    Cross-Defendants Mahvash Mazgani, Nazanin Mazgani (individually and as

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

ER-74

Trustee of the Wesson Trust) and Neyaz Mazgani (individually and as Trustee of the Wesson Trust) intentionally, willfully, fraudulently, and maliciously depleted the sole asset of Mavash Mazgani and the Mahvash Mazgani Family Trust to defraud and oppress Mr. Moda. Mr. Moda is therefore entitled to exemplary and/or punitive damages.

181.    Wherefore, Moda prays for Judgment as follows hereunder.

### PRAYER

**WHEREFORE,** Cross-Complainant prays for a judgment against Cross-Defendants, and each of them, as follows:

1.    Damages in an amount according to proof at trial;

2.    Exemplary or punitive damages as permitted by law;

3.    Costs of suit;

4.    Injunctive relief;

5.    Appointment of a receiver to take possession of all disputed real and personal property in the possession, custody or control of the Cross-Defendants, to conserve and manage it, and to collect any and all prepaid or current rents and profits therefrom;

6.    Judicial Decree that Mr. Moda is the true beneficial owner of all monies, real properties, and assets identified herein with full and complete claims, rights, and interest to each;

7.    Indemnification from damages sustained as a result of the breaches of trust and the conspiracy to induce said breaches;

8.    An accounting as to what sum is owed between the parties;

9.    Appointment of a receiver;

10.    A declaration that:

a.    The funds and assets in the Trust are for Cross-Complainant's sole benefit;

b.    The proceeds from real estate purchased with the Trust assets, including the rental income from those properties, are Trust assets for Cross-Complainant's sole benefit;

c.    The jewelry and watches given to Cross-Defendant Mahvash Mazgani for

safekeeping are for Cross-Complainant's sole benefit;

    d.    Cross-Defendant Mahvash Mazgani must repay the personal loan of $60,000 that Cross-Complainant gave to her;

    e.    That the transfer of the Massachusetts Property from defendant Mahvash Mazgani Family Trust to defendant Wesson Trust be set aside and be annulled and declared void as to the extent necessary to satisfy Mr. Moda's current claim and eventual judgment) in the sum of $2,775,240.50 (which does not account for the value of the jewelry that Mahvash Mazgani has converted of Mr. Moda, plus interest thereon at the rate of 10% percent per annum from February 29, 2016;

    f.    That the Massachusetts Property held by Wesson Trust be attached in accordance with the provisions of Sections 481.010 through 493.060 of the Code of Civil Procedure;

    g.    That Cross-Defendants Mahvash Mazgani individually and as Trustee of the Mahvash Mazgani Family Trust, Nazanin Mazgani individually and as Trustee of the Wesson Trust, and Neyaz Mazgani individually and as Trustee of the Wesson Trust be restrained and enjoined from disposing of the Massachusetts Property (transferred or conveyed) until after the Court issues a judgment in this matter;

    h.    That a temporary restraining order be granted to Mr. Moda enjoining and restraining Cross-Defendants Mahvash Mazgani individually and as Trustee of the Mahvash Mazgani Family Trust, Nazanin Mazgani individually and as Trustee of the Wesson Trust, and Neyaz Mazgani individually and as Trustee of the Wesson Trust, and their representatives, attorneys, and agents from selling, transferring, conveying, or otherwise disposing of any of the Massachusetts property;

    i.    That the judgment herein be declared a lien on the Massachusetts property by way of abstract of judgment to be recorded thereon;

    j.    That Cross-Defendants Mahvash Mazgani individually and as Trustee of the Mahvash Mazgani Family Trust, Nazanin Mazgani individually and as Trustee

<div align="center">42</div>

of the Wesson Trust and Neyaz Mazgani individually and as Trustee of the

Wesson Trust be required to account to Moda for all profits and proceeds earned

from or taken in exchange for the Massachusetts property as they are renting the

property and earning the profit from February 29, 2016 to the present;

11.   Such other and further relief as the Court may deem just and proper.


DATED: September 18, 2017                    FINNEGAN & DIBA, A LAW CORPORATION

                                             By:
                                                 KASEY DIBA, ESQ.
                                                 Attorneys for Defendant and Cross-
                                                 Complainant, Kevin Moda

---

**43**

**FIRST AMENDED CONSOLIDATED CROSS-COMPLAINT**

ER-77

1

**VERIFICATION**

2      I, Kevin Moda, am the Cross-Complainant in the above-entitled action. I have read the

3   foregoing First Amended Consolidated Cross-Complaint and know the contents thereof. The

4   same is true of my own knowledge, except as to those matters which are therein alleged on

5   information and belief, and as to those matters, I believe it to be true.

6      I declare under penalty of perjury under the laws of the State of California that the

7   foregoing is true and correct. Executed at Encino, California. On September 18, 2017.

8   By: _____

9       Kevin Moda

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44

# EXHIBIT "A"

ER-79

# TRUST CERTIFICATION

## CHICAGO TITLE COMPANY

RE:    Order No. 960030613 - H55    Escrow No. -
Trust Agreement/Declaration dated
made under the laws of the State of
by

MAHVASH MAZGANi as Trustor under Trust agreement 4-12-200[
[name of settlor(s) person(s) who created the Trust]

The undersigned,

MAHVASH MAZGANi
[Trustee]

for the settlor(s) certify(ies) to you that:
1. The above Trust instrument has not been revoked and is in full force and effect.
2. The name(s) of the Trustee(s) now qualified to act under the Trust instrument and who are the only Trustee(s) qualified to act is/are:

MAHVASH MAZGANi

3. The powers of the Trustee(s) are contained in the attached copy of a portion of the trust instrument.
4. The Trust is ___ irrevocable
   ✓ revocable and the person(s) holding the power to revoke is/are:

MAHVASH MAZGANi

5. If there is more than one Trustee, the Trustee(s) may exercise the powers set forth in paragraph 3 above by ___ all/___ less than all their signatures. (Attach excerpt from Trust showing such provisions.)
6. The Trust identification number is:
   Social Security number _____
   Employee Identification number _____
7. Title to the Trust assets should be taken as:

MAHVASH MAZGANi Trustee of THE MAHVASH MAZGANi FAMily TRUST dated 4-17-2007

8. The above referenced Trust instrument has not been amended, modified or supplemented, except as follows:

N/A

IN THE EVENT THAT THIS CERTIFICATION IS BEING USED IN A TRANSACTION IN AN AMOUNT OF $500,000.00 OR LESS THE ATTACHMENTS CALLED FOR IN ITEMS 3 AND 5 ABOVE ARE NOT REQUIRED. IF THE TRANSACTION EXCEEDS $500,000.00, THEN THIS CERTIFICATION MUST BE NOTARIZED.

Dated:    05/19/09

STATE OF CALIFORNIA
COUNTY OF _____    SS

On _____ before me,
personally appeared _____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[This area for official notarial seal]

NOTARY'S SIGNATURE
TC2 – 12/03/07 AA

**ER-80**

**CERTIFICATION OF TRUST**
(California Probate Code Section 18100.5)

I, MAHVASH MAZGANI (also known as MIMI MAZGANI), as Trustee and Trustor of THE MAHVASH MAZGANI FAMILY TRUST, certifies as follows:

1. **CREATION OF TRUST.** The Trust was created by MAHVASH MAZGANI, as Trustor (Settlor), under a trust agreement executed on April 17, 2007.

2. **NAME OF TRUST.** The name of the trust is THE MAHVASH MAZGANI FAMILY TRUST.

3. **TRUSTEES.** The currently acting Trustee of the trust is MAHVASH MAZGANI. The first Successor Trustee is NAZANIN MAZGANI and NEYAZ MAZGANI.

4. **TRUST PROPERTY.** The Trustee is now holding as trustee of the trust one or more items of property, which constitute the trust property.

5. **REVOCABILITY OF TRUST.** The Trust is revocable. The person holding the power to revoke the Trust is MAHVASH MAZGANI.

6. **TAXPAYER IDENTIFICATION NUMBER.** United States Treasury Regulations Sections 1.671-4, 1.6012-3(a)(9), and 301.6109-1(a)(2) provide that the Trustor's Social Security Number may be used in lieu of a separate taxpayer identification number for the Trust. The Taxpayer Identification Number of this Trust is ████████, which is the Trustor's Social Security number.

7. **MANNER IN WHICH TITLE TO ASSETS SHOULD BE TAKEN.** Title to trust assets should be taken in the following form: "MAHVASH MAZGANI, Trustee of THE MAHVASH MAZGANI FAMILY TRUST, dated April 17, 2007."

8. **NO REVOCATIONS, MODIFICATIONS, OR AMENDMENTS.** The Trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this certification of trust to be incorrect.

9. **SIGNED BY ALL CURRENTLY ACTING TRUSTEES.** This certification is being signed by all of the currently acting Trustees of the Trust.

10. **ACCURACY.** This Certification of Trust is a true and accurate statement of the matters referred to herein.

11. **POWERS OF TRUSTEE.** The Trustee has the following powers for managing the Trust and the trust property:

    a. <u>General Powers of Trustee.</u> The Trustee has all of the powers given to trustees under California law (see Probate Code sections 16200 and following) plus any other powers, discussed below, given by the trust.

    b. <u>Financial Powers of the Trustee.</u> Under the California Probate Code, the Trustee has certain powers to conduct any financial transactions for the Trust. These powers include the power to open and maintain checking accounts and savings accounts in any insured banks, savings and loans, or other financial institutions (see Probate Code section 16225); the power to invest trust property (see Probate

1

**ER-81**

Code section 16047(e)); the power to borrow money (see Probate Code section 16241); and the power to lend money to any beneficiary of the Trust or to guarantee loans, using trust property, to any beneficiary of the trust (see Probate Code section 16244).

1) The Trustee has also the power to execute all papers that are necessary to carry out these powers (see Probate Code section 16248). Trustor has also specifically given the trustee the power to borrow money for any trust purpose from any entity and to obligate the trust for repayment; the power, in order to secure repayment of any loan, to encumber any trust property by mortgage, deed of trust, pledge, or other method; the power to renew, extend, or replace any loan; the power to pay any obligations of the trust, and the power to invest trust property.

c. <u>Powers of the Trustee for Management and Control of Real Property.</u>  Trustor has specifically given the Trustee the power to manage, control, improve, and maintain all real property of the Trust. The Trustee has the power to sell, convey, exchange, partition, and divide trust property; the power to grant options for the sale or exchange; and the power to lease trust property for any purpose, regardless of the length of the lease.

1) The trustee has the power to subdivide or develop land belonging to the trust.

2) The trustee may make any repairs or alterations in any building or other property belonging to the trust.

3) The trustee has the power to purchase insurance, paid by the trust, to cover any trust property.

4) Further, under California Probate Code Sections 16226 through 16233, the trustee has the powers to acquire or dispose of trust property, to manage trust property, to mortgage or encumber trust property, to repair or alter trust property (including to demolish or to build any improvements on trust property), to develop, subdivide, and dedicate to public use any trust property land, to lease any trust property, to obtain property by lease, and to lease any mineral rights of any trust property or obtain mineral rights to property for the trust.

d. <u>Powers of the Trustee for Management and Control of Securities and Investments.</u>  Trustor has specifically given the trustee the powers to exercise for any security belonging to the trust all the rights, powers, and privileges of an owner, including the power to vote, give proxies, and pay any assessments or other sums deemed by the trustee necessary for the protection of the trust property. The trustee also has the power to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations and to deposit securities with or transfer title to any protective or other committee. The trustee also have the power to exercise or sell stock subscription or conversion rights and to accept and retain as investments of the trust any securities or other property received through the exercise of any of the powers given to the trustee.

1) Further, the trustee has the power to hold securities or other trust property in the trustee's own name or in the name of a nominee, with or without disclosure of the trust, or in unregistered form.

2) The trustee has the power to deposit securities in a securities depository that is either licensed or exempt from licensing.

e. <u>Powers of the Trustee for Operation and Control of Business Entities.</u>  The trustee have the power to hold and operate any business belonging to the trust; to purchase or acquire a business or invest in or otherwise participate in a business; or to sell, dissolve, liquidate, or terminate any business. The trustee also has the power to incorporate, reorganize, or otherwise change the form of a business belonging to the trust and to participate in a business as a sole proprietor, a general or limited partner, a shareholder,

2

**ER-82**

or any other type of interest.  The trustee also has the power to contribute capital or loan money to the business.

f.  <u>Powers of the Trustee for Operation of a Farm or Ranch.</u>  The trustee has the power to continue to hold, operate, sell, purchase, acquire, invest in, or liquidate any farming or ranch property, or any interest in farming or ranching property.  The trustee has all powers necessary or appropriate to carry out the management of such farming and ranching property.  The trustee may also incorporate any farming or ranching property and hold the stock as a trust asset.  The trustee has the powers to borrow money for any purpose related to the operation, acquisition, or disposition of any farming or ranching interests and to employ agents in the management and operation of the farm or ranch.

12.  **RELIANCE ON THIS CERTIFICATION.**  This certification is made in accordance with California Probate Code Section 18100.5, a copy of which is attached to this instrument.  Any transaction entered into by a person acting in reliance on this certification shall be enforceable against the trust assets.  PROBATE CODE SECTION 18100.5(h) PROVIDES THAT ANY PERSON WHO REFUSES TO ACCEPT THIS CERTIFICATION IN LIEU OF THE ORIGINAL TRUST DOCUMENT WILL BE LIABLE FOR DAMAGES, INCLUDING ATTORNEYS' FEES, INCURRED AS A RESULT OF THAT REFUSAL, IF THE COURT DETERMINES THAT THE PERSON ACTED IN BAD FAITH IN REQUESTING THE TRUST DOCUMENT.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 17, 2007

_____          _____
MAHVASH MAZGANI, Trustor                          MAHVASH MAZGANI, Trustee

<div align="center">

ACKNOWLEDGMENT

</div>

State of California              )
                                 )  ss
County of Los Angeles            )

On April 17, 2007, before me, AFSHIN A. ASHER, a Notary Public, personally appeared MAHVASH MAZGANI, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
AFSHIN A. ASHER, Notary Public

AFSHIN A. ASHER
Commission # 1442834
Notary Public - California
Los Angeles County
My Comm. Expires Oct 25, 2007

**ER-83**

# EXHIBIT "B"

ER-84



PMA account 3494 ☑ August 1, 2013 - August 31, 2013 ☒ Page 5 of 10

# Wells Fargo Custom Checking®

## Activity summary

| | | Account number 1206 |
|---|---|---|
| Balance on 8/1 | 1,543.40 | MAHVASH MAZGANI FAMILY TRUST |
| Deposits/Additions | 10,874.76 | MAHVASH MAZGANI TTE |
| Withdrawals/Subtractions | -9,757.70 | NAZANIN MAZGANI POA |
| Balance on 8/31 | $2,660.46 | NEYAZ MAZGANI POA |

Wells Fargo Bank, N.A. (Member FDIC)

California account terms and conditions apply

Questions about your account: 1-800-742-4932

Worksheet to balance your account and General Statement Policies can be found towards the end of this statement.

## Transaction history

| Date | Description | Check No. | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|---|
| | Beginning balance on 8/1 | | | | 1,543.40 |
| 8/1 | Check | 2221 | | 305.99 | 1,237.41 |
| 8/2 | Deposit | | 5,045.00 | | 6,282.41 |
| 8/6 | Deposit | | 534.76 | | 6,817.17 |
| 8/7 | Deposit | | 1,700.00 | | 8,517.17 |
| 8/9 | Check | 2224 | | 130.00 | 8,387.17 |
| 8/12 | Deposit | | 1,100.00 | | |
| 8/12 | Check | 2225 | | 2,704.50 | 6,782.67 |
| 8/13 | Check | 2222 | | 5,600.00 | 1,182.67 |
| 8/20 | Check | 2226 | | 711.22 | 471.45 |
| 8/20 | Check | | | 305.99 | 165.46 |
| 8/30 | Deposit | 2227 | 2,495.00 | | 2,660.46 |
| | Ending balance on 8/31 | | | | 2,660.46 |
| Totals | | | $10,874.76 | $9,757.70 | |

## Summary of checks written (checks listed are also displayed in the preceding Transaction history section)

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|---|---|---|---|---|---|---|---|---|
| 2221 | 8/1 | 305.99 | 2224* | 8/9 | 130.00 | 2226 | 8/20 | 711.22 |
| 2222 | 8/13 | 5,600.00 | 2225 | 8/12 | 2,704.50 | 2227 | 8/29 | 305.99 |

* Gap in check sequence.

---

We want to tell you about upcoming changes to your Wells Fargo Custom Checking® account that is linked to your PMA® Package relationship.

Effective October 7, 2013 the name of your account will change from Custom Checking to Value Checking. Because you are a valued customer your monthly service fee will be waived.
- Your account number will remain the same.
- Direct deposits and automatic bill payments will not be interrupted.

If you have questions about these changes, please contact your local banker or call the number listed on your statement. Please note that the Consumer Account Fee And Information Schedule and the Consumer Account Agreement, as amended, continue to apply.

**ER-85**



PMA account 3494 ▫ September 1, 2013 - September 30, 2013 ▫ Page 8 of 11

# Wells Fargo® High Yield Savings

## Activity summary

| | |
|---|---|
| Balance on 9/1 | 73,247.30 |
| Deposits/Additions | 6.00 |
| Withdrawals/Subtractions | - 380.00 |
| Balance on 9/30 | $72,873.30 |

Account number: 6505

MAHVASH MAZGANI FAMILY TRUST
MAHVASH MAZGANI TTEE
NAZANIN MAZGANI POA
NEYAZ MAZGANI POA

*Wells Fargo Bank, N.A. (Member FDIC)*

*California account terms and conditions apply*

Questions about your account? 1-800-742-4932

Worksheet to balance your account and General
Statement Policies can be found towards the
end of this statement.

## Interest you've earned

| | |
|---|---|
| Interest earned this month | $6.00 |
| Average collected balance this month | $72,997.96 |
| Annual percentage yield earned | 0.10% |
| Interest paid this year | $61.16 |

## Transaction history

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending Daily Balance |
|---|---|---|---|---|
| | Beginning balance on 9/1 | | | 73,247.30 |
| 9/6 | Online Transfer to Mazgani N Ref #Ibe2K984Jb Complete Advantage(Rm) Via Mobile | | 200.00 | 73,047.30 |
| 9/6 | Online Transfer to Mazgani N Ref #Ibemxl5Y8L Complete Advantage(Rm) Via Mobile | | 20.00 | 73,027.30 |
| 9/9 | Online Transfer to Mazgani N Ref #Ibek2K270Y Complete Advantage(Rm) Via Mobile | | 40.00 | 72,987.30 |
| 9/16 | Online Transfer to Mazgani N Ref #Ibeqtpzscb Complete Advantage(Rm) Via Mobile | | 20.00 | 72,967.30 |
| 9/23 | Online Transfer to Mazgani N Ref #Ibeqtu]545 Complete Advantage(Rm) Via Mobile | | 100.00 | 72,867.30 |
| 9/30 | Interest Payment | 6.00 | | 72,873.30 |
| | Ending balance on 9/30 | | | 72,873.30 |
| Totals | | $6.00 | $380.00 | |

ER-86




## Wells Fargo® Preferred Rate Savings

Account number: ●●●-●●●4798 ▪ January 5, 2010 - February 1, 2010 ▪ Page 1 of 3



HOSHANG MAZGANI
MAHVASH MAZGANI POA
NAZANIN MAZGANI POA
NEYAZ MAZGANI POA
10954 MASSACHUSETTS AVE
LOS ANGELES CA 90024-5518

**Questions?**

Available by phone 24 hours a day, 7 days a week:
1-800-742-4932
TTY: 1-800-877-4833
En español: 1-877-727-2932 TTY: 1-800-355-6053

Available by phone 6 am to 7 pm Pacific Time, M-F:
1-800-258-2288

Online: wellsfargo.com

Write: Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

### You and Wells Fargo

Jump start your savings by setting up an automatic transfer from a Wells Fargo checking account to a Wells Fargo savings account. You can decide how much and how frequently to transfer. Get started with as little as $1, it's fast and it's easy. Go to wellsfargo.com, call us at the phone number listed at the top of your statement, or visit any Wells Fargo store and watch your savings grow!



**With you when *retirement takes planning***

Looking for ways to put more toward retirement? We can help you determine if you're on track to meet your retirement goals and offer guidance designed to take your money further. To learn more, talk with us, or visit wellsfargo.com/investing/retirement today.

### Activity summary

| | |
|---|---|
| Beginning balance on 1/5 | $226,577.04 |
| Deposits/Additions | 51.74 |
| Withdrawals/Subtractions | - 5,621.94 |
| Ending balance on 2/1 | $221,006.84 |

Account number: ●●●-●●●4798
HOSHANG MAZGANI
MAHVASH MAZGANI POA
NAZANIN MAZGANI POA
NEYAZ MAZGANI POA

California account terms and conditions apply

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 121042882

(314 s/ GA03R107)  (114)

12:18:12 2016-11

**ER-87**

# EXHIBIT "C"

ER-88

MAHVASH MAZGANI
10956 MASSACHUSETTS AVE.
LOS ANGELES, CA 90024-5914

3529

6-23-08

Pay to the order of _Trust account of G___ Serati___ $ 51,500.00

_Fifty one thousand five hundred____ DOLLARS

Wells Fargo Bank
California
www.wellsfargo.com

Memo _____

⑆822000247⑆ 494⑈ 3529

M. Mazgani

Case 2:20-cv-01807-ABR   Document 1   Filed 10/02/20   Page 25 of 70   Page ID
Case 2:20-cv-01807-ABR   Document 1   Filed 10/02/20   Page 25 of 70   Page ID
Exhibit 1 - Cross-Complaint   Page 56 of 147

LISITSA LAW CORPORATION
ATTORNEY/CLIENT TRUST ACCOUNT
DBA LAW OFFICES OF GINA LISITSA
5455 WILSHIRE BLVD SUITE 901   323-857-5990
LOS ANGELES, CA 90036

1225

11-35/1210
1664

DATE _June 23, 08_

PAY TO THE ORDER OF _Jin-Hwa Jaw & Ling-Chuen Tsai_   $ 57,500 00/100

_Fifty   Seven   Thousand   Five   Hundred   Dll_ 00/100 **DOLLARS**

Bank of America
Attorney Trust Acct.
255 Capital Mall Ste 1555
Sacramento CA
800.457.1702

FOR _229 & 239 2nd Trust Deed_

⑈00⑈225⑈  ⑈⑈210003581⑈  ⑈⑈⑈⑈196⑈





↓Do not endorse or write below this line↓

# EXHIBIT "D"

UD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Harold Greenberg - #40827<br>Law Offices of Harold Greenberg<br>2263 S Harvard Blvd<br>Los Angeles, CA 90018 | |

TELEPHONE NO.: (323) 732-9536  FAX NO. (Optional): (323) 732-0803
E-MAIL ADDRESS (Optional): hglawfirm@aol.com
ATTORNEY FOR (Name): Malcolm Bennett, State Court Receiver

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA 91401
BRANCH NAME: West

PLAINTIFF: Malcolm Bennett, State Court Receiver

DEFENDANT: Razavi Global Media, Kamran Razavi, Clarissa Costa;

[X] DOES 1 TO 100

| COMPLAINT - UNLAWFUL DETAINER | CASE NUMBER: |
|---|---|
| [X] COMPLAINT   [X] AMENDED COMPLAINT (Amendment Number): First | SC114009 |

Jurisdiction (check all that apply):
[ ] ACTION IS A LIMITED CIVIL CASE
  Amount demanded    [ ] does not exceed $10,000
                   [ ] exceeds $10,000 but does not exceed $25,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (amount demanded exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint (check all that apply):
    [ ] from unlawful detainer to general unlimited civil (possession not in issue)    [ ] from limited to unlimited
    [ ] from unlawful detainer to general unlimited civil (possession not in issue)    [ ] from unlimited to limited

PLAINTIFF (name each): Malcolm Bennett, State Court Receiver

alleges causes of action against DEFENDANT (name each):
Razavi Global Media, Kamran Razavi, Clarissa Costa; Does 1-100

2. a. Plaintiff is  (1) [ ] an individual over the age of 18 years.  (4) [ ] a partnership.
              (2) [ ] a public agency.                      (5) [ ] a corporation.
              (3) [X] other (specify):  State Court Receiver

   b. [ ] Plaintiff has complied with the fictitious business name laws and is doing business under the fictitious name of (specify):

3. Defendant named above is in possession of the premises located at (street address, apt. no., city, zip code, and county):
16943 Dulce Ynez Lane, Pacific Palisades, CA 90272, Los Angeles County.

4. Plaintiff's interest in the premises is  [ ] as owner  [X] other (specify): State Court Appointed Receiver
5. The true names and capacities of defendants sued as Does are unknown to plaintiff.
6. a. On or about (date): 8/1/2010         defendant (name each):
Razavi Global Media, Kamran Razavi, Clarissa Costa; Does 1-100

    (1) agreed to rent the premises as a [ ] month-to-month tenancy [X] other tenancy (specify): 2 Year
    (2) agreed to pay rent of $ 72,000.00 payable [ ] monthly [X] other (specify frequency): 6 Month
    (3) agreed to pay rent on the [ ] first of the month [X] other day (specify): 6 Month Intervals
   b. This [X] written [ ] oral  agreement was made with
    (1) [ ] plaintiff.                 (3) [X] plaintiff's predecessor in interest.
    (2) [ ] plaintiff's agent.         (4) [ ] other (specify):

NOTE: Do not use this form for evictions after sale (Code Civ. Proc., § 1161a).

Form Approved for Optional Use
Judicial Council of California
UD-100 (Rev. July 1, 2005)

[MartinDean
ESSENTIAL FORMS™]

COMPLAINT - UNLAWFUL DETAINER

Civil Code, § 1040 et seq.
Code of Civil Procedure §§ 425.12, 1166
www.courtinfo.ca.gov

Razavi

**ER-94**

| PLAINTIFF *(Name)*:  JKDM, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*:  Razavi Global Media, Kamran Razavi, Clarissa Costa | SC114009 |

c. [X] The defendants not named in item 6a are
    (1) [ ] subtenants.
    (2) [ ] assignees.
    (3) [X] other *(specify)*:   Unauthorized Occupants
d. [X] The agreement was later changed as follows *(specify)*:
    On June 24, 2011, the term of the lease dealing with inspection of the property was
    changed.  The change is irrelevant to this Complaint.
e. [ ] A copy of the written agreement, including any addenda or attachments that form the basis of this complaint, is attached
    and labeled Exhibit 1. *(Required for residential property, unless item 6f is checked. See Code Civ. Proc., § 1166.)*
f. [X] *(For residential property)* A copy of the written agreement is not attached because *(specify reason)*:
    (1) [ ] the written agreement is not in the possession of the landlord or the landlord's employees or agents.
    (2) [X] this action is solely for nonpayment of rent (Code Civ. Proc., § 1161(2)).

7. [ ] a. Defendant *(name each)*: Razavi Global Media, Kamran Razavi,  Clarissa Costa; Does 1-100

    was served the following notice on the same date and in the same manner:
    (1) [X] 3-day notice to pay rent or quit     (4) [ ] 3-day notice to perform covenants or quit
    (2) [ ] 30-day notice to quit     (5) [ ] 3-day notice to quit
    (3) [ ] 60-day notice to quit     (6) [ ] Other *(specify)*:
  b. (1) On *(date)*: 8/17/2011     the period stated in the notice expired at the end of the day.
    (2) Defendants failed to comply with the requirements of the notice by that date.
  c. All facts stated in the notice are true.
  d. [X] The notice included an election of forfeiture.
  e. [X] A copy of the notice is attached and labeled Exhibit 2. *(Required for residential property. See Code Civ. Proc.,
    § 1166.)*
  f. [ ] One or more defendants were served (1) with a different notice, (2) on a different date, or (3) in a different
    manner, as stated in Attachment 8c. *(Check item 8c and attach a statement providing the information required
    by items 7a-e and 8 for each defendant.)*

8. a. [X] The notice in item 7a was served on the defendant named in item 7a as follows:
    (1) [X] by personally handing a copy to defendant on *(date)*: 8/17/2011
    (2) [X] by leaving a copy with *(name or description)*: Kamran Razavi
    a person of suitable age and discretion, on *(date)*: 8/17/2011     at defendant's
    [ ] residence  [X] business AND mailing a copy to defendant at defendant's place of residence on
    *(date)*: 8/17/2011     because defendant cannot be found at defendant's residence or usual
    place of business.
    (3) [X] by posting a copy on the premises on *(date)*: 8/17/2011   [X] AND giving a copy to a
    person found residing at the premises AND mailing a copy to defendant at the premises on
    *(date)*: 8/17/2011
    (a) [ ] because defendant's residence and usual place of business cannot be ascertained OR
    (b) [X] because no person of suitable age or discretion can be found there.
    (4) [ ] *(Not for 3-day notice; see Civil Code, § 1946 before using)* by sending a copy by certified or registered
    mail addressed to defendant on *(date)*:
    (5) [ ] *(Not for residential tenancies; see Civil Code, § 1953 before using)* in the manner specified in a written
    commercial lease between the parties.
  b. [X] *(Name)*:  Razavi Global Media
    was served on behalf of all defendants who signed a joint written rental agreement.
  c. [ ] Information about service of notice on the defendants alleged in item 7f is stated in Attachment 8c.
  d. [X] Proof of service of the notice in item 7a is attached and labeled Exhibit 3.

UD-100 [Rev. July 1, 2005]
[logo] MartinDean
ESSENTIAL FORMS™
COMPLAINT - UNLAWFUL DETAINER     Page 2 of 3

Razavi

ER-95

| PLAINTIFF (Name): JKDM, LLC | CASE NUMBER: |
| DEFENDANT (Name): Razavi Global Media, Kamran Razavi, Clerissa... | SC114009 |

  ☐ Plaintiff demands possession from each defendant because of expiration of a fixed-term lease.

10. ☒ At the time the 3-day notice to pay rent or quit was served, the amount of rent due was $    73,080.00

11. ☒ The fair rental value of the premises is $    400.00 per day.

12. ☐ Defendant's continued possession is malicious, and plaintiff is entitled to statutory damages under Code of Civil Procedure section 1174(b). (State specific facts supporting a claim up to $600 in Attachment 12.)

13. ☒ A written agreement between the parties provides for attorney fees.

14. ☐ Defendant's tenancy is subject to the local rent control or eviction control ordinance of (city or county, title of ordinance, and date of passage):

  Plaintiff has met all applicable requirements of the ordinances.

15. ☒ Other allegations are stated in Attachment 15.

16. ☐ Plaintiff accepts the jurisdictional limit, if any, of the court.

Attachment 15: Since the initiation of this Action, an additional installment in the amount of $72,000 (plus late fees) has become due. The Defendants have paid only $12,000 of the total amount due since 8/1/2011.

17. PLAINTIFF REQUESTS
a. ☐ possession of the premises.
b. ☐ costs incurred in this proceeding.
c. ☒ past-due rent of $ 73,080.00
d. ☒ reasonable attorney fees.
e. ☒ forfeiture of the agreement.
f. ☒ damages at the rate stated in item 11 from (date): 8/1/2011 for each day that defendants remain in possession through entry of judgment.
g. ☐ statutory damages up to $600 for the conduct alleged in item 12.
h. ☒ other (specify): Such Other and Further Relief as the Court may deem Just and Proper

18. ☒ Number of pages attached (specify): 6

**UNLAWFUL DETAINER ASSISTANT** (Bus. & Prof. Code, §§ 6400-6415)

19. (Complete in all cases.) An unlawful detainer assistant ☒ did not ☐ did for compensation give advice or assistance with this form. (If plaintiff has received any help or advice for pay from an unlawful detainer assistant, state:)

a. Assistant's name:
b. Street address, city, and zip code:
c. Telephone No.:
d. County of registration:
e. Registration No.:
f. Expires on (date):

Date: 3-21-2012

Harold Greenberg, Esquire
(TYPE OR PRINT NAME)      ▷      (SIGNATURE OF PLAINTIFF OR ATTORNEY)

**VERIFICATION**

(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)

I am the plaintiff in this proceeding and have read this complaint. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3/21/2012

Malcolm Bennett, State Court Receiver
(TYPE OR PRINT NAME)      ▷      (SIGNATURE OF PLAINTIFF)

UD-100 (Rev. July 1, 2005)
LexisNexis ESSENTIAL FORMS™

COMPLAINT - UNLAWFUL DETAINER

Page 3 of 3

Razavi

**ER-96**

# EXHIBIT "2"

ER-97

<center>

## THREE-DAY NOTICE TO PAY OR QUIT
(Non-Payment of Rent)

</center>

To:   Razavi Global Media, Kamran Razavi and Clarissa Costa,
and all other tenants, subtenants, adult occupants, and other in
possession of the premises at:


16943 Dulce Ynez Lane, Pacific Palisades, CA 90272

PLEASE TAKE NOTICE THAT within three days after service of this notice upon you, you are required to pay the rent and late fees now due and owing on the premises located at 16943 Dulce Ynez Lane, Pacific Palisades, CA 90272, in the amount of $ 73,080.00, representing the rent due for the months of:

| | |
|---|---|
| February 1, 2011 to July 31, 2011 | $ 72,000.00 |
| Late Fee: | $1,080.00 |
| TOTAL | $ 73,080.00 |

Within three days after service of this notice upon you, the total overdue rent payment, in the amount stated above, must be made by money order, cash, cashiers check, payable to JKDM, LLC and must be delivered via mail to

JKDM, LLC
C/O Kevin Moda
10750 Wilshire Blvd
Los Angeles, California 90024
Telephone:    (310) 880-1529

It will be conclusively presumed that the rent is deemed received on the date it is posted in the mail to the specified name and address, provided you can show proof of mailing to that name and address above.

In the alternative, you are required to vacate and deliver the premises to JKDM, LLC (predecessor in interest in Silverlake LLC and Kevin Moda) within three days after service of this notice upon you.

If you fail either to pay the amount demanded in this notice or to vacate and deliver the premises to the company designated above within three

**ER-98**

days, JKDM, LLC will commence legal proceedings against you to (1)
declare a forfeiture of your rental agreement/lease, if any, (2) recover
possession of the premises, (3) recover the rent demanded herein, due for
the periods covered by this notice, and (4) recover damages for each day
that you occupy the premises after the period covered by this notice (plus
statutory damages), attorneys fees and costs of suit.

Page | 2

Further, if you fail to timely pay the amount demanded by this notice,
JKDM, LLC declares the forfeiture of the rental agreement/lease under
which you hold possession of the premises.  he premises herein referred to
are situated in the City of Los Angeles, State of California designated by
the number and street as: 16943 Dulce Ynez Lane, Pacific Palisades, CA
90272.  You are further notified that the undersigned does elect to
declare the forfeiture of your lease or rental agreement under which you
hold possession of the above described premises.

_____  For JKDM, LLC _____  Date: August 12, 2011
Kevin Moda on behalf of JKDM, LLC

ALL PAYMENTS MUST BE IN THE FORM OF A MONEY ORDER
OR CASHIER'S CHECK. PAYMENT MUST BE MADE TO THE
OWNER/AGENT AT THE FOLLOWING ADDRESS:

JKDM, LLC
C/O Kevin Moda
10750 Wilshire Blvd
Los Angeles, California 90024
Telephone: (310) 880-1529

PAYMENTS MADE IN PERSON SHALL BE DELIVERED TO JKDM
LLC in care of Mr. Moda BETWEEN THE HOURS OF 8 am-6 pm
Monday thru Friday, 10 am-5 pm Saturday or 12 pm-5 pm Sunday.

THERE IS ALSO A 24 HOUR CONCIERGE SERVICE LOCATED AT
THE LOBBY OF 10750 Wilshire, Los Angeles, CA 90024 for your
CONVENIENCE.

# EXHIBIT "3"

ER-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>Nolis Enterprises<br>4221 Wilshire Blvd Ste 282<br><br>Los Angeles      CA          90010 | TELEPHONE NO.<br>(323) 930-6550 | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR (Name) | | |
| Name of Court Name of Judicial District and Branch Court if any | | |
| SHORT TITLE OF CASE | | |

| | | | | Case Number: |
|---|---|---|---|---|
| 21BS700 | (HEARING) Date | Time | Dept | REFERENCE NO.<br>Dulce |

<div align="center">PROOF OF SERVICE</div>

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS
ACTION, AND I SERVED THE:

    THREE-DAY NOTICE TO PAY OR QUIT


TO THE TENANT: Razavi Global Media


ADDRESS: 1720 Abbot Kinney Blvd
      Venice         CA       90291

BY PERSONALLY SERVING: KAMRAN RAZAVI, OWNER
                PERSON AUTHORIZED TO RECEIVE

DATE OF DELIVERY:   8/17/2011   TIME OF DELIVERY:  4:00:00 PM


| 7a. Person Serving: | Brian | Fecher | d. The fee for service was | $44.90 |
|---|---|---|---|---|

e. I am:

   (1)      not a registered California process server:
   (3) X    registered California process server.

b. DDS Legal Support
2900 Bristol St
Costa Mesa, Ca 92620

   (i) Independent Contractor
   (ii) Registration No:          6402
   (f) County:   LOS ANGELES

c. (714) 662-5555

8. I declare under the penalty of perjury under the laws of the State of California that the
foregoing is true and correct.   Brian       Fecher
8/19/2011

X _____
                       SIGNATURE

Form Approved for Optional Use Judicial
Council of California
POS-010 [REV Jan 1 2007]

<div align="center">PROOF OF SERVICE</div>

CRC 982(A)(23)

<div align="right">**ER-101**</div>

| ATTORNEY OR PARTY (WITHOUT ATTORNEY) (Name and Address) | TELEPHONE NO. | FOR COURT USE ONLY |
|---|---|---|
| Nolis Enterprises<br>4221 Wilshire Blvd Ste 282<br>Los Angeles      CA        90010 | (323) 930-6550 | |

ATTORNEY FOR (Name)

(Name of Court, Name of Judicial District and Branch Court if any)

SHORT TITLE OF CASE

| 2186736 | (HEARING) Date | Time | Dept | Case Number: |
|---|---|---|---|---|
| | | | | REFERENCE NO.:<br>Dulce |

PROOF OF SERVICE

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND I SERVED THE:

THREE-DAY NOTICE TO PAY OR QUIT

BY SERVING SAID NOTICE AS AUTHORIZED BY C.C.P. 1162(2,3)

TO THE TENANT:     Razavi Global Media, Kamran Razavi and Clarissa

Costa, and all other tenants, subtenants, adult occupants, and other in possession of the premises

ON:    8/17/2011    TIME OF DELIVERY: 7:22:00 PM

BY POSTING A COPY OF SAID NOTICE IN A CONSPICUOUS PLACE ON THE PROPERTY THEREIN DESCRIBED, THERE BEING NO PERSON OF SUITABLE AGE OR DISCRETION TO BE FOUND AT ANY KNOWN PLACE OF RESIDENCE OR BUSINESS OF SAID TENANT; AND MAILING A COPY TO SAID TENANT BY DEPOSITING SAID COPIES IN THE UNITED STATES MAIL IN A SEALED ENVELOPE WITH POSTAGE FULLY PREPAID, ADDRESSED TO THE TENANT AT:

ADDRESS:  16943 Dulce Ynez Lane                    ON  8/17/2011
Pacific Palisades       CA        90272

| 7a. Person Serving: | Brian | Fecher | d. The fee for service was | $56.90 |
|---|---|---|---|---|

e. I am:

(1)    not a registered California process server.
(3) X   registered California process server.
    (i) Independent Contractor
    (ii) Registration No.:                    6402
    (iii) County:    LOS ANGELES

b. DDS Legal Support
2900 Bristol St
Costa Mesa, Ca 02626

c. (714) 662-5555

0. I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.    Brian    Fecher

8/19/2011

X _____
                          SIGNATURE

Form approved for Optional Use as default
Council of California
POS-010 (REV Jan 1 2007)    PROOF OF SERVICE    CRC 982(A)(23)

**ER-102**

PROOF OF SERVICE

1

2  STATE OF CALIFORNIA        )
                             ) ss
3  COUNTY OF LOS ANGELES      )

4        I am employed in the county of Los Angeles, state of California. I am over the age of 18
5  and not a party to the within action; my business address is 1110 South Robertson Blvd, Suite 1,
   Los Angeles, CA. 90035.
6        On March 21, 2012, I served the foregoing documents described as First Amended
   Complaint
7  on the interested parties in this action by placing a true and correct copy thereof in a sealed
   envelope addressed as follows:

8

9  Richard Ormond
   1000 Wilshire Boulevard
10 Suite 1500
   Los Angeles, California 90017-2457
11 Fax: (213) 896-0400

12 Nazanin Mazgani, Esq. State Bar No. 270258
   Law Offices of Nazanin Mazgani
13 1110 South Robertson Blvd, Suite 1
   Los Angeles, CA. 90035
14
15 Malcolm Bennett
   State Court Receiver
16 11215 South Western Ave
   Los Angeles, CA 90047

17  _X__ (BY FIRM PRACTICE) I am "readily familiar" with the firm's practice of collection and
    processing correspondence for mailing. It is deposited with the U. S. postal service on the same
18  day in the ordinary course of business. I am aware that on motion of a party served, service is
    presumed invalid if postal cancellation date or postage meter date is more than one day after date
19  of deposit for mailing in affidavit.

20
    ____ (BY ELECTRONIC TRANSMISSION) I caused all of the pages of the above entitled
21  documents to be sent to the recipients noted above via electronic transfer (FAX) at the respective
    telephone numbers indicated above.
22

23  _X__ (STATE) I declare under penalty of perjury under the laws of the State of California that
    the above is true and correct.
24

25  _X__ I declare that I am employed in the office of a member of the bar of this court at whose
    direction this service was made.
26
        Executed on the 21st day of March, 2012, at Los Angeles, California.
27

28                                                    N. Mazgani

_____
                                 Proof of Service

**ER-103**

# EXHIBIT "E"

ER-104



ESCROW OF THE WEST

9440 SANTA MONICA BLVD., SUITE
BEVERLY HILLS, CA 902
TEL: (310) 402-555£
FAX: (310) 402-555£
www.oscrowofthewosl.com

**SELLER'S CLOSING STATEMENT**
Estimated

| | |
|---|---|
| Escrow Number: 4816-GO | Title Order Number: 10808711 |
| Escrow Officer: Galit Ofengert | Date: 10/30/2008, 2:53:46PM |
| | Closing Date: 11/14/2008 |

Buyer/Borrower: Magzani Trust and/or Assignee
Seller: Zavala Soto Daniel
Property: 859 3rd Avenue, Los Angeles, CA 90005

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| TOTAL CONSIDERATION | | 430,000.00 |
| PRORATIONS/ADJUSTMENTS: | | |
| Property Tax @ 5,356.00 per 6 month(s) 7/01/2008 to 11/21/2008 | 4,196.73 | |
| COMMISSION(S): | | |
| Listing Broker: Nelson Shelton and Associates | 8,600.00 | |
| Selling Broker: Alex Katz | 8,600.00 | |
| TITLE CHARGES | | |
| Owner's Premium for 430,000.00: LandAmerica Commonwealth Title Owner's Premium | 1,500.00 | |
| Wire/Express: LandAmerica Commonwealth Title | 25.00 | |
| County Transfer Tax: LandAmerica Commonwealth Title | 473.00 | |
| City Transfer Tax: LandAmerica Commonwealth Title | 1,935.00 | |
| Sub Escrow Fee: LandAmerica Commonwealth Title | 75.00 | |
| Grant Deed Seller's: LandAmerica Commonwealth Title | 50.00 | |
| ESCROW CHARGES TO: Escrow of the West | | |
| Escrow Fee | 917.00 | |
| Wire Fee | 25.00 | |
| Archive Fee | 50.00 | |
| Overnight Fees | 50.00 | |
| LOAN PAYOFF: To Be Determined | | |
| Principal Balance    391,170.18 | | |
| Total Loan Payoff | 391,170.18 | |
| TAXES: | | |
| Property Tax to: To Be Determined | 12,204.07 | |
| ADDITIONAL DISBURSEMENTS: | | |
| Natural Hazard Report Fee: Property ID | 114.00 | |
| Filing Fee: Los Angeles Department of Water and Power | 15.00 | |
| Account Services unit | | |
| TOTALS | 430,000.00 | 430,000.00 |

Zavala Soto Daniel

THIS IS AN ESTIMATED CLOSING STATEMENT FIGURES ARE SUBJECT TO CHANGE

☞ OMB No. 2503-0265

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. | TYPE | OF | LOAN |
|---|---|---|---|---|
| SETTLEMENT STATEMENT | 1. ☐ FHA   3. ☐ FHMA   3. ☐ CONV. UNINS. | | | |

[Escrow of the West logo]
1443 Colin Adeatic Sure, Suite 360
Sromio Fallo, CA 91413
Fac 818.123.1234
Fac 818.423.1234

4. ☐ VA   5. ☐ CONV. INS.
6. FILE NUMBER:  4816-GG
7. LOAN NUMBER:
8. MORTGAGE INS. CASE NO.:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME & ADDRESS OF BORROWER: | Magtanit Trust and/or Assignee  10951 Pico Blvd, Suite 319, Los Angeles, CA 90064 |
|---|---|
| E. NAME & ADDRESS OF SELLER: | Zovnla Soto Daniel |
| F. NAME & ADDRESS OF LENDER: | To Be Determined |
| G. PROPERTY LOCATION: | 859 3rd Avenue, Los Angeles, CA 90005 |
| H. SETTLEMENT AGENT: | Escrow of the West |
| PLACE OF SETTLEMENT: | 9448 Santa Monica Boulevard, Suite 310, Beverly Hills, CA  90210 (310) 403-5555 |
| I. SETTLEMENT DATE: | 11/14/2006   Estimated |

| J. | Summary of Borrower's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| 100. Gross Amount Due From Borrower: | | | 400. Gross Amount Due To Seller: | | |
| 101. Contract sales price | | | 401. Contract sales price | | 430,000.00 |
| 102. Personal property | | | 402. Personal property | | |
| 103. Settlement charges to borrower (line 1400) | | | 403. | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| | | | | | |
| | | | | | |
| Adjustments For Items Paid By Seller In Advance | | | Adjustments For Items Paid By Seller In Advance | | |
| 106. City/town taxes | to | | 406. City/town taxes | to | |
| 107. County taxes | to | | 407. County taxes | to | |
| 108. Assessments | to | | 408. Assessments | to | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 113. | | | 413. | | |
| 114. | | | 414. | | |
| 115. | | | 415. | | |
| 116. | | | 416. | | |
| 120. Gross Amount Due From Borrower: | | | 420. Gross Amount Due To Seller: | | 430,000.00 |
| 200. Amounts Paid By Or In Behalf Of Borrower: | | | 500. Reductions In Amount Due To Seller: | | |
| 201. Deposit or earnest money | | | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | | | 502. Settlement charges to seller (line 1400) | | 22,429.00 |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | | |
| 204. | | | 504. Payoff 1st Mtg. La. To Be Determined | | 391,170.18 |
| 205. | | | 505. Payoff 2nd Mtg. La. | | |
| 206. | | | 506. Property Tax | | 12,204.02 |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| | | | | | |
| | | | | | |
| Adjustments For Items Unpaid By Seller | | | Adjustments For Items Unpaid By Seller | | |
| 210. City/town taxes | to | | 510. City/town taxes | to | |
| 211. County taxes | to | | 511. County taxes  07/01/06  to  11/30/06 | | 4,196.73 |
| 212. Assessments | to | | 512. Assessments | to | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| | | | | | |
| 220. Total Paid By/For Borrower: | | | 520. Total Reductions In Amount Due Seller: | | 430,000.00 |
| 300. Cash At Settlement From/To Borrower: | | | 600. Cash At Settlement From/To Seller: | | |
| 301. Gross amount due from borrower (line 120) | | | 601. Gross amount due to seller (line 420) | | 430,000.00 |
| 302. Less amount paid by/for borrower (line 220) | | | 602. Less reductions in amount due seller (line 520) | | 430,000.00 |
| 303. Cash (☐ FROM) (☐ TO) Borrower | | 0.00 | 603. Cash (☐ TO) (☐ FROM) Seller | | 0.00 |

Previous Edition is Obsolete
Form No. 1131
1/06

Page 1 of 2

SB-J-J3JX-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

ER-106

| L. | SETTLEMENT CHARGES | Escrow: 4R16-GO | |
|---|---|---|---|
| 700. Total Sales/Broker's Commission: Based On Price $ 430,000.00 @ 4.00 %= 17,300.00 | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
| Division of Commission (line 700) As Follows: | | | |
| 701. $   8,600.00 to  Nelson Shelton and Associates | | | |
| 702. $   8,600.00 to  Alex Katz | | | |
| 703. Commission paid at settlement | | | 17,300.00 |
| 704. | | | |
| 800. Items Payable In Connection With Loan: | | | |
| 801. Loan Origination fee   % | | | |
| 802. Loan Discount   % | | | |
| 803. Appraisal fee to: | | | |
| 804. Credit report to: | | | |
| 805. Lender's inspection fee | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Assumption fee | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 816. | | | |
| 817. | | | |
| 818. | | | |
| 819. | | | |
| 820. | | | |
| 821. | | | |
| 900. Items Required By Lender To Be Paid In Advance: | | | |
| 901. Interest from   to   @$   /day   (0 days) | | | |
| 902. Mortgage insurance premium for   mo. to | | | |
| 903. Hazard insurance premium for   yrs. to | | | |
| 904. Flood insurance premium for   yrs. to | | | |
| 905. | | | |
| 906. | | | |
| 1000. Reserves Deposited With Lender: | | | |
| 1001. Hazard insurance   months @$   per month | | | |
| 1002. Mortgage insurance   months @$   per month | | | |
| 1003. City property taxes   months @$   per month | | | |
| 1004. County property taxes   months @$   per month | | | |
| 1005. Annual assessments   months @$   per month | | | |
| 1006. Flood Insurance   months @$   per month | | | |
| 1007. | | | |
| 1008. Aggregate Adjustment | | | |
| 1009. | | | |
| 1100. Title Charges: | | | |
| 1101. Settlement or closing fee to Escrow of the West | | | 917.00 |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| (includes above item Numbers: | )| | |
| 1108. Title Insurance to LandAmerica Commonwealth Title | | | |
| (includes above item Numbers: | )| | 1,500.00 |
| 1109. Lender's coverage  $ | | | |
| 1110. Owner's coverage  $ 430,000.00 Premium: $1,500.00 | | | |
| 1111. Grant Deed Seller's to LandAmerica Commonwealth Title | | | 50.00 |
| 1112. Wire Fee to Escrow of the West | | | 35.00 |
| 1113. Archive Fee to Escrow of the West | | | 50.00 |
| 1114. Exhibit "C" Attached Hereto | | | 150.00 |
| 1200. Government Recording and Transfer Charges: | | | |
| 1201. Recording fees: Deed $   ;Mortgage $   ;Release $ | | | |
| 1202. City/county tax/stamps: Deed $  2,408.00   ;Mortgage $ | | | 2,408.00 |
| 1203. State tax/stamps:   Deed $   ;Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| 1300. Additional Settlement Charges: | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. Natural Hazard Report Fee to Property ID | | | 114.00 |
| 1304. Filing Fee to Los Angeles Department of Water and Power Account Services unit | | | 15.00 |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. Total Settlement Charges (Enter on line 103, Section J and line 502, Section K) | | | 22,429.00 |

Form No. 1582 · Page 2 of 2 · SB-(-)15JK-0/00-1

ER-107

ATTACHMENT TO HUD 1                                    Escrow No.:        4R16-GO
Settlement Date: 11/14/2008                             Title No.:         10806711
                                                                           Page:         1

EXHIBIT A: Tax Payment Breakdown
Breakdown of Tax Payments:
County Taxes
Year                                          Amount          Interest           Penalty

EXHIBIT B: (HUD Section 500)                                                  Seller Amount
Reductions In Amount Due To Seller: - Loan Payoff Breakdown:

To Be Determined
Principal Balance To: To Be Determined                                         391,170.18
                                          Total:                              391,170.18

EXHIBIT C: (HUD Section 1100)                                                 Seller Amount
Title Charges:
Overnight Fees to Escrow of the West                                              50.00
Wire/Express to LandAmerica Commonwealth Title                                    25.00
Sub Escrow Fee to LandAmerica Commonwealth Title                                  75.00
                                          Total:                                 150.00

**ER-108**

# EXHIBIT "F"

ER-109

# HomEq Servicing

November 14, 2008
Via fax# (323) 927-1845
Attn:   Kevin
RE:     323297705 / 323297713
        Daniel Antonio Zavala-Soto
        859 3rd Avenue
        Los Angeles, CA 90005

To Whom It May Concern:

HomEq agrees to accept $387,071.00 in cash or certified funds to release its mortgage liens from the referenced property subject to the following conditions:

- Daniel Antonio Zavala-Soto is/are to receive no cash or proceeds from the closing, escrow, or sale of the property. All excess funds must be forwarded to HomEq.
- $386,071.00 will be applied to loan #323297705.
- $1,000.00 will be applied to loan #323297713.
- Separate checks must be sent for each loan.
- No other liens, judgements or creditors shall be paid.
- The buyer(s) is/are Magzmi Trust and/Or, Assignee, and the sales price is $430,000.00. Any changes to these must be pre-approved by HomEq.
- Any changes of closing costs, fees, payments, or commissions, provided on the estimated closing statement or estimated HUD 1 dated October 31, 2008, must be pre-approved by HomEq.
- A certified closing statement or HUD-1 must be forwarded with the funds.
- A copy of this demand, signed by Patricia Cochran and Edward Cochran.
- Any amounts forgiven may be reported to the IRS.
- This offer is considered null and void if funds are not received by HomEq by November 21, 2008 or if a foreclosure sale date is set prior to November 21, 2008 then, this offer is considered null and void if funds are not received by HomEq 48 hours prior to the foreclosure sale date.

Please forward funds to:

Mailing/Overnight Instructions:              Wiring Instructions:
HomEq Servicing                               Wachovia National Bank
Attn: Loss Mitigation CA3333                  301 S. COLLEGE STREET
4837 Watt Avenue Suite 200                    CHARLOTTE, NC 28288
North Highlands, CA 95660                     ABA #053-000-219
                                              CREDIT TO: HomEq SERVICING
                                              ACCOUNT# 2000032626780
                                              ATTN: Early Stage Loss Mitigation
                                              OBI (Originating Bank Info):
                                              Loan Number, Borrower name, property address, Reason

Please contact me if you have any questions.
Sincerely,
                                              _____
                                              Daniel Antonio Zavala-Soto
Rocio Garcia
Workout Specialist
Phone (800) 414-0969
Fax 1-866-577-1227

HomEq's decision to consider your request for a resolution plan will in no way be construed as an agreement to stop, forbear, or delay the current foreclosure action. Until an agreement is reached in writing and all terms are met, the current foreclosure action will continue.

IMPORTANT: You are hereby notified that we may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may also be reflected on your credit report.

HomEq Servicing is a debt collector. HomEq is attempting to collect a debt and any information obtained will be used for that purpose.

**ER-110**

# EXHIBIT "G"

# CALIFORNIA ASSOCIATION OF REALTORS®

## CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 11/07)

Date __March 10, 2009__, at _____, California.
1. **OFFER:**
   A. THIS IS AN OFFER FROM _____ **HEE SUN LEE, GUEN WOO LEE** _____ ("Buyer").
   B. THE REAL PROPERTY TO BE ACQUIRED is described as __950 3RD AVE, LOS ANGELES  CA  90008__, situated in
      ____LOS ANGELES____, County of ____LOS ANGELES____, California, ("Property").
      Assessor's Parcel No. __5082-024-024__
   C. THE PURCHASE PRICE offered is __Five Hundred Seventy Thousand__
      Dollars $ __570,000.00__
   D. CLOSE OF ESCROW shall occur on _____ (date) or _____ __45__ Days After Acceptance).
2. **FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of ............................................. $ __17,100.00__
      to the agent submitting the offer (or to ☐ _____), by personal check
      (or ☐ _____), made payable to __WHITE HOUSE INVESTMENT INC__
      which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
      (or ☐ _____) with
      Escrow Holder, (or ☐ into broker's trust account).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ...... $ __N/A__
      within _____ Days After Acceptance, or ☐ _____
   C. FIRST LOAN IN THE AMOUNT OF ............................................................................. $ __399,000.00__
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum
          interest of __BPR__ % fixed rate, or _____ % initial adjustable rate with a maximum interest rate
          of _____ %, balance due in _____ __30__ years, amortized over _____ years, Buyer shall
          pay loan fees/points not to exceed _____. (These terms apply whether the designated loan
          is conventional, FHA or VA.)
      (2) ☐ FHA  ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.)
          Seller shall pay _____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer,
          ☐ not to exceed $ _____. Seller shall pay the cost of lender required Repairs (including
          those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed
          $ _____. (Actual loan amount may increase if mortgage insurance premiums, funding
          fees or closing costs are financed.)
   D. ADDITIONAL FINANCING TERMS: ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing, .......... $ __N/A__
      (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B)

   E. BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of .. $ __153,900.00__
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. PURCHASE PRICE (TOTAL): ................................................................................. $ __570,000.00__
   G. LOAN APPLICATIONS: Within 7 (or ☐ _____) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within 7 (or ☐ _____) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. LOAN CONTINGENCY REMOVAL: (i) Within 17 (or ☐ __32__) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
   J. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or ☐ _____) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or ☐ _____) Days After Acceptance.
   K. ☐ NO LOAN CONTINGENCY (if checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   L. ☐ ALL CASH OFFER (if checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ _____) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
3. **CLOSING AND OCCUPANCY:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at _____ __5__ ☐ AM ☐ PM, ☒ on the date of Close Of Escrow;
      ☐ on _____; or ☐ no later than _____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their insurance and legal advisors.

                                                              Buyer's Initials (____)(____)
                                                              Seller's Initials (____)(____)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
RPA-CA REVISED 11/07 (PAGE 1 OF 8)           **CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Agent: __White House Investment Inc.__   Phone: __(213) 674-2855__   Fax: __(213) 674-2855__   Prepared using WINForms® software
Broker: __White House Investment Inc.__   3660 Wilshire Blvd, Suite 1101, Los Angeles CA 90010

**ER-112**

869 3RD AVE

Property Address: LOS ANGELES, CA  90005                                Date: March 20, 2009

C. Tenant-occupied property: (i) Property shall be vacant at least 5 (or [   ]  ____) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (if checked) [ ] Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

OR (iii) (if checked) [ ] This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. ALLOCATION OF COSTS (if checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. WOOD DESTROYING PEST INSPECTION:
(1) [ ] Buyer [X] Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _____, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: [ ] detached garages and carports, [ ] detached decks, [ ] the following other structures or areas _____. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) [X] (if checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. OTHER INSPECTIONS AND REPORTS:
(1) [ ] Buyer [ ] Seller shall pay to have septic or private sewage disposal systems inspected _____
(2) [ ] Buyer [ ] Seller shall pay to have domestic wells tested for water potability and productivity _____
(3) [ ] Buyer [X] Seller shall pay for a natural hazard zone disclosure report prepared by LOS OR PROPERTY ID _____
(4) [ ] Buyer [ ] Seller shall pay for the following inspection or report _____
(5) [ ] Buyer [ ] Seller shall pay for the following inspection or report _____

C. GOVERNMENT REQUIREMENTS AND RETROFIT:
(1) [ ] Buyer [X] Seller shall pay for smoke detector installation and/or water heater bracing. If required by Law, Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
(2) [ ] Buyer [X] Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.

D. ESCROW AND TITLE:
(1) [X] Buyer [ ] Seller shall pay escrow fee 50/50 PAYS EACH THEIR OWN
    Escrow Holder shall be HILLSIDE ESCROW COMPANY
(2) [ ] Buyer [X] Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
    Owner's title policy to be issued by CHICAGO  TITLE
    (Buyer shall pay for any title insurance policy insuring Buyer's Lender, unless otherwise agreed in writing.)

E. OTHER COSTS:
(1) [ ] Buyer [X] Seller shall pay County transfer tax or transfer fee _____
(2) [ ] Buyer [X] Seller shall pay City transfer tax, or transfer fee _____
(3) [ ] Buyer [ ] Seller shall pay HOA transfer fee _____
(4) [ ] Buyer [ ] Seller shall pay HOA document preparation fees _____
(5) [ ] Buyer [ ] Seller shall pay the cost, not to exceed $ _____, of a one-year home warranty plan, issued by _____
    with the following optional coverage: _____
(6) [ ] Buyer [ ] Seller shall pay for _____
(7) [ ] Buyer [ ] Seller shall pay for _____

5. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:
A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordinance location disclosure (C.A.R. Form SSD).
(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Buyer's Initials (____)(____)
Seller's Initials (____)(____)

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 2 OF 8)

Reviewed by _____ Date _____

HYE SUN LEE &

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)

ER-113

03/17/2009  16:17   310-271-0879   NELSON SHELTON   PAGE  04

859 3RD AVE
Property Address: LOS ANGELES, CA 90005   Date: March 10, 2009

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

6. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:
A. SELLER HAS: 7 (or [ ] _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).

B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or [ ] _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

7. CONDITIONS AFFECTING PROPERTY:
A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close of Escrow.

B. SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).

C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

8. ITEMS INCLUDED AND EXCLUDED:
A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

B. ITEMS INCLUDED IN SALE:
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and
(3) The following items: _____
(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
(5) All items included shall be transferred free of liens and without Seller warranty.

C. ITEMS EXCLUDED FROM SALE: _____

9. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:
A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Buyer's Initials ( ___ ) ( ___ )
Seller's Initials ( ___ ) ( ___ )

Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 3 OF 8)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)

HYE SUN LEE &

MAR-10-2009(TUE) 18:09   WHITE HOUSE INVESTMENT, INC.   (FAX)13136746655   P. 007/023

**ER-114**

03/17/2009   16:17    310-271-0879                 NELSON SHELTON                      PAGE  05

859 3RD AVE

Property Address: LOS ANGELES, CA  90005                                    Date: March 10, 2009

10. REPAIRS: Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY: Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. TITLE AND VESTING:
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest, including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. SALE OF BUYER'S PROPERTY:
   A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.
   OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).
   A. SELLER HAS: ___ (or ☐ _____ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and 6, 9A, 7B and 12.
   B. (1) BUYER HAS: 17 (or ☒ 12 ) Days After Acceptance, unless otherwise agreed in writing, to:
      (i) complete all Buyer investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 6 and insurability of Buyer and the Property); and
      (ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.
      (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
      (3) By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (i) government-mandated inspection/reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has 5 (or ☐ _____ ) Days After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.
   C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:
      (1) Seller right to Cancel; Buyer Contingencies. Seller, after first giving Buyer a Notice to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.
      (2) Continuation of Contingency: Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).
      (3) Seller right to Cancel; Buyer Contract Obligations. Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2G; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.
      (4) Notice To Buyer To Perform: The Notice to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 4 OF 8)

Buyer's Initials ____ / ____
Seller's Initials ____ / ____

Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)                   HYE SUN LEE &

MAR-10-2009(TUE) 16:09       WHITE HOUSE INVESTMENT, INC.            (FAX)21367142665            P.008/023

ER-115

03/17/2009  16:17    310-271-8879                NELSON SHELTON                    PAGE  85

859 3RD AVE
Property Address: LOS ANGELES, CA  90005                                Date: March 10, 2009

D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES: If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (I) completed all Buyer investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (II) elected to proceed with the transaction; and (III) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

15. FINAL VERIFICATION OF CONDITION: Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

16. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.
BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)

|  | Buyer's Initials /__/ ___/ | Seller's Initials /__/ ___/ |

17. DISPUTE RESOLUTION:
A. MEDIATION: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraph 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

|  | Buyer's Initials /__/ ___/ | Seller's Initials /__/ ___/ |
|  | Buyer's Initials /__/ ___/ | Seller's Initials /__/ ___/ |

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 5 OF 8)

| Reviewed by _____ | Date _____ | EQUAL HOUSING OPPORTUNITY |

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)                HYE SUN LEE &

P. 009/023          (FAX)2125 36746665          WHITE HOUSE INVESTMENT, INC.          MAR-10-2009(TUE) 16:10

ER-116

859 3RD AVE
Property Address: LOS ANGELES, CA  90009                           Date: March 10, 2009

18. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS: Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

19. WITHHOLDING TAXES: Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

20. MULTIPLE LISTING SERVICE ("MLS"): Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. EQUAL HOUSING OPPORTUNITY: The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. ATTORNEY FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. SELECTION OF SERVICE PROVIDERS: If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES: Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

25. OTHER TERMS AND CONDITIONS, including attached supplements:
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers:                              )
    C. ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    D. ☐ Seller shall provide Buyer with a completed Seller Property Questionnaire (C.A.R. form SPQ) within the time specified in paragraph 14A.
    E.

26. DEFINITIONS: As used in this Agreement:
    A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. "Agreement" means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
    D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
    F. "Days" means calendar days, unless otherwise required by Law.
    G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. "Notice to Buyer to Perform" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(4)) to remove a contingency or perform as applicable.
    L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. Singular and Plural terms each include the other, when appropriate.

Buyer's Initials (    )(    )
Seller's Initials (    )(    )
Reviewed by ____ Date ____

620/010.P   :9952ET2ET2(FAX)       WHITE HOUSE INVESTMENT, INC.     11:01 (3UT)6002-10-RAM

**ER-117**

Property Address: 859 3RD AVE
LOS ANGELES, CA  90005_____ Date: March 10, 2009
27. AGENCY:
  A. DISCLOSURE: Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."
  B. POTENTIALLY COMPETING BUYERS AND SELLERS: Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
  C. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
    Listing Agent  NELSON, SHELTON + ASSOC._____ (Print Firm Name) is the agent
    of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
    Selling Agent _____WHITE HOUSE INVESTMENT INC_____ (Print Firm Name) (if not same
    as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and
    Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:
  A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25E, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
  B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance
    (or ☐ _____). Buyer and Seller authorize Escrow
    Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.
  C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.
  D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.
29. BROKER COMPENSATION FROM BUYER: If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.
30. TERMS AND CONDITIONS OF OFFER:
  This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 7 OF 8)

Buyer's Initials ( ____ )( ____ )
Seller's Initials ( ____ )( ____ )
Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)

RYE SUN LEE &

ER-118

03/17/2009  16:17    310-271-0879         NELSON SHELTON              PAGE  09

859 3RD AVE

Property Address: LOS ANGELES, CA 90005                    Date: March 10, 2009

31. EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it by 6:00 PM on the third Day after this offer is Signed or Buyer (or, if checked, □ by _____ (date), at _____ □ AM □ PM.

Date March 10, 2008                            Date March 10, 2009
BUYER _____                 BUYER _____
HYE SUN LEE                                    SEUNGHOO LEE
[Print name]                                   [Print name]

(Address)

32. BROKER COMPENSATION FROM SELLER:
   A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
   B. If escrow does not close, compensation is payable as specified in that separate written agreement.
33. ACCEPTANCE OF OFFER: Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
□ (if checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED _____

Date 3/16/2009                                 Date _____
SELLER _____                 SELLER _____
[Print name] 18594 Mass  Los Angeles A 90021    [Print name]
(Address)

(____/____) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
(Initials)    agent on (date) _____ at _____ □ AM □ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

REAL ESTATE BROKERS:
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 27.
C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) □ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) WHITE HOUSE INVESTMENT INC            DRE Lic. #01529278
By DANIEL KIM                DRE Lic. #01035636   Date March 10, 2009
Address 3660 WILSHIRE BL. #1101    City LOS ANGELES    State CA    Zip 90010
Telephone 213-709-6048    Fax (213)674-2005    E-mail wpremier4@mail.com

Real Estate Broker (Listing Firm) NELSON, SHELTON + ASSOC              Lic. # _____
By PAT SALINA                          License # _____   Date _____
Address 555 N. CANON DR              City Beverly Hills    State CA    Zip 90210
Telephone 310-271-2.2.2.    Fax _____    E-mail ADENIKA21@AOL.com

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, □ a deposit in the amount of $ _____ ), counter offer numbers _____, and _____ , and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____.

Escrow Holder ALLEGRO ESCROW COMPANY                          Escrow # _____
By _____                                                Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of □ Corporations, □ Insurance, □ Real Estate. License # _____

(____/____) REJECTION OF OFFER: No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's Initials)  _____ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS who subscribe to its Code of Ethics.

    Published and Distributed by:
    REAL ESTATE BUSINESS SERVICES, INC.
    a subsidiary of the California Association of REALTORS
    525 South Virgil Avenue, Los Angeles, California 90020

RPA-CA REVISED 11/07 (PAGE 8 OF 8)    Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)    HYE SUN LEE A

MAR-10-2009(TUE) 16:17    WHITE HOUSE INVESTMENT, INC.    (FAX)213 674 2665    P. 012/023

ER-119



CALIFORNIA
ASSOCIATION
OF REALTORS®

**BUYER'S INSPECTION ADVISORY**
(C.A.R. Form BIA-A, Revised 10/02)

Property Address: 859 SRD AVE, LOS ANGELES CA 90005                                    ("Property");

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**

1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pools/spas, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)

2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)

3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.

4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
BIA-A REVISED 10/02 (PAGE 1 OF 2)

| Buyer's Initials | ( ___ ) ( ___ ) |
|---|---|
| Seller's Initials | ( ___ ) ( ___ ) |
| Reviewed by | Date |



**BUYER'S INSPECTION ADVISORY (BIA-A PAGE 1 OF 2)**

Agent: White House Investment, Inc.        Phone: (213) 674-2606      Fax: (213) 674-2605      Prepared using WINForms® software
Broker: White House Investment, Inc.       3550 Wilshire Blvd. Suite 1101, Los Angeles CA 90010

**ER-120**

03/17/2009   16:17   310-271-8879          NELSON SHELTON                    PAGE 11

Property Address: 850 3RD AVE., LOS ANGELES CA 90005                        Date: March 10, 2009

5. **ROOF:** Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)
6. **POOL/SPA:** Cracks, leaks or operational problems. (Pool contractors are best suited to determine these conditions.)
7. **WASTE DISPOSAL:** Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
8. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.
9. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)
10. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)
11. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)
12. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)
13. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)
14. **SECURITY AND SAFETY:** State and local law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about those restrictions and other requirements.)
15. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances; protected species, wetland properties, botanical diseases, history or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents of a Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

> Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (x) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyer is encouraged to read it carefully.

| | |
|---|---|
| _____ 03/10/2009 | _____ 03/10/2009 |
| Buyer Signature          Date | Buyer Signature          Date |
| HYE SUN LEE | GUEN YOO LEE |
| _____ 3/16/09 | _____ |
| Seller Signature         Date | Seller Signature         Date |

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

BIA-A REVISED 10/02 (PAGE 2 OF 2)

BUYER'S INSPECTION ADVISORY (BIA-A PAGE 2 OF 2)

03/17/2009                                (FAX)213/746665        WHITE HOUSE INVESTMENT, INC.     MAR-01-2009(TUE) 10:13        P.014/023

**ER-121**

03/17/2009  16:17   310-271-0879         NELSON SHELTON                PAGE  12



CALIFORNIA
ASSOCIATION
OF REALTORS®

ADDENDUM

(C.A.R. Form ADM, Revised 10/01)

No. 1

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Residential Purchase Agreement,
☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental
Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property
Purchase Agreement, ☐ other _____

dated  March 10, 2009 , on property known as 959 3RD AVE
LOS ANGELES, CA, 90005 _____ ("Buyer/Tenant"),
in which  HYE SUN LEE, GUEN HOO LEE _____ is referred to as ("Buyer/Tenant")
and _____ is referred to as ("Seller/Landlord").

1. SUBJECT TO CANCELLATION OF EXISTING ESCROW.

2. SELLER CREDIT TO THE BUYER AMOUNT OF $ 3000 DOLLARS FOR TERMITE REPAIR

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date March 10, 2009          Date  3/16/09

Buyer/Tenant _____        Seller/Landlord _____
             HYE SUN LEE                                                          X

Buyer/Tenant _____        Seller/Landlord subject to attached counter offer 3/16/09
             GUEN HOO LEE

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means,
including facsimile or computerized formats. Copyright © 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC., ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark
which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____
Broker or Designee

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

ADDENDUM (ADM-11 PAGE 1 OF 1)

White House Investment, Inc.   3580 Wilshire Blvd. Suite 1101, Los Angeles CA 90010      HYE SUN LEE &
Phone:(213) 674-2066      Fax: (213) 674-2665   White House Investment, Inc.

MAR-10-2009(TUE) 18:19   WHITE HOUSE INVESTMENT, INC.   (FAX)2136742665          P. 023/023

03/17/2009  16:17    310-271-0879    NELSON SHELTON    PAGE 13

**CALIFORNIA ASSOCIATION OF REALTORS®**

# COUNTER OFFER No. _1_
For use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Date __March 16, 2009__ , at __LOS ANGELES__ , California.

This is a counter offer to the: [X] California Residential Purchase Agreement, [ ] Counter Offer, or [ ] Other
dated __March 10, 2009__ , on property known as __859 3RD AVE, LOS ANGELES__ ("Property"),
between __HYE SUN LEE AND GUEN WOO LEE__ ("Buyer") and
__M. MAZGANI FAMILY TRUST__ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C.  *1. PURCHASE AGREEMENT DD.MARCH 10, 2009 TO BE EXTENDED TO MARCH 17, 2009*
   *2. THIS PURCHASE AGREEMENT IS CONTINGENT UPON COMPLETE CANCELLATION OF PRIOR*
   *ESCROW NO.123019-22 ON SUBJECT PROPERTY HELD AT WILSHIRE ESCROW COMP.*
   *3. BUYER TO BE RESPONSIBLE FOR TERMITE WORK SECTION1 AND SECTION 2, SELLER WILL*
   *CREDIT BUYER $ 3,000 TOWARDS TERMITE REPAIR*
   *4. PROPERTY IS OCCUPIED BY TENANTS , PROPERTY WILL BE DELIVERED WITH TENANTS IN*
   *POSSESSION    5. CONTINGENCIES TO BE 7 DAYS FROM ACCEPTANCE*
   D. The following attached supplements are incorporated into this Counter Offer: [ ] Addendum No. _____
   [X] *6. STOVE IN KITCHEN MAY BE EXCLUDED*  [X] *IS NOT ATTACHED*

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposit, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or
who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by [ ]
(date), at _____ [ ] AM [ ] PM. This Counter Offer may be executed in counterparts.

4. [ ] **(if checked:) MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____ , who is authorized to receive it, by 5:00PM on the third Day after this Counter Offer is made or, (if checked) by [ ] (date), at _____ [ ] AM [ ] PM.
Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** [ ] BUYER OR [X] SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
Date __March 16, 2009__
__M. MAZGANI FAMILY TRUST__
_____ Date _____

6. **ACCEPTANCE:** I/WE accept the above Counter Offer (if checked [ ] SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
__HYE SUN LEE AND GUEN WOO LEE__    Date __March 16, 2009__    Time _____ [ ] AM [ ] PM
_____ Date _____ Time _____ [ ] AM [ ] PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
_____ Date _____ Time _____ [ ] AM [ ] PM
_____ Date _____ Time _____ [ ] AM [ ] PM

8. (____/____) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____ , at _____ [ ] AM [ ] PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC., ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.,
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

**COUNTER OFFER (CO PAGE 1 OF 1)**

Agent: Nelson Shelton & Associates    Phone: (310) 271-2229    Fax: (310) 271-0879    Prepared using WINForms® software
Broker: NELSON SHELTON & ASSOCIATES 366 North Canon Drive, Beverly Hills, CA 90210

**ER-123**

# EXHIBIT "H"

ER-124

CALIFORNIA
ASSOCIATION
OF REALTORS®

CALIFORNIA
RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS
For Use With Single Family Residential Property.—Attached or Detached
(C.A.R. Form RPA-CA, Revised 11/07)

Date April 24, 2020 , at , Los Angeles , California.

1. OFFER:
A. THIS IS AN OFFER FROM H. NATHANS FAMILY TRUST (Buyer).
B. THE REAL PROPERTY TO BE ACQUIRED is described as 141 S. CLARK DR3330, LOS ANGELES 90048 , situated in
Assessor's Parcel No. 4335-012-171 , County of LOS ANGELES , California, (Property).
C. THE PURCHASE PRICE offered is Three Hundred Forty-Nine Thousand
Dollars $ 349,000.00 (date) (or [ ] 21 Days After Acceptance).
D. CLOSE OF ESCROW shall occur on

2. FINANCE TERMS: Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below, or (ii) otherwise
agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not
a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of ................................. $ 10,470.00
to the agent submitting the offer (or to [ ] ), by personal check
(or [ ] ), made payable to
which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
or [ ] into Broker's trust account), with
Escrow Holder, (or [ ] into Broker's trust account).
B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ....... $
within Days After Acceptance, or [ ]
C. FIRST LOAN IN THE AMOUNT OF ..............................................................
(1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum
interest of ____ % fixed rate, or ____ % initial adjustable rate with a maximum interest rate
of ____ %, balance due in ____ years, amortized over ____ years. Buyer shall
pay loan fees/points not to exceed ____. (These terms apply whether the designated loan
is conventional, FHA or VA.)
(2) [ ] FHA [ ] VA: (The following terms only apply to the FHA or VA loan that is checked.)
Seller shall pay ____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer,
[ ] not to exceed $ ____. Seller shall pay the cost of lender required Repairs (including
those for wood destroying pest) not otherwise provided for in this Agreement, [ ] not to exceed
$ ____. (Actual loan amount may increase if mortgage insurance premiums, funding
fees or closing costs are financed.)
D. ADDITIONAL FINANCING TERMS: [ ] Seller financing, (C.A.R. Form SFA); [ ] secondary financing, ....... $
(C.A.R. Form PAA, paragraph 4A); [ ] assumed financing (C.A.R. Form PAA, paragraph 4B)
E. BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of .. $ 338,530.00
to be deposited with Escrow Holder within sufficient time to close escrow.
F. PURCHASE PRICE (TOTAL): ........................................................... $ 349,000.00
G. LOAN APPLICATIONS: Within 7 (or [ ] ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan
broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan
specified in 2C above.
H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within
7 (or [ ] ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
I. LOAN CONTINGENCY REMOVAL: (i) Within 17 (or [ ] ) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove
the loan contingency or cancel this Agreement OR (ii) (if checked) [ ] the loan contingency shall remain in effect until the designated loans are
funded.
J. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (OR, if checked, [ ] is NOT) contingent upon the Property appraising at no
less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, [ ] within 17 (or
[ ] ) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement.
If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or [ ] ) Days
After Acceptance.
K. [ ] NO LOAN CONTINGENCY (if checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this
Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or
other legal remedies.
L. [ ] ALL CASH OFFER (if checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or [ ] ) Days After Acceptance,
provide Seller written verification of sufficient funds to close this transaction.

3. CLOSING AND OCCUPANCY:
A. Buyer intends (or [ ] does not intend) to occupy the Property as Buyer's primary residence.
B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at [ ] AM/[ ] PM, [ ] on the date of Close Of Escrow;
[ ] on ____; or [ ] no later than ____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and
occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their
insurance and legal advisors.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized
reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 1991-2007,
CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
RPA-CA REVISED 11/07 (PAGE 1 OF 8)

Buyer's Initials ( )( )
Seller's Initials ( )( )

Reviewed by ____ Date ____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)

Agent: Korolla Poursalimi Phone: 310.271.2226 Fax: 310.271.0079 Prepared using WINForms® software
Broker: Nelson Shelton 365 N. Canon Drive Beverly Hills , CA 90210



EXHIBIT 23
Deponent MARGANI
Date 5/1 Rptr 1626
WWW.DEPOBOOK.COM

ER-125

04/26/2010  21:28    919-271-0879                    NELSON SHELTON                    PAGE  83



Property Address: 143 S. CLARK DR #320  LOS ANGELES, 90048          Date April 24, 2010

(d) if any disclosure or notice specified in EA(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

(e) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

F. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

G. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from the website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

7. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:
A. SELLER HAS: 7 (or ___ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).

B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ___ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law, (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Buyer shall review and either to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

8. CONDITIONS AFFECTING PROPERTY:
A. Unless otherwise agreed: (i) the Property to sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all personal property not included in the sale shall be removed by Close of Escrow.

B. SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).

C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

8. ITEMS INCLUDED AND EXCLUDED:
A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing are not included in the purchase price or excluded from the sale unless specified in 8B or 8C.

B. ITEMS INCLUDED IN SALE:
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air cooler/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and
(3) The following items: _____

(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
(5) All items included shall be transferred free of liens and without Seller warranty.

C. ITEMS EXCLUDED FROM SALE: _____

9. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:
A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Buyer's Initials ___ / ___
Seller's Initials ___ / ___

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/07 (PAGE 5 OF 8)          Reviewed by _____ Date _____
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)          143 S. CLARK DR

ER-127

2010-05-20  15:14                                                                    P 5/15

141. S. CLARK PB#520
Property Address: LOS ANGELES                                    Date: April 24, 2010

10. REPAIRS: Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY: Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property, at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. TITLE AND VESTING:

A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a ULTIMALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer must instruct Escrow Holder in writing and pay any increase in cost.

13. SALE OF BUYER'S PROPERTY:

A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).

A. SELLER HAS: 17 (or ☐ _____) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and D, 6A, 7B, 12 ...

B. (1) BUYER HAS: 17 (or ☐ _____ 70 _____) Days After Acceptance, unless otherwise agreed in writing, to:
(i) complete all Buyer Investigations; approve all disclosure reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and
(ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.

(2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

(3) By the end of the time specified in 14B(1) (or as otherwise specified) as to all Inspections, Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (i) Government mandated inspection reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B are not received, Buyer has 5 (or ☐ _____) Days After receipt of any such Items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.

C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:

(1) Seller right to Cancel; Buyer Contingencies: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.

(2) Continuation of Contingency: Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).

(3) Seller right to Cancel; Buyer Contract Obligations: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 3G; (iv) if Buyer fails to provide verification as required by 3H or 3J; (v) if Seller reasonably disapproves of the verification provided by 3H or 3J; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A; or (vii) if Buyer fails to sign or initial a separate liquidated damages form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.

(4) Notice To Buyer To Perform: The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 2 (or ☐ _____) Days After receipt of the Notice specified in the applicable paragraph to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials (_____)(_____)
Seller's Initials (_____)(_____)

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS, INC.
RPA-CA REVISED 1/10 (PAGE 4 OF 8)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)                141 S. CLARK

**ER-128**

2010-05-20 15:15                                    >>                              P 6/15

04/26/2010  21:20   310-271-8879         NELSON SHELTON               PAGE  06

141 S. CLARK 18#320
Property Address: LOS ANGELES,   90048                          Date: April 24, 2010

D. EFFECT ON BUYER'S REMOVAL OF CONTINGENCIES: ...

E. EFFECT OF CANCELLATION ON DEPOSITS: ...

15. FINAL VERIFICATION OF CONDITION: Buyer shall have the right to make a final inspection of the Property within 5 (or ____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is in substantial ...

16. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.
BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)     Buyer's Initials ____ / ____     Seller's Initials ____ / ____

17. DISPUTE RESOLUTION:

A. MEDIATION: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. ...

B. ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including but subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."     Buyer's Initials ____ / ____     Seller's Initials ____ / ____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, Inc.
RPA-CA REVISED (4/07 (PAGE 5 OF 8).
Buyer's Initials ____ / ____
Seller's Initials ____ / ____
Reviewed by ____ Date ____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)     141 S. CLARK, P

**ER-129**

2010-05-20  15:15

04/26/2010   21:20    310-271-0079                    NELSON SHELTON                          PAGE  07

P 7/15

Property Address: 162 S. CLARK DR#320, LOS ANGELES, 90048                           Date: April 26, 2010

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California Withholding Law, if required (C.A.R. Forms AS and AB).

20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. **SELECTION OF SERVICE PROVIDERS:** If Broker refers Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Provider. Buyer and Seller may select ANY Providers of their own choosing.

24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

25. **OTHER TERMS AND CONDITIONS, including attached supplements:**
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____)
    C. ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    D. ☑ Seller shall provide Buyer with a completed Seller Property Questionnaire (C.A.R. form SPQ) within the time specified in paragraph 14A
    E. _____

26. **DEFINITIONS: As used in this Agreement:**
    A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. "Agreement" means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
    D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
    F. "Days" means calendar days, unless otherwise required by Law.
    G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. "Notice to Buyer to Perform" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(1)) to remove a contingency or perform as applicable.
    L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. Singular and Plural terms each include the other, when applicable.

Buyer's Initials ( ____ ) ( ____ )
Seller's Initials ( ____ ) ( ____ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 6 OF 8)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)**

04/26/2010  21:20    310-271-0875          NELSON SHELTON        PAGE  86

iii S. CLARK DR3320.
Property Address: LOS ANGELES,   90048                    Date April 24, 2010
27. AGENCY:
  A. DISCLOSURE: Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."
  B. POTENTIALLY COMPETING BUYERS AND SELLERS: Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement, or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
  C. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
     Listing Agent _____ (Print Firm Name) is the agent
     of (check one): ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
     Selling Agent _____ (Print Firm Name) (if not same
     as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:
  A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any and all other offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25E, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
  B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement or electronic, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.
  C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.
  D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.
29. BROKER COMPENSATION FROM BUYER: If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.
30. TERMS AND CONDITIONS OF OFFER:
  This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer's Initials X _____
Seller's Initials ( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS, INC.
RPA-CA REVISED 11/07 (PAGE 7 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PA 3E7 OF 8)    iii S. CLARK DR

**ER-131**

04/26/2010  21:20    318-271-0879           NELSON SKELTON              PAGE  89

141 S. CLARK DR#520
Property Address 141 S. Adsdciast,   00040           Date April 24, 2010

31. EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit shall be returned unless the Offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer or by
        authorized to personally received it by Buyer, by 5:00 PM on the third Day after this offer is signed by BUYER (or, if checked, □ by
        _____, by _____ AM/ PM, on (date) _____).
Date 0-24-2010                                      Date _____
BUYER _____                              BUYER _____
X. _____ WORLEY RESTLY
(Print name)                                       (Print name)
(Address)

32. BROKER COMPENSATION FROM SELLER:
        A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
        B. If escrow does not close, compensation is payable as specified in that separate written agreement.

33. ACCEPTANCE OF OFFER: Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the
        above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above in Mention of agency relationship. Seller has
        read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
        □ (□ SUBJECT TO ATTACHED COUNTER OFFER, DATED _____)
Date 5/31/2010 //.                                  Date _____
SELLER _____                             SELLER _____
Debra C. Klein
(Print name)  141 S. Clark Dr #520, LA, CA 90048    (Print name)
(Address)

CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
_____ agent on (date) _____ at _____ □ AM  □ PM. A binding Agreement is created when
        a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in
(initials)   this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely
        intended to evidence the date that Confirmation of Acceptance has occurred. _____

REAL ESTATE BROKERS:
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2A.
C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledged receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to
        accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in
        which the Property is offered for sale or a reciprocal MLS; or (ii) □ (if checked) the amount specified in a separate written agreement (C.A.R. Form
        CBC) between Listing Broker and Cooperating Broker.
Real Estate Broker (Selling Firm) NELSON SHELTON & ASSOC               DRE Lic. # _____
By _____ (L. x)  HAROLD WEINSTEIN  DRE Lic. 00185180   Date _____
Address 355 N. CANNON DR                         City BEVERLY HILLS  State CA  Zip 90210
Telephone (310)435-3550      FAX _____   E-mail _____
Real Estate Broker (Listing Firm) NELSON MODESS               DRE Lic. # _____
By _____                               License # _____  Date _____
Address _____                          City _____  State _____  Zip _____
Telephone _____  Fax _____   E-mail _____

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, □ a deposit in the amount of $ _____ ),
counter offer numbers _____                  and agrees to act as Escrow Holder subject to paragraph 26 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____                    Escrow # _____
By _____                               Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of □ Corporations, □ Insurance, □ Real Estate, License # _____

( ___ )  REJECTION OF OFFER: No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's Initials)    (Date) _____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY
PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE. IF YOU DESIRE LEGAL OR TAX ADVICE,
CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark which may be used only by
members of the NATIONAL ASSOCIATION OF REALTORS who subscribe to its Code of Ethics.
        Published and Distributed by:
        REAL ESTATE BUSINESS SERVICES, INC.
        a subsidiary of the California Association of REALTORS
        525 South Virgil Avenue, Los Angeles, California 90020    Reviewed by _____ Date _____
RPA-CA REVISED 11/07 (PAGE 8 OF 8)
        CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)    141 S. CLARK DR

ER-132



CALIFORNIA
ASSOCIATION
OF REALTORS®

SHORT SALE ADDENDUM
(C.A.R. Form SSA, 4/09)

This is an addendum to the ☐ California Residential Purchase Agreement, ☐ Counter Offer, ☐ Other
("Agreement"), dated _____ April 21, 2010 _____
on property known as _____ 141 S. Maple Drive, 203 Maple St. 90068 _____
("Property"), between _____ H. Maegaki Family Trust _____
("Buyer") and
("Seller").

**A. SHORT SALE APPROVAL.** This Agreement is contingent upon Seller's receipt of written consent from all existing secured lenders and lienholders ("Short-Sale Lenders"), no later than 5:00 P.M. on _____ 10-30-2019 _____ (date) ("Short-Sale Contingency Date"), to reduce their respective loan balances by an amount sufficient to permit the proceeds from the sale of the Property to pay the existing balances of loans secured by the Property, real property taxes, brokerage commissions, closing costs, and other monetary obligations, this Agreement requires Seller to pay at Close Of Escrow (including, but not limited to, escrow charges, title charges, documentary transfer taxes, provisions, rehab costs and Repairs) without retaining. Seller to place any funds into escrow or have any remaining obligation on Short-Sale Lender. If by the Short-Sale Contingency Date, either (i) Seller does not receive Short-Sale Lenders' written consent or (ii) Seller fails to give Buyer a copy of Short-Sale Lender's written consent then, either Seller or Buyer, respectively, may cancel the Agreement in writing, and Buyer shall be entitled to a return of any deposit. Seller shall reasonably cooperate with existing Short-Sale lenders in the short-sale process.

**B. TIME PERIODS: BUYER'S DEPOSIT CHECK:**
1. Time periods in the Agreement for inspections, contingencies, covenants, and other obligations: (i) shall begin as specified in the Agreement; or (ii) (if checked) ☐ shall begin the Day After Seller delivers to Buyer written notice of Short-Sale Lenders' consent. However, even if Paragraph-B(ii) is checked, time periods for providing pre-approval/pre-qualification letters and verification of down payment and closing costs shall nonetheless begin as otherwise specified in the Agreement.
2. Buyer's deposit check shall be: (i) immediately handled as provided in the Agreement; or (ii) (if checked) ☐ held uncashed until the Day After Seller delivers to Buyer a written notice of Short-Sale Lenders' consent.

**C. NO ASSURANCE OF LENDER APPROVAL.** Buyer and Seller understand that Short-Sale Lenders: (i) are not obligated to give consent to a short-sale; (ii) may require Seller to forward any other agreements and add (iii) may give consent to other offers. Additionally, Short-Sale Lenders may require that, in order to obtain their approval for a short-sale, some terms of the Agreement, such as the Close of Escrow, be amended or that Seller sign a personal note or some other obligation for all or a portion of the amount of the secured debt reduction. Buyer and Seller do not have to agree to any of Short-Sale Lenders' proposed terms. Buyer, Seller and Brokers do not have control over whether Short-Sale Lenders will consent to a short-sale, or any act, omission, or decision by any Short-Sale Lender in the short-sale process.

**D. BUYER AND SELLER COSTS.** Buyer and Seller acknowledge that each may incur costs in connection with rights or obligations under the Agreement. These costs may include, but are not limited to, payments for loan applications, inspections, appraisals, and other reports. Such costs are to be the sole responsibility of the party incurring them, if Short-Sale Lenders do not consent to the transaction or either party cancels pursuant to the Agreement.

**E. OTHER OFFERS.** Unless otherwise agreed in writing, Seller may continue to market the Property despite acceptance of Buyer's offer, and is present to Short-Sale Lender(s) any additional offers that are received on the Property.

**F. CREDIT, LEGAL AND TAX ADVICE.** Seller is informed that a short-sale may have credit or legal consequences and may result in taxable income to Seller. Seller is advised to seek advice from an attorney, certified public accountant or other expert regarding such potential consequences of a short-sale.

By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a copy of this Short Sale Addendum.

Date _____ 4.21.2010 _____    Date _____ 4/30/2010 _____
Buyer _____    Seller _____
   H. Maegaki Family Trust
Buyer _____    Seller _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

SSA 4/09 (PAGE 1 OF 1)

SHORT SALE ADDENDUM (SSA PAGE 1 OF 1)

Agent: Karolin Petersent    Phone: 310.271.5670    Prepared using WINForms® software
Broker: Nelson Shelton 205 N. Canon Drive   Beverly Hills   CA 90210

# EXHIBIT "I"

ER-134

08/12/2010   21:46   310-271-0879   NELSON SHELTON   PAGE 02

# Wire Transfer Services
# Outgoing Wire Transfer Request



A customer or team member, with the customer present, completes this form when requesting to send a wire. Outgoing wires can only be sent to Wells Fargo customers. Retain the original copy in the bank and provide a copy to the customer ensuring you give the customer the Agreement for Outgoing Wire Transfer Request (page 2 when form is accessed on-line & preprinted on the back of printed forms). Required information is noted with an asterisk. Note: Wells Fargo Wire Transfer Services will route wires based on correspondent banking relationships. See back (page 2) for explanations of the Mexican CLABE account, the SWIFT BIC, the International Routing Code (IRC) and the International Bank Account Number (IBAN).

*Today's Date  8/12/10    *Send Date (If next day submit wire after 4:30 CT. Store must hold if other than today or next day date).  8/12/10

## 1. Originator's Information

*Customer's Name  Neyaz Mazgani    *Phone Number  (310) 479-2773

*Customer's Address, City, State, Zip Code  Massachusetts Avenue Los Angeles CA 9002

*Transfer From Bank Account No.  123    *U.S. Dollar Wire Amount  $243,239,640.5

International Wire Only: When sending in foreign currency, please ensure the beneficiary's account accepts the designated currency.
Funds to be sent in foreign currency  Foreign Currency Type/Name (SWIFT/CHIPS)  *Currency Code (if known)  *Foreign Currency Amount
☐ Yes  ☐ No

## 2. Beneficiary/Recipient Information

*Beneficiary/Recipient Name  Diamond Quality Escrow Inc.

*Beneficiary Account Number, Mexican CLABE & or the International Bank Account Number (IBAN) where applicable:  0003

Beneficiary Address, City, State, Zip Code (A physical address is required)  12-325 Fairfield Ranch Rd #160, Chino Hills, CA 919

Information for the Beneficiary (invoice number, purchase order number, etc.)  Escrow # 10305-MS    Beneficiary Phone Number  (909) 393-9919

## 3. Beneficiary Bank Information

*Beneficiary Bank RTN or SWIFT Bank Identifier Code (SWIFT BIC)  6066    International Routing Code (IRC)

*Beneficiary Bank Name  City National Bank

Beneficiary Bank Address, City, State, Zip Code & Country (optional information)  One Center Point Drive Ste 160, La Palma CA 90623

Information for Beneficiary Bank (wires to Mexican banks require the CLABE account number in the Beneficiary instruction to ensure correct payment)

## 4. Intermediary Bank Information

Optional: Intermediary Beneficiary Bank RTN or SWIFT BIC    International Routing Code (IRC)

*Intermediary Bank Name    Signature Verified    *Intermediary Bank Account No.

Intermediary Bank Address, City, State, Zip, Country (optional information)    Signature

Information for Intermediary Bank    Method

## 5. Wire Fee & Customer Signature

Wire Fee Amount (the Transfer From account will be charged the fee.) The region that houses the account being debited determines the fee amount. Use the fee information available through Teamworks and/or the Banker's Guide. Do not use SVT/SVP for fee when account is not in your region. Additional fees may apply (see page 2 of this form).

*AU Where the Originator's account is located  00001    *Fee Amount  $20.

My signature here indicates agreement to all of the information on this outgoing Wire Transfer Request and to the terms and conditions on the second page of this request. Wells Fargo Bank is authorized to rely on the information on this Request in making the requested funds transfer.

Ex    *Date  8/12/10

## 6. Bank Use Only — Bank Approval — Following MUST be completed for ALL outgoing wires.

International Wire Foreign Currency Information
Rate    Contract No. (required when $15,000 or more U.S.)    FX Trader Contact

*Wire Transaction/EAS Number  IPW-00855-224-S648419    *Name on ID used by customer  Neyaz Mazgani    Method used to verify business acct. transaction authority  SVT

*1st ID type, number issued by State/Country & Expiration Date  CADL  (Received Time) Aug. 13. 12:36PM    *2nd ID type issued by State/Country & Expiration Date    First Approval    Second Approval, if applicable

**ER-135**

# EXHIBIT "J"

ER-136



## CHICAGO TITLE COMPANY

ESCROW RECEIPT AND DISBURSEMENT AUTHORIZATION    PAGE  1

DISBURSEMENT BANK 9G3

ESCROW NUM:    106078630-001    ORDER NUM: 05640-106078630 05640
CLOSER:        DAREN JOHNSON

BUYER:      MAZGANI FAMILY TRUST

SELLER:     DEBRA RICCI

PROPERTY:   141 S CLARK DR, UNIT 320, LOS ANGELES, CALIFORNIA

```
      RECEIPTS
      --------
  RW  000000384983 08/18/10   SUBURBAN MORTGAGE           104,911.37-
  RW  000000001005 08/17/10   HOSHANG MAZGANI             106,000.00
  RW  000000001000 08/16/10   DIAMOND QUALITY ESCROW      238,000.00
  RW  000000384983 08/13/10   SUBURBAN MORTGAGE           104,911.37
                                                          -----------
      TOTAL RECEIPTS                                      344,000.00
                                                          ===========

      DISBURSEMENTS
      -------------
                          CHICAGO TITLE COMPANY
      SETTLEMENT OR CLOSING FEE          125.00
      TITLE INSURANCE                  1,238.00
      Additional Closing Fees             60.39
      RECORDING FEES                      22.00
      CITY/COUNTY TAX/STAMPS           1,971.20
        CHECK TOTAL                                         3,416.59

  W   000000385044 08/17/10   BAC HOME LOANS SERVICING LP
      SHORT PAY                      305,712.00
        CHECK TOTAL                                       305,712.00

  W   000000385043 08/17/10   BAC HOME LOANS SERVICING LP
      SHORT PAY                        3,000.00
        CHECK TOTAL                                         3,000.00

  W   000000385090 08/18/10   DIAMOND QUALITY ESCROW
      PROCEEDS                        31,871.41
        CHECK TOTAL                                        31,871.41
                                                          -----------
      TOTAL DISBURSEMENTS                                 344,000.00
                                                          ===========

      BALANCE                                                   0.00
                                                          ===========
```

08/18/10    12:16   8OH

# EXHIBIT "K"

Mandy Stover

△ π EXHIBIT  13
Deponent MAZ/ANI
Date 6/5/13 Rptr.11626

From:          Bee Peters [bpeters@intercaplending.com]
Sent:          Saturday, August 14, 2010 4:47 PM
To:            mandy@dqescrow.com
Subject:       Mazgani Purchase Transaction

Mandy,

I was given your name as a contact person on the Mazgani purchase transaction. This email serves as a formal request to retract all funds received from our company. We funded this loan without having met all underwriting conditions in order to meet the COE deadline, and unfortunately we have arrived at the conclusion that these conditions can not be met at this or any time. Please ensure that this loan does not record with funds received from Suburban Mortgage Company of New Mexico and that funds are returned promptly.

You can reach me @ 951/256-0477 to discuss or to receive further instructions if needed. Otherwise I will call you first thing Monday morning to confirm receipt of this email.

Thank You for your cooperation,

Bea Peters
Operations Manager
Intercap Lending~
No virus found in this incoming message.
Checked by AVG ~ www.avg.com
Version: 9.0.851 / Virus Database: 271.1.1/3069 - Release Date: 08/15/10 23:35:00

1

**ER-139**

# EXHIBIT "L"

ER-140

KK

| | |
|---|---|
| From: | agentkaro@aol.com |
| Sent: | Tuesday, August 17, 2010 10:36 AM |
| To: | moda@msn.com |
| Subject: | Fwd: ** URGENT ** Wire Confirm: 141 S. Clark / Acct# 872639123 |

Thanks Kevin...I told Neyaz to wire the $ 106,000...Not the commissions $6,000 Included..
That money will come back to you and all the extras...


----Original Message----
From: Oliver Moussa, MBA <oliver@mlglawgroup.com>
To: agentkaro@aol.com
Sent: Tue, Aug 17, 2010 9:59 am
Subject: RE: ** URGENT ** Wire Confirm: 141 S. Clark / Acct# 872639123

Confirmed and agreed to. I will be sending you the wire instructions now.

Regards,


Oliver Moussa, MBA
MLG LAW GROUP
800 S. Robertson Blvd., Suite #2
Los Angeles, CA 90035
Tel 310.422.3374
Fax 310.382.2537
oliver@mlglawgroup.com


From: agentkaro@aol.com [mailto:agentkaro@aol.com]
Sent: Tuesday, August 17, 2010 9:53 AM
To: oliver@mlglawgroup.com
Subject: Fwd: ** URGENT ** Wire Confirm: 141 S. Clark / Acct# 872639123


Oliver,
I will do $ 2,700 and if it's ok with you, you do $ 3,300 and I will tell her to wire
it to Chicago Title....right now!!!
Thanks
karolin


----Original Message----
From: Moda <moda@msn.com>
To: 'Karolin Poursalimi' <agentkaro@aol.com>; 'Mazgani M.' <mimi_mazgani@sbcglobal.net>
Cc: oliver@mlglawgroup.com
Sent: Tue, Aug 17, 2010 8:55 am
Subject: RE: ** URGENT ** Wire Confirm: 141 S. Clark / Acct# 872639123

1

**ER-141**

Dear Oliver and Karoline,

Mimi has asked to borrow money in order to do away with the loans altogether and fund the deal herself. The money is going to cost her 6 points and she needs $100K. She needs a credit against the deal, whether it be a reduction of your commissions, or seller concessions, that will allow her to get the $6,000.00 back (reduction in purchase price). Otherwise, another investor that I deal with will buy this house at the auction on Friday (probably for much less). Mimi will then probably look to Intercap for redress of her injuries / damages. The damages are substantial.

Please confirm that we can find her the $6,000 in the deal in the next hour so that I can arrange for the $100K loan to her. Thank you both.

Kevin Moda

Confidentiality Notice:
This message and any included attachments are intended for the addressee. The information contained in this message is confidential and may constitute inside or non-public information under international, federal, or state securities laws. Unauthorized forwarding, printing, copying, distribution, or use of such information is strictly prohibited and may be unlawful. If you are not the addressee, please promptly delete this message and notify the sender of the delivery error by e-mail or by calling (323)857-5990.
IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

2

ER-142

# EXHIBIT "M"

ER-143

KK

**From:** Oliver Moussa, MBA <oliver@mlglawgroup.com>
**Sent:** Tuesday, August 17, 2010 10:41 AM
**To:** 'Moda'
**Subject:** RE: Sales price reduction; Clark Property.

Thanks. I want to get this file done and over with.

Regards,


Oliver Moussa, MBA

MLG LAW GROUP

800 S. Robertson Blvd., Suite #2

Los Angeles, CA 90035

Tel 310.422.3374

Fax 310.382.2537

oliver@mlglawgroup.com

**From:** Moda [mailto:moda@msn.com]
**Sent:** Tuesday, August 17, 2010 10:38 AM
**To:** 'Oliver Moussa, MBA'; agentkaro@aol.com
**Cc:** 'Mazgani M.'
**Subject:** RE: Sales price reduction; Clark Property.

Ok. Wire on its way out. Thanks.

**From:** Oliver Moussa, MBA [mailto:oliver@mlglawgroup.com]
**Sent:** Tuesday, August 17, 2010 10:33 AM
**To:** 'Moda'; agentkaro@aol.com
**Cc:** 'Mazgani M.'
**Subject:** RE: Sales price reduction; Clark Property.

Kevin,

Karoline has agreed to do $2700 and I have agreed to $3300 for a total of $6000.
The wire needs to be sent out NOW if it is to get to title in time to meet the deadline.

Karoline's rebate will be deducted from her commissions in escrow.
My rebate will be deducted from my bonus check to be given to me by buyer when keys are transferred.

1

ER-144

<u>Wire Instructions attached</u>: Order #106078630 and Daren Johnson is the Title officer

Wire amount: $106,000.

Regards,

Oliver Moussa, MBA

MLG LAW GROUP

800 S. Robertson Blvd., Suite #2

Los Angeles, CA 90035

Tel  310.422.3374

Fax 310.382.2537

oliver@mlglawgroup.com

**From:** Moda [mailto:moda@msn.com]
**Sent:** Tuesday, August 17, 2010 10:23 AM
**To:** oliver@mlglawgroup.com; agentkaro@aol.com
**Cc:** 'Mazgani M.'
**Subject:** Sales price reduction; Clark Property.

Dear Oliver and Karoline,

  I just got a text from Mazgani regarding instructions to wire the monies to title.  Before that can happened, I need you to both confirm that you two have fashioned  a method of purchase price reduction and that you and your principals give up any and all claims that they may have against Mazgani, her counsel, agents, companies, etc.. in the broadest sense of the words.  It is understood and agreed that each of YOU hereby <u>EXPRESSLY WAIVE</u> all rights Under section 1542 of the California Civil Code, which provides as follows:
    GENERAL RELEASE – CLAIMS EXTINGUISHED.
    A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST ON HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

I need you both to email me the dollar amount that needs to be wired into Chicago Title and wiring instruction.  I am asking that you each do this so I have it from the both of you the correct amount that must be wired and your acceptance of the waiver.  Thanks.

Kevin Moda

**Confidentiality Notice:**
This message and any included attachments are from a professional law corporation, and are intended for the addressee. The information contained in this message is confidential and may constitute inside or non-

2

**ER-145**

public information under international, federal, or state securities laws. Unauthorized forwarding, printing, copying, distribution, or use of such information is strictly prohibited and may be unlawful. If you are not the addressee, please promptly delete this message and notify the sender of the delivery error by e-mail or by calling (323)857-5990.

IRS Circular 230 Disclosure:  In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

ER-146

# EXHIBIT "N"

ER-147



Account number: 4796 ◾ August 3, 2010 - September 1, 2010 ◾ Page 2 of 3

**Interest summary**

| | |
|---|---|
| Interest paid this statement | $26.01 |
| Average collected balance | $150,202.49 |
| Annual percentage yield earned | 0.20% |
| Interest earned this statement period | $26.01 |
| Interest paid this year | $312.07 |

**Interest withheld**

| | |
|---|---|
| Interest withheld this period | $7.28 |
| Interest withheld this year | $87.35 |

**Transaction history**

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|
| 8/12 | Deposit Made In A Branch/Store | 2,000.00 | | |
| 8/17 | Wire Trans Svc Charge - Sequence:1008170573021 Srf Fw0085229356145 Trnb1008170573621Rl5a | | 20.00 | |
| 8/17 | WT Fed#08469 Bank Of America N A/Ctr/Bnf=Chicago Title Company Srf=Fw0085229356 Trs Trnb1008170573621Rl5d | | 106,000.00 | 120,537.01 |
| 8/20 | Withdrawal Made In A Branch/Store | | 15,000.00 | 105,537.01 |
| 8/26 | Withdrawal Made In A Branch/Store | | 16,500.00 | 89,037.01 |
| 8/30 | Deposit | 91.80 | | 89,128.81 |
| 8/31 | Withdrawal Made In A Branch/Store | | 6,000.00 | 83,128.81 |
| 9/1 | Interest Payment | 26.01 | | |
| 9/1 | Federal Tax Withheld | | 7.28 | 83,147.54 |
| Ending balance on 9/1 | | | | 83,147.54 |
| Totals | | $2,117.81 | $143,527.28 | |

The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.

* Indicates transactions that count toward Federal Reserve Board Regulation D limits. Please refer to your Account Agreement for complete details of the federally mandated transaction limits for savings accounts.

**Summary of Overdraft and Returned Item fee(s)**

| | Total this statement period | Total year-to-date † |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $7.00 |

† Year-to-date total reflects fees assessed or reversed since first full statement period of current calendar year.

# EXHIBIT "O"

ER-149

  

This page is part of your document - DO NOT DISCARD





**20101149682**

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/18/10 AT 08:00AM

| | | |
|---|---|---|
| FEES: | | 25.00 |
| TAXES: | | 1,971.20 |
| OTHER: | | 0.00 |
| PAID: | | 1,996.20 |

  



L E A D S H E E T



201008180210011

00002825108



002838100

SEQ:
24

DAR - Title Company (Hard Copy)



  

THIS FORM IS NOT TO BE DUPLICATED

t01

**ER-150**

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY

RECORDING REQUESTED BY:
Chicago Title Company

WHEN RECORDED, MAIL TO:
M  Mazgani Family Trust
141 South Clark Drive Unit 320
Los Angeles  CA  90048

ASSESSOR'S PARCEL NO.: 4335-012-121
TITLE ORDER NO.: 106078630-A45
ESCROW NO.: 10303-MS



08/10/2010

*20101149602*

---

THIS SPACE FOR RECORDER'S USE ONLY

**GRANT DEED**

(88)   (41)   (44)   TRA 398

The undersigned Grantor(s) declare that the DOCUMENTARY TRANSFER TAX IS:
$ 387.20 County, $1,584.00 City
XX  computed on the full value of the interest of property conveyed, or
___ computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale
___ OR transfer is EXEMPT from tax for the following reason

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Debra C. Ricci, an Unmarried Woman

HEREBY GRANT(S) to M. Mazgani Family Trust MAHVASH MAZGANI, A WIDOW

All that real property situated in the City of Los Angeles, County of Los Angeles, State of CA, described as:
Please see Legal Description attached hereto and made a part of       SEE EXHIBIT A

Commonly Known As: 141 South Clark Drive Unit 320, Los Angeles, CA  90048

Dated: July 2, 2010

STATE OF CALIFORNIA                    }
COUNTY OF  Los Angeles                 }

On  July 26, 2010, before me,
Rick Aguilar, Notary Public
(Here insert name and title of the officer)

personally appeared  Debra  C.  Ricci

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature _____

_____
Debra C. Ricci

RICK AGUILAR
Commission # 1697161
Notary Public - California
Los Angeles County
My Comm. Expires Oct 2, 2010

(SEAL)

Mail Tax Statements to

SAME AS ABOVE

24

**ER-151**

Order No: 106078630-A43        EXHIBIT "A"

LEGAL DESCRIPTION

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED ONE-ONE-HUNDRED FIFTH (1/105TH) FEE SIMPLE INTEREST AS A TENANT IN
COMMON IN AND TO LOT 1 OF TRACT NO. 62676, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1334 PAGES 48 AND
49, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM THAT PORTION OF SAID LAND WITHIN LOT 245 OF TRACT NO. 7615, IN BOOK
85, PAGES 15 TO 17 INCLUSIVE OF MAPS, ALL OIL, GAS AND OTHER MINERALS IN AND UNDER
SAID LAND LYING BENEATH A PLANE WHICH IS 500 FEET BELOW THE SURFACE OF SAID LAND
BUT WITHOUT THE RIGHT OF ENTRY FROM THE SURFACE THEREOF OR FROM ANY POINT WITHIN
500 FEET OF SAID SURFACE, AS RESERVED IN DEED RECORDED JANUARY 17, 1972 AS
INSTRUMENT NO. 609.

ALSO EXCEPT FROM THAT PORTION OF SAID LAND WITHIN LOT 259 OF SAID TRACT NO. 7615,
ALL OIL, GAS AND OTHER MINERALS IN AND UNDER SAID LAND LYING BENEATH A PLANE WHICH
IS 500 FEET BELOW THE SURFACE OF SAID LAND BUT WITHOUT THE RIGHT OF ENTRY FROM THE
SURFACE THEREOF OR FROM ANY POINT WITHIN 500 FEET OF SAID SURFACE AS RESERVED IN
DEED RECORDED JANUARY 17, 1972 AS INSTRUMENT NO. 610.

ALSO EXCEPT THEREFROM THAT PORTION OF OF SAID LAND WITHIN LOT 258 OF SAID TRACT
NO. 7615, ALL, GAS AND OTHER MINERALS IN AND UNDER SAID LAND LYING BENEATH A PLANE
WHICH IS 500 FEET BELOW THE SURFACE OF SAID LAND BUT WITHOUT THE RIGHT OF ENTRY
FROM THE SURFACE THEREOF OR FROM ANY POINT WITHIN 500 FEET OF SAID SURFACE, AS
RESERVED BY DEED RECORDED FEBRUARY 15, 1972 AS INSTRUMENT NO. 4553.

ALSO EXCEPT THEREFROM UNITS 101 THROUGH 103, INCLUSIVE, 106, 109 THROUGH 111,
INCLUSIVE, 114, 115, 118, 201 THROUGH 212, INCLUSIVE, 214 THROUGH 227, INCLUSIVE,
229, 230, 301 THROUGH 312, INCLUSIVE, 314 THROUGH 330, INCLUSIVE, 401 THROUGH 412,
INCLUSIVE, 414 THROUGH 430, INCLUSIVE, AND 522 THROUGH 530 INCLUSIVE, AS SHOWN ON
THAT CERTAIN CONDOMINIUM PLAN FOR LOT 1 OF TRACT NO. 62676, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 1334, PAGES 48 AND 49
OF MAPS, WHICH CONDOMINIUM PLAN WAS RECORDED ON JUNE 11, 2007 AS INSTRUMENT NO.
2007-1402715, OF OFFICIAL RECORDS, ALL IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

ALSO EXCEPT THEREFROM, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS IN INTEREST, AND
OTHERS, TOGETHER WITH THE RIGHT TO GRANT THE SAME TO OTHERS, SUCH ASSOCIATION
PROPERTY AS DEFINED, DESCRIBED AND SHOWN IN SAID CONDOMINIUM PLAN AND THE
DECLARATION.

PARCEL 2:

UNIT NO. 320, OF LOT 1 OF TRACT NO. 62676, AS SHOWN AND DEFINED IN SAID
CONDOMINIUM PLAN.

LOLDESC1 01/18/80

Page
Order No. 106078630

DESCRIPTION

1

PARCEL 3:

THAT CERTAIN EXCLUSIVE USE ASSOCIATION PROPERTY DECK OR BALCONY SHOWN AND
DESIGNATED IN THE ABOVE-REFERENCED CONDOMINIUM PLAN WITH THE NUMBER DESIGNATION
OF THE UNIT TOGETHER WITH THE LETTER 320 -B CONSISTING OF EXCLUSIVE EASEMENTS
FOR USE THEREOF APPURTENANT TO PARCELS 1 AND 2 ABOVE, AS DEFINED AND DESCRIBED
IN THE DECLARATION AND THE CONDOMINIUM PLAN.

PARCEL 4:

THAT CERTAIN EXCLUSIVE USE ASSOCIATION PROPERTY PARKING SPACE, SHOWN AND
DESIGNATED IN THE ABOVE-REFERENCED CONDOMINIUM PLAN AS 42 -P AND 3 -P AS AN
EXCLUSIVE EASEMENT FOR USE THEREOF APPURTENANT TO PARCELS 1 AND 2 ABOVE, AS
DEFINED AND DESCRIBED IN THE DECLARATION AND THE CONDOMINIUM PLAN.




This page is part of your document - DO NOT DISCARD




20101204308

**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/27/10 AT 08:00AM

| | | |
|---|---|---|
| FEES: | | 41.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 41.00 |





LEADSHEET


201008270140011

00002879491


002057022

SEQ:
18

DAR - Title Company (Hard Copy)


THIS FORM IS NOT TO BE DUPLICATED

T01




**ER-154**

RECORDING REQUESTED BY
Chicago Title Company

WHEN RECORDED, MAIL TO:
M Mazgani Family Trust
10954 Massachusetts Ave.
Los Angeles, CA 90024
ASSESSORS PARCEL NO 4335-012-121
TITLE ORDER NO 106073630-A-13
ESCROW NO 10303-MS



08/27/2010

*20101204308*

APN # 4335-012-121

GRANT DEED

THIS SPACE FOR RECORDERS USE ONLY

"This conveyance ...ansfers the grantor's interest
into his or her revocable living trust, R&T 11911."
"This conveyance tr...    and grantor's interest
into his or her revocable living trust, R&T 11911."

The undersigned Grantor(s) declare that the DOCUMENTARY TRANSFER TAX IS-
S NONE County, NONE City
XX  computed on the full value of the interest or property conveyed, or
___  computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale
___  OR transfer is EXEMPT from tax for the following reason

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Mahvash Mazgani, A Widow

HEREBY GRANT(S) to Mahvash Mazgani, Trustee of THE MAHVASH MAZGANI FAMILY TRUST, dated April 17, 2007

All that real property situated in the City of Los Angeles, County of Los Angeles, State of CA, described as
Please see Legal Description attached hereto and made a part of

Commonly Known As: 141 South Clark Drive Unit 320, Los Angeles, CA 90048

Dated: August 20, 2010

STATE OF CALIFORNIA  Los Angeles
COUNTY OF
On Aug 24, 2010                before me,
Lena M. Kelley Notary Public
(here insert name and title of the officer)
personally appeared  Mahvash Mazgani
who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State
of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature Lena M Kelley

M. Mazgani
Mahvash Mazgani

(SEAL)

LENA M. KELLEY
COMM. # 1694003
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES OCT. 14, 2010

LENA M. KELLEY
COMM. # 1694003
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES OCT. 14, 2010

THIS CONVEYANCE TRANSFERS AN INTEREST IN TO OR OUT OF A LIVING TRUST, R & T 11930.

18

**ER-155**

Order No: 106078630-A43                EXHIBIT "A"                                3

LEGAL DESCRIPTION

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

AN UNDIVIDED ONE-ONE-HUNDRED FIFTH (1/105TH) FEE SIMPLE INTEREST AS A TENANT IN
COMMON IN AND TO LOT 1 OF TRACT NO. 62676, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1334 PAGES 48 AND
49, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT FROM THAT PORTION OF SAID LAND WITHIN LOT 245 OF TRACT NO. 7615, IN BOOK
85, PAGES 15 TO 17 INCLUSIVE OF MAPS, ALL OIL, GAS AND OTHER MINERALS IN AND UNDER
SAID LAND LYING BENEATH A PLANE WHICH IS 500 FEET BELOW THE SURFACE OF SAID LAND
BUT WITHOUT THE RIGHT OF ENTRY FROM THE SURFACE THEREOF OR  FROM ANY POINT WITHIN
500 FEET OF SAID SURFACE, AS RESERVED IN DEED RECORDED JANUARY 17, 1972 AS
INSTRUMENT NO. 609.

ALSO EXCEPT FROM THAT PORTION OF SAID LAND WITHIN LOT 259 OF SAID TRACT NO. 7615,
ALL OIL, GAS AND OTHER MINERALS IN AND UNDER SAID LAND LYING BENEATH A PLANE WHICH
IS 500 FEET BELOW THE SURFACE OF SAID LAND BUT WITHOUT THE RIGHT OF ENTRY FROM THE
SURFACE THEREOF OR FROM ANY POINT WITHIN 500 FEET OF SAID SURFACE AS RESERVED IN
DEED RECORDED JANUARY 17, 1972 AS INSTRUMENT NO. 610.

ALSO EXCEPT THEREFROM THAT PORTION OF SAID LAND WITHIN LOT 258 OF SAID TRACT
NO. 7615, ALL, GAS AND OTHER MINERALS IN AND UNDER SAID LAND LYING BENEATH A PLANE
WHICH IS 500 FEET BELOW THE SURFACE OF SAID LAND BUT WITHOUT THE RIGHT OF ENTRY
FROM THE SURFACE THEREOF OR FROM ANY POINT WITHIN 500 FEET OF SAID SURFACE, AS
RESERVED BY DEED RECORDED FEBRUARY 15, 1972 AS INSTRUMENT NO. 4553.

ALSO EXCEPT THEREFROM UNITS 101 THROUGH 103, INCLUSIVE, 106, 109 THROUGH 111,
INCLUSIVE, 114, 115, 118, 201 THROUGH 212, INCLUSIVE, 214 THROUGH 227, INCLUSIVE,
229, 230, 301 THROUGH 312, INCLUSIVE, 314 THROUGH 330, INCLUSIVE, 401 THROUGH 412,
INCLUSIVE, 414 THROUGH 430, INCLUSIVE, AND 522 THROUGH 530 INCLUSIVE, AS SHOWN ON
THAT CERTAIN CONDOMINIUM PLAN FOR LOT 1 OF TRACT NO. 62676, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 1334, PAGES 48 AND 49
OF MAPS, WHICH CONDOMINIUM PLAN WAS RECORDED ON JUNE 11, 2007 AS INSTRUMENT NO.
2007-1402715, OF OFFICIAL RECORDS, ALL IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

ALSO EXCEPT THEREFROM, FOR THE BENEFIT OF GRANTOR, ITS SUCCESSORS IN INTEREST, AND
OTHERS, TOGETHER WITH THE RIGHT TO GRANT THE SAME TO OTHERS, SUCH ASSOCIATION
PROPERTY AS DEFINED, DESCRIBED AND SHOWN IN SAID CONDOMINIUM PLAN AND THE
DECLARATION.

PARCEL 2:

UNIT NO. 320, OF LOT 1 OF TRACT NO. 62676, AS SHOWN AND DEFINED IN SAID
CONDOMINIUM PLAN.

LGLDESC1-01/25/07

ER-156

Page
Order No. 106078630

DESCRIPTION

1

PARCEL 3:

THAT CERTAIN EXCLUSIVE USE ASSOCIATION PROPERTY DECK OR BALCONY SHOWN AND
DESIGNATED IN THE ABOVE-REFERENCED CONDOMINIUM PLAN WITH THE NUMBER DESIGNATION
OF THE UNIT TOGETHER WITH THE LETTER 320 -B CONSISTING OF EXCLUSIVE EASEMENTS
FOR USE THEREOF APPURTENANT TO PARCELS 1 AND 2 ABOVE, AS DEFINED AND DESCRIBED
IN THE DECLARATION AND THE CONDOMINIUM PLAN.

PARCEL 4:

THAT CERTAIN EXCLUSIVE USE ASSOCIATION PROPERTY PARKING SPACE, SHOWN AND
DESIGNATED IN THE ABOVE-REFERENCED CONDOMINIUM PLAN AS  42 -P AND 3 -P   AS AN
EXCLUSIVE EASEMENT FOR USE THEREOF APPURTENANT TO PARCELS 1 AND 2 ABOVE, AS
DEFINED AND DESCRIBED IN THE DECLARATION AND THE CONDOMINIUM PLAN.

# EXHIBIT "P"



KEVIN MODA
5455 WILSHIRE BLVD, SUITE 001
LOS ANGELES, CA 90036-4276

109

50-7172/722
3222

Date  5 · 9 · 20 W

Pay to the order of  M · Maz _____  | $ 30,000 _____

_____ _____ _____ Dlls 00/cans _____ Dollars

citibank
CITIBANK N.A. BR. 2722
16691 VENTURA BLVD
ENCINO, CA 91436

Memo _____

⑆3222717245⑆  _____ 5573⑈  0109  ⑆000 3000000⑆

0420577940  05112010
Cyc=    Bu1k=
LA PROCESSED 002

ER-160

KEVIN MODA
5450 WILSHIRE BLVD, SUITE 901
LOS ANGELES, CA 90036-4278

90-7172/192
3022

116

Date 5-21-2010

Pay to the order of   M. Magi                    $ 10,000 00/100

Ten Thousand Dlls 00/100                      Dollars

citibank
CITIBANK, N.A. CA 4789
16001 VENTURA BLVD
ENCINO, CA 91436

Memo  Attny Fees

⑆3222l7T24⑆  ⑆⑆5573⑆  0116  ⑈000l000000⑈

ER-161

KEVIN MODA
10750 WILSHER BLVD., STE. 1401
LOS ANGELES, CA  90024

Date  12-6-2010

Pay to the
order of   Mr. Mazgui                               $ 5000 00/100

Five Thousand D/S 00/100                              Dollars

citibank                          Citigold

CITIBANK, N.A., BR. 6781
12301 VENTURA BLVD
ENCINO, CA 91436

For

ER-162

Wells Fargo Bank
Transaction Receipt

STORE # 0000433 04              Deposit

Account Number              XXXXXX3494
00114
Cash In                         $0.00
Number of checks                   1

                            $13,000.00
Total Deposited             $13,000.00
Less Cash                     - $0.00
Net Deposit Amount          $13,000.00

Transaction # 001 0003
11:43AM  05/29/13 Credited: 05/29/13

One way to protect your accounts is by
installing antivirus software on your
computer, using strong passwords, and
using official mobile banking apps.

Thank you, Jonathan

# EXHIBIT "Q"

ER-164

Primary account number: ████████148   □ December 11, 2013 - January 10, 2014   □ Page 2 of 7



# Complete Advantage® Checking

Redacted Due To
Information
Failure Outside of
the Scope of
the Order

## Activity summary

| | |
|---|---|
| Beginning balance on 12/11 | $130.20 |
| Deposits/Additions | |
| Withdrawals/Subtractions | |
| Ending balance on 1/10 | |

Account number ████████148
NEYAZ MAZHARI
California account terms and conditions apply
For Direct Deposit and automatic payments are
Routing Number (RTN): 121011863

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:

□   Savings - ████████1005

## Interest Summary

| | |
|---|---|
| Interest paid this statement | |
| Average collected balance | |
| Annual percentage yield earned | |
| Interest earned this statement period | |
| Interest paid this year | |
| Total interest paid in 2013 | $0.03 |

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 12/11 | | ATM Cash Deposit - 12/11 Mach ID 89822 900 University Avenue Riverside CA 0221 0000904 | 200.00 | | |
| 12/11 | | Check Crd Purchase 12/09 Ami Japanese Resta Los Angeles CA 446023xxxxxx8221 463349720850030 7McC=5812 | | 52.40 | |
| 12/11 | | Check Crd Purchase 12/10 Jack IN The Box 26 Los Angeles CA 446023xxxxxx8221 003344760005524 7McC=5814 | | 8.27 | |
| 12/11 | | POS Purchase - 12/11 Mach ID 000000 Exxonmobil POS Wholesale Ahlbesn 0221 000000004378684504 7McC=5841 | | 10.49 | |
| 12/11 | | ATM Withdrawal - 12/11 Mach ID 89922 900 University Avenue Riverside CA 0221 0000965 | | 60.00 | 187.01 |
| 12/12 | | ATM Cash Deposit - 12/12 Mach ID 00558 8001 W Pico Blvd Los Angeles CA 0221 0003552 | 200.00 | | |
| 12/12 | | Check Crd Purchase 12/10 Sushi on University Riverside CA 446023xxxxxx8221 163348146504040 7McC=0012 | | 55.00 | |
| 12/12 | | BofENchase 12/11 Mach ID 000000 Trader Joe S #182 Los Angeles CA 8221 003533401782262 7McC=5411 | | 14.88 | |
| 12/12 | | Check Crd Purchase 12/11 Chevron 00091865 Los Angeles CA 446023xxxxxx8221 583340149687397 7McC=5542 | | 20.03 | 317.14 |
| 12/13 | | Check Crd Purchase 12/11 Uoc Parking Dispen Riverside CA 446023xxxxxx8221 083346708234745 7McC=0220 | | 2.00 | |
| 12/13 | | Check Crd Purchase 12/11 Zanvaho West Hollywoo CA 446023xxxxxx8221 383348020708672 7McC=8031 | | 25.00 | |
| 12/13 | | Check Crd Purchase 12/12 IN-N-Out Burger #1 Glendale CA 446023xxxxxx8221 163348201132524 7McC=5814 | | 8.07 | |
| 12/13 | | Check Crd Purchase 12/12 Jack IN The Box 26 Los Angeles CA 446023xxxxxx8221 083348355356712 7McC=5814 | | 0.80 | |
| 12/13 | | Check Crd Purchase 12/12 Lolas Argentino Gr Losangeles CA 446023xxxxxx8221 083340808591010 7McC=5812 | | 18.12 | |

Primary account number: xxxxx8140   □ November 13, 2013 - December 10, 2013   □ Page 3 of 8



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|------|------|------|------|------|
| 11/18 | | Check Crd Purchase 11/14 In-N-Out Burger #1 Pinole CA 44602xxxxxx0221 2353 1922456261 7McC=S414 | | 0.12 | |
| 11/18 | | ATM Withdrawal - 11/15 Rich ID DA0068 3110 Hilltop Mall San Francisco CA 0221 0058533210202785601 | | 53.00 | |
| 11/18 | | Non-Wells Fargo ATM Transaction Fee | | 2.50 | |
| 11/18 | | Check Crd Purchase 11/16 Ucb Parking and Tr Berkeley CA 44602xxxxxx0221 0033305346 1773 7McC=S5420 | | 0.00 | |
| 11/19 | | ATM Withdrawal - 11/15 Mech ID 5010C 73555 1621 BU San Leandro CA 0221 0001182 | | 60.00 | |
| 11/19 | | Check Crd Purchase 11/17 McDonalds F20006 Richmond CA 44602xxxxxx0221 0533225676923 7McC=5814 | | 7.83 | 18.91 |
| 11/19 | | Online Transfer From Family Trust M Ref #Bbemj8D5L2 Savings Via Mobile | 20.00 | | |
| 11/19 | | Check Crd Purchase 11/17 Ucb Parking and Tr Berkeley CA 44602xxxxxx0221 0033322063 7083 7McC=S420 | | 8.00 | |
| 11/19 | | Check Crd Purchase 11/17 In-N-Out Burger #1 Pinole CA 44602xxxxxx0221 0033322416620073 7McC=S414 | | 8.12 | 18.42 |
| 11/20 | | Online Transfer From Family Trust M Savings xxxxxx0505 Ref #Bbemr8G87 In1100L2 ... | 1,500.00 | | |
| 11/20 | | Check Crd Purchase 11/17 McDonalds F20006 Richmond CA 44602xxxxxx0221 30332744852915 7McC=5814 | | 7.43 | |
| 11/20 | | Check Crd Purchase 11/18 McDonalds F20006 Richmond CA 44602xxxxxx0221 36332142000003343 7McC=5814 | | 2.71 | |
| 11/20 | 1444 | Check | | 1,500.00 | 21.00 |
| 11/21 | | Check Crd Purchase 11/20 McDonalds F20006 Richmond CA 44602xxxxxx0221 3033240610050037McC=5814 | | 2.17 | |
| 11/21 | | Check Crd Purchase 11/20 McDonalds F20006 Richmond CA 44602xxxxxx0221 3033250749033 7McC=5814 | | 2.17 | 17.84 |
| 11/22 | | Telecheck Checking xxxxxx5104 Reference #Jttcq4055ST... | | 124.00 | |
| 11/22 | | Online Transfer From Family Trust M Ref #Bbemj8D5L2 Savings Via Mobile | 1,500.00 | | |
| 11/22 | | Online Transfer From Family Trust M Ref #Bbemj8D5L2 Savings Via Mobile | 10.00 | | |
| 11/22 | | Online Transfer From Family Trust M Ref #Bbemj8XImg Savings Via Mobile | 10.00 | | |
| 11/22 | | Check Crd Purchase 11/20 Ucb Parking and Tr Berkeley CA 44602xxxxxx0221 0633529040581173 7McC=S420 | | 10.00 | |
| 11/22 | | Check Crd Purchase 11/21 McDonalds F20006 Richmond CA 44602xxxxxx0221 3033258784195208 7McC=5814 | | 2.17 | |
| 11/22 | | POS Purchase - 11/21 Mech ID 000000 5794 Service Station Pleasanton CA 0221 0009333823536 1242 7McC=S541 | | 7.51 | 1,597.00 |
| 11/25 | | Online Transfer To Savings xxxxxx0790 Reference #It0qttWrtV... | 200.00 | | |
| 11/25 | | Check Crd Purchase 11/21 In-N-Out Burger #1 Pinole CA 44602xxxxxx0221 0633521070210037McC=5814 | | 0.12 | |
| 11/25 | | Check Crd Purchase 11/22 McDonalds F20006 Richmond CA 44602xxxxxx0221 5833268737058997McC=5814 | | 2.17 | |
| 11/25 | | POS Purchase - 11/22 Mech ID 000000 Xres Paypoint San Leandro CA 0221 0033031273 1242 7McC=S541 | | 4.08 | |
| 11/25 | | ATM Withdrawal -11/22 Mech ID 09168 15555 1401 BU San Leandro CA 0221 0003808 | | 20.00 | |
| 11/25 | | POS Purchase - 11/22 Mech ID 000000 7 Eleven San Leandro CA 0221 00000000051021930 7McC=S541 | | 2.12 | |
| 11/25 | | Check Crd Purchase 11/22 McDonalds F20006 Richmond CA 44602xxxxxx0221 183322245520032 7McC=5814 | | 5.00 | |
| 11/25 | | Check Crd Purchase 11/23 McDonalds F20006 Richmond CA 44602xxxxxx0221 3033276632439 7McC=5814 | | 7.00 | |
| 11/25 | | Check Crd Purchase 11/23 McDonalds F13301 San Pablo CA 44602xxxxxx0221 3033322047818510 7McC=5814 | | 5.15 | |
| 11/25 | | POS Purchase - 11/23 Mech ID 000000 Lucky 742 Pleasant CA 0221 0033233267602803 7McC=S41... | | 5.55 | |
| 11/25 | | Check Crd Purchase 11/24 McDonalds F20006 Richmond CA 44602xxxxxx0221 3033 30203008898 7McC=5814 | | 2.17 | |

Street Seq = 000037 G
Sheet 00073 of 0000-1

# EXHIBIT "R"

01/11/2009   00:42    3104792779          NAZANIN MAZGANI                    PAGE  22/58

THIS REPORT DOES NOT CONSTITUTE VALID IDENTIFICATION
KEEP THIS REPORT FOR REFERENCE.  INSTRUCCIONES EN ESPAÑOL AL REVERSO.

Los Angeles Police Department
INVESTIGATIVE REPORT

CODE ☐ COMBINED EVID. REPORT
☐ MULTIPLE DR ON THIS REPORT

REPORT OF: EMBEZZLEMENT

INVEST DIV. WLA

DR NO. 160807205

**CASE SCREENING FACTOR(S)**
☑ SUSPECT/VEHICLE NOT SEEN
☑ PRINTS OR OTHER EVIDENCE NOT PRESENT
☑ NO HOT DISTRICT
☑ PROPERTY LOSS LESS THAN $5,000
☑ NO SERIOUS INJURY TO VICTIM
☑ ONLY ONE VICTIM INVOLVED

VICTIM: LAST NAME, FIRST, MIDDLE, (OR NAME OF BUSINESS) MAZGANI, MAHVASH
SEX F   DESC O   HT 501   WT 120   AGE 64   DOB 5-23-51
ADDRESS N- 1110 S ROBERTSON BL #3 LA    ZIP 90035   PHONE (310) 892-0041
E-MAIL ADDRESS MAHVASHMAZGANI@GMAIL    CELL-PHONE

DR. LIC. NO. (STATE: OTHER I.D. & NO.) C1715626
FOREIGN LANGUAGE SPOKEN
OCCUPATION SOCIAL SERVICES
PREMISES (SPECIFIC TYPE) business office ☐ ATM

ENTRY POINT OF ENTRY
☐ FRONT
☐ REAR
☐ SIDE
☐ ROOF
☐ FLOOR
☐ OTHER
POINT OF EXIT
LOCATION OF OCCURRENCE SAME AS VIC    ☐ RES.  ☐ BUS.
R.D. 0849
PRINTS BY ELM. INV.
☐ ATTEMPT ☐ Y  N
☐ OBTAINED ☐ Y  N

METHOD
DATE & TIME OF OCCURRENCE 02/01/2016  12:00
DATE & TIME REPORTED TO PD 03/09/2016  13:05

INSTRUMENT/TOOL USED
TYPE PROPERTY STOLEN/LOST/DAMAGED ☐ 03.04.00 GIVEN   STOLEN/LOST   RECOVERED   EST. DAMAGED

VICT'S VEH.(IF INVOLVED) YEAR, MAKE, TYPE, COLOR, LIC. NO.
2013 Audi A8 4dr White 7BBB133
NOTIFICATION(S) (PERSON & DIVISION)
CONNECTED REPORT(S) (TYPE & DR#)

MO (IF LONG FORM, LIST UNIQUE ACTIONS. IF SHORT FORM, DESCRIBE SUSPECTS ACTIONS IN BRIEF PHRASES, INCLUDING WEAPON USED. DO NOT REPEAT ABOVE INFO BUT CLARIFY REPORT AS NECESSARY. IF NO PRINT OR NO MISSING ITEMS ARE POTENTIALLY IDENTIFIABLE, ITEMIZE AND DESCRIBE ALL ITEMS MISSING IN THIS INCIDENT IN THE NARRATIVE.

SUSPECT ( VICTIM'S NEPHEW) REFUSING TO RETURN VICTIM'S VEHICLE. SUSPECT FAILED TO COMPLY WITH
DEMAND LETTER DATED 02-23-16.

DOCUMENTS AND USED PAIR OF HOES.

MIRANDA / MARSY'S RIGHTS CARD PROVIDED TO THE VICTIM ☐
MOTIVATED BY HATRED/PREJUDICE ☐
DOMESTIC VIOLENCE ☐

REPORTING EMPLOYEE(S)
INITIALS, LAST NAME .MANJRA   SERIAL NO. 26975   DIV/DETAIL WLA   PERSON REPORTING
SIGNATURE    OR RECEIVED BY PHONE ☐
FRONT DESK   NOTE: IF SHORT FORM AND VICTIM/PR ARE NOT THE SAME, ENTER PR INFORMATION IN INVOLVED PERSONS SECTION.

Your case will be assigned to a detective for follow-up investigation based upon specific facts obtained during the initial investigation. Studies have shown that the presence of these facts can predict whether a detailed follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property, in a manner that is cost-effective to you, the taxpayer. Significant decreases in personnel have made it impossible for detectives to personally discuss each and every case with all crime victims. A detective will not routinely contact you, unless the detective requires additional information.

TO REPORT ADDITIONAL INFORMATION: If you have specific facts to provide which might assist in the investigation of your case, please contact the detective Monday through Friday, between 8:00 A.M. and 9:30 A.M., or between 2:30 P.M. and 4:00 P.M. at telephone number 310-444-1569. If the detective is not available when you call, please leave a message and include the telephone number where you can be reached.

COPY OF REPORT: If you wish to purchase a copy of the complete report, phone (213) 486-8130 to obtain the purchase price. Send a check or money order payable to the Los Angeles Police Department to Records and Identification Division, Box 30158, Los Angeles, CA 90030. Include a copy of this report or the following information with your request: 1) Name and address of victims; 2) Type of report and DR number (if listed above); 3) Date and location of occurrence. NOTE: Requests not accompanied by proper payment will not be processed.

DR NUMBER: If not entered on this form, the DR number may be obtained by writing to Records and Identification Division and giving the information needed to obtain a copy of the report (see above paragraph). Specify that you only want the DR number. It will be forwarded without delay. There is no charge for this service.

CREDIT CARDS/CHECKS: Immediately notify concerned credit corporation or banks to avoid possibility of being liable for someone else using your stolen or lost credit card or check.

HOW YOU CAN HELP THE INVESTIGATION OF YOUR CASE:
* Keep this memo for reference.
* If stolen items have serial numbers not available at time of report, attempt to locate them and phone them to the detective at the listed number.
* If you discover additional losses, complete and mail in the Supplemental Property Loss form given to you by the reporting employee.
* Promptly report recovery of property.
* Promptly report additional information such as a neighbor informing you of suspicious activity at time crime occurred.

VICTIM-WITNESS ASSISTANCE PROGRAM: The Los Angeles City and County Victim-Witness Assistance Program (VWAP) can help to determine if you qualify for Victim of Violent Crime compensation. If you qualify, they will assist you with filling your claim application. If you are a victim or a witness to a crime and will be going to court, they will explain the court procedures to you. Their staff may also assist you with other problems created by the crime.
To find the program location nearest to you, call the Victim-Witness Assistance Program at the Los Angeles City Attorney's Office (213) 485-6976, or the Los Angeles County District Attorney's Office (800) 380-3811.
VICTIMS OF VIOLENT CRIME COMPENSATION: Refer to paragraph at bottom of reverse side.

www.LAPDOnline.org
www.joinLAPD.com

**ER-168**

01/11/2009   00:42   3104792/79                 NAZANIN MAZGAN1              PAGE  23/58

SQ007687 mg

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
**VEHICLE REPORT**
CHP 180 (Rev. 12-06) OPI 062

NOTE: CHP 180 IS FURNISHED TO ALL PEACE
OFFICERS BY THE CALIFORNIA HIGHWAY PATROL

| REPORTING DEPARTMENT | LOCATION CODE | DATE / TIME OF REPORT | NOTICE OF STORED VEHICLE DELIVERED PERSONALLY ☐ | FILE NO. |
|---|---|---|---|---|

| LOCATION TOWED / STOLEN FROM | ODOMETER READING | VIN CLEAR IN 6V67 ☑ YES ☐ NO | DATE / TIME DISPATCH NOTIFIED | LOG NO. |
|---|---|---|---|---|
|  |  | LIC. CLEAR IN SV67 ☑ YES ☐ NO |  |  |

| YEAR | MAKE | MODEL | BODY TYPE | COLOR | LICENSE NO. | ☐ ONE ☐ TWO | MONTH / YEAR | STATE |
|---|---|---|---|---|---|---|---|---|

| VEHICLE IDENTIFICATION NO. | ENGINE NO. | VALUATION BY ☐ OFFICER ☐ OWNER |
|---|---|---|

☐ 0-300   ☐ 301-4000   ☐ 4001 +   $

| REGISTERED OWNER | ☐ SAME AS R/O | LEGAL OWNER |
|---|---|---|

☐ STORED          ☐ IMPOUNDED          ☐ RELEASED          ☐ RECOVERED - VEHICLE / COMPONENT

| TOWING / STORAGE CONCERN (NAME, ADDRESS, PHONE) | STORAGE AUTHORITY / REASON |
|---|---|

| TOWED TO / STORED AT | AIRBAG? ☑ YES ☐ NO ☐ 1 ☐ 2 | DRIVEABLE? ☐ YES ☐ NO | ☐ JUNK ☐ UNK | VIN SWITCHED? ☐ YES ☐ NO |
|---|---|---|---|---|

| CONDITION | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | TIRES / WHEELS | CONDITION |
|---|---|---|---|---|---|---|---|---|---|---|
| WRECKED |  |  | SEAT (FRONT) |  |  | REGISTRATION |  |  | LEFT FRONT |  |
| BURNED HULK per 431(c) VC |  |  | SEAT (REAR) |  |  | ALT. / GENERATOR |  |  | RIGHT FRONT |  |
| VANDALIZED |  |  | RADIO |  |  | BATTERY |  |  | LEFT REAR |  |
| ENG. / TRANS. STRIP |  |  | TAPE DECK |  |  | DIFFERENTIAL |  |  | RIGHT REAR |  |
| MISC. PARTS STRIP |  |  | TAPES |  |  | TRANSMISSION |  |  | SPARE |  |
| BODY METAL STRIP |  |  | OTHER RADIO |  |  | AUTOMATIC |  |  | HUB CAPS |  |
| SURGICAL STRIP per 431(b) VC |  |  | IGNITION KEY |  |  | MANUAL |  |  | SPECIAL WHEELS |  |

| RELEASE VEHICLE TO: | ☐ R/O OR AGENT | ☐ AGENCY HOLD | ☐ 22650.3 VC | GARAGE PRINCIPAL / AGENT STORING VEHICLE (SIGNATURE) | DATE / TIME |
|---|---|---|---|---|---|

| NAME OF PERSON / AGENCY AUTHORIZING RELEASE | I.D. NO. | DATE | CERTIFICATION: I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT I ALLEGEDLY AUTHORIZED AND ENTITLED TO TAKE POSSESSION OF THE ABOVE DESCRIBED VEHICLE. |
|---|---|---|---|

| SIGNATURE OF PERSON AUTHORIZING RELEASE | SIGNATURE OF PERSON TAKING POSSESSION |
|---|---|

☐ STOLEN VEHICLE / COMPONENT       ☒ EMBEZZLED VEHICLE       ☐ PLATE(S) REPORT

| DATE / TIME OF OCCURRENCE | DATE / TIME REPORTED | NAME OF REPORTING PARTY (R/P) | DRIVER LICENSE NO. / STATE |
|---|---|---|---|

| LAST DRIVER OF VEHICLE | DATE / TIME | ADDRESS OF R/P | TELEPHONE OF R/P |
|---|---|---|---|
|  |  |  | (310) |

I CERTIFY OR DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF
THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

SIGNATURE OF PERSON MAKING REPORT

**REMARKS**
(LIST PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTS)

| DRIVER'S NAME | ARREST / SECTION? ☐ YES ☐ NO | REPORTED BY | CARGO / TYPE? ☐ YES ☐ NO | VALUE $ ☐ BILL OF LADING ATTACHED |
|---|---|---|---|---|

| FRONT | LEFT SIDE | RIGHT SIDE | REAR | TOP |
|---|---|---|---|---|

| SIGNATURE OF OFFICER TAKING REPORT | I.D. NO. | SUPERVISOR | REQUIRED NOTICES SENT TO REGISTERED AND LEGAL OWNERS PER 22002 VC? ☐ YES ☐ NO | DATE NOTIFIED |
|---|---|---|---|---|

c180_c06.np

**ER-169**

01/11/2009   00:42   310479:779          NAZANIN MAZGANI                    PAGE 21/58

Los Angeles Police Department         UCR CODE
INVESTIGATIVE REPORT

**CASE SCREENING FACTOR(S)**

☑ SUSPECT(S) COULD NOT BE SEEN
☑ PRINTS OR OTHER EVIDENCE NOT PRESENT
☑ NO NOT DISTINCT
☐ PROPERTY LOSS LESS THAN $3,000
☐ NO SERIOUS INJURY TO VICTIM
☑ ONLY ONE VICTIM INVOLVED

REPORT OF: VANDALISM

VICTIM: MAZGANI, MIMI
ADDRESS: 11105. ROBERTSON BL #3 LA 90035   310 892 0041
EMAIL ADDRESS: mimimazgani@gmail.com   CELL PHONE: 892 0041

**PREMISES** (SPECIFIC TYPE): AUTO DEALERSHIP

**ENTRY** (4500NEY POINT OF ENTRY):
☐ FRONT
☐ REAR
☐ SIDE
☐ ROOF
☐ FLOOR
☐ OTHER

METHOD: INSTRUMENT/TOOL USED

VICT'S VEH. (IF INVOLVED) YEAR, MAKE, TYPE, COLOR, LIC. NO.: 113 AUDI A8 4 DR W/ 7BEB133

REPORTING EMPLOYEE(S): INITIALS, LAST NAME: M. FRIAS   SERIAL NO.: 33252   DIV/DETAIL: WLA   DESK

**THIS REPORT DOES NOT CONSTITUTE VALID IDENTIFICATION**

KEEP THIS REPORT FOR REFERENCE. INSTRUCCIONES EN ESPANOL AL REVERSO.

*Your case will be assigned to a detective for follow-up investigation based upon specific facts obtained during the initial investigation. Studies have shown that the presence of these facts can predict whether a detailed follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property. In a manner that is cost-effective to you, the taxpayer. Significant decreases in personnel have made it impossible for detectives to personally discuss each and every case with all crime victims. A detective will not routinely contact you, unless the detective requires additional information.*

TO REPORT ADDITIONAL INFORMATION:   If you have specific facts to provide which might assist in the investigation of your case, please contact the detective Monday through Friday, between 8:00 A.M. and 9:30 A.M., or between 2:30 P.M. and 4:00 P.M. at telephone number _____. If the detective is not available when you call, please leave a message and include the telephone number where you can be reached.

COPY OF REPORT:   If you wish to purchase a copy of the complete report, phone (213) 486-8130 to obtain the purchase price. Send a check or money order payable to the Los Angeles Police Department to Records and Identification Division, Box 30158, Los Angeles, CA 90030. Include a copy of this report or the following information with your request: 1) Name and address of victim; 2) Type of report and DR number (if listed above); 3) Date and location of occurrence. NOTE: Requests not accompanied by proper payment will not be processed.

DR NUMBER:   If not entered on this form, the DR number may be obtained by writing to Records and Identification Division and giving the information needed to obtain a copy of the report (see above paragraph). Specify that you only want the DR number. It will be forwarded without delay. There is no charge for this service.

CREDIT CARDS/CHECKS:   Immediately notify concerned credit corporation or banks to avoid possibility of being liable for someone else using your stolen or lost credit card or check.

HOW YOU CAN HELP THE INVESTIGATION OF YOUR CASE:
* Keep this memo for reference.
* If stolen items have serial numbers not available at time of report, attempt to locate them and phone them to the detective at the listed number.
* If you discover additional losses, complete and mail in the Supplemental Property Loss form given to you by the reporting employee.
* Promptly report recovery of property.
* Promptly report additional information such as a neighbor informing you of suspicious activity at time crime occurred.

VICTIM-WITNESS ASSISTANCE PROGRAM: The Los Angeles City and County Victim-Witness Assistance Program (VWAP) can help to determine if you qualify for Victim of Violent Crime compensation. If you qualify, they will assist with filling your claim application. If you are a victim or a witness to a crime and will be going to court, they will explain the court procedures to you. Their staff may also assist you with other problems created by the crime.

To find the program location nearest to you, call the Victim-Witness Assistance Program at the Los Angeles City Attorney's Office (213) 485-6976, or the Los Angeles County District Attorney's Office (800) 380-3811.

VICTIMS OF VIOLENT CRIME COMPENSATION: Refer to paragraph at bottom of reverse side.

www.LAPDonline.org

**ER-170**

# EXHIBIT "S"

ER-171

 

11/26/2011  12:59   2135364589          DR WELCH ATTORNEYS                    PAGE  02/02

EXHIBIT

12:18:12 2016-11-16

**ER-172**

# EXHIBIT "T"

ER-173

 

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/07/12          DEPT. WE-J

HONORABLE CESAR C. SARMIENTO   JUDGE   MANNY MABUNGA   DEPUTY CLERK

HONORABLE      JUDGE PRO TEM     ELECTRONIC RECORDING MONITOR

    G. PEREZ, CA   Deputy Sheriff   K.WILSON,CSR#6151   Reporter

8:30 am SC114009

| | | |
|---|---|---|
| | Plaintiff Counsel | NAZANIN MAZGANI (X) |
| JKDM VS RAZAVI GLOBAL MEDIA ET. AL. | Defendant Counsel | BRADLEY GRUMBLEY (X) MIKE KHALILPOUR (X) GREGORY ROYSTON (X) |

BASEMENT FILE, VOL 3 IS OPEN VO
AND STARTS ON MARCH 08, 2012

NATURE OF PROCEEDINGS:

EX PARTE APPLICATION BY PLAINTIFF JKDM, LLC TO VACATE
MARCH 19, 2012 ORDER FINDING THAT THE PLAINTIFF
DID NOT HAVE STANDING TO PURSUE THIS ACTION THROUGH
TRIAL; SETTING THE MATTER FOR TRIAL OR IN THE
ALTERNATIVE FOR AN ORDER SHORTENING TIME FOR SERVICE
OF MOTION; (CONT. FROM 7/24/12)

ORDER TO SHOW CAUSE RE DISMISSAL RE RECEIVER'S
FAILURE TO PROSECUTE:

Matter is called and argued. After arguments,
based upon the above-captioned Order to Show
Cause the court orders the above-entitled case
dismissed without prejudice.

The ex parte application is taken off-calendar
as moot.

MIKE KHALILPOUR,counsel for Intervenor shall give
notice.

Page 1 of 1    DEPT. WE-J

MINUTES ENTERED
08/07/12
COUNTY CLERK

EXHIBIT

12:18:12 2016-11-16

**ER-174**

# EXHIBIT "U"

ER-175



Nazanin Mazgani, Esq.   SBN 270258
Law Offices of Nazanin Mazgani
1110 S Robertson Blvd Ste 1
Los Angeles, CA 90035
Tel: (310) 892-0820
Fax: (424) 832-7331

Attorneys for Plaintiff, Mahvash Mazgani

ORIGINAL
CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

NOV 28 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
DOROTHY SWAIN

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

CENTRAL JUDICIAL DISTRICT

MAHVASH MAZGANI

　　　Plaintiffs,

　　v.

SBS TRUST DEED NETWORK, INC;
CHINO HILLS ESCROW (AKA DIAMOND
QUALITY ESCROW), A CALIF CORP.;
INTERCAP LENDING, A CALIF CORP.;
MANDY STOVER; DOES 1-100

　　　Defendants.

Case No.:　BC474307

COMPLAINT
(DAMAGES SOUGHT IN EXCESS OF
$25,000; IN THE EVENT THAT ANY
DEFENDANT DEFAULTS, IT IS
HEREBY WARNED THAT A DEFAULT
JUDGMENT IN EXCESS OF
$1,000,000.00 WILL BE SOUGHT
AGAINST IT AS A RESULT OF THE
DAMAGES THAT PLAINTIFF HAS
SUSTAINED)

　　Plaintiff, Mahvash Mazgani, hereinafter collectively referred to as Plaintiff, files her

Complaint herein, as follows:

**PARTIES**

1.　　Upon information and belief, Plaintiff Mahvash Mazgani is suing in her own individual

capacity and that of the Trustee of the Mazgani Family Trust, an individual residing in the City

of Los Angeles.

-1-
COMPLAINT

EXHIBIT
6F

12:18:12 2016-11-16

**ER-176**

# EXHIBIT "V"

This page is part of your document - DO NOT DISCARD



**20160219326**



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/29/16 AT 04:19PM**

| | |
|---|---|
| FEES: | 28.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 28.00 |



**LEADSHEET**



201602293240067

00011769111


007407061

**SEQ:
01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO.

NAZANIN MAZGANI
NEYAZ MAZGANI
10954 Massachusetts Ave.
Los Angeles, CA 90024-5518



02/29/2016

*20160219326*

# Grant Deed

Excluded from Reappraisal Under Proposition 13. i.e., Calif. Const. Art 13 A§1 et. seq.

The undersigned Grantor declares under penalty of perjury that the following is true and correct:
**THERE IS NO CONSIDERATION FOR THIS TRANSFER.**
1. The documentary transfer tax is: $0.00. This is a bonafide gift and the grantor received nothing in return and is therefore exempt from Documentary Transfer Tax (California Revenue and Taxation Code §11911).
2. This is a parent-child transfer under §63.1 of the California Revenue and Taxation Code and does not constitute a "change in ownership" for property tax purposes.

**MIMI MAZGANI, being the same person who acquired title under her former name of MAHVASH MAZGANI, Trustee of THE MAHVASH MAZGANI FAMILY TRUST, dated March 19, 2007,** hereby **GRANTS** to **NAZANIN MAZGANI and NEYAZ MAZGANI, Trustees of THE WESSON TRUST, dated February 26, 2016,** the real property in the County of Los Angeles, State of California, legally described as set forth on attached Exhibit "A" and more commonly known as 10950 Massachusetts Ave., Los Angeles, CA 90024-5518.

Dated:  February 26, 2016

MIMI MAZGANI, Trustee

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California  )
                     ) ss
County of Los Angeles )

On February 26, 2016, before me, AFSHIN A. ASHER, a Notary Public, personally appeared MIMI MAZGANI, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

AFSHIN A. ASHER, Notary Public

JACQUELYN NOEL GARCIA
Commission # 2079866
Notary Public - California
Los Angeles County
My Comm. Expires Aug 29, 2018

10950 Massachusetts Ave GD 01

**ER-179**

## California All-Purpose Certificate of Acknowledgment

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**

**County of** Los Angeles _____    **s.s.**

On February 26, 2016 _____ before me, JACQUELYN NOEL GARCIA, a Notary Public _____

personally appeared MIMI MAZGANI _____

_____

who proved to me on the basis of satisfactory evidence to be the person(x) whose name(x) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(x) on the instrument the person(x), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JACQUELYN NOEL GARCIA
Commission # 2079866
Notary Public - California
Los Angeles County
My Comm. Expires Aug 29, 2018

——————— *OPTIONAL INFORMATION* ———————

**Description of Attached Document**

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of Grant Deed _____

_____

containing _____ pages, and dated _____

The signer(s) capacity or authority is/are as:
- ☐ Individual(s)
- ☐ Attorney-in-fact
- ☐ Corporate Officer(s) _____

_____

- ☐ Guardian/Conservator
- ☐ Partner - Limited/General
- ☒ Trustee(s)
- ☐ Other: _____

representing: _____

**Additional Information**

Method of Signer Identification

Proved to me on the basis of satisfactory evidence
- ☐ form(s) of identification ☐ credible witness(es)

Notarial event is detailed in notary journal on
Page # _____ Entry # _____

Notary contact _____

Other
- ☐ Additional Signer ☐ Signer(s) Thumbprints(s)
- ☐ _____

**ER-180**

# Exhibit "A"

**Legal Description:**

LOT 1 IN BLOCK 6 OF TRACT NO. 10021, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 145,
PAGES 1 AND 2 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

**Assessor's Parcel Number:**        4324-029-001

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

<u>NOTICE</u>

**RE: CONTINUANCES**:

No continuances will be granted unless a written stipulation signed by all parties is filed at least 48 hours prior to the schedules hearing. Such stipulation must explain, in detail, the reason for the continuances. Such stipulation must be in the form of a declaration, signed under penalty of perjury. No continuance will be granted without good cause.

In addition to filing a written stipulation, the Courtroom Deputy must be notified personally at least 24 hours before the hearing. No continuances will be granted on the day of the hearing. It is the responsibility of all parties to check to see that the Court has been so notified. If there has been no notification, both written and oral, all sides must be ready to proceed with the hearing. Unless the parties have been notified by the clerk that the judge has granted the motion, all parties must appear for the hearing.

**RE: SETTLEMENTS:**

In case of a settlement reached prior to a hearing or trial, every effort should be made to notify the Court at least 48 hours prior to the hearing or trial.

**RE: SANCTIONS FOR FAILURE TO TIMELY PREPARE FOR STATUS AND PRE-TRIAL CONFERENCES:**

Pursuant to Rule 7016 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 7016-1, failure to timely comply with Rule 7016-1 will result in sanctions of at least $400.00 against any party and/or its counsel, payable to the Clerk of Court, General Fund Account. Additional sanctions may be imposed as deemed appropriate under the circumstances. Timely compliance with Rule 7016-1 includes, but is not limited to, timely filing of status report and pre-trial orders. Subsequent offenses in the same matter will result in escalating sanctions. Sending attorneys to court to appear on matters, about which they are inadequate informed will result in similar sanctions.

BARRY RUSSELL

U.S. BANKRUPTCY JUDGE

**ER-182**

# FREE LEGAL HELP

A creditor has sued you in bankruptcy court. You were served with a Summons and Complaint, and you must now file an Answer. If you do not file an Answer on time, the court may enter a default judgment against you. This means that your debt may not be discharged and you will be responsible for paying it back.

## IF YOU CAN NOT AFFORD AN ATTORNEY, FREE LEGAL HELP MAY BE AVAILABLE.

For more information, call:

### Public Counsel's

### Debtor Assistance Project Hotline

### (213) 385-2977, ext. 704



**35TH ANNIVERSARY**

THE PUBLIC INTEREST LAW OFFICE OF THE LOS ANGELES COUNTY AND BEVERLY HILLS BAR ASSOCIATIONS

# AYUDA LEGAL GRATUITA

Su acreedor le ha demandado en la corte de bancarrota. Usted recibió la demanda, llamada "Summons" y "Complaint." Usted debe archivar una respuesta a la demanda en la corte. Si no archiva la respuesta a tiempo, la corte puede decidir en su contra. Si eso sucede, la deuda no se descargará en su caso de bancarrota y Usted será responsable por pagar al acreedor.

## SI LE FALTAN RECURSOS PARA CONTRATAR A UN ABOGADO, LLAME A LA LINEA DE AYUDA LEGAL GRATUITA.

Para mas información, llame al:

### Proyecto de Ayuda al Deudor de Public Counsel

### (213) 385-2977, ext. 704



**35TH ANNIVERSARY**
THE PUBLIC INTEREST LAW OFFICE OF THE LOS ANGELES COUNTY AND BEVERLY HILLS BAR ASSOCIATIONS

ER-184

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Donald W Reid<br>Law Office of Donald W. Reid<br>PO Box 2227<br>Fallbrook, CA 92088<br><br>951–777–2460<br><br><br><br>*Plaintiff or Attorney for Plaintiff* | FOR COURT USE ONLY |
|---|---|

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| In re:<br><br>Mahvash Mazgani<br><br><br>Debtor(s). | CASE NO.: 2:19–bk–21655–BR<br><br>CHAPTER: 11<br><br>ADVERSARY NUMBER: 2:20–ap–01637–BR |
|---|---|
| Kevin Moda<br><br>Plaintiff(s)<br>Versus<br>Mahvash Mazgani<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left–hand corner of this page. The deadline to file and serve a written response is **11/06/2020.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **December 1, 2020** |
| **Time:** | **10:00 AM** |
| **Hearing Judge:** | **Barry Russell** |
| **Location:** | **255 E Temple St., Crtrm 1668, Los Angeles, CA 90012** |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 1                    **F 7004–1.SUMMONS.ADV.PROC**

**ER-185**

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

<div align="center">

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

</div>

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>October 7, 2020</u>

By: <u>  "s/" Stacey Fortier  </u>

<div align="center">Deputy Clerk</div>



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 2                    **F 7004–1.SUMMONS.ADV.PROC**

<div align="right">

**ER-186**

</div>

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004−1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005−2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐   Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____    _____    _____
*Date*                               *Printed Name*                                        *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                                                       **F 7004−1.SUMMONS.ADV.PROC**

**ER-187**

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

Donald W Reid
Law Office of Donald W. Reid
PO Box 2227
Fallbrook, CA 92088

951−777−2460

FOR COURT USE ONLY

*Plaintiff or Attorney for Plaintiff*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

In re:

Mahvash Mazgani

Debtor(s).

CASE NO.:  2:19−bk−21655−BR

CHAPTER:  11

ADVERSARY NUMBER: 2:20−ap−01637−BR

Kevin Moda

Plaintiff(s)

Versus

Mahvash Mazgani

Defendant(s)

## SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004−1]

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left−hand corner of this page. The deadline to file and serve a written response is **11/06/2020.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

 A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **December 1, 2020** |
| **Time:** | **10:00 AM** |
| **Hearing Judge:** | **Barry Russell** |
| **Location:** | **255 E Temple St., Crtrm 1668, Los Angeles, CA 90012** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                Page 1                **F 7004−1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>October 7, 2020</u>

By: _____<u>"s/" Stacey Fortier</u>_____

Deputy Clerk



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 2                    **F 7004–1.SUMMONS.ADV.PROC**

**ER-189**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

PO Box 2227, Fallbrook, CA 92088

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

Complaint for: Nondischargeability of Debt Pursuant to 11 U.S.C. 523(a)(2), (4), and (6); and Denial of Discharge Pursuant

to 11 U.S.C. 727(a)(2), (3), and (4)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) ___10/14/2020_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Mahvash Mazgani, 141 S. Clark, Apt. 320, Los Angeles, CA 90048

Mahvash Mazgani, 10954 Massachusetts Ave, Los Angeles, CA 90024

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/14/2020 | Donald W. Reid | /s/Donald W. Reid |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*

**F 7004–1.SUMMONS.ADV.PROC**

**ER-190**

1  **Nazanin Mazgani, Esq.  (SBN 270258)**
2  **Law Offices of Nazanin Mazgani**
   10954 Massachusetts Avenue
3  Los Angeles, CA  90024
   Phone: (424) 256-0095
4  Email: mazganilaw@gmail.com
5
   Attorney for Defendant/Debtor,
6  Mahvash Mazgani
7
8
               **UNITED STATES BANKRUPTCY COURT**
9
               **CENTRAL DISTRICT OF CALIFORNIA**
10
11  In Re:                        )  Chapter 7
                                  )
12  MAHVASH MAZGANI,              )  Case No.: 2:19-bk-21655-BR
                                  )
13                                )  Adv. No.: 2:20-ap-01637-BR
              Debtor             )
14  _____ )
                                  )
15                                )
                                  )  **DEFENDANT'S NOTICE OF MOTION AND**
16  KEVIN MODA                    )  **MOTION TO STAY PLAINTIFF'S**
                                  )  **ADVERSARY PROCEEDING;**
17           Plaintiff,          )  **MEMORANDUM OF POINTS AND**
                                  )  **AUTHORITIES; DECLARATION OF**
18        v.                     )  **MAHVASH MAZGANI**
                                  )
19  MAHVASH MAZGANI,              )
                                  )
20                                )  Date:   TBD
                                  )  Time:   TBD
21           Defendant.          )  Ctrm:   1668
                                  )  Place:  255 E Temple Street,
22                                )          Los Angeles, CA 90012
                                  )
23                                )
                                  )
24  _____ )
25
26
27        **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**
28  **PLAINTIFF KEVIN MODA, AND HIS ATTORNEY OF RECORD DONALD W. REID:**

                                  1                          **ER-191**
DEFENDANT'S NOTICE OF MOTION AND MOTION TO STAY PLAINTIFF'S ADVERSARY PROCEEDING

1       **PLEASE TAKE NOTICE** that on a date and time to be determined in Courtroom 1668 of the

2 United States Bankruptcy Court, 255 East Temple Street, Los Angeles, CA 90012, Debtor/Defendant

3 Mahvash Mazgani ("Defendant" or "Debtor") will move this Court for an order requesting the Court to

4 abstain from hearing and stay Plaintiff's adversary proceeding based on the nonstatutory abstention

5 doctrine of *Colorado River*. A motion to stay litigation is a pre-answer motion within the scope of Rule

6 12(b). [See *Questech Capital Corp. v. Flight Dynamics, Inc.*, No 83 Civ. 6986, 1984 WL 327 (S.D.N.Y.

7 May 7, 1984) -- "a motion to stay proceedings has been characterized as a pre-answer motion which,

8 because it involves matters of judicial administration, is within the inherent powers of the court incident

9 to the court's authority to regulate actions pending before it;" See also, *Evans v. Hudson Coal Co.*, 71

10 F.Supp. 152 (M.D.Pa.1947) and *Smith v. Pay–Fone Systems, Inc.*, 627 F.Supp. 121 (N.D.Ga.1985)].

11       This motion is based on the attached memorandum of points and authorities, the declaration of

12 Mahvash Mazgani, the entire record in this adversary proceeding, and the related main bankruptcy case,

13 the statements, arguments and representations of counsel to be made at the hearing on this Motion, and

14 any other evidence properly presented to the Court at or prior to the hearing on this Motion.

15       **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f) any

16 party who opposes the Motion must, not later than 14 days before the hearing on this Motion, file and

17 serve an opposition.

18       If a party fails to file a written opposition with the Court and serve it on the moving by the date

19 indicated, the Court may enter an order granting the relief requested in the Motion.

20

21 Dated: November 5, 2020                /s/ Nazanin Mazgani

22                                         _____

23                                         Nazanin Mazgani
                                        Attorney for Debtor/Defendant,

24                                         MAHVASH MAZGANI

25

26

27

28

**ER-192**

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STAY PLAINTIFF'S ADVERSARY PROCEEDING

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Defendant/Debtor Mahvash Mazgani ("Debtor" or "Defendant") hereby moves this Court to abstain from hearing and stay the above-captioned adversary proceeding pursuant to nonstatutory abstention doctrines and the seminal case of *In re Bellucci,* 119 B.R. 763 (1990).

On October 2, 2019, a Chapter 7 involuntary bankruptcy petition was filed against Debtor Mahvash Mazgani by creditors Park Avenue Investment Capital, LLC, Carmelo Iglesias, Howard A Kapp, and Cesar Krauss. On May 12, 2020, an order for relief was entered in the involuntary bankruptcy case [Doc. No. 173], and the case was converted to a Chapter 11 voluntary bankruptcy on July 15, 2020 [Doc. No. 250].

Debtor Mahvash Mazgani is the Defendant in the adversary proceeding entitled *Kevin Moda v. Mahvash Mazgani* ("Adversary Proceeding") currently pending before this Court in the Debtor's bankruptcy case.

The Adversary Proceeding seeks nondischargeability of debt under four claims for relief, i.e. 11 U.S.C. §523(a)(2)(A), (a)(4) & (a)(6) and denial of discharge under two claims for relief, i.e. 11 U.S.C. §727(a)(2), (a)(3) and (a)(4). Plaintiff's Adversary Complaint is a core proceeding. [See *In re Green* (9th Cir. BAP 1996) 198 B.R. 564, 566; *In re Kennedy* (9th Cir. 1997) 108 F3d 1015, 1017].

Prior to the inception of the involuntary bankruptcy filing, a cross-complaint was filed against the Debtor/Defendant on October 16, 2017 by Plaintiff Kevin Moda ("Moda") in an action now pending in the Los Angeles Superior Court entitled *Mahvash Mazgani, etc., et al. v. Kevin Moda, etc., et al.* Case No. BC607465 ("State Court Action"). Moda's cross-complaint in the State Court Action alleges twelve causes of action including, but not limited to, breach of fiduciary duty, unjust enrichment, conversion, accounting, and fraud in the inducement. The allegations and relief requested by the State Court Action is identical to that requested in Moda's Adversary Proceeding, (i.e., the underlying allegations in the Adversary Complaint are the same in the State Court Action). In fact, Moda attaches a copy of the State Court Action as Exhibit 1 to his Adversary Complaint. A trial setting conference is scheduled in the State Court Action on January 7, 2021 and Debtor anticipates that a trial will possibly be scheduled in the first quarter of 2021.

3

**ER-193**

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STAY PLAINTIFF'S ADVERSARY PROCEEDING

1    On July 16, 2020, Moda (in pro se) filed a Motion for Relief from Stay and a Motion for of the

2    State Court Action which Debtor had removed to the Bankruptcy Court [Doc. No. 265]. On September

3    15, 2020, a hearing was held on the motions and the Court found that relief from stay was proper [Doc.

4    No. 356] and the removed action was remanded to the Superior Court. Consequently, the State Court

5    Action is now currently being litigated. At the September 15 hearing, the Bankruptcy Court advised that

6    there would be no final determination of Debtor's bankruptcy case until the State Court Action was

7    resolved as there are issues regarding two real properties owned by the Debtor. See the Court's Ruling

8    on Motion for Relief from Stay attached to Debtor/Defendant's declaration (filed herewith) as **Exhibit**

9    **A**. See also the Court's Order Extending Deadline to File Plan of Reorganization under 11 U.S.C. §

10   1189 (b) attached to Debtor/Defendant's declaration (filed herewith) as **Exhibit B**.

11       On October 8, 2020, Moda filed a Proof of Claim (attached as **Exhibit C** to Debtor/Defendant's

12   declaration) in the Debtor's bankruptcy for $3,738,480.50 based on the disputed State Court Action

13   [Claim No. 13]. Attached to Moda's Proof of Claim was a "Statement of Itemization" which states as

14   follows:

15           "On October 16, 2017, Kevin Moda filed a *First Amended Consolidated*

16           *Cross-Complaint for: 1)Breach of Fiduciary Duty of Trustee; 2) Civil*

17           *Conspiracy; 3) Breach of Fiduciary Duty of Counsel; 4) Aiding and Abetting*

18           *and Knowingly Benefitting from Breach of Trust; 5) Unjust Enrichment; 6)*

19           *Conversion; 7) Accounting; 8) Fraud in Inducement; 9) Money Had and*

20           *Received; 10) Declaratory Relief; 11) Set Aside Voidable Transaction [Civ.*

21           *Code § 3439.07(a)(1)] and for Damages Based on Fraudulent Transfer [Civ.*

22           *Code § 3439.04(a)]; and 12) Conspiracy to Defraud Creditor* ("Cross-

23           Complaint") in the state court action *Kevin Moda v. Mahvash Mazgani et al*,

24           LASC Case No. BC607465, Los Angeles Superior Court ("SC Action"). A

25           copy of the Cross-Complaint is attached hereto as **Exhibit 1**. In the SC

26           Action, Moda alleges, among other things, that Mahvash Mazgani ("Debtor")

27           defrauded Moda and converted and misappropriated Moda's property."

28

           "Moda files this proof of claim on behalf of all damages asserted in the SC

           Action. A table itemizing those damages is attached hereto as **Exhibit 2**.

                                          4                                **ER-194**

1

2       "On September 16, 2020, the Court entered an *Order Granting Motion for*

3       *Relief from the Automatic Stay (Non-Bankruptcy Forum)* [Doc. 356] granting

4       Moda relief from the automatic stay to continue prosecuting the SC Action to

5       judgment against Debtor.

6

7       No judgment has been entered liquidating the amount of this claim. Moda

8       reserves the rights to amend and supplement this claim as appropriate under

9       the circumstances."

10

11   **2.   THE COURT HAS THE POWER UNDER THE *COLORADO RIVER* DOCTRINE TO**

12   **STAY MODA'S ADVERSARY PROCEEDING BASED ON THE PENDING STATE**

13   **COURT ACTION ALONG WITH OTHER FACTORS SET FORTH HEREIN.**

14   *COLORADO RIVER WATER CONSERVATION DIST. V. UNITED STATES* **424 U.S. 800 (1976)**

15       Federal courts, including the bankruptcy court, may stay proceedings if a concurrent state matter

16   is pending dealing with substantially comparable issues under the *Colorado River* abstention doctrine.

17   (*Colorado River Water Conservation Dist. v. United States* (1976) 424 US 800, 817). In *In re Bellucci*

18   119 B.R. 763 (Bankr. E.D. Cal. 1990), the bankruptcy court, on a motion for reconsideration, decided

19   the question of "whether a bankruptcy court has inherent power to abstain (or defer to state courts) on

20   grounds distinct from the statutory bankruptcy abstentions that are authorized by 11 U.S.C. §305 and 28

21   U.S.C. §1334(c)." *Id.* at 766. The Court, in *Bellucci*, ordered stay of a Plaintiff's adversary proceeding

22   to defer to a pending state court appeal.

23       In *Bellucci*, a California judgment creditor sought determination in debtor's Chapter 11

24   bankruptcy that a judgment debt was nondischargeable based on a state court action. At the time

25   Debtor's bankruptcy was filed, the state court action was pending appeal. The bankruptcy court held

26   that:

27       "Under the *Colorado River* doctrine, a federal trial court has discretion, in 'exceptional

28       circumstances' and despite the general obligation to exercise jurisdiction, to stay or dismiss an

         action for reasons of wise judicial administration solely because of the existence of parallel

         litigation in state court. The doctrine applies in bankruptcy. *See Wilkey v. Sutton (In re Sutton),*

                                                5                                    **ER-195**

109 B.R. 238 (Bankr.W.D.Ky.1989); *Tidwell Indus., Inc.,* 87 B.R. at 345.

"As *Colorado River* deference is applied in the Ninth Circuit, federal trial courts must stay, rather than dismiss, actions in which they decide to defer to state court proceedings. *Coopers & Lybrand,* 912 F.2d at 1137; *Attwood v. Mendocino Coast Dist. Hospital,* 886 F.2d 241, 243 (9th Cir. 1989) ('the federal forum will remain open if "for some unexpected reason the state forum does turn out to be inadequate"')." *Id* at 775.

The *Bellucci* court held the following relevant points to this motion:

"A basic attribute of any court, however humble, is the latitude to control its own docket: [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). Thus, a bankruptcy court has the inherent power to control its docket, including controlling the timing of proceedings on that docket." *Id.* at 770.

"The nonstatutory doctrines emerged from the background after the Bankruptcy Amendments and Federal Judgeship Act of 1984 (enacted in response to *Northern Pipeline Constr. Co.,* 458 U.S. at 50, 102 S.Ct. at 2860) required district court actions to employ the nonreviewable statutory abstentions in adversary proceedings. Thereafter, the nonstatutory doctrines remained as measures useful for bankruptcy courts to invoke in appropriate circumstances." *Id.* at 773.

"Perhaps the best indication that the bankruptcy court can, on its own, defer to a state court is the bankruptcy court's unquestioned power to lift the automatic stay of proceedings in nonbankruptcy forums. 11 U.S.C. § 362(c)" *Id.* at 774.

"So long as it is constitutional for non-Article III bankruptcy courts to enter final judgments and appropriate orders, subject to appeal, in core proceedings, it cannot be an unconstitutional exercise of Article III powers for a bankruptcy court to apply nonstatutory abstention doctrines in a core proceeding." *Id.* at 774 - 775

6

**ER-196**

1    The nonstatutory abstention doctrine that applies in this case is the *Colorado River* doctrine.
2  *Colorado River  Water Conservation Dist. v. United States* 424 U.S. 800, 96 S.Ct. 1236 (1976).  The
3  determination of whether Plaintiff's adversary proceeding should be stayed is guided by the exceptional
4  circumstances test which includes six factors determined by the Supreme Court's decision in *Colorado*
5  *River* and its progeny. *Id.* at 775.  The factors are:

6          "1. The assumption of jurisdiction over any res or property in question.

7          2. The relative convenience of the state and federal forums.

8          3. The danger of unnecessary piecemeal litigation.

9          4. The order in which concurrent tribunals obtained and exercised jurisdiction.

10          5. Whether federal or state law provides the rule of decision on the merits.

11          6. The adequacy of the state proceeding to protect the parties' rights." *Id.*

12

13  The *Colorado River* court stated: "These factors are 'to be applied in a pragmatic, flexible manner with a
14  view to the realities of the case at hand.' [Citation]." *Id.*

15

16          **A.    Assumption of Jurisdiction Over Res or Property in Question**

17          Here, Debtor's existing property in her estate came into exclusive jurisdiction of the federal
18  bankruptcy court when the case was filed.  However, the issue relating to this factor is whether or not
19  the State Court Action would interfere with the automatic federal jurisdiction over the Debtor's
20  property.  In this instance, since the Court has already granted Plaintiff's relief from the automatic stay
21  to pursue the State Court Action, it is apparent that the Court has determined that the litigation of the
22  State Court Action would not interfere in the administration of the bankruptcy, but would delay the
23  reorganization process as the Court extended the deadline for Debtor to file her plan until after the State
24  Court Action is determined [Doc. No. 369]  A final determination in the State Court Action would
25  facilitate an efficient and proper resolution of Debtor's Chapter 11 bankruptcy.  [See *In re Bellucci,*
26  *supra,* 119 B.R. at 775.]

27          **B.    The Relative Convenience of the State and Federal Forums.**

28          Based on the Court's order allowing relief from stay of the State Court Action, the Court has
already determined that the state court is the more convenient forum (based on judicial efficiency and
resources, effort and expense) in which the Plaintiff and the Debtor/Defendant can resolve their dispute.

7                                    **ER-197**

Any judgment determined, will achieve a finality in the pending State Court Action. If Plaintiff's Adversary Proceeding (which allegations are identical to the State Court Action) is not stayed, then Debtor/Defendant will be forced to litigate and expend more fees and costs defending the Adversary Proceeding which will diminish financial resources from the Debtor's estate. [See *In re Bellucci, supra,* 119 B.R. at 776.

**C.    The Danger of Unnecessary Piecemeal Litigation.**

Clearly, if the Adversary Proceeding is allowed to go forward it could achieve a different result than that in the State Court Action which would unnecessarily expose the Debtor/Defendant to piecemeal litigation. It is unnecessary for the bankruptcy court to adjudicate Plaintiff's Adversary Proceeding to determine if a hypothetical and speculative future judgment will be nondischargeable. In order to avoid piecemeal litigation the Court should stay Plaintiff's Adversary Proceeding and wait to see if Plaintiff obtains a favorable judgment in the State Court Action. [See *In re Bellucci, supra,* 119 B.R. at 776.]

**D.    The Order in Which Concurrent Tribunals Obtained and Exercised    Jurisdiction.**

Plaintiff's State Court Action has been pending against the Debtor/Defendant for more than three years. As stated above, an involuntary bankruptcy was filed against the Debtor last year on October 2, 2019. An order for relief was entered on May 12, 2020 and the case was converted to a voluntary Chapter 11 on July 15, 2020. In *Bellucci,* the Court found that the order in which the state and federal cases were filed militated strongly in favor of staying the adversary proceeding. The Court held that "the focus is on the relative progress of the cases in the state and federal forums—how the courts have 'exercised' their jurisdiction." *In re Bellucci, supra,* at 776.

Here the State Court Action was progressing well and had been set for trial at least twice (January 7, 2019 and June 17, 2019). Both trials were continued by motions made by Moda and then he orchestrated and facilitate the filing of the involuntary bankruptcy against the Debtor. The state court has exercised its jurisdiction for more than three years now and the Debtor/Defendant is simply waiting for the state court to schedule a trial which she anticipates will possibly be in the first quarter of 2021. An extreme amount of discovery has been done in the State Court Action and the case is ready for trial. Consequently, this factor militates towards staying and/or deferring Plaintiff's Adversary Proceeding until a determination is made in the state court.

8

**ER-198**

E.    **Whether Federal or State Law Provides the Rule of Decision on the    Merits.**

The State Court Action has a garden-variety of common law causes of action based on California state law including breach of fiduciary duty, unjust enrichment, conversion, accounting, and fraud in the inducement. California law will provide the rule of decision based on the merits and evidence presented in the State Court Action. Bankruptcy law will not change the substantive law that applies to the merits of any claims set forth in Plaintiff's state court cross-complaint. [See *In re Bellucci, supra,* 119 B.R. at 777].

F.    **The Adequacy of the State Court Proceeding to Protect the Parties' Rights.**

This factor assumes a special significance:

"[B]ecause a basic purpose of bankruptcy is to bring all claims (including claims pending in state court) against a debtor into the bankruptcy court and resolve them expeditiously. 11 U.S.C. § 502. An automatic stay is imposed against all litigation pending in other courts. 11 U.S.C. § 362(a)(1). A creditor who does not bring a claim into bankruptcy court risks having that claim wiped out. *See, e.g.,* 11 U.S.C. § 524(a).

"Nevertheless, the statutes and rules that favor the bankruptcy forum and that, in this instance, give the bankruptcy court control over litigation in a state court does not preclude resolution of [a party's] claim in state court. The bankruptcy court has discretion to lift the automatic stay.

"It is against this background that the court must assess the parties' rights. The initial bankruptcy filing freezes actions against the debtor. Thereafter, the court must strike a fair balance between the rights of the debtor and of the creditors." *Id.* at 777-778.

In this case, the most substantial right that should be protected is the right of the Debtor/Defendant and Plaintiff to have their dispute, governed by California law, be fairly and expeditiously resolved. The Superior Court is fully able to protect those rights. Any right to a timely reorganization under the Chapter 11 bankruptcy code will not be frustrated by the Court ordering an abstention to stay Plaintiff's Adversary Proceeding until a settlement or judgment is reached in the State Court Action as the Judge advised that the deadline to file a plan would be extended under Chapter 11, Subchapter V as long as necessary for the State Court Action to be resolved.

9

**ER-199**

# 3. CONCLUSION

Based on the law in *In re Bellucci* and *Colorado River Water Conservation Dist.*, Debtor/ Defendant respectfully requests the Court grant her abstention motion to stay Plaintiff's Adversary Proceeding until the underlying State Court Action is resolved.

Dated: November 5, 2020

/s/ Nazanin Mazgani

Nazanin Mazgani
Attorney for Debtor/Defendant,
MAHVASH MAZGANI

**ER-200**

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STAY PLAINTIFF'S ADVERSARY PROCEEDING

## DECLARATION OF MAHVASH MAZGANI

I, MAHVASH MAZGANI, declare and say that:

1.      I am the Debtor/Defendant in this action. If called upon as a witness I could and would testify to the within matters which are of my own personal knowledge. I make this declaration in support of my motion to stay Plaintiff's adversary proceeding.

2.      On October 2, 2019, a Chapter 7 involuntary bankruptcy petition was filed against me by creditors Park Avenue Investment Capital, LLC, Carmelo Iglesias, Howard A Kapp, and Cesar Krauss. On May 12, 2020, an order for relief was entered in the involuntary bankruptcy case and the case was converted to a Chapter 11 voluntary bankruptcy on July 15, 2020.

3.      Prior to the involuntary bankruptcy filing, a cross-complaint was filed against me on October 16, 2017 by Plaintiff Kevin Moda ("Moda") in an action now pending in the Los Angeles Superior Court entitled *Mahvash Mazgani, etc., et al. v. Kevin Moda, etc., et al.* Case No. BC607465 ("State Court Action"). Moda's cross-complaint in the State Court Action alleges twelve causes of action including, but not limited to, breach of fiduciary duty, unjust enrichment, conversion, accounting, and fraud in the inducement. The allegations and relief requested in the State Court Action are identical to that requested in Moda's Adversary Proceeding. A trial setting conference is scheduled in the State Court Action on January 7, 2021 and I anticipate that a trial will possibly be scheduled in the first quarter of 2021.

4.      The State Court Action has been progressing steadily for quite some time. A trial has been scheduled in the case at least twice (January 7, 2019 and June 17, 2019). Both trials were continued by motions made by Moda. Moda then orchestrated and facilitated the filing of the involuntary bankruptcy against the me. The state court has exercised its jurisdiction over the State Court Action for more than three years now. An immense amount of discovery has been done in the State Court Action and the case is ready for trial.

5.      On July 16, 2020, Moda (in pro se) filed, in my bankruptcy, a relief from stay motion and a Motion for Remand to the State Court of the State Court Action. On September 15, 2020, a hearing was held on the motions and the Court found that relief from stay was proper. At the hearing, the Court advised that there would be no final determination of my bankruptcy case until the State Court Action was resolved as there are issues regarding two real properties owned by me. A true and

11

**ER-201**

correct copy of the Court's Ruling on the Motion for Relief from Stay is attached hereto as **Exhibit A**. The State Court Action is now currently being litigated.

6.     The Court also ruled that the deadline to file a plan of reorganization under 11 U.S.C. § 1189(b) would be extended indefinitely until the Superior Court case with Moda and myself is decided. A true and correct copy of the Court's order is attached hereto as **Exhibit B.**

7.     On October 8, 2020, Moda filed a proof of claim in my bankruptcy for $3,738,480.50 based on the disputed State Court Action. As such, any claim he may have in the bankruptcy has been preserved. A true and correct copy of Moda's Proof of Claim is attached hereto as **Exhibit C**.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 5th day of November, 2020 at Los Angeles, California.

Mahvash Mazgani

**ER-202**

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STAY PLAINTIFF'S ADVERSARY PROCEEDING

# EXHIBIT A

1
2
3
4
5
6
7
8

> FILED & ENTERED
>
> SEP 16 2020
>
> CLERK U.S. BANKRUPTCY COURT
> Central District of California
> BY fortier   DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:19-bk-21655-BR |
| MAHVASH MAZGANI, | Chapter 11 Subchapter V |
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY (NON-BANKRUPTCY FORUM)** |
| Debtor(s). | Date:   September 15, 2020<br>Time:   2:00 p.m. |
| | Conducted via videoconference on Zoom for Government |

This matter is before the Court on the "Notice of Motion and Motion for Relief from the Automatic Stay [Non-Bankruptcy Forum] and Motion for Abstention and Remand to State Court" ("Motion")[1] filed by Kevin Moda *in pro se* on July 16, 2020 (docket no. 257). The Relief from Stay Motion seeks relief from the automatic stay to

---

[1]   This Order solely addresses the Motion's request for relief from the automatic stay. The court has contemporaneously entered a separate order regarding the abstention/remand issue.

-1-

**ER-204**

1    allow a pending state court action (Los Angeles Superior Court Case No. BC607465)[2]

2    to continue in the state court forum.

3       The Court reviewed the Motion, the attached Memorandum of Points and

4 Authorities and declaration of Kevin Moda and all related exhibits. The Court also

5 reviewed the opposition to the Motion filed by the debtor on September 1, 2020 (docket

6

7 no. 329), and the reply to the debtor's opposition filed by Mr. Moda on September 8,

8 2020 (docket no. 339).

9       The Court held a hearing on the Motion on September 15, 2020. Kevin Moda

10 appeared *in pro se*, James R. Selth, Esq. appeared on behalf of the debtor, and

11 Gregory S. Jones, Esq., the Subchapter V trustee, also attended the hearing.

12

13       The Court heard argument from Mr. Moda and Mr. Selth and representations by

14 Mr. Jones. For the reasons set forth on the record, the Court finds that good cause has

15 been shown to grant the requested relief from the automatic stay.

16       Accordingly, the Motion is **GRANTED**, including its request for a waiver of the 14-

17 day stay prescribed by FRBP 4001(a)(3).

18       **IT IS SO ORDERED.**

19

20

21

22

23

24

25    Date: September 16, 2020

26                       Barry Russell
                      United States Bankruptcy Judge

27 _____

28    [2]    The Motion explained that the state court in Los Angeles Superior Court case no.
B607465 had consolidated two pending state court actions (BC607465 and BC622117) under
one case number (case no. BC607465).

-2-

**ER-205**

# EXHIBIT B

1  Daniel J. Weintraub – Bar #132111
   James R. Selth – Bar #123420
2  Crystle J. Lindsey – Bar #281944
3  **WEINTRAUB & SELTH, APC**
   11766 Wilshire Boulevard, Suite 1170
4  Los Angeles, CA 90025
   Telephone: (310) 207-1494
5  Facsimile: (310) 442-0660
   Email: jim@wsrlaw.net
6

7  General Bankruptcy Counsel to
   Chapter 11 Debtor and Debtor in Possession,
8  MAHVASH MAZGANI

9

10                **UNITED STATES BANKRUPTCY COURT**

11         **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

12  In re:                                Case No. 2:19-bk-21655-BR

13  MAHVASH MAZGANI,                      Chapter 11 – Subchapter V

14                                        **ORDER EXTENDING DEADLINE TO**
                Debtor and Debtor in Possession.   **FILE PLAN OF REORGANIZATION**
15                                        **UNDER 11 U.S.C. § 1189(b)**

16
                                          Date:        September 15, 2020
17                                        Time:        2:00 p.m.
                                          Courtroom: 1668
18

19

20

21

22        On September 15, 2020 at 2:00 p.m., a Status Conference hearing in this Chapter 11

23  Subchapter V case was held using ZoomGov before the Honorable Barry Russell, United States

24  Bankruptcy Judge presiding.  James R. Selth of Weintraub & Selth, APC appeared for Debtor,

25  Mahvash Mazgani, Thomas D. Sands of The Sands Law Group, APLC appeared for Creditors

26  Cesar Krauss, Carmelo Iglesias and Park Avenue, and Kevin Moda appeared in pro per.  Also

27  appearing was Subchapter V Trustee Gregory Jones.  All other appearances were noted on the

28  record.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

FILED & ENTERED

SEP 25 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier     DEPUTY CLERK

-1-

**ER-207**

1      For the reasons as stated on the record following the Court's ruling remanding Adversary

2  Case No. 2:20-ap-01162-BR to the Los Angeles County Superior Court ("Superior Court"),

3      **IT IS HEREBY ORDERED** that the deadline for Debtor to file a Subchapter V Plan of

4  Reorganization under 11 U.S.C. § 1189(b) is extended indefinitely until the Superior Court has

5  decided the remanded action, at which time the Court will set a new deadline for Debtor to file a

6  Plan of Reorganization.

7                           # # #

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: September 25, 2020

25                         Barry Russell
United States Bankruptcy Judge

26

27

28

-2-

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

**ER-208**

# EXHIBIT C

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | Mahvash Mazgani |
| Debtor 2 (Spouse, if filing) | |

United States Bankruptcy Court for the: Central District of California

Case number  2:19-bk-21655-BR

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Kevin Moda<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>c/o Donald W. Reid<br>Name<br>PO Box 2227<br>Number       Street<br>Fallbrook           CA          92088<br>City                State        ZIP Code<br><br>Contact phone (951) 777-2460<br>Contact email don@donreidlaw.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **Where should payments to the creditor be sent? (if different)**<br><br>Name<br><br>Number       Street<br><br>City                State        ZIP Code<br><br>Contact phone<br>Contact email |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____   Filed on _____ MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? |

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**   $ _____3,738,480.50_. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Damages for fraud, breach of fiduciary duty, conversion etc.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

Beneficial to title to property Located at 10950-10954 Massachusetts Ave., Los Angeles, CA 90024, Basis for perfection of interest constructive trust due to strict tracing of funds and commingling and defalcation. In re Goldberg, 158 B.R. 188, 194 (Bankr. E.D. Cal. 1993)In re Advent Management Corporation v. Diamant, 104 F.3d 293, 296 (9th Cir. 1997)

☐ Motor vehicle

☑ Other. Describe:   Beneficial Title to Property located at 141 S. Clark St, #320 , West Hollywood, CA 90048

**Basis for perfection:**   Purchased the property in short-sale transaction with BOFA.

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $ ___3,592,000.00___

Amount of the claim that is secured:   $ ___3,592,000.00___

($665,000.00 for Clark Property and $2,950,000.00 for the Massachusetts Property)

Amount of the claim that is unsecured: $ ___146,480.50___ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $ _____

Annual Interest Rate (when case was filed) _10.00_ %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410    Proof of Claim    page 2

**ER-211**

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check all that apply: | | Amount entitled to priority |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/08/2020
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Kevin Moda | | |
| | First name | Middle name | Last name |
| Title | | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 18324 Clark Street #310 | | |
| | Number      Street | | |
| | Tarzana | CA | 91356 |
| | City | State | ZIP Code |
| Contact phone | | Email | |

Print        Save As...        Add Attachment        Reset

Official Form 410                    Proof of Claim                    page 3

**ER-212**

## STATEMENT OF ITEMIZATION

On October 16, 2017, Kevin Moda filed a *First Amended Consolidated Cross-Complaint for: 1) Breach of Fiduciary Duty of Trustee; 2) Civil Conspiracy; 3) Breach of Fiduciary Duty of Counsel; 4) Aiding and Abetting and Knowingly Benefitting from Breach of Trust; 5) Unjust Enrichment; 6) Conversion; 7) Accounting; 8) Fraud in Inducement; 9) Money Had and Received; 10) Declaratory Relief; 11) Set Aside Voidable Transaction [Civ. Code § 3439.07(a)(1)] and for Damages Based on Fraudulent Transfer [Civ. Code § 3439.04(a)]; and 12) Conspiracy to Defraud Creditor* ("Cross-Complaint") in the state court action *Kevin Moda v. Mahvash Mazgani et al*, LASC Case No. BC607465, Los Angeles Superior Court ("SC Action"). A copy of the Cross-Complaint is attached hereto as **Exhibit 1**. In the SC Action, Moda alleges, among other things, that Mahvash Mazgani ("Debtor") defrauded Moda and converted and misappropriated Moda's property.

Moda files this proof of claim on behalf of all damages asserted in the SC Action. A table itemizing those damages is attached hereto as **Exhibit 2**.

On September 16, 2020, the Court entered an *Order Granting Motion for Relief from the Automatic Stay (Non-Bankruptcy Forum)* [Doc. 356] granting Moda relief from the automatic stay to continue prosecuting the SC Action to judgment against Debtor.

No judgment has been entered liquidating the amount of this claim. Moda reserves the rights to amend and supplement this claim as appropriate under the circumstances.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

10954 Massachusetts Avenue, Los Angeles, California 90024

A true and correct copy of the foregoing document entitled (*specify*): Defendant's Notice of Motion and Motion to Stay
Plaintiff's Adversay Proceedings;Memorandum of Points and Authorities; Declaration of Mahvash Mazgani

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/06/2020 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 11/06/2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Barry Russell
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/06/2020 | Nazanin Mazgani | /s/Nazanin Mazgani |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**ER-214**

ATTACHMENT TO PROOF OF SERVICE:

NEF LIST FOR ADVERSARY PROCEEDING

- **Gregory Kent Jones (TR)**  gjones@svcr.com, smjohnson@svcr.com;C191@ecfcbis.com
- **Donald W Reid**  don@donreidlaw.com, ecf@donreidlaw.com
- **James R Selth**  jim@wsrlaw.net, jselth@yahoo.com;eduardo@wsrlaw.net;gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com
- **United States Trustee (LA)**  ustpregion16.la.ecf@usdoj.gov

**ER-215**

**Nazanin Mazgani, Esq. (SBN 270258)**
**Law Offices of Nazanin Mazgani**
10954 Massachusetts Avenue
Los Angeles, CA 90024
Phone: (424) 256-0095
Email: mazganilaw@gmail.com

Attorney for Defendant/Debtor,
Mahvash Mazgani

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re: | ) Chapter 7 |
| | ) |
| MAHVASH MAZGANI, | ) Case No.: 2:19-bk-21655-BR |
| | ) |
| Debtor | ) Adv. No.: 2:20-ap-01637-BR |
| | ) |
| | ) **DEBTOR/DEFENDANT MAHVASH** |
| KEVIN MODA | ) **MAZGANI'S MOTION TO DISMISS** |
| | ) **PLAINTIFF'S CLAIMS FOR RELIEF IN** |
| Plaintiff, | ) **HIS COMPLAINT FOR DENIAL OF** |
| v. | ) **DISCHARGE UNDER 11 U.S.C. §§727(a)(2)** |
| | ) **& (a)(4)(A); DECLARATION OF MAHVASH** |
| MAHVASH MAZGANI, | ) **MAZGANI** |
| | ) |
| | ) |
| Defendant. | ) Date: TBD |
| | ) Time: TBD |
| | ) Ctrm: 1668 |
| | ) Place: 255 E Temple Street, |
| | ) Los Angeles, CA 90012 |
| | ) |
| | ) |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY**

**JUDGE, PLAINTIFF KEVIN MODA, AND HIS ATTORNEY OF RECORD DONALD W.**

**REID:**

1

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

ER-216

1    **PLEASE TAKE NOTICE** that on a date and time to be determined in Courtroom 1668 of the

2    United States Bankruptcy Court, 255 East Temple Street, Los Angeles, CA 90012, Debtor/Defendant

3    Mahvash Mazgani ("Defendant" or "Debtor") will move this Court for an order dismissing Plaintiff's

4    fourth and sixth claims for relief in his complaint for denial of discharge pursuant to Federal Rule of

5    Bankruptcy Procedure 7012(a), (b) and Federal Rule of Civil Procedure 12(b)(6) on the grounds that

6    the claims for relief fail to state a claim upon which relief can be granted.

7       This motion is based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable

8    by Rule 7012(a), (b) of the Federal Rules of Bankruptcy Procedure ("FRBP"), the attached

9    memorandum of points and authorities, the entire record in this adversary proceeding and the related

10   main bankruptcy case, the statements, arguments and representations of counsel to be made at the

11   hearing on this Motion, and any other evidence properly presented to the Court at or prior to the

12   hearing on this Motion.

13      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f) any

14   party who opposes the Motion must, not later than 14 days before the hearing on this Motion, file and

15   serve an opposition.

16      If a party fails to file a written opposition with the Court and serve it on the moving by the date

17   indicated, the Court may enter an order granting the relief requested in the Motion.

18

19   Dated: November 5, 2020                    /s/ Nazanin Mazgani

20

21                                             Nazanin Mazgani
                                               Attorney for Debtor/Defendant,
22                                             MAHVASH MAZGANI

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN **ER-217**
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3  **1. INTRODUCTION**

4  Defendant files this motion to dismiss based on the following:

5  Plaintiff's fourth claim for relief under 11 U.S.C. §727(a)(2) fails to allege sufficient facts to

6  support a cognizable legal theory and, consequently, this claim for relief fails to state a claim upon

7  which relief may be granted. [Rule 12(b)(6)]

8  Plaintiff's sixth claim for relief under 11. U.S.C. §727(a)(4)(A) fails to allege sufficient facts to

9  support a cognizable legal theory and, consequently, this clam for relief fails to state a claim upon which

10  relief may be granted. [Rule 12(b)(6)].

11

12  **2. RELEVANT BACKGROUND FACTS**

13  On October 16, 2017, Plaintiff Kevin Moda filed a cross-complaint in the Los Angeles Superior

14  Court, Case No. BC607465, which case was consolidated with case no. BC622117. The state court

15  cross-complaint is identical to the facts and allegations alleged in Plaintiff's adversary complaint. The

16  cross-complaint is attached as **Exhibit 1** to Plaintiff's adversary complaint.

17  On October 2, 2019, a Chapter 7 involuntary bankruptcy petition was filed against Debtor

18  Mahvash Mazgani by creditors Park Avenue Investment Capital, LLC, Carmelo Iglesias, Howard A

19  Kapp, and Cesar Krauss. On May 12, 2020, an order for relief was entered in the involuntary

20  bankruptcy case [Doc. No. 173], and the case was converted to a Chapter 11 voluntary bankruptcy on

21  July 15, 2020 [Doc. No. 250].

22  On May 26, 2020, Debtor filed her initial bankruptcy schedules [Doc. No. 190]. At the time she

23  filed her bankruptcy schedules, Debtor was not the owner of the real estate property located at 10950-

24  10954 Massachusetts Avenue, Los Angeles, CA 90024 ("Massachusetts Property") and it was held in

25  the name of the Wesson Trust dated 2/29/2016. On June 24, 2020, the Massachusetts Property was

26  deeded to the Debtor and on June 26, 2020, the Debtor filed an Amended A/B schedule which included

27  the Massachusetts property [Doc. No. 225].

28  //

3

**ER-218**

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

**3.  PLAINTIFF'S CLAIMS FOR RELIEF UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A) FAIL TO ALLEGE SUFFICIENT FACTS TO SUPPORT A COGNIZABLE LEGAL THEORY AND, CONSEQUENTLY, THESE CLAIMS FOR RELIEF FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

A dismissal of a claim for relief is proper under Federal Rules of Civil Procedure Rule 12(b)(6) if the complaint either: (1) fails to allege a "cognizable legal theory" or (2) fails to allege sufficient facts "to support a cognizable legal theory." [*Caltex Plastics, Inc. v. Lockheed Martin Corp.* (9th Cir. 2016) 824 F.3d 1156, 1159, *Coffin v. Safeway, Inc.* (D AZ 2004) 323 F.Supp.2d 997, 1000 (citing text). In addition, the facts alleged must state a "facially plausible" claim for relief. [*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544. The "facially plausibility claim governs adversary complaints in bankruptcy cases. [*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 684.] In a complaint alleging several distinct claims for relief, a Rule 12(b)(6) motion may be directed to fewer than all of the claims raised. [*Godlewski v. Affiliated Computer Services, Inc.* (ED VA 2002) 210 F.R.D. 571, 572; *Miceli v. Ansell, Inc.* (ND IN 1998) 23 F.Supp.2d 929, 931].

There is a two-prong approach the Court must look at to determine whether a complaint adequately states a plausible claim for relief. First, the Court must take "note of the elements a plaintiff must plead to state a claim." [*Ashcroft v. Iqbal*, supra, 556 US at 675; *Burtch v. Milberg Factors, Inc.* (3rd Cir. 2011) 662 F3d 212, 221]. The Court must identify which statements in the complaint are factual allegations and which are legal conclusions. The Court does not have to accept as true any legal conclusions alleged. [See *Ashcroft v. Iqbal*, supra, 556 US at 681, -- "It is the *conclusory nature of respondent's allegations*, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." (Emphasis added).

Second, the Court must decide, based on its "judicial experience and common sense," in the specific context of the case whether the factual allegations, if assumed true, allege a plausible claim. *Ashcroft v. Iqbal*, supra, 556 US at 679. [An inference of liability is **not** plausible when the allegations of the complaint give rise to an "obvious alternative explanation" of legality. *Ashcroft v. Iqbal*, supra, 556 US at 682.]

//

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

**ER-219**

In analyzing whether a pleading states a plausible claim for relief, the Court should:

(1)    Consider the complaint's factual allegations, "together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.* (9th Cir. 2011) 637 F3d 1047, 1054.

(2)    Read the complaint as a whole, "not parsed piece by piece to determine whether each allegation, in isolation, is plausible." [*Hernandez-Cuevas v. Taylor* (1st Cir. 2013) 723 F.3d 91, 103 (internal quotes omitted); *Manning v. Boston Med. Ctr. Corp.* (1st Cir. 2013) 725 F.3d 34, 49.]

A.    **Plaintiff's Fourth Claim for Relief - 11 U.S.C. §727(a)(2)**

11 U.S.C. §727(a)(2) provides for a denial of discharge when the debtor, "with intent to hinder, delay, or defraud a creditor or an officer of the estate," has transferred, mutilated or concealed property that was either (A) property of the debtor within a year before the filing of the petition or (B) property of the estate after the date of filing the petition. A party seeking denial of discharge under §727(a)(2) must prove "(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." *In re Beauchamp*, 236 B.R. 727, 732 (B.A.P. 9th Cir. 1999).

Here, Plaintiff's complaint lists two paragraphs of allegations which he believes constitutes a concealed transfer of property within a year before and after the filing of the bankruptcy petition on October 2, 2019.  Paragraph 123 states:

> "Defendant willfully concealed property of the debtor within one year before the filing of the bankruptcy petition (October 2, 2019), specifically the real estate located at 10950–10954 Massachusetts Ave., Los Angeles, CA 90024 ("Massachusetts Property") by keeping legal title in the name of the Wesson Trust and or her daughters, Nazanin and Neyaz. On June 24, 2020, the Massachusetts Property was deeded back to Defendant so that 'it could be administered as part of Debtor's bankruptcy estate.'"

The relevant "filing date" for Debtor's voluntary petition is the date of the entry of the order for relief on May 12, 2020, not October 2, 2019 when the involuntary bankruptcy petition was filed. At the time the Debtor filed her original voluntary bankruptcy schedules on May 26, 2020, she did not have title or ownership of the Massachusetts property, so clearly it could not be concealed and, for this

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

**ER-220**

reason, was not included in her original schedules. However, on June 24, 2020, the Massachusetts property was deeded to the Debtor and thus on June 26, 2020, the Debtor filed an Amended Schedule A/B which included the Massachusetts property. Debtor requests that the Court take judicial notice (under Federal Rules of Evidence Rule 201(b)) of the Debtor's amended A/B schedule attached herein to her declaration as **Exhibit 1**. Clearly, there was no concealment of the property prior to or after the entry of the order for relief on May 12, 2020. The Court will note on Schedule A/B pg. 2, no. 1.3 it states: "Property transferred from Debtor to Wesson Trust 2/29/2016; property deeded back to Debtor 6/24/2020. Valuation based on January 2020 appraisal."

Paragraph 124 of Plaintiff's complaint states:

> "Defendant willfully concealed property of the estate after the filing of the bankruptcy petition (October 2, 2019), specifically the funds held in her annuity with American Equity Investment Life Insurance Co. ("American Equity Annuity"). On February 6, 2019, the American Equity Annuity had a cash surrender value of $322,517.08. On her second amended Schedule A/B [Doc. 225] filed June 26, 2020, Defendant lists the cash surrender value as $63,730.11. Defendant's SOFA [Doc. 190] filed May 26, 2020 does not disclose how $258,787 vanished from the American Equity Annuity. On information and belief, Defendant has transferred or concealed funds in the American Equity Annuity for the purpose of hindering, delaying and defrauding her creditors."

On October 1, 2020, Hon. Barry Russell signed an Order ordering Debtor to appear for a Rule 2004 Examination on October 7, 2020 at the law offices of W. Derek May, counsel for Beverly Hills Lenders, one of Debtor's creditors [Doc. No. 355]. The Order also ordered Debtor to produce all the documents listed on Exhibit "A" of the Order by September 30, 2020 at 10:00 a.m. A stipulation was signed by counsel amending the order to allow other creditors than Beverly Hills Lenders to ask questions during the Rule 2004 Examination [Doc. Nos. 390 and 391]. Exhibit "A" attached to the Court's order requested documents from American Equity Investment Life Insurance Company ("American Equity") (no. 13 on Exhibit "A").

6

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a) **ER-221**

1   On September 30, 2020, as ordered, Debtor's counsel produced all documents to Mr. May
2   pursuant to Exhibit "A" of the order including all documents in her possession from American Equity.
3   The Debtor produced an annual statement from American Equity $(2/6/2019 - 2/6/2020)[1]$. The cash
4   surrender value on the statement was **$257,392.94**. The debtor also produced a check that was written to
5   her on February 11, 2020 from American Equity in the amount of $200,000.00.

6   Plaintiff Kevin Moda and his attorney, Donald Reid, appeared remotely at the Rule 2004
7   Examination and also received a copy of the American Equity documents prior to the examination.
8   Furthermore, on August 21, 2019, Moda subpoenaed the American Equity documents in the Superior
9   Court case and the Debtor did not oppose the production. (See **Exhibit 2** attached to Debtor's
10  declaration Plaintiff Kevin Moda's subpoena to American Equity in the Superior Court case.)
11  Moreover, Moda (even though he is represented by counsel) and his attorney asked questions about the
12  American Equity documents at the Examination. (See **Exhibit 3** attached to the Debtor's declaration,
13  which is the relevant portions of the Rule 2004 Examination transcript, which shows the American
14  Equity questions and answers.) When she was asked questions about the withdrawal of the $200,000 at
15  the Rule 2004 Examination, the Debtor advised that the money was withdrawn to pay for her substantial
16  attorneys' fees bills. The Stipulation with the Court's order and Exhibit "A" along with the American
17  Equity documents produced pursuant to the order are attached to the declaration of Debtor as **Exhibit 4**.
18  Debtor respectfully requests the court take judicial notice of these documents pursuant to Federal Rules
19  of Evidence Rule 201(b). Prior to filing her Amended Schedule A/B on June 26, 2020, the Debtor
20  contacted American Equity to obtain the current cash surrender value and they advised it was
21  $63,730.11 which is what is stated on her schedules.

22  Based on the documents that the Debtor/Defendant produced pursuant to Exhibit "A" of the
23  Court's order and her testimony at the Rule 2004 Examination, it is clear that the Debtor did not
24  willfully conceal or transfer property of the estate after the filing of her voluntary bankruptcy petition for
25  the purpose of hindering, delaying and defrauding her creditors. In fact, the Debtor/Defendant has been
26  completely transparent and forthcoming about her entire financial condition and any property of her
27  estate.

28

[1] American Equity only sends out annual statements of the account.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN **ER-222**
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

Debtor respectfully requests that the Court dismiss Plaintiff's fourth claim for relief as it fails to state sufficient facts to support a cognizable legal theory under 11 U.S.C. §727(a)(2).

**B.     Plaintiff's Sixth Claim for Relief - 11 U.S.C. §727(a)(4)(A)**

11 U.S.C. §727(a)(4)(A) denies discharge to a debtor who "knowingly and fraudulently" made a false oath or account in the course of the bankruptcy proceedings. To bring a successful §727(a)(4)(A) claim for false oath, the plaintiff must show: (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. *In re Wills,* 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999). "A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealing, or the existence and disposition of the debtor's property." *In re Retz,* 606 F.3d 1189, 1198 (9th Cir. 2010). "A debtor acts knowingly if he or she acts deliberately or consciously." *Id.* at 1198.

Here, Plaintiff's complaint lists two paragraphs of allegations which he believes constitutes alleged false oaths. Paragraph 132 states: "Defendant made false oaths in her Schedules A/B filed on May 26, 2020 [Doc. 190] and June 5, 2020 [Doc. 213] by intentionally failing to disclose her ownership interest in the Massachusetts Property, by far the most valuable asset of Defendant's bankruptcy estate"

As stated above, at the time the Debtor filed her bankruptcy schedules, she did not have title or ownership of the Massachusetts property which is why it was not listed on the initial schedules. However, on or about June 24, 2020, the Massachusetts property was deeded to the Debtor and, on June 26, 2020, the Debtor filed an Amended A/B schedule which included the Massachusetts property. Debtor requests that the Court take judicial notice (under Federal Rules of Evidence Rule 201(b)) of the Debtor's amended A/B schedule attached to her declaration as **Exhibit 1**. Clearly, the allegations contained in Paragraph 132 do not constitute a false oath.

Paragraph 133 of the complaint states: "On information and belief, Plaintiff alleges that Defendant falsely testified during her 341(a) examination that loans she made to Mordecai Notis and Notis Enterprises, Inc. ("Notis Loans") were funded with Plaintiff's monies. However, in prior proceedings, Defendant has represented that the Notis Loans were funded only with her monies."

11 U.S.C. §727(a)(4) requires that the alleged false oath relate to a **material fact** in the case and that the oath was made fraudulently. "A fact is material if it bears a relationship to the debtor's business

8

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

**ER-223**

1    transactions or estate, or concerns the discovery of assets, business dealing, or the existence and
2    disposition of the debtor's property." *In re Retz,* 606 F.3d 1189, 1198 (9th Cir. 2010). Here, the loan the
3    Debtor made to Mordecai Notis and Notis Enterprises was in fact the Plaintiff's money and the loan was
4    made seven years ago in 2013 and was the subject of a lawsuit entitled *Mahvash Mazgani, etc., et al. v.*
5    *Mordecai Notis,* Case No. SC122246 filed on March 18, 2014. This case was ultimately settled in
6    September, 2016. (See Paragraphs 73 & 80(b) of Plaintiff's own allegations in his adversary complaint).
7    There are no material facts relating in any way to assets or business transactions to the Debtor's estate as
8    the money Plaintiff discusses was his money not the Debtor's and even hypothetically if it were the
9    Debtor's money it was disbursed seven years ago.

10        Moreover, the allegations contained in Paragraph 133 are conclusory in nature and,
11    consequently, the Court does not have to accept them as true.

12        The fraud provision of §727(a)(4)(A) is similar to common law fraud, which the Ninth Circuit
13    describes as follows: The creditor must show that (1) the debtor made the representations; (2) that at the
14    time he knew they were false; (3) that he made them with the intention and purpose of deceiving
15    creditors; (4) that the creditors relied on such representations; (5) that the creditors sustained loss and
16    damage as the proximate result of the representations having been made. *In re Roberts, supra,* 331 B.R.
17    at 884. Federal Rules of Civil Procedure Rule 9(b) states in pertinent part:

18                "In alleging fraud or mistake, a ***party must state with particularity the***
19            ***circumstances constituting fraud*** or mistake." "Rule 9(b) demands that,
20            when averments of fraud are made, the circumstances constituting the
21            alleged fraud 'be "specific enough to give defendants notice of the particular
22            misconduct . . . so that they can defend against the charge and not just deny
23            that they have done anything wrong." *Bly–Magee v. California,* 236 F.3d
24            1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken,* 6 F.3d 666, 672
25            (9th Cir.1993)). "[A] plaintiff must set forth *more* than the neutral facts
26            necessary to identify the transaction." [Citation omitted]. *Vess v. Ciba-*
27            *Geigy Corp. USA* (9th Cir. 2003) 317 F.3d 1097, 1107-110. (Emphasis
28            added).

9

**ER-224**
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

1    Here, Plaintiff states in his adversary complaint that what the Debtor said in her 341(a)

2 examination was fraudulent (i.e., that loans given to Notis were funded by Plaintiff's monies) because

3 "in prior proceedings, Defendant has represented that the Notis Loans were funded only with her

4 monies." In pleading fraud, Plaintiff must allege with particularity the circumstances constituting fraud.

5 What are the "prior proceedings" Plaintiff references?   When did the debtor make the alleged

6 misrepresentation? To whom did the debtor make the alleged misrepresentation? Here, all Plaintiff states

7 is that in "prior proceedings" the Debtor alleged the funds were her own funds.  Plaintiff's allegations in

8 Paragraph 133 are too vague in order for the Debtor to respond and defend herself.

9    Based on the foregoing, Debtor respectfully requests that the Court dismiss Plaintiff's sixth claim

10 for relief as it fails to state sufficient facts to support a cognizable legal theory under 11 U.S.C.

11 §727(a)(4)(A).

12                              **4. CONCLUSION**

13    In view of the above, Debtor/Defendant respectfully requests that the Court grant her motion to

14 dismiss Plaintiff's fourth and sixth claims for relief under 11 U.S.C. §§727(a)(2) & (a)(4)(A) without

15 leave to amend.

16

17 Dated:  November 5, 2020                    /s/ Nazanin Mazgani

18                                    _____

19                                    Nazanin Mazgani
                                     Attorney for Debtor/Defendant,
20                                    MAHVASH MAZGANI

21

22

23

24

25

26

27

28

10

**ER-225**

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

## DECLARATION OF MAHVASH MAZGANI

I, MAHVASH MAZGANI, declare and say that:

1.      I am the Debtor/Defendant in this action. If called upon as a witness I could and would testify to the within matters which are of my own personal knowledge. I make this declaration in support of my motion to dismiss Plaintiff's adversary proceeding.

2.      On October 2, 2019, a Chapter 7 involuntary bankruptcy petition was filed against me by creditors Park Avenue Investment Capital, LLC, Carmelo Iglesias, Howard A Kapp, and Cesar Krauss. On May 12, 2020, an order for relief was entered in the involuntary bankruptcy case and the case was converted to a Chapter 11 voluntary bankruptcy on July 15, 2020.

3.      On October 16, 2017, Plaintiff Kevin Moda filed a cross-complaint in the Los Angeles Superior Court, Case No. BC607465 against me, which case was consolidated with Case No. BC622117. The state court cross-complaint is identical to the facts and allegations alleged in Moda's adversary complaint.

4.      On or about May 26, 2020, I filed my original voluntary bankruptcy schedules. At the time I filed my schedules, I was not the owner of the real estate property located at 10950-10954 Massachusetts Avenue, Los Angeles, CA 90024 ("Massachusetts Property"). At that time, it was held in the name of the Wesson Trust dated 2/29/2016. On or about June 24, 2020, the Massachusetts property was deeded to me. On June 26, 2020, I filed an Amended Schedule A/B which included the Massachusetts property. A copy of my Amended Schedule A/B is attached hereto as **Exhibit 1**. The Court will note on Amended Schedule A/B pg. 2, no. 1.3 it states: "Property transferred from Debtor to Wesson Trust 2/29/2016; property deeded back to Debtor 6/24/2020. Valuation based on January 2020 appraisal."

5.      On October 1, 2020, the Court signed an order ordering me to appear for a Rule 2004 Examination on October 7, 2020 at the law offices of W. Derek May, counsel for Beverly Hills Lenders, one of the creditors. The Examination was actually conducted remotely using Zoom. The order also ordered me to produce all the documents listed on Exhibit "A" of the order by September 30, 2020 at 10:00 a.m. A stipulation was signed by counsel amending the order to allow other creditors than Beverly Hills Lenders to ask questions during the Rule 2004 Examination. Exhibit "A" attached

11

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

1   to the Court's order requested documents from American Equity Investment Life Insurance Company
2   ("American Equity") (no. 13 on Exhibit "A").

3       6.      On September 30, 2020, as ordered, my counsel produced to Mr. May all documents
4   pursuant to Exhibit "A" of the order including all documents in my possession from American Equity.
5   I produced an annual statement from American Equity $(2/6/2019 - 2/6/2020)^2$. The cash surrender
6   value on the statement was \$257,392.94. I also produced a check that was written to me on February
7   11, 2020 from American Equity in the amount of \$200,000.00.

8       7.      Moda and his attorney, Donald Reid, appeared remotely at my Rule 2004 Examination.
9   They also received a copy of my American Equity documents prior to the examination. Furthermore,
10  August 21, 2019, Moda subpoenaed the American Equity documents in the Superior Court case and I
11  did not oppose the production. The subpoena to American Equity is attached as **Exhibit 2**. Moreover,
12  Moda (even though he is represented by counsel) and his attorney asked questions about the American
13  Equity documents at the examination. I have attached as **Exhibit 3** relevant portions of the Rule 2004
14  Examination transcript, which show the American Equity questions and answers. When I was asked
15  questions about the withdrawal of the \$200,000 from the American Equity policy, I advised that the
16  money was withdrawn to pay for my substantial attorney's fees bills. The Stipulation with the Court's
17  order and Exhibit "A" along with the American Equity documents produced pursuant to the order are
18  attached as **Exhibit 4**.

19      8.      Prior to filing of my Amended Schedule A/B, I contacted American Equity to obtain the
20  current cash surrender value and they advised it was \$63,730.11,which is what is stated on my
21  schedules.

22      9.      I was involved in a lawsuit entitled *Mahvash Mazgani, etc., et al. v. Mordecai Notis*,
23  Case No. SC122246 filed on March 18, 2014. The case involved a loan made to Mordecai Notis and
24  Notis Enterprises in 2013 from Moda's monies that I was holding for him. This case was ultimately
25  settled in September, 2016.

26

27

28

---

[2] American Equity only sends out annual statements of the account.

**ER-227**

1    I declare under penalty of perjury under the laws of the State of California and the United States

2    of America that the foregoing is true and correct. Executed this 5th day of November, 2020 at Los

3    Angeles, California.

4

5    _____
     Mahvash Mazgani

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ER-228**

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR RELIEF IN
COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. §§727(a)(2) & (a)(4)(A)

# EXHIBIT 1

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| James R. Selth - Bar #123420<br>WEINTRAUB & SELTH, APC<br>11766 Wilshire Boulevard, Suite 1170<br>Los Angeles, CA 90025<br><br>Telephone: (310) 207-1494<br>Facsimile: (310) 442-0660<br><br><br>☐ Individual appearing without attorney<br>☒ Attorney for Debtor  MAHVASH MAZGANI | |

<table>
<tr><td colspan="2" align="center"><b>UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION</b></td></tr>
<tr><td>In re:<br>MAHVASH MAZGANI</td><td>CASE NO.:  2:19-bk-21655-BR<br>CHAPTER:  7</td></tr>
<tr><td>Debtor(s)</td><td align="center"><b>SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS</b><br>[LBR 1007-1(c)]</td></tr>
</table>

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov).  A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added?  ☐ Yes ☒ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☒ Schedule A/B   ☐ Schedule C   ☐ Schedule D   ☐ Schedule E/F   ☐ Schedule G

☐ Schedule H   ☐ Schedule I   ☐ Schedule J   ☐ Schedule J-2   ☐ Statement of Financial Affairs

☐ Statement About Your Social Security Numbers   ☐ Statement of Intention   ☐ Master Mailing List

☐ Other (specify) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and or statements are true and correct.

Date: 06/26/2020

_____
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

**NOTE**: It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

December 2015                     Page 1                     F 1007-1.1.AMENDED.SUMMARY

**ER-230**

Fill in this information to identify your case and this filing:

| | | | |
|---|---|---|---|
| Debtor 1 | **Mahvash Mazgani** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number   **2:19-bk-21655-BR**

■ Check if this is an amended filing

# Official Form 106A/B
# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

1.1

**141 S. Clark Dr., Apt 320**
Street address, if available, or other description

**Los Angeles**   **CA**   **90048-0000**
City   State   ZIP Code

**Los Angeles**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
■ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Paid free and clear**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$590,000.00** | **$590,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

☐ Check if this is community property (see instructions)

**ER-231**

Debtor 1    **Mahvash Mazgani**                                    Case number (if known)    **2:19-bk-21655-BR**

| | |
|---|---|
| **1.2** | **If you own or have more than one, list here:** |

**1110 S. Robertson Blvd., Suites 3 & 4**
Street address, if available, or other description

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
■ Other    **Commercial office**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Los Angeles**    **CA**    **90035-1420**
City    State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $0.00 | $0.00 |

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Leasehold**

**Los Angeles**
County

☐ **Check if this is community property** (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Office lease**

---

| | |
|---|---|
| **1.3** | **If you own or have more than one, list here:** |

**10950-10954 Massachusetts Ave.**
Street address, if available, or other description

**What is the property?** Check all that apply

☐ Single-family home
■ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Los Angeles**    **CA**    **90024-0000**
City    State    ZIP Code

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $2,500,000.00 | $2,500,000.00 |

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee simple**

**Los Angeles**
County

☐ **Check if this is community property** (see instructions)

Other information you wish to add about this item, such as local property identification number:

Property transferred from Debtor to Wesson Trust 2/29/2016; property deeded back to Debtor 6/24/2020. Valuation based on January 2020 appraisal.

---

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................................=>**

**$3,090,000.00**

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**ER-232**

Debtor 1    **Mahvash Mazgani**    Case number *(if known)*    **2:19-bk-21655-BR**

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| | | | |
|---|---|---|---|
| 3.1 | Make: **Mercedes** <br> Model: **C300W** <br> Year: **2019** <br> Approximate mileage: <br> Other information: <br> **Leasehold** | Who has an interest in the property? Check one <br> ■ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ Check if this is community property <br> (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> **Current value of the entire property?** / **Current value of the portion you own?** <br><br> **$0.00** / **$0.00** |
| 3.2 | Make: **Mercedes** <br> Model: **C300W** <br> Year: **2016** <br> Approximate mileage: **40204** <br> Other information: | Who has an interest in the property? Check one <br> ■ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ Check if this is community property <br> (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> **Current value of the entire property?** / **Current value of the portion you own?** <br><br> **$18,685.00** / **$18,685.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here............................................................................=>    $18,685.00

**Part 3:   Describe Your Personal and Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|
| 6. **Household goods and furnishings** <br> *Examples:* Major appliances, furniture, linens, china, kitchenware <br> ☐ No <br> ■ Yes. Describe..... | |
| **Household goods and furnishings** | **$1,500.00** |
| 7. **Electronics** <br> *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games <br> ☐ No <br> ■ Yes. Describe..... | |
| **One television** | **$100.00** |

8. **Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☐ No
■ Yes. Describe.....

Official Form 106A/B    Schedule A/B: Property    page 3

**ER-233**

Debtor 1    **Mahvash Mazgani**    Case number *(if known)*    **2:19-bk-21655-BR**

| Painting by Debtor's daughter's friend | $200.00 |
|---|---|

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☑ No
☐ Yes. Describe.....

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☑ No
☐ Yes. Describe.....

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
☑ Yes. Describe.....

| Clothes | $1,100.00 |
|---|---|

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No
☑ Yes. Describe.....

| 2 watches, custom jewelry (necklace, ring and bracelet) | $400.00 |
|---|---|

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses

☑ No
☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☑ No
☐ Yes. Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ........................................................................   | $3,300.00 |

| Part 4: | **Describe Your Financial Assets** |
|---|---|

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes.......................................................................................................

|  | Cash on hand | $300.00 |
|---|---|---|

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes........................    Institution name:

Official Form 106A/B    Schedule A/B: Property    page 4

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

**ER-234**

Debtor 1    **Mahvash Mazgani**                                    Case number *(if known)*    **2:19-bk-21655-BR**

| | | | |
|---|---|---|---|
| 17.1. | Checking | US Bank; account ending xxxxx-3613 | $91,992.56 |
| 17.2. | Checking | Wells Fargo; account ending xxxxx-3550; funds are Social Security payments (account renumbered 5/12/2020 from account ending xxxxxx3246) | $893.78 |
| 17.3. | Checking | First Financial Credit Union; account ending xxxxx-1511 | $14.23 |
| 17.4. | Unemployment debit card | Bank of America; card ending xxxx-xxxx-xxxx-4423; $1,000 withdrawn on 5/12/2020 | $1,020.00 |

18. **Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ☐ No
   ■ Yes.................    Institution or issuer name:

| | |
|---|---|
| Bond with Tokio Marine HCC; estimated cash value listed | $4,402.73 |
| Bond with US Fire Insurance Company; No recent statement and no cash value | $0.00 |

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ☐ No
   ■ Yes. Give specific information about them...................
   Name of entity:                                        % of ownership:

| | | | |
|---|---|---|---|
| Mazgani Social Services, Inc. | | 100    % | Unknown |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ■ No
   ☐ Yes. Give specific information about them
                Issuer name:

21. **Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ■ No
   ☐ Yes. List each account separately.
                Type of account:            Institution name:

22. **Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ■ No
   ☐ Yes. .....................        Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ☐ No
   ■ Yes.............    Issuer name and description.

| | |
|---|---|
| Annuity with Brighhouse Financial/New England Life Insurance Company | $25,545.60 |

Official Form 106A/B                    Schedule A/B: Property                    page 5

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**ER-235**

| Debtor 1 | **Mahvash Mazgani** | | Case number *(if known)* | **2:19-bk-21655-BR** |

| Annuity with American Equity Investment Life Insurance Co.; estimated cash surrender value listed | $63,730.11 |

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No

☐ Yes............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☐ No

■ Yes. Give specific information about them...

| Mahvash Mazgani Family Trust dated April 17, 2007 - only asset is Clark Dr. propertly listed in Section 1.1 | $0.00 |

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No

☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No

☐ Yes. Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |

**28. Tax refunds owed to you**

■ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No

☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No

☐ Yes. Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☐ No

■ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
| --- | --- | --- |
| **Term Life Insurance with Allstate** | **Nazanin and Neyaz Mazgani** | $0.00 |
| **Term Life Insurance with Farmers** | **Nazanin and Neyaz Mazgani** | $0.00 |

Official Form 106A/B                          Schedule A/B: Property                                         page 6

**ER-236**

| Debtor 1 | Mahvash Mazgani | | Case number *(if known)* | 2:19-bk-21655-BR |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| | Long term care insurance with Genworth | Debtor | $0.00 |
| | Blue Shield health care supplemental insurance | Debtor | $0.00 |
| | Blue Cross Part D health care insurance | Debtor | $0.00 |
| | Homeowner's insurance for Clark Dr. property with Pacific Specialty Insurance | Debtor | $0.00 |
| | Appliance repair policy through American Home Shield | Debtor | $0.00 |

32. **Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
■ No
☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
☐ No
■ Yes. Describe each claim.........

| | |
|---|---|
| Claim against Kevin Moda for quiet title, slander of title, intentional infliction of emotional distress, etc.; pending Los Angeles Superior Court Case Nos. BC607465 and BC622117 (consolidated); not yet liquidated | $5,000,000.00 |
| Judgment against Kevin Moda and Marcos Alonzo for defamation; Los Angeles Superior Court Case No. BC658766; includes post-judgment interest through May 12, 2020 | $59,780.82 |
| Legal malpractice claim against S. Martin Keleti; not yet filed | Unknown |
| Legal malpractice claim against Payman Taheri; not yet filed | Unknown |

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
■ No
☐ Yes. Describe each claim.........

35. **Any financial assets you did not already list**
☐ No
■ Yes. Give specific information..

| | |
|---|---|
| Reimbursement claim for lost cashier's check with US Bank | $32,000.00 |

**ER-237**

| Oil royalties from Massachusetts Avenue property from Maverick Natural Resources; average monthly payment since January 2019 is $115.50 | **Unknown** |

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here.................................................................................................................    **$5,279,679.83**

**Part 5:**   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. Do you own or have any legal or equitable interest in any business-related property?
☑ No. Go to Part 6.
☐ Yes. Go to line 38.

**Part 6:**   Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?
☑ No. Go to Part 7.
☐ Yes. Go to line 47.

**Part 7:**   Describe All Property You Own or Have an Interest in That You Did Not List Above

53. Do you have other property of any kind you did not already list?
*Examples:* Season tickets, country club membership
☑ No
☐ Yes. Give specific information.........

54. Add the dollar value of all of your entries from Part 7. Write that number here  ....................................    **$0.00**

**Part 8:**   List the Totals of Each Part of this Form

| | | | |
|---|---|---|---|
| 55. Part 1: Total real estate, line 2 ........................................................................................................... | | | **$3,090,000.00** |
| 56. Part 2: Total vehicles, line 5 | $18,685.00 | | |
| 57. Part 3: Total personal and household items, line 15 | $3,300.00 | | |
| 58. Part 4: Total financial assets, line 36 | $5,279,679.83 | | |
| 59. Part 5: Total business-related property, line 45 | $0.00 | | |
| 60. Part 6: Total farm- and fishing-related property, line 52 | $0.00 | | |
| 61. Part 7: Total other property not listed, line 54 | + $0.00 | | |
| 62. Total personal property. Add lines 56 through 61... | $5,301,664.83 | Copy personal property total | **$5,301,664.83** |

63. Total of all property on Schedule A/B. Add line 55 + line 62                                          **$8,391,664.83**

**ER-238**

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

11766 Wilshire Boulevard, Suite 1170, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (specify): **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 06/26/2020 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/26/2020 | Gabby Piceno | /s/ Gabby Piceno |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

December 2015                                   Page 2                          F 1007-1.1.AMENDED.SUMMARY

**ER-239**

## 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

Deborah R Bronner    debbronner@aol.com
M. Jonathan Hayes    jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;
priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
Heide Kurtz (TR)    trustee@hkurtzco.com, C169@ecfcbis.com
Crystle Jane Lindsey    crystle@wsrlaw.net, crystle@cjllaw.com;gabby@wsrlaw.net;eduardo@wsrlaw.net
Yevgeniya Lisitsa    gina@lisitsalaw.com, glisitsa@gmail.com
Giovanni Orantes    go@gobklaw.com,
gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;
orantesgr89122@notify.bestcase.com
Thomas D Sands    thomas@thesandslawgroup.com, thomas@thesandslawgroup.com
James R Selth    jim@wsrlaw.net, jselth@yahoo.com;eduardo@wsrlaw.net;gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com
Luis A Solorzano    ls@gobklaw.com, go@ecf.inforuptcy.com;go@gobklaw.com;orantesgr89122@notify.bestcase.com
Scott Talkov    scott@talkovlaw.com, talkovlaw@ecf.courtdrive.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Daniel J Weintraub    dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;gabby@wsrlaw.net;eduardo@wsrlaw.net
Timothy J Yoo    tjy@lnbyb.com

**ER-240**

# EXHIBIT 2

**SUBP-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Deborah R. Bronner 130305
Law Offices of Deborah R. Bronner
11600 Washington Place, Suite 116A
Los Angeles, California 90066
TELEPHONE NO.: (310) 572-1286   FAX NO.: (310) 572-0112
E-MAIL ADDRESS: debbronner@aol.com
ATTORNEY FOR *(Name):* Defendant / Cross-Complainant Moda

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central Judicial District

PLAINTIFF/PETITIONER: Mahvash Mazgani individually and
as Trustee of the Mahvash Mazgani Family Trust
DEFENDANT/RESPONDENT: Kevin Moda

| | |
|---|---|
| **DEPOSITION SUBPOENA**<br>**FOR PRODUCTION OF BUSINESS RECORDS** | CASE NUMBER:<br>~~~/465     Dept 48 |

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):*
AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY (CT116   C/O CORPORATION SERVICE
COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3 as follows:**

To *(name of deposition officer):* Deborah R. Bronner, Esq.
On *(date):* 9/19/2019   At *(time):* 10:00 a.m.
Location *(address):* 11600 Washington Place, Suite 116A Angeles, California 90066

> Do not release the requested records to the deposition ~~~ prior to the date and time stated above.

   a. [X] by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner
       wrapper with the title and number of the action, name ~~~ and ~~~ of subpoena clearly written on it. The inner
       wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the
       address in item 1.
   b. [ ] by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the
       witness's address, on receipt of payment ~~~ or ~~~ check of the reasonable costs of preparing the copy, as determined
       under Evidence Code section 1563.
   c. [ ] by making the **original business** records described in item 3 available for inspection at your business address by the
       attorney's representative and ~~~ ~~~ing at your business address under reasonable conditions during normal
       business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the
deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them
available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be
accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. The records to be produced are described as follows *(if electronically stored information is demanded, the form or
forms in which each type of information is to be produced may be specified):*
   All documents (Defined by Evid Code 250) (including all DEPOSITS OF ANY KIND & pay-outs;including
   dates ~~~ Mahvash Mazgani (AKA Mimi Mazgani)(for reference, see attach)from 1-1-2018 to 9-1-2019
   [ ] Continued on Attachment 3.

4. **YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER
CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN
SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE
APPROVAL MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE
FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.

Date issued: 8/21/2019

Deborah R. Bronner _____   ► _~~signature~~_
      (TYPE OR PRINT NAME)   (SIGNATURE OF PERSON ISSUING SUBPOENA)
                                Attorney at Law

                    (Proof of service on reverse)   (TITLE)   Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-010 [Rev. January 1, 2012] | CEB Essential Forms<br>ceb.com | **DEPOSITION SUBPOENA FOR PRODUCTION**<br>**OF BUSINESS RECORDS** | Code of Civil Procedure, §§ 2020.410-2020.440;<br>Government Code, § 68097.1<br>www.courts.ca.gov |

MODA, Kevin

**ER-242**



**ER-243**

**SUBP-010**

| PLAINTIFF/PETITIONER: Mahvash Mazgani individually and as Trustee of the Mahvash Mazgani Family Trust DEFENDANT/RESPONDENT: Kevin Moda | CASE NUMBER: BC607465 | Dept 48 |

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served *(name):*

   b. Address where served:

   c. Date of delivery:

   d. Time of delivery:

   e. (1) ☐ Witness fees were paid.
      Amount:................................. $ _____

      (2) ☐ Copying fees were paid.
      Amount:................................. $ _____

   f. Fee for service:..................................... $ _____

2. I received this subpoena for service on *(date):*

3. Person serving:
   a. ☐ Not a registered California process server.
   b. ☐ California sheriff or marshal.
   c. ☐ Registered California process server.
   d. ☐ Employee or independent contractor of a registered California process server.
   e. ☐ Exempt from registration under Business and Professions Code section 22350(b).
   f. ☐ Registered professional photocopier.
   g. ☐ Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**(For California sheriff or marshal use only)**
I **certify** that the foregoing is true and correct.

Date:

Date:

▶ _____
(SIGNATURE)

▶ _____
(SIGNATURE)

**DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS**

Page 2 of 2

MODA, Kevin

**ER-244**

**SUBP-025**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Deborah R. Bronner          130305
Law Offices of Deborah R. Bronner
11600 Washington Place, Suite 116A
Los Angeles, California 90066
TELEPHONE NO.: (310) 572-1286    FAX NO.*(Optional):* (310) 572-0112
E-MAIL ADDRESS *(Optional):* debbronner@aol.com
ATTORNEY FOR *(Name):* Defendant / Cross-Complainant Moda

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central Judicial District

PLAINTIFF/PETITIONER: Mahvash Mazgani individually and
as Trustee of the Mahvash Mazgani Family Trust
DEFENDANT/RESPONDENT: Kevin Moda

CASE NUMBER:
BC607465          Dept 48

**NOTICE TO CONSUMER OR EMPLOYEE AND OBJECTION**
**(Code Civ. Proc., §§ 1985.3, 1985.6)**

**NOTICE TO CONSUMER OR EMPLOYEE**

TO *(name):* Mahvash Mazgani,

1. PLEASE TAKE NOTICE THAT **REQUESTING PARTY** *(name):* Kevin Moda
   SEEKS YOUR RECORDS FOR EXAMINATION by the parties to this action on *(specify date):* 9/19/2019
   The records are described in the subpoena directed to **witness** *(specify name and address of person or entity from whom records are sought):* Custodian of Records at AMERICAN EQUITY INVESTMENT INSURANCE COMPANY (CT116189)
   A copy of the subpoena is attached.
2. IF YOU OBJECT to the production of these records, YOU MUST DO ONE OF THE FOLLOWING BEFORE THE DATE SPECIFIED IN ITEM a. OR b. BELOW:
   a. If you are a party to the above-entitled action, you must file a motion pursuant to Code of Civil Procedure section 1987.1 to quash or modify the subpoena and give notice of that motion to the **witness** and the **deposition officer** named in the subpoena at least five days before the date set for production of the records.
   b. If you are not a party to this action, you must serve on the **requesting party** and on the **witness,** before the date set for production of the records, a written objection that states the specific grounds on which production of such records should be prohibited. You may use the form below to object and state the grounds for your objection. You must complete the Proof of Service on the reverse side indicating whether you personally served or mailed the objection. The objection should **not** be filed with the court. **WARNING:** IF YOUR OBJECTION IS NOT RECEIVED BEFORE THE DATE SPECIFIED IN ITEM 1, YOUR RECORDS MAY BE PRODUCED AND MAY BE AVAILABLE TO ALL PARTIES.
3. YOU OR YOUR ATTORNEY MAY CONTACT THE UNDERSIGNED to determine whether an agreement can be reached in writing to cancel or limit the scope of the subpoena. If no such agreement is reached, and if you are not otherwise represented by an attorney in this action, YOU SHOULD CONSULT AN ATTORNEY TO ADVISE YOU OF YOUR RIGHTS OF PRIVACY.

Date: 8/21/2019

Deborah R. Bronner, Esq.
(TYPE OR PRINT NAME)

(SIGNATURE OF ☐ REQUESTING PARTY  ☒ ATTORNEY)

**OBJECTION BY NON-PARTY TO PRODUCTION OF RECORDS**

1. ☐ I object to the production of all of my records specified in the subpoena.
2. ☐ I object only to the production of the following specified records:

3. The specific grounds for my objection are as follows:

Date:

_____          _____
(TYPE OR PRINT NAME)          (SIGNATURE)
(Proof of service on reverse)          **Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-025 [Rev. January 1, 2008]

**NOTICE TO CONSUMER OR EMPLOYEE AND OBJECTION**

Code of Civil Procedure,
§§ 1985.3, 1985.6,
2020.010-2020.510
www.courtinfo.ca.gov

CEB Essential Forms
ceb.com

MODA, Kevin

**ER-245**

Courtesy Copy

**SUBP-025**

| PLAINTIFF/PETITIONER: Mahvash Mazgani individually and<br>as Trustee of the Mahvash Mazgani Family Tru<br>DEFENDANT/RESPONDENT: Kevin Moda | CASE NUMBER:<br>BC607465 | Dept 48 |
|---|---|---|

**PROOF OF SERVICE OF NOTICE TO CONSUMER OR EMPLOYEE AND OBJECTION**

(Code Civ. Proc., §§ 1985.3, 1985.6)

☐ Personal Service   ☒ Mail

1. At the time of service I was at least 18 years of age and **not a party to this legal action.**
2. I served a copy of the *Notice to Consumer or Employee and Objection* as follows *(check either a or b):*
   a. ☐ **Personal service.** I personally delivered the *Notice to Consumer or Employee and Objection* as follows:
      (1) Name of person served:
      (2) Address where served:
      (3) Date served:
      (4) Time served:

   b. ☒ **Mail.** I deposited the *Notice to Consumer or Employee and Objection* in the United States mail, in a sealed envelope with postage fully prepaid. The envelope was addressed as follows:
      (1) Name of person served: See attached.
      (2) Address: See attached
      (3) Date of mailing: 8/2.../19
      (4) Place of mailing *(city and state):*
          Los Angeles, CA
      (5) I am a resident of or employed in the county where the *Notice to Consumer or Employee and Objection* was mailed.
   c. My residence or business address is *(specify):* 11600 Washington Place, Su... 116A, LA CA 90066
   d. My phone number is *(specify):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/21/2019

Deborah R. Bronner
(TYPE OR PRINT NAME OF PERSON WHO SERVED)     ▶ _____ (SIGNATURE OF PERSON WHO SERVED)

**PROOF OF SERVICE OF OBJECTION TO PRODUCTION OF RECORDS**

(Code Civ. Proc., §§ 1985.3, 1985.6)

☐ Personal Service

1. At the time of service I was at least 18 years of age and **not a party to this legal action.**
2. I served a copy of the *Objection to Production of Records* as follows *(complete either a or b):*
   a. ON THE REQUESTING PARTY
      (1) ☐ **Personal service.** I personally delivered the *Objection to Production of Records* as follows:
         (i) Name of person served:
         (ii) Address where served:
         (iii) Date served:
         (iv) Time served:

      (2) ☐ **Mail.** I deposited the *Objection to Production of Records* in the United States mail, in a sealed envelope with postage fully prepaid. The envelope was addressed as follows:
         (i) Name of person served:
         (ii) Address:
         (iii) Date of mailing:
         (iv) Place of mailing *(city and state):*

      (v) I am a resident of or employed in the county where the *Objection to Production of Records* was mailed.
   b. ON THE WITNESS
      (1) ☐ **Personal service.** I personally delivered the *Objection to Production of Records* as follows:
         (i) Name of person served:
         (ii) Address where served:
         (iii) Date served:
         (iv) Time served:

      (2) ☐ **Mail.** I deposited the *Objection to Production of Records* in the United States mail, in a sealed envelope with postage fully prepaid. The envelope was addressed as follows:
         (i) Name of person served:
         (ii) Address:
         (iii) Date of mailing:
         (iv) Place of mailing *(city and state):*

      (v) I am a resident of or employed in the county where the *Objection to Production of Records* was mailed.
3. My residence or business address is *(specify):*
4. My phone number is *(specify):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____ (TYPE OR PRINT NAME OF PERSON WHO SERVED)     ▶ _____ (SIGNATURE OF PERSON WHO SERVED)

SUBP-025 [Rev. January 1, 2008]     **NOTICE TO CONSUMER OR EMPLOYEE AND OBJECTION**     Page 2 of 2

CEB Essential Forms
ceb.com

MODA, Kevin

**ER-246**

POS-030(P)

| SHORT TITLE: | | CASE NUMBER: | |
|---|---|---|---|
| Magani v. Moda | Dept 48 | BC607465 | Dept 48 |

**ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL - CIVIL (PERSONS SERVED)**
*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

Name of Person Served | Address *(number, street, city, and zip code)*

| | |
|---|---|
| Felton Newell | 10250 Constelation Blvd, Suite 19th fL, Los Angele, CA 90067 |
| Lyle Mink | 1801 Century Park West, St. 2600,  Los Angeles, CA 90067 |
| Mike Kimel | PO Box 16353, Encino, CA 91416 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Courtesy Copy

Form Approved for Optional Use
Judicial Council of California
POS-030(P) [New January 1, 2005]

**CEB Essential Forms**
ceb.com

**ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL-CIVIL (PERSONS SERVED)**
**(Proof of Service)**

Page 3 of 30

MODA, Kevin

**ER-247**

# EXHIBIT 3

ER-248

ORIGINAL

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

IN RE:                           )
                                 )
MAHVASH MAZGANI                  )
                                 )    No. 2:19-bk-21655-ER
                                 )
         Debtor.                 )
_____ )

DEPOSITION VIA ZOOM OF MAHVASH MAZGANI

Witness located in Los Angeles, California

October 7, 2020

Stenographically Reported by:
SYLVIA L. LIEBSCHER, CSR#5775
File Number:  20-394

**BOB MCCANN & ASSOCIATES**
CERTIFIED COURT REPORTERS
6851 Lennox Avenue, Suite 410
Van Nuys, CA 91405
(818) 780-0604 - Fax (818) 780-0446

**ER-249**

```
 1              UNITED STATES BANKRUPTCY COURT

 2        CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

 3

 4                              )
          IN RE:                )
 5                              )
          MAHVASH MAZGANI,      )
 6                              )     No. 2:19-bk-21655-BR
                                )
 7               Debtor.        )
         ───────────────────────)

 8

 9

10

11

12

13        THE DEPOSITION OF MAHVASH MAZGANI, taken via

14        Zoom with the witness located in Los Angeles,

15        California, on behalf of Creditors at 9:02 A.M.,

16        Wednesday, October 7, 2020, before

17        SYLVIA L. LIEBSCHER, 5775, licensed by the State of

18        California, pursuant to Notice.

19

20

21

22

23

24

25

                                                            2
```

1      Q    So your testimony is that you filled out the

2    applications and were not required to upload any

3    supporting documentations online.

4      A    No.

5      Q    Question 19 asks for "Any QuickBooks or similar

6    accounting program ledgers."

7           I didn't receive any ledgers.  Do you not keep

8    an accounting program?

9      A    No.

10     Q    Does Mazgani Social Services, Inc., run an

11   accounting program?

12     A    No, it does not.

13     Q    I think I covered the documents where I didn't

14   receive any categories.  So we can move on to the next

15   exhibit here.  Let's make sure we're sharing the right

16   one.  You should be seeing U.S. Bank statements.

17     A    Correct.

18     Q    All right.  This is Exhibit 2.  It's U.S. bank

19   statement ending 3613.

20     A    Correct.

21          (Creditor's Exhibit 2 marked

22          for identification.)

23   BY MR. MAY:

24     Q    Do you recognize this statement to be your bank

25   statement?

16

**ER-251**

```
 1        A    Yes.

 2        Q    All right.  Scrolling down here to the April 30

 3    deposit.

 4             MR. SELTH:  April 20.

 5             MR. MAY:  I'm sorry.  April 20.

 6        Q    Numbers are a little small.  For 200,000.  Do

 7    you see that deposit?

 8        A    Yes.

 9        Q    Do you recall where the funds came from for

10    that deposit?

11        A    Yes.

12        Q    Where did they come from?

13        A    It came from my annuity.

14        Q    All right.  And what was the name of that

15    annuity?

16        A    I went blank for a second.

17        Q    That's all right.  I have a document if she

18    can't remember the name that I can pull up that might

19    refresh her memory.

20        A    I remember now.  American Equity.

21        Q    Now, was that just an income disbursal from

22    American Equity?

23        A    No.  I was forced to withdraw from the entire

24    equity.

25        Q    So that, in effect, closed the annuity account.
```

17

ER-252

```
 1     A    No, it's still not closed.

 2     Q    Okay.  Is there any amount left in the annuity,

 3  American Equity annuity?

 4     A    Yes, there remains.

 5     Q    And how much remains?

 6     A    I don't know exactly, but I think something

 7  around $60,000 remains.

 8     Q    You mentioned you were forced to withdraw the

 9  money from the annuity.  Who forced you to withdraw it?

10     A    Because of the bankruptcy that Kevin Moda filed

11  against me or filed -- was against me and because of the

12  people that he was involved with, and the attorney that

13  he works with who are unscrupulous.  They forced me to

14  withdraw this money so that I can pay my attorneys who

15  are very trustworthy people.  I had to pay a $50,000

16  fine for withdrawing the $200,000.  I also had to pay

17  taxes on it, and these were all due to the fraudulence

18  or the fraud that Kevin committed.

19     Q    All right.  My question.  On the withdrawal, it

20  seems to me that you withdrew it to avoid your creditors

21  from getting access to it.  Is that a true statement?

22          MR. SELTH:  I'm going to object to that

23  question as argumentative.

24  BY MR. MAY:

25     Q    You can still answer although your --
```

18

**ER-253**

```
1        A    No.  My response is no.
2        Q    The creditors weren't trying to gain access to
3    your American Equity annuity?
4        A    After the bankruptcy started, Eskjian -- I
5    don't know how he went to Iowa and retained an attorney,
6    so how could a person who is homeless and has no job be
7    able to afford an attorney and goes to Iowa and have all
8    my information and, you know, access my annuity.
9             I have to repeat myself.  Everything is
10   Kevin Moda's fault here.  And because of bankruptcy,
11   there was a stay on being able to access the annuity.
12       Q    If there was a stay on being able to access the
13   annuity, what was the reason for withdrawing it?
14       A    Because I had to pay my attorneys to represent
15   me.  Nobody works for free.
16       Q    All right.  Let's go to the withdrawals after
17   the deposit.  Looks like you made a series of four
18   withdrawals at $48,008.
19       A    Yes.
20       Q    Were those all for attorneys' fees?
21       A    Not all of it.
22       Q    All right.  Which of the withdrawals paid for
23   attorneys' fees?
24       A    There was the $32,000 one, and I think, if I'm
25   not mistaken, $8,000 was also for attorneys.
```

19

**ER-254**

# EXHIBIT 4

ER-255

1  LAW OFFICE OF W. DEREK MAY
   W. Derek May, CSB#246327
2  400 N. Mountain Ave. Suite 215B
   Upland, CA 91786
3  Telephone: (909) 920-0443
   Facsimile: (909) 912-8114
4  wdmlaw17@gmail.com

5  Attorneys for Creditor Beverly Hills Lenders, LLC

6              **UNITED STATES BANKRUPTCY COURT**

7        **CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION**

8
   In re:                                    Case No.: 2:19-bk-21655-BR
9
   Mahvash Mazgani                           Chapter 11
10
11     Debtor.                               **STIPULATION TO MODIFY ORDER
                                             GRANTING RULE 2004 EXAMINATION
12                                           OF THE DEBTOR [DOCKET NO. 355]**

13                                           **[NO HEARING REQUIRED]**

14

15  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

16     Creditor Beverly Hills Lenders, LLC ("Creditor") and Debtor Mahvash Mazgani ("Debtor"), by

17  and through their counsels of record hereby stipulate as follows:

18     1.     Following the filing of Creditor's Motion for Rule 2004 Examination, the Debtor agreed

19  to remove the language in the lodged Order regarding the Rule 2004 examination that stated "and no

20  other persons shall be permitted to attend or question the Debtor at the 2004 Examination with the
21
    exception of Debtor's counsel, the interpreter, and the Subchapter V Trustee, Gregory Jones"
22
23     2.     Debtor agreed to remove such language so long as each additional interested party that

24  was provided the produced documents or attended the examination was subject to that Protective

25  Order Governing Disclosure and Use of Confidential Information filed on February 27, 2017 in Case

26  No. BC607465, signed on February 27, 2017 by the Honorable Elizabeth Allen White, Superior

27  Court Judge.

28

         **STIPULATION TO MODIFY ORDER GRANTING RULE 2004 EXAMINATION OF THE DEBTOR**
                                           1

3. Prior to the drafting and signing of this stipulation, the court entered the lodged order containing the exclusionary language that was agreed to be removed.

4. The Creditor and Debtor wish for the exclusionary language to be removed with the hopes to avoid duplicative 2004 examinations of the Debtor in the future by allowing additional interested parties to pose questions to the Debtor.

5. A copy of the amended order is attached hereto as Exhibit "1" and has been uploaded concurrently with this stipulation.

6. Debtor and Creditor both request that the Court enter the amended order attached hereto as Exhibit "1".

IT IS SO STIPULATED.

Dated: October 1, 2020                      Law Office of W. Derek May

                                            By:   /s/ W. Derek May
                                                  W. Derek May, Attorney for Creditor

Dated: October 1, 2020                      Weintraub & Selth, APC

                                            By: _____
                                                  James R. Selth, Attorney for Debtor

STIPULATION TO MODIFY ORDER GRANTING RULE 2004 EXAMINATION OF THE DEBTOR

2

**ER-257**

EXHIBIT "1"

1    LAW OFFICE OF W. DEREK MAY
     W. Derek May, CSB#246327
2    400 N. Mountain Ave. Suite 215B
     Upland, CA 91786
3    Telephone: (909) 920-0443
     Facsimile: (909) 912-8114
4    wdmlaw17@gmail.com

5    Attorneys for Creditor Beverly Hills Lenders, LLC

6                    **UNITED STATES BANKRUPTCY COURT**

7          **CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION**

8    | In re: | Case No.: 2:19-bk-21655-BR |
9    | | |
     | Mahvash Mazgani | Chapter 11 |
10   | | |
11   | Debtor. | **AMENDED ORDER ON MOTION FOR 2004 EXAMINATION OF THE DEBTOR** |
12   | | |
     | | **[NO HEARING REQUIRED]** |
13

14

15          The Motion of Creditor Beverly Hills Lenders, LLC (hereinafter "Movant") pursuant to

16   Federal Rule of Bankruptcy Procedure 2004 and Local Bankruptcy Rule 2004-1, for an order

17   compelling the examination of Debtor Mahvash Mazgani (hereinafter "Debtor"), and directing her to

18   produce the documents requested on the attached Exhibit "A" to assist in such examination and the

19   Stipulation of Movant and Debtor to modify order granting rule 2004 examination of the Debtor,

20   having been read and received, and good cause appearing therefore:

21

22          IT IS HEREBY ORDERED, that the Debtor, Mahvash Mazgani, appear for an

23   examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure at 9:00 am on

24   October 7, 2020 at the Law Offices of W. Derek May, 400 N. Mountain Ave., Suite 215B, Upland,

25   CA 91786. The examination will be taken before a certified court reporter and will be for one full

26   day as needed by Movant. Due to the pandemic, Movant shall work with a court reporter agency to

27   arrange for all participants in the 2004 examination to appear remotely rather than in person and

28

1

**ER-259**

1  Debtor and her counsel are authorized to appear remotely. In addition, the Movant is to provide for

2  a Persian Farsi interpreter, who is also authorized to interpret remotely. With respect to the

3  examination and the document production, Movant and all other interested parties that receive the

4  documents produced or attend the examination shall abide by that Protective Order Governing

5  Disclosure and Use of Confidential Information filed on February 27, 2017 in Case No. BC607465,

6

7  signed on February 27, 2017 by the Honorable Elizabeth Allen White, Superior Court Judge as if

8  Movant and said interested parties were expressly designated parties to that order (Such Protective

9  Order can be found as Exhibit "A" to Docket #12 in Adversary Case No. 2:20-ap-01162-BR, pages

10  14-23).

11      IT IS FURTHER ORDERED that the Debtor produce all documents listed on Exhibit "A"

12  of this order on or before 10:00 am on September 30, 2020 at the Law Offices of W. Derek May at

13  400 N. Mountain Ave., Suite 215B, Upland, CA 91786.

14

15

16                                    ####

17

18

19

20

21

22

23

24

25

26

27

28

2

**ER-260**

## EXHIBIT "A"

Description of Documents Requested to be Produced Prior to 2004 Examination of
Debtor

### REQUEST FOR PRODUCTION OF DOCUMENTS

1. All of DEBTOR's ("DEBTOR", in this request and any request hereinafter, shall mean Mahvash Mazgani, the debtor in bankruptcy Case No. 2:19-bk-21655-BR) bank statements covering the period of October 1, 2018 to August 31, 2020 for the DEBTOR's U.S. Bank account ending in 3613.

2. All of DEBTOR's bank statements covering the period of October 1, 2018 to August 31, 2020 for the DEBTOR's Wells Fargo bank account ending in 3550.

3. All of DEBTOR's bank statements covering the period of October 1, 2018 to August 31, 2020 for the DEBTOR's First Financial Credit Union bank account ending 1511.

4. All of DEBTOR's bank statements covering the period of October 1, 2018 to August 31, 2020 for the DEBTOR's Wells Fargo bank account ending in 3246.

5. All of the bank statements of DEBTOR's company, Mazgani Social Services, Inc., covering the period of October 1, 2018 to August 31, 2020.

6. Any and all cancelled checks for amounts in excess of $1,000 written on any bank account of the DEBTOR from October 1, 2018 to August 31, 2020.

7. Any and all cancelled checks for amounts in excess of $1,000 written on any bank accounts in the name of Mazgani Social Services, Inc.

8. A copy of the DEBTOR's Federal Income Tax Return for 2019 tax year.

9. A copy of the DEBTOR's Federal Income Tax Return for 2018 tax year.

10. A copy of the Business Federal Income Tax Return for Mazgani Social Services, Inc. for 2019 tax year.

**ER-261**

11. A copy of the Business Federal Income Tax Return for Mazgani Social Services for 2018 tax year.

12. All statements and notices DEBTOR received within the last three (3) years concerning her Annuity with Brighthouse Financial/New England Life Insurance Company.

13. All statements and notices DEBTOR received within the last three (3) years concerning her Annuity with American Equity Investment Life Insurance Co..

14. Any completed mortgage refinance applications prepared by DEBTOR since January 1, 2019.

15. Any completed PPP loan or pandemic relief loan applications completed between February 1, 2020 and August 31, 2020 by DEBTOR.

16. Any completed PPP loan or pandemic relief loan applications completed between February 1, 2020 and August 31, 2020 by Mazgani Social Services, Inc.

17. Any documents submitted to the Small Business Administration in support of PPP loan or pandemic relief loan applications of DEBTOR from February 1, 2020 to August 31, 2020.

18. Any documents submitted to the Small Business Administration in support of PPP loan or pandemic relief loan applications of Mazgani Social Services, Inc. from February 1, 2020 to August 31, 2020.

19. Any Quickbooks or similar accounting program complete ledger for 2019 or in the alternative access to the electronic versions of such records for the DEBTOR.

20. Any Quickbooks or similar accounting program complete ledger for 2020 or in the alternative access to the electronic versions of such records for the DEBTOR.

21. Any Quickbooks or similar accounting program complete ledger for 2020 or in the alternative access to the electronic versions of such records for Mazgani Social Services, Inc.

22. Any Quickbooks or similar accounting program complete ledger for 2019 or in the alternative access to the electronic versions of such records for Mazgani Social Services, Inc.

23. Any documentation that shows that any rental income is received by the DEBTOR from the M TRIPLEX ("M TRIPLEX", in this request and any request hereinafter, shall mean that real property located at the common address of 10950-10954 Massachusetts Ave., Los Angeles, CA 90024 and identified in the Amended Schedule A/B of the DEBTOR on 6/26/2020, Doc. No. 225).

24. Any written lease concerning the M TRIPLEX from January 1, 2016 to August 31, 2020.

25. Any documentation that shows receipt of any oil royalties from the M TRIPLEX.

26. Any documents that explain why DEBTOR disputes the judgment held by Beverly Hills Lenders, LLC.

27. Any documents submitted by DEBTOR to US Bank in support for DEBTOR's claim for lost cashier's check with US Bank in the amount of $32,000, including but not limited to a copy of the receipt or copy of the lost cashier's check.

28. Any documents that indicate the source of the funds for the creation of the $32,000 lost cashier's check referred to by the DEBTOR in her Amended Schedule A/B filed on June 26, 2020, Doc. No. 225.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
400 N. Mountain Ave., Suite 215B, Upland, CA 91786

A true and correct copy of the foregoing document entitled (specify): **STIPULATION TO MODIFY ORDER GRANTING RULE 2004 EXAMINATION OF THE DEBTOR AND PROPOSED ORDER ATTACHED AS EXHIBIT "1"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 10/1/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Deborah R Bronner     debbronner@aol.com
M. Jonathan Hayes     jhayes@rhmfirm.com,
roksana@rhmfirm.com;matt@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfi
rm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
Gregory Kent Jones (TR)     gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com
Heide Kurtz (TR)     trustee@hkurtzco.com, C169@ecfcbis.com
Crystle Jane Lindsey     crystle@wsrlaw.net, crystle@cjllaw.com;gabby@wsrlaw.net;eduardo@wsrlaw.net
Yevgeniya Lisitsa     gina@lisitsalaw.com, glisitsa@gmail.com
Ron Maroko     ron.maroko@usdoj.gov

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) 10/1/2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

United States Bankruptcy Court          Mahvash Mazgani
Hon. Barry Russell                      10954 Massachusetts Ave.
255 E. Temple Street, Suite 1660        Los Angeles, CA 90024
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/1/2020 | Jorden Marino | /s/ Jorden Marino |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

## ADDITIONAL PARTIES SERVED VIA NOTICE OF ELECTRONIC FILING (NEF):

W. Derek May    wdmlaw17@gmail.com, r48266@notify.bestcase.com
Giovanni Orantes    go@gobklaw.com, gorantes@orantes-
law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
Danyal Roodbari    , EsqMS@mail.com
Thomas D Sands    thomas@thesandslawgroup.com, thomas@thesandslawgroup.com
James R Selth    jim@wsrlaw.net,
jselth@yahoo.com;eduardo@wsrlaw.net;gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com
Luis A Solorzano    ls@gobklaw.com, go@ecf.inforuptcy.com;go@gobklaw.com;orantesgr89122@notify.bestcase.com
Scott Talkov    scott@talkovlaw.com, talkovlaw@ecf.courtdrive.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Daniel J Weintraub    dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;gabby@wsrlaw.net;eduardo@wsrlaw.net
Timothy J Yoo    tjy@lnbyb.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**ER-265**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

10954 Massachusetts Avenue, Los Angeles, California 90024

A true and correct copy of the foregoing document entitled (specify): Debtor/Defendant Mahvash Mazgani's Motion
to Dismiss Plaintiff's Claims for Relief In His Complaint for Denial of Discharge Under 11 USC 727(a)(2) & (a)(4)(A);
Declaration of Mahvash Mazgani

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date)
11/06/2020        , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) 11/06/2020        , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

Hon. Barry Russell
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/06/2020 | Nazanin Mazgani | /s/Nazanin Mazgani |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**ER-266**

ATTACHMENT TO PROOF OF SERVICE:

NEF LIST FOR ADVERSARY PROCEEDING

- **Gregory Kent Jones (TR)**    gjones@svcr.com, smjohnson@svcr.com;C191@ecfcbis.com
- **Donald W Reid**    don@donreidlaw.com, ecf@donreidlaw.com
- **James R
  Selth**    jim@wsrlaw.net, jselth@yahoo.com;eduardo@wsrlaw.net;gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

1    Donald W. Reid – SBN 281743
LAW OFFICE OF DONALD W. REID
2    PO Box 2227
Fallbrook, CA 92088
3    (951) 777-2460
don@donreidlaw.com
4

5    Counsel for Plaintiff

6            **UNITED STATES BANKRUPTCY COURT**

7      **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

8

9

10   In re

11   MAHVASH MAZGANI,

12           Debtor.

13

14

15   KEVIN MODA,

16           Plaintiff,

17   v.

18   MAHVASH MAZGANI,

19           Defendant.

20

|  |
|---|
| Case No. 2:19-bk-21655-BR |
| Chapter 11 |
| Adv. No. 2:20-ap-01637-BR |
| **STIPULATION TO CONTINUE HEARINGS SCHEDULED ON DECEMBER 1, 2020** |
| <u>Current Date</u><br>Date:       December 1, 2020<br>Time:       10:00 a.m.<br>Courtroom:   1668 |

21       **TO THE HONORABLE BARRY RUSSELL, U.S. BANKRUPTCY JUDGE, AND**

22 **ALL PARTIES IN INTEREST:**

23       This stipulation is entered into between Kevin Moda ("Plaintiff") and Mahvash Mazgani

24 ("Defendant").

25                       **RECITALS**

26       1.      On October 2, 2020, Plaintiff timely filed an adversary complaint against

27 Defendant, initiating this adversary proceeding, *Moda v. Mazgani*, Case No. 2:20-ap-01637-BR

28 ("AP"). In the AP, Plaintiff asserts claims under 11 U.S.C. § 523 and § 727 against Defendant.

**ER-268**

2.    On November 6, 2020, Defendant filed two motions: (1) a motion to stay the AP [AP Doc. 5] ("Motion to Stay"), and (2) a motion to dismiss the § 727 claims [AP Doc. 6] ("Motion to Dismiss").

3.    Hearings on the Motion to Stay and Motion to Dismiss, as well as an initial status conference, are currently scheduled for December 1, 2020 at 10:00 a.m.

4.    Plaintiff's counsel, Mr. Reid, has a scheduling conflict at that date and time. Accordingly, Mr. Reid has requested and Defendant's counsel, Ms. Mazgani, has approved a continuance of all three hearings to a future date in December 2020.

5.    Counsel are available on December 15 and 22 at 10:00 a.m.

## STIPULATION

**NOW THEREFORE**, subject to Court approval, the parties stipulate as follows:

A.    The hearings on the Motion to Stay and Motion to Dismiss, as well as the initial status conference shall be continued to a future date and convenient to the Court.

B.    The deadlines to file opposition and reply pleadings shall be continued pursuant to the Local Bankruptcy Rules.

Dated: November 6, 2020                    LAW OFFICE OF DONALD W. REID

                                           By: _____
                                           Donald W. Reid, Counsel for
                                           Kevin Moda, Plaintiff

Dated: November 10, 2020                   LAW OFFICES OF NAZANIN MAZGANI

                                           By: _____
                                           Nazanin Mazgani, Counsel for
                                           Mahvash Mazgani, Defendant

2 of 2

**ER-269**

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: PO Box 2227, Fallbrook, CA 92088

A true and correct copy of the foregoing document entitled (*specify*): **STIPULATION TO CONTINUE HEARINGS SCHEDULED ON DECEMBER 1, 2020** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 17, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com
- Nazanin Mazgani    mazganilaw@gmail.com
- Donald W Reid    don@donreidlaw.com, ecf@donreidlaw.com
- James R Selth    jim@wsrlaw.net,
  jselth@yahoo.com;eduardo@wsrlaw.net;gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐   Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On (*date*) November 17, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

- Hon. Barry Russell, 255 E. Temple Street, Suite 1660, Los Angeles, CA 90012

☐   Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:
(state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 17, 2020 | Donald W. Reid | /s/Donald W. Reid |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**ER-270**

1  Donald W. Reid – SBN 281743
   LAW OFFICE OF DONALD W. REID
2  PO Box 2227
   Fallbrook, CA 92088
3  (951) 777-2460
   don@donreidlaw.com
4

5  Counsel for Plaintiff

6              **UNITED STATES BANKRUPTCY COURT**

7        **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

8

9                                          Case No. 2:19-bk-21655-BR

10  In re                                  Chapter 11

11  MAHVASH MAZGANI,                       Adv. No. 2:20-ap-01637-BR

12              Debtor.                    **DECLARATION OF DONALD W. REID**
                                           **IN SUPPORT OF STIPULATION TO**
13                                         **CONTINUE HEARINGS SCHEDULED**
                                           **ON DECEMBER 1, 2020**
14

15  KEVIN MODA,                            Current Date
                                           Date:        December 1, 2020
16              Plaintiff,                 Time:        10:00 a.m.
                                           Courtroom:   1668
17  v.

18  MAHVASH MAZGANI,

19              Defendant.

20

21

22

23

24

25

26

27

28

**ER-271**

1    I, Donald W. Reid, am an attorney and counsel for Kevin Moda ("Plaintiff") in this

2    adversary proceeding.  I make this declaration in support of the Stipulation to Continue Hearings

3    Scheduled on December 1, 2020 ("Stipulation").

4        1.    On October 2, 2020, Plaintiff timely filed an adversary complaint against Mahvash

5    Mazgani ("Defendant"), initiating this adversary proceeding, *Moda v. Mazgani*, Case No. 2:20-ap-

6    01637-BR ("AP").  In the AP, Plaintiff asserts claims under 11 U.S.C. § 523 and § 727 against

7    Defendant.

8        2.    On November 6, 2020, Defendant filed two motions: (1) a motion to stay the AP

9    [AP Doc. 5] ("Motion to Stay"), and (2) a motion to dismiss the § 727 claims [AP Doc. 6]

10   ("Motion to Dismiss").

11       3.    Hearings on the Motion to Stay and Motion to Dismiss, as well as an initial status

12   conference, are currently scheduled for December 1, 2020 at 10:00 a.m.

13       4.    I have a scheduling conflict at that date and time.  Specifically, I must attend a case

14   management conference on December 1, 2020 at 10:00 a.m. in multi-party litigation in *Caru*

15   *Society for the Prevention of the Cruelty of Animals v. Kenney et al.*, 19STCV45035, Los Angeles

16   Superior Court.  I also previously had an in-person appearance on a summary judgment motion

17   before Judge Yun in *Bui v. Hsu et al.*, 6:19-ap-01111-SY, which was also scheduled for December

18   1, 2020 at 10:00 a.m.  While Judge Yun recently continued the hearing on the summary judgment

19   motion, I still must attend the CMC in the other action.  Accordingly, I requested and Defendant's

20   counsel, Ms. Mazgani, has approved a continuance of all three hearings in the AP to a future date

21   in December 2020.

22       5.    Pursuant to the Stipulation, Ms. Mazgani and I are available on December 15 and

23   22 at 10:00 a.m.

24       I declare under the penalty of perjury that the foregoing is true and correct.

25

26   Dated: November 17, 2020                    /s/Donald W. Reid
                                                 Donald W. Reid
27

28

**ER-272**

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: PO Box 2227, Fallbrook, CA 92088

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF DONALD W. REID IN SUPPORT OF STIPULATION TO CONTINUE HEARINGS SCHEDULED ON DECEMBER 1, 2020** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 2, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com
- Nazanin Mazgani    mazganilaw@gmail.com
- Donald W Reid    don@donreidlaw.com, ecf@donreidlaw.com
- James R Selth    jim@wsrlaw.net, jselth@yahoo.com;eduardo@wsrlaw.net;gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) November 17, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows: Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

- Hon. Barry Russell, 255 E. Temple Street, Suite 1660, Los Angeles, CA 90012

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: (state the method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows:  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 17, 2020 | Donald W. Reid | /s/Donald W. Reid |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**ER-273**

1  Donald W. Reid – SBN 281743
   LAW OFFICE OF DONALD W. REID
2  PO Box 2227
   Fallbrook, CA 92088
3  (951) 777-2460
4  don@donreidlaw.com

5  Counsel for Plaintiff

**FILED & ENTERED**

**NOV 17 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier      DEPUTY CLERK

6           **UNITED STATES BANKRUPTCY COURT**

7       **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

8

| | |
|---|---|
| 9  | Case No. 2:19-bk-21655-BR |
| 10  In re | Chapter 11 |
| 11  MAHVASH MAZGANI, | Adv. No. 2:20-ap-01637-BR |
| 12             Debtor. | **ORDER APPROVING STIPULATION TO** |
| 13  | **CONTINUE HEARINGS SCHEDULED ON DECEMBER 1, 2020** |
| 14  | |
| 15  KEVIN MODA, | <u>Current Date</u><br>Date:          December 1, 2020 |
| 16             Plaintiff, | Time:         10:00 a.m.<br>Courtroom:  1668 |
| 17  v. | |
| 18  MAHVASH MAZGANI, | <u>Continued Date</u><br>Date:          _____ |
| 19             Defendant. | Time:          _____<br>Courtroom:  1668 |
| 20  | |

21

22

23

24

25

26

27

28

**ER-274**

1    The Court having reviewed the Stipulation to Continue Hearings Scheduled on December

2    1, 2020 ("Stipulation") and for good cause shown,

3        IT IS HEREBY ORDERED:

4        1.    The hearings on Defendant's motion to stay the adversary proceeding [AP Doc. 5]

5    ("Motion to Stay"), and (2) a motion to dismiss the § 727 claims [AP Doc. 6] ("Motion to

6    Dismiss"), as well as the initial status conference, are continued to December 15, 2020 at 10:00

7    a.m. by zoom.  Website: zoomgov.com, Meeting ID: 160 625 8500, Password: 123456.

8        2.    The deadlines to file opposition and reply pleadings on the Motion to Stay and

9    Motion to Dismiss, as well as the joint status report for the initial status conference, shall be

10   continued pursuant to the Local Bankruptcy Rules.

11                                     ###

12

13

14

15

16

17

18

19

20

21

22

23

24   Date: November 17, 2020

25                              Barry Russell
                               United States Bankruptcy Judge

26

27

28

**ER-275**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Donald W. Reid - SBN 281743<br>LAW OFFICE OF DONALD W. REID<br>PO Box 2227<br>Fallbrook CA 92088<br>(951) 777-2460<br>don@donreidlaw.com | |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Plaintiff | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>MAHVASH MAZGANI<br><br><br>Debtor(s). | CASE NO.:     2:19-bk-21655-BR<br><br>ADVERSARY NO.: 2:20-ap-01637-BR<br><br>CHAPTER:     11 |
|---|---|
| KEVIN MODA<br><br><br><br>                    Plaintiff(s).<br>           vs.<br><br>MAHVASH MAZGANI<br><br><br>                    Defendant(s). | **JOINT STATUS REPORT**<br>**[LBR 7016-1(a)(2)]**<br><br>DATE:          12/15/2020<br>TIME:          10:00 a.m.<br>COURTROOM:     1668<br>ADDRESS:       255 E. Temple St.<br>               Los Angeles, CA 90012 |

The parties submit the following JOINT STATUS REPORT in accordance with LBR 7016-1(a)(2):

## A. **PLEADINGS/SERVICE:**

1. Have all parties been served with the complaint/counterclaim/cross-claim, etc. (Claims Documents)?  ☒ Yes  ☐ No

2. Have all parties filed and served answers to the Claims Documents?  ☐ Yes  ☒ No

3. Have all motions addressed to the Claims Documents been resolved?  ☐ Yes  ☒ No

4. Have counsel met and conferred in compliance with LBR 7026-1?  ☐ Yes  ☒ No

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**ER-276**

5.  If your answer to any of the four preceding questions is anything other than an unqualified "YES," please explain below (*or on attached page*):

Defendant's motion to stay adversary proceeding [AP Dkt 5] and motion to dismiss 727 claims [AP Dkt 6] are set for hearing on 12/15/20. Plaintiff will attempt to schedule a Rule 26(f) conference prior to the status conference.

## B. **READINESS FOR TRIAL:**

1.      When will you be ready for trial in this case?
           Plaintiff                                                                     Defendant
Unknown until all motions addressed to the Claims          Unknown until issues in state court action (BC607465)
Documents are resolved.                                              are resolved

2.  If your answer to the above is more than 4 months after the summons issued in this case, give reasons for further delay.
                      Plaintiff                                                     Defendant
      See B.1                                               See B.1

3.  When do you expect to complete your discovery efforts?
                      Plaintiff                                                     Defendant
      See B.1                                               See B.1

4.  What additional discovery do you require to prepare for trial?
                      Plaintiff                                                     Defendant
      See B.1                                               See B.1

## C. **TRIAL TIME:**

1.  What is your estimate of the time required to present your side of the case at trial (*including rebuttal stage if applicable*)?
                      Plaintiff                                                     Defendant
      See B.1                                               See B.1

2.  How many witnesses do you intend to call at trial (*including opposing parties*)?
                      Plaintiff                                                     Defendant
      See B.1                                               See B.1

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**ER-277**

3. How many exhibits do you anticipate using at trial?

                  Plaintiff                                        Defendant

See B.1                              See B.1

## D. **PRETRIAL CONFERENCE:**

A pretrial conference is usually conducted between a week to a month before trial, at which time a pretrial order will be signed by the court. [See LBR 7016-1.] If you believe that a pre-trial conference is not necessary or appropriate in this case, please so note below, stating your reasons:

Plaintiff                                       Defendant

Pretrial conference ☒ is ☐ is not requested    Pretrial conference ☒ is ☐ is not requested
Reasons:                                     Reasons:

Narrow the issues                          Narrow the issues

Plaintiff                                       Defendant

Pretrial conference should be set after:       Pretrial conference should be set after:

(date) _____                           (date) _____

## E. **SETTLEMENT:**

1. What is the status of settlement efforts?

   The parties have not yet engaged in meaningful settlement negotiations for this litigation.

2. Has this dispute been formally mediated?   ☐ Yes  ☒ No
   If so, when?

3. Do you want this matter sent to mediation at this time?

        Plaintiff                                    Defendant

       ☐ Yes  ☒ No                       ☐ Yes  ☒ No

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2015               Page 3             F 7016-1.STATUS.REPORT

ER-278

## F. **FINAL JUDGMENT/ORDER:**

Any party who contests the bankruptcy court's authority to enter a final judgment and/or order in this adversary proceeding must raise its objection below.  Failure to select either box below may be deemed consent.

<table>
<tr><td align="center">Plaintiff</td><td align="center">Defendant</td></tr>
<tr><td>☒ I do consent<br>☐ I do not consent<br>to the bankruptcy court's entry of a final judgment<br>and/or order in this adversary proceeding.</td><td>☐ I do consent<br>☒ I do not consent<br>to the bankruptcy court's entry of a final judgment<br>and/or order in this adversary proceeding.</td></tr>
</table>

## G. **ADDITIONAL COMMENTS/RECOMMENDATIONS RE TRIAL:** (*Use additional page if necessary*)

Defendant does not currently consent to the bankruptcy court's entry of final judgmennt and/or order in the adversary proceeding until the issues in the state court proceeding (BC607465) are resolved.

Respectfully submitted,

Date: 12/01/2020

LAW OFFICE OF DONALD W. REID
Printed name of law firm

Signature

Donald W. Reid
Printed name

Attorney for: Plaintiff Kevin Moda

Date: 12/01/2020

LAW OFFICES OF NAZANIN MAZGANI
Printed name of law firm

Signature

Nazanin Mazgani
Printed name

Attorney for: Defendant Mahvash Mazgani

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

Page 4                                **F 7016-1.STATUS.REPORT**

**ER-279**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
PO Box 2227, Fallbrook, CA 92088

A true and correct copy of the foregoing document entitled: **JOINT STATUS REPORT [LBR 7016-1(a)(2)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/01/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Gregory Kent Jones (TR) gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com
Nazanin Mazgani mazganilaw@gmail.com; Donald W Reid don@donreidlaw.com, ecf@donreidlaw.com
James R Selth jim@wsrlaw.net, jselth@yahoo.com;eduardo@wsrlaw.net;gabby@wsrlaw.net;
vinnet@ecf.inforuptcy.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) ___________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/01/2020 | Donald W. Reid | /s/Donald W. Reid |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1  Donald W. Reid – SBN 281743
   LAW OFFICE OF DONALD W. REID
2  PO Box 2227
   Fallbrook, CA 92088
3  (951) 777-2460
   don@donreidlaw.com
4

5  Counsel for Plaintiff

```
┌─────────────────────────────┐
│   FILED & ENTERED           │
│                             │
│   DEC 28 2020               │
│                             │
│  CLERK U.S. BANKRUPTCY COURT│
│   Central District of California│
│  BY torfler      DEPUTY CLERK│
└─────────────────────────────┘
```

6              UNITED STATES BANKRUPTCY COURT

7        CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

8

9                                        Case No. 2:19-bk-21655-BR

10  In re                                Chapter 11

11  MAHVASH MAZGANI,                     Adv. No. 2:20-ap-01637-BR

12              Debtor.
                                         ORDER DENYING MOTION TO
13                                       DISMISS PLAINTIFF'S CLAIMS FOR
                                         RELIEF IN HIS COMPLAINT FOR
14                                       DENIAL OF DISCHARGE UNDER 11
                                         U.S.C. §§ 727(a)(2) & (a)(4)(A)
15  KEVIN MODA,
                                         Hearing:
16              Plaintiff,               Date:        December 15, 2020
                                         Time:        10:00 a.m.
17  v.                                   Courtroom:   BY ZOOM
                                          CONDUCTED IN COURTROOM 1668
18  MAHVASH MAZGANI,

19              Defendant.

20

21

22        The Court held a continued hearing on the *Debtor/Defendant Mahvash Mazgani's Motion*

23  *to Dismiss Plaintiff's Claims for Relief In His Complaint for Denial of Discharge Under 11 U.S.C.*

24  *§§ 727(a)(2) & (a)(4)(A)* ("Motion") [Doc. No. 6] on December 16, 2020. Donald W. Reid, Esq.

25  appeared on behalf of the plaintiff, Kevin Moda, and Nazanin Mazgani, Esq. appeared on behalf

26  of the defendant, Mahvash Mazgani.

27        / / /

28        / / /

1

**ER-281**

For the reasons stated on the record and good cause shown, IT IS HEREBY ORDERED:

1.  The Motion is denied in its entirety;

2.  Defendant shall file an answer to the complaint not later than January 15, 2021.

<div align="center">###</div>

Date: December 28, 2020

Barry Russell
United States Bankruptcy Judge

**ER-282**

1 | **Nazanin Mazgani, Esq. (SBN 270258)**
2 | **Law Offices of Nazanin Mazgani**
   | 10954 Massachusetts Avenue
3 | Los Angeles, CA 90024
   | Phone: (424) 256-0095
4 | Email: mazganilaw@gmail.com
5 | Attorney for Defendant/Debtor,
   | Mahvash Mazgani
6 |
7 |

FILED & ENTERED

DEC 28 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier     DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In Re:                                          )   Chapter 11
                                                )
MAHVASH MAZGANI,                                )   Case No.: 2:19-bk-21655-BR
                                                )
                        Debtor                  )   Adv. No.: 2:20-ap-01637-BR
_____         )
                                                )
                                                )   **ORDER GRANTING DEFENDANT'S**
KEVIN MODA                                      )   **MOTION TO STAY PLAINTIFF'S**
                                                )   **ADVERSARY PROCEEDING**
                        Plaintiff,              )
        v.                                      )   Date:   December 15, 2020
                                                )   Time:   10:00 am
MAHVASH MAZGANI,                                )   Ctrm:   BY ZOOM
                                                )   CONDUCTED IN COURTROOM 1668
                        Defendant.              )
                                                )
                                                )
                                                )
                                                )
_____         )

On December 15, 2020 at 10:00a.m., a hearing was held using ZoomGov Defendant's Motion

to Stay Plaintiff's Adversary Proceedings. Nazanin Mazgani from Law Offices of Nazanin Mazgani

appeared for Defendant/Debtor, Mahvash Mazgani. Attorney, Donald Reid, appeared on behalf of

Plaintiff, Kevin Moda. Also attending the hearing was Subchapter V Trustee Gregory Jones. All other

**ER-283**

1   appearances were noted on the record.

2         **IT IS HEREBY ORDERED** that:

3         1.      Defendant's Motion to Stay Plaintiff's Adversary Proceedings is GRANTED for reasons

4   stated on the record.  The Adversary Proceedings are stayed until the Superior Court Action

5   (BC607465) is resolved;

6         2.      Plaintiff and Defendant are ordered to appear on March 16, 2021, at 2:00 p.m. for a

7   status conference.  14 days prior to the hearing, Plaintiff and Defendant must submit a joint status

8   report to the court.

9         ///

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Date: December 28, 2020

26                                                 Barry Russell
                                                   United States Bankruptcy Judge

27

28

**ER-284**