FELIX T. WOO (CA SBN 208107)
fwoo@ftwlawgroup.com
FTW LAW GROUP
601 South Figueroa Street, Suite 1950
Los Angeles, California 90017
Telephone:   (213) 335-3960
Facsimile:    (213) 344-4498

Attorney for Appellant Kevin Moda

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>MAHVASH MAZGANI,<br><br>              Debtor-in-Possession.<br><hr><br>KEVIN MODA,<br><br>              Appellant,<br><br>     vs.<br><br>MAHVASH MAZGANI,<br><br>              Appellee. | District Court Case No.: 25-cv-02230-WLH<br><br>Bankruptcy Case No.: 2:19-bk-21655-BR<br><br>Adversary Case No. 2:20-ap-01637-BR<br><br>Chapter 11<br><br>**APPELLANT'S REPLY BRIEF**<br><br>Judge:  Hon. Wesley L. Hsu |

# I.    <u>**TABLE OF CONTENTS**</u>

Page

I.    TABLE OF CONTENTS ..................................................................................I

II.    TABLE OF AUTHORITIES........................................................................ II

III.    INTRODUCTION. ......................................................................................... 1

VI.    RESPONSIVE LEGAL ARGUMENTS .....................................................10

    A.    The Response Brief Does Not Credibly Address the Substantive
        Analysis Laid Out in Appellant's Opening Brief.           2

    B.    Appellant Did Not Willfully Refuse to Comply With Court Orders, and
        His Conduct Did Not Rise To a Level Warranting Dismissal.           4

    C.    Appellee's Case Authorities Are Distinguishable.           7

V.    CONCLUSION............................................................................................. 10

VII.    CERTIFICATE OF COMPLIANCE.......................................................... 12

i

# II.    <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Chamorro v. Puerto Rican Cars, Inc.*, 304 F.3d 1 (1st Cir. 2002)..................................8

*In re Acosta*, 497 B.R. 25 (Bankr. D.P.R. 2013) .........................................................7, 8

*In re Eisen*, 31 F.3d 1447 (9th Cir. 1994)........................................................................1

*In re Rodriguez Gonzalez*, 396 B.R. 790 (B.A.P. 1st Cir. 2008).............................9, 10

*In re Roessler-Lobert*, 567 B.R. 560 (B.A.P. 9th Cir. 2017)..........................................4

*Torres-Alamo v. Puerto Rico*, 502 F.3d 20 (1st Cir. 2007)............................................8

## III.    INTRODUCTION.

Appellant Kevin Moda ("Appellant") submits this reply to the response brief of Appellee Mahvash Mazgani ("Appellee").

The response brief fails to seriously address the legal matters embraced by the current, and only relevant, appeal – whether the Bankruptcy Court erred in dismissing Appellant's Adversary Proceeding, with prejudice, for failure to prosecute.  Instead, consistent with Appellee's intentions when she filed a notice of related case (ECF 13), Appellee devotes much of her argument and rhetoric to re-litigating Appellant's prior activities in the Bankruptcy Court and before this Court, with the apparent goal that this Court will not evaluate this appeal on its factual merits and the legal framework established by the Ninth Circuit, but instead, will hold Appellant's prior (and admittedly, ill-advised) arguments and conduct against him.

The Court should decline Appellee's appeal to determine the merits of the present appeal based on Appellant's prior conduct, which is neither relevant to the legal standard for the Bankruptcy Court's dismissal, nor to the merits of this appeal. Appellant is confident the Court will apply the five factors established under Ninth Circuit authority (see, e.g., *In re Eisen*, 31 F.3d 1447, 1451 (9th Cir. 1994)), to the facts admitted in the record for this matter, and conclude that the Bankruptcy Court's dismissal of Appellant's Adversary Proceeding was unwarranted, overly punitive, and deprives Appellant of valuable property rights (here, a money judgment worth tens of millions of dollars that a state court judge and jury determined arose out of conduct that very likely would not be dischargeable in bankruptcy) without due process.

## IV.    RESPONSIVE LEGAL ARGUMENTS.

Appellant is confident that he has set forth the relevant factual record and legal arguments supporting this appeal in his opening brief, along with the evidence attached to his appendix, all of which are also consistent with the legal and factual arguments he made to the Bankruptcy Court as part of his motion for reconsideration of the Bankruptcy Court's dismissal order.  Accordingly, Appellant will attempt to

limit repetition of previously argued matters, and focus specifically on those aspects of Appellee's response brief that warrant a reply.

**A.      The Response Brief Does Not Credibly Address the Substantive Analysis Laid Out in Appellant's Opening Brief.**

It is not disputed that the Bankruptcy Court's colloquy with Appellant's counsel at the January 27, 2025 hearing on Appellant's motion for reconsideration (6-ER-898-966) and its memorandum of decision denying the motion for reconsideration reflect exasperation with Appellant's prior activities before the court. This Court has similarly expressed reservations about Appellant's (and his former counsel's) conduct in filing appeals, and of the merits of the arguments that have been advanced.  But, however misguided Appellant's actions and arguments have been in the past, they should not be viewed solely in that vacuum.

Always present, but seemingly clouded by Appellant's self-inflicted wounds and distractions from the merits, is the fact that after several years of litigation in state court and a lengthy trial, Appellants obtained equitable and monetary relief that, if affirmed on appeal, would result in his ownership and control of two real properties over which Appellee currently controls and financially exploits, as well as a non-dischargeable multi-million dollar money judgment based on findings of willful, fraudulent and criminal conduct.  What ought to have been the apex of Appellant's years-long legal struggle with his aunt and former trustee – someone who was charged with safeguarding Appellant's interests, but instead, stole from him – has now devolved through a combination of poor legal advice and advocacy, and admittedly, obstinacy, to Appellant being portrayed as the villain in the story.

But the Bankruptcy Court's overreliance on Appellant's litigation history before it, and its own dim view of Appellant's motives cannot justify its failure to apply the established legal standard for determining whether Appellant failed to prosecute the Adversary Proceeding.  But, that is precisely what Appellee argues in her response brief – that the Bankruptcy Court was entitled to impose the ultimate

sanction – dismissal without prejudice of an Adversary Proceeding where the underlying judgment, if affirmed, would likely render that dischargeability dispute a *fait accompli* in Appellants's favor[1], based almost entirely on Appellant's prior, unrelated conduct in the main bankruptcy case.[2]

Thus, in her response brief (pp. 10-14), Appellee essentially parrots the Bankruptcy Court's decision, which is not a credible form of substantive argument, and cheerleads those findings by glossing over entirely that of the five *Eisen* factors, most are indisputably in favor of Appellant, and as to the factor of whether there were other less drastic sanctions available, that Appellant still has the better argument.  The fact that Appellant had not yet paid prior money sanctions imposed in the main bankruptcy case does not mean that the Court could not, or should not, issue additional monetary sanctions just as a party's failure to pay damages in a lawsuit does not mean additional damages (and interest) cannot be imposed as well.  Indeed, given that Appellant claims a financial interest in two real properties that Appellee now controls and financially exploits, imposing additional monetary sanctions against Appellant would afford Appellee a future offset in the event Appellant's state court judgment is affirmed on appeal and Appellee is required to turn those properties over to Appellant.

Appellee's response brief fails to address the correct legal standard as to whether the Bankruptcy Court correctly dismissed Appellant's Adversary Proceeding for failure to appear at a non-substantive status conference where none of the Parties or the court expected to address any material, substantive matters in that stayed case.

---

[1] 6-ER-995:18-25; 6-ER-996:1-10.
[2] Indeed, that the Bankruptcy Court did not consider the gravity of its dismissal of an Adversary Proceeding on failure to prosecute grounds in a case where no substantive activity whatsoever had taken place due to Appellee's pending appeal of the state court judgment against her, was readily apparent when at oral argument, it conceded that it had not even considered Appellant's property interests in using that money judgment, if affirmed, as both a tool to obtain ownership of the contested real properties, or an offset against Appellee's right to enforce monetary sanctions awarded against him.  (6-ER-923-928; 6-ER-944-948).

In its opening brief, Appellant outlined that in this Circuit and this court, a terminating sanction for noncompliance with a local rule is appropriate if only three elements are met:

> First, the noncompliance must involve an enhanced degree of fault, such as willfulness, bad faith, recklessness, or gross negligence, as compared to mere negligence or oversight…..Second, the sanction must pass muster under the five-factor test of [*Eisen*]….Third, the court must consider whether the punishment is proportionate to the offense.

*In re Roessler-Lobert*, 567 B.R. 560, 573 (B.A.P. 9th Cir. 2017).

Appellee's response brief does not substantively address this legal standard nor does it discuss *In re Roessler-Lobert* at all.  In summary, Appellee's legal argument can be boiled down to this: she agrees with the Bankruptcy Court.  That form of argument does not aid this Court in assessing the merits of Appellant's appeal, nor does it offer any response to Appellant's arguments in his opening brief.

### B.    Appellant Did Not Willfully Refuse to Comply With Court Orders, and His Conduct Did Not Rise To a Level Warranting Dismissal.

Appellee only advances one argument on the merits among her lengthy recitation of Appellant's other conduct that warrants the Court's attention: whether Appellant's purposefully ignored two orders to show cause and lied to the Bankruptcy Court about receiving notice of one of those OSC hearings.  (Response Brief, ECF 19, 15:3-16:25).

Unfortunately, Appellee misstates the evidence, and she adopts the same "form over substance" version of the events that led to the Bankruptcy Court's erroneous dismissal order.

First, she asserts that that Appellant failed to appear at the June 4, 2024 status conference.  This is technically true, but is a substantively misleading argument.

Given the ongoing stay of the Adversary Proceeding given Appellee's appeal of the state court judgment, and the Parties' recognition that no substantive activity

4

would be undertaken until that appeal was decided, there was no expectation that anything of substance would be addressed at the June 4, 2024 status conference, which coincided with a status conference in Appellee's main bankruptcy case.[3]  As a result, although Appellant's former attorney Vip Bhola had substituted out of the Adversary Proceeding as Appellant's counsel by that time, Mr. Bhola agreed to specially appear for Appellant at the June 4, 2024 status conference.  As detailed in the opening brief and shown through unrebutted evidence, Mr. Bhola suffered a medical emergency outside of the Roybal Courthouse that morning and was unable to attend the hearing.[4]  While the Bankruptcy Court has subsequently challenged whether Mr. Bhola was permitted to specially appear for Appellant at the June 4, 2024 Status Conference, Appellant has noted that Appellee's attorney in the main bankruptcy case, James R. Selth, was allowed to specially appear for Appellee's daughter (her counsel in the Adversary Proceeding and this appeal), and for Appellee, at that same status conference.[5]

Appellee's, and the Bankruptcy Court's, over-emphasis on Appellant having not personally appeared at the June 4, 2024 status conference, and characterizing that as a willfully disobedient decision, while at the same time ignoring the undisputed evidence supplied by Mr. Bhola that he intended to appear for Appellant, is unreasonable and unwarranted.  Indeed, Appellee does not address the evidence around Mr. Bhola's emergency at all; she is merely content to argue that Appellant did not attend the status conference, and his decision not to do so was intentional.

Second, Appellee contends that Appellant lied at the August 6, 2024 Order to Show Cause hearing about whether he had received notice of the OSC hearing for that day.  Appellee cites no evidence in the record to support this contention in her brief, and the argument is bizarre because Appellant did in fact appear for that hearing, albeit late, and he had an exchange with the Bankruptcy Court about whether

---

[3] 6-ER-995:18-25; 6-ER-996:1-10; 6-ER-1003:16.
[4] 5-ER-570-582.
[5] 5-ER-520:7-9.

he had received notice of that very same hearing.[6]  Moreover, at that same hearing the Court noted that Appellee's counsel, her daughter, had not filed the appropriate proof of service for that OSC hearing.[7]  While Appellant informed the Bankruptcy Court that he had not received the OSC notice for that August 6, 2024 hearing, he obviously knew that such hearing was occurring because he traveled to the courthouse, attended the hearing and had a discussion with the court.[8]  (Later, on September 24, 2024, the Bankruptcy Court noted that although Appellant's daughter had not served notice of the OSC for the August 6, 2024 hearing on Appellant, that the Bankruptcy Court's notice center in Washington D.C. had mailed a copy to Appellant, which the Bankruptcy Court considered to be service of that OSC, despite the fact that it was James Selth, who was not even counsel for Appellee in the Adversary Proceeding, and who was specially appearing for Appellee's daughter, who, on June 4, 2024, exhorted the Bankruptcy Court to schedule an OSC hearing to dismiss that Adversary Proceeding, and thus, it was Appellee's duty to give Appellant notice of that hearing).[9]

Lastly, Appellee argues that Appellant did not file a response to the Court's OSC hearing set for September 24, 2024 (at which Appellant appeared, accompanied by his new, and undersigned, counsel).  This is, yet again, a situation where both the Bankruptcy Court and Appellee elevate form over substance.  While it is technically true that Appellant did not personally file a response to the OSC set for September 24, 2024, Mr. Bhola did so, and timely.[10]  Mr. Bhola indicated in his filing that he was submitting a response for himself and for Appellant because the reason why Appellant had not personally appeared for the June 4, 2024 status conference in the Adversary Proceeding arose out of Mr. Bhola's medical emergency that morning.  *Id*. Again, Appellee does not acknowledge or address this issue substantively.

---

[6] 5-ER-557-566.
[7] 5-ER-541:8-545:12.
[8] 5-ER-557-566.
[9] 5-ER-603:7-25;
[10] 5-ER-570-582.

Against this factual backdrop, stripped of hyperbole and adjectives, we see that Appellant did not willfully disobey an order to appear at the June 4, 2024 status conference; instead, Mr. Bhola agreed to appear for Appellant, but was unable to do so due to his medical emergency.[11]  Next, although the Bankruptcy Court later determined that notice of the August 6, 2024 OSC hearing was mailed to Appellant, there is no evidence that he lied to the Court about having not received it, and indeed, he appeared that morning for the hearing, albeit late.  Lastly, while Appellant did not personally file a response to the September 24, 2024 OSC hearing explaining his failure to personally appear at the June 4, 2024 status conference in the Adversary Proceeding, Mr. Bhola did file a substantive response.

These events do not support the Bankruptcy Court's determination that Appellant had willfully disobeyed court orders.  Nor do these events rise to the level of conduct described in any of the caselaw precedents where dismissals for failure to prosecute have been affirmed.

### C.    Appellee's Case Authorities Are Distinguishable.

Appellee relies on *In re Acosta*, 497 B.R. 25 (Bankr. D.P.R. 2013) as support for the Bankruptcy Court's dismissal with prejudice of Appellant's Adversary Proceeding.

Procedurally, *Acosta* is not similar to this case.  That adversary proceeding was actively litigated (until it was not) and that case was not stayed, with no substantive activity, contrary to the situation presented here, where the Parties were and are still, waiting on the results of Appellee's state court appeals.[12]  Moreover, that case was being considered in the context of a relief from default, and thus, the court in *Acosta* weighed both Fed.R.Civ.P. 60(b)(governing relief from default or excusable neglect) and Fed.R.Civ.P. 41(b)(governing involuntary dismissals).

---

[11] 5-ER-570-582.
[12] 6-ER-952:14-954:8.

Factually, *Acosta* could not be more distant, substantively, from this case. There, the bankruptcy court dismissed the adversary proceeding for repeated and flagrant violations of court orders and disobedience on substantive, evidentiary matters over a lengthy period. *Id.*, 497 B.R. at 35–36 ("It is evident that despite four prior opportunities to comply with this court's orders, four scheduled evidentiary hearings that had to be continued and two orders to show cause, the Plaintiffs simply failed to comply with this court's orders in about a year span. Such clear pattern of noncompliance constitutes in and of itself the 'extreme misconduct' that warrants dismissal for want of prosecution under Fed.R.Civ.P. 41(b)").

A review of Appellee's block citation to the cases discussed in Acosta also shows that those cases are materially distinguishable from this case, mostly for the salient reason that in those actively litigated adversary proceeding cases, the litigant were expected to actively advance their cases and their failure to do so disrupted the bankruptcy court's ability to manage those case dockets and evidenced the necessary recalcitrance warranting dismissal of those matters for failure to prosecute.

For example, in *Chamorro v. Puerto Rican Cars, Inc.*, 304 F.3d 1, 6 (1st Cir. 2002), the court found that the party's failure to file a court-ordered progress report was the straw that broke the "dromedary's back," and that "on at least two occasions, Batiz had neglected to respond to discovery requests; he had not replied either to Hertz's motion for a protective order or to Hertz's demands for document production; and over a two-year span, he had made only a token effort at discovery. The case languished to such an extent that the court was forced to issue a show-cause order in an effort to move it along. That order, although ultimately withdrawn, placed Batiz on notice that further procrastination in the prosecution of his action would not be well-received."

In another case that Appellee highlighted, *Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 25 (1st Cir. 2007), which was not a bankruptcy adversary proceeding, but an ADA/Title VII case, the dismissal of certain claims was at the pleading stage. The

appeals court affirmed the district court's dismissal of plaintiff's action for failure to substantively respond to the trial court's order to show cause instructing her to brief the court as to why her Title VII and constitutional claims should not be dismissed for failure to state a claim.  However, after receiving two time extensions, her response to the order to show cause did not address the infirmities of her Title VII or constitutional claims, and instead, plaintiff sought to amend her complaint to cure the legal deficiencies of her ADA claim.  "This blatant disregard for the district court's order to show cause—coming after Appellant had been given ample notice and time to cure her remaining claims—tips the scales in favor of dismissal of Appellants unsubstantiated Title VII and the constitutional claims."  *Id*. at 25.

Lastly, another case upon which Appellee relies and cites without any analysis, is *In re Rodriguez Gonzalez*, 396 B.R. 790, 800 (B.A.P. 1st Cir. 2008), cited for the proposition that "[d]ismissal for lack of prosecution is appropriate even absent consideration of lesser sanctions where the plaintiff has engaged in 'extreme conduct', such as knowing disobedience of a court order."  But, a review of the facts of that case again demonstrates it has no application here.

In that case, the laundry list of the plaintiff's failure to prosecute included: serving the complaint more than 14 months after the expiration of the 120 day deadline to serve the summons and complaint under Fed.R.Bankr.P. 7004.  "Even more egregious than the Plaintiffs' failure to comply with Bankruptcy Rule 7004 was their failure to comply with the bankruptcy court's June 6, 2006 order directing them to amend the complaint to add a defendant, and to serve all Defendants and file a certificate of service within 30 days, or the complaint would be dismissed with prejudice."  Instead, the plaintiffs there did nothing for seven weeks and did not even effect service until early 2007.  Plaintiffs also missed several hearings – and these were not mere status conferences where no substantive issues would be addressed as was the case here – rather, these were pre-trial hearings.  Lastly, the court found that plaintiff's conduct caused the debtor actual prejudice in the bankruptcy proceedings.

*Id*. at 797-802.  None of those factors and events occurred here with the June 4, 2024 status conference or the subsequent OSC hearings.

Appellee cannot rely on substantively-devoid and analysis-less parentheticals of inapposite cases where the underlying conduct was many, many times more egregious than is present here to support the Bankruptcy Court's unwarranted dismissal of Appellant's Adversary Proceeding.  The cases cited by Appellee simply do not support the Bankruptcy Court's order of dismissal or its refusal to grant Appellant's motion for reconsideration.

Here, the Bankruptcy Court was – in our view – prodded to punish Appellant by Mr. Selth, who opportunistically saw an opening to take advantage of Appellant's absence at the June 4, 2024 status conference where none of the participants expected any substantive matters to be addressed to capitalize on the Bankruptcy Court's already well-publicized and negative views of Appellant.  The Bankruptcy Court then relied on form over substance to, with all due respect, exaggerate the effect of Appellant's conduct concerning the June 4, 2024 status conference and the subsequent OSC hearings.  The end result was an unwarranted windfall dismissal of the Adversary Proceeding that largely eviscerates the Appellant's property interests and rights he would obtain if his state court judgment is affirmed on appeal.

## V.    CONCLUSION.

The Bankruptcy Court's dismissal of Appellant's Adversary Proceeding, and its denial of Appellant's Motion for Reconsideration should be assessed based on the legal standards and precedents set forth under Ninth Circuit and bankruptcy case law, not dramatic, hyperbolic arguments about Appellant's conduct in the main bankruptcy case.  On the merits, and on the whole, the Adversary Proceeding action was meant to give effect to the years Appellant spent litigating the underlying state court case to a judgment.  Dismissal of the Adversary Proceeding awards Appellee an unfounded windfall result, and deprives Appellant of valuable property interests and rights without due process.

1

2
Dated: July 9, 2025                    FTW LAW GROUP

3

4                                      By: *Felix T . Woo*
                                       _____
5                                          FELIX T. WOO
                                           Attorney for Appellant  Kevin Moda
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VII.    CERTIFICATE OF COMPLIANCE

This document complies with the word limit of FRBP 8015(a)(7) because, excluding the parts of the document exempted by FRBP 8015(g), this document contains 3,299 words and 10 substantive pages.

This document complies with the typeface requirements of FRBP 8015(a)(5) and the type-style requirements of FRBP 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2007 or higher and in Times New Roman, 14-point sized font.

Dated: July 9, 2025                    FTW LAW GROUP


                                       By: */s/ Felix T. Woo*
                                           FELIX T. WOO
                                           Attorney for Appellant  Kevin Moda