UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>MAHVASH MAZGANI,<br>　　　Debtor.<br><br>KEVIN MODA,<br>　　　Appellant,<br>v.<br>MAHVASH MAZGANI,<br>　　　Appellee. | Case No.  2:25-cv-02230-WLH<br>Bankr. Case No. 2:19-bk-21655<br>Adversary Case No. 2:20-ap-1637-BR<br>**ORDER ON APPEAL**<br><br><br>Related Cases:<br>2:23-cv-08894-WLH<br>2:24-cv-02762-WLH<br>2:24-cv-01011-WLH<br>2:24-cv-02529-WLH<br>2:24-cv-03245-WLH<br>2:24-cv-05798-WLH |

　　　Before the Court is the appeal of three related Bankruptcy Court decisions regarding an adversary proceeding: (1) an October 15, 2024, Order Dismissing the Adversary Proceeding ("Dismissal Order") (Dismissal Order, AP Docket No. 97); (2) a March 5, 2024, Memorandum of Decision Denying Kevin Moda's Motion for

Reconsideration of Order Dismissing the Adversary Proceeding ("Memo Denying Reconsideration of Dismissal") (Memo Denying Reconsideration, AP Docket No. 119); and, (3) an Order Denying Reconsideration from the same date (Order Denying Reconsideration, AP Docket No. 120).[1]

The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, the Court **AFFIRMS** the Bankruptcy Court's Dismissal Order, Memo Denying Reconsideration of Dismissal and Order Denying Reconsideration.

## I. BACKGROUND

### A. General Background

The instant appeal stems from the Bankruptcy Court's dismissal of an adversary proceeding. Because the dismissal "did not occur in a vacuum" (Memo Denying Reconsideration at 1), the Court briefly summarizes other related proceedings and litigation. On October 19, 2019, a creditor of Appellee Mavash Mazgani ("Appellee" or "Debtor") filed a Chapter 7 Involuntary Petition against Appellee in the Bankruptcy Court. (*Id.* at 2). At the time of the petition, Appellee and Appellant Kevin Moda ("Appellant" or "Mr. Moda") were engaged in litigation in the Los Angeles County Superior Court regarding the ownership of two properties. (*Id.*). On May 12, 2020, the Bankruptcy Court entered an order for relief. (*Id.*). About two months later, the Bankruptcy Court converted the Bankruptcy Case into a Chapter 11 case. (*Id.*).

On July 16, 2020, Mr. Moda filed a motion for relief from the automatic stay. (*Id.*). "The motion specified that Moda 'agree[d] that the *stay will remain in effect as to the enforcement of any resulting judgment against the Debtor or bankruptcy estate,*

---

[1] "AP Docket" references are to the docket in the underlying adversary case, 2:20-ap-1637-BR. "BK Docket" references are to the docket in the related bankruptcy case, 2:19-bk-21655.

except that Moda would be able to file a proof of claim and/or adversary proceeding in this Court." (*Id.*). The Bankruptcy Court granted the Motion on September 16, 2020. (*Id.*).

On October 2, 2020, Mr. Moda filed a cross-complaint in the state court alleging that Appellee defrauded Mr. Moda and mishandled a trust held for Mr. Moda's benefit. (*Id.* at 2-3). Mr. Moda filed the adversary proceeding at issue in the instant appeal on the same day. (*Id.* at 3).

On July 7, 2023, the state court awarded Mr. Moda over $30 million in damages as well as the two properties at issue in the case. (*Id.* at 3). Appellee Mazgani appealed the state court judgment. (*Id.*). On September 21, 2023, Mr. Moda filed a motion for an "Order Confirming Termination of Stay" in the bankruptcy action. (*Id.*). Mr. Moda argued that he could enforce the state court judgment regardless of the bankruptcy stay because the judgment had determined that the two properties at issue were excluded from the automatic stay. (*Id.*). About one month later, the Bankruptcy Court denied the Motion and confirmed that the automatic stay barred enforcement of any judgment in the state court case. (*Id.*).[2]

Since the Bankruptcy Court confirmed the scope of the automatic stay, Mr. Moda has engaged in a pattern of frivolous and abusive conduct. (*Id.* at 9-15). Both the Bankruptcy Court and this Court have found that Mr. Moda and his former attorney Vipan Bhola ("Mr. Bhola") have continually and intentionally violated the automatic stay. (*Id.* at 3-4 (describing Bankruptcy Court and District Court decisions)). On January 19, 2024, the Bankruptcy Court ordered sanctions against both Mr. Moda and Mr. Bhola for their violations of the automatic stay. (*Id.* at 9). Mr. Moda and Mr. Bhola failed to pay sanctions by the ordered deadline. (*Id.* at 9-10). On March 20, 2024, the Bankruptcy Court found both Mr. Moda and Mr. Bhola in contempt of court. (*Id.* at 10). On the same day, the Bankruptcy Court ordered Mr.

---

[2] About eleven months later, this Court affirmed the Bankruptcy Court's decision. (*Id.*).

1  Moda to take certain remedial actions related to his violation of the stay. (*Id.* at 11).
2  Mr. Moda did not complete the remedial actions for nearly five months and did so
3  only after being threatened with incarceration for his continued contempt of court.
4  (*Id.* at 14).

5  By the time the Bankruptcy Court issued the Dismissal Order at issue on
6  appeal, this Court had concluded that Mr. Moda had attempted to mislead this Court
7  and had wasted the time and resources of both the Court and opposing counsel. (*Id.* at
8  14-15 (citing this Court's February 7, 2024, decision in Case No. 23-cv-08894)). By
9  the time the Bankruptcy Court issued the Memo Denying Reconsideration of
10 Dismissal, Mr. Moda had accrued approximately $500,000 of unpaid sanctions against
11 him. (*Id.* at 14).

12 **B.   Dismissal Order and Memo and Order Denying Reconsideration of**
13 **Dismissal**

14 While the history the of bankruptcy and related actions is critical to
15 understanding the context for the orders now on appeal, the Court now turns to the
16 specific procedural history which led to the dismissal of Mr. Moda's adversary
17 proceeding. On January 10, 2024, the Bankruptcy Court set a status conference for
18 March 12, 2024, regarding the state court litigation. (AP Docket No. 69). On
19 February 28, 2024, Mr. Moda filed a Notice of Substitution of Attorney, noting that
20 Appellant would appear *pro se* in the adversary proceeding, in place of his former
21 counsel, Mr. Bhola. (Substitution of Attorney, AP Docket No. 72). On March 12,
22 2024, Mr. Moda appeared in pro per at the scheduled status conference and the
23 Bankruptcy Court continued the conference to June 4, 2024. (*See* AP Docket No. 75
24 (continuing status hearing to June 4, 2024); Memo Denying Reconsideration at 5
25 (reflecting that Mr. Moda appeared in pro per)). On May 21, 2025, Appellee filed a
26 status report. (AP Docket No. 76). Mr. Moda did not file a status report.

27 On May 24, 2024, Mr. Bhola (who on that date did not represent Mr. Moda in
28 the adversary proceeding), filed a "Status Conference Report" on the *Bankruptcy*

*Docket*. (Status Conference Report, BK Docket No. 1123). As the Bankruptcy Court noted, "[t]his document was not actually a report regarding the state court litigation but rather defiant and bizarre statements that [Mr. Moda] was not going to abide by [the Bankruptcy] Court's orders regarding his violation of the automatic stay." (Memo Denying Reconsideration at 5 (citing Status Conference Report, BK Docket No. 1123)).[3]

On June 4, 2024, the Bankruptcy Court held the continued status conference. Mr. Moda did not appear for the conference. (Order to Show Cause Why Complaint Should Not Be Dismissed for Plaintiff's Failure to Attend Status Conference ("OSC re Dismissal"), AP Docket No. 77). Following the hearing, the Bankruptcy Court issued an Order to Show Cause Why Complaint Should Not Be Dismissed for Plaintiff's Failure to Attend Status Conference ("OSC re Dismissal"). (*Id.*). The Bankruptcy Court specifically ordered Mr. Moda to appear before the Court on August 6, 2024, and to "file any Response to this Order" no later than July 23, 2024. (*Id.*).

On June 6, 2024, the Bankruptcy Court Noticing Center provided notice of the OSC to Mr. Moda via first class mail. (BNC Certificate of Notice, AP Docket No. 79). On August 6, 2024, the Bankruptcy Court held the hearing regarding the OSC. (AP Docket No. 84). Mr. Moda appeared for the hearing. (Excerpt of Record Volume 5, Docket No. 16-5 at ER 558:19-559:6 (reflecting exchange between Bankruptcy Court and Mr. Moda)). At the hearing, Mr. Moda claimed that he did not

---

[3] The entirety of this report read: "This Status Conference Report is filed by plaintiff/creditor, Kevin Moda, by and through his counsel. This court recognizes that it lacks the jurisdiction and the authority to do anything else besides declare that 'there is a stay' (which there is not). Creditor, Mr. Moda, made it abundantly clear that he is not going to abide by a void admonition to relinquish the real property and put himself in jeopardy of violating banking laws and lender laws. While we sympathize with the court's lack of jurisdiction, that is something for the Article III court to decide, and we are ready to have that issue considered. The Debtor claims that she incurring $375,000 per year for fees and expenses, while Mr. Moda is incurring $280.000 per month in interest for the Debtor's lack of payment of the Judgment." (*Id.*).

receive the OSC. (*Id.*). The Bankruptcy Court, "being unaware that the OSC had been served by the Noticing Center, believed Mr. Moda had not been served with the OSC." (Memo Denying Reconsideration at 6). The Bankruptcy Court thus continued the OSC hearing to September 24, 2025. (Excerpt of Record Volume 5, at ER 559:20; Renewed OSC, AP Docket No. 85).[4] The Court issued a Renewed OSC why the case should not be dismissed for plaintiff's failure to attend the status conference on June 4, 2024. (Renewed OSC). The Renewed OSC noted that Mr. Moda "shall file any Response to this Order to Show Cause no later than September 10, 2024." (Renewed OSC at 2). Both the Notice Center and Appellee Mazgani notified Mr. Moda of the OSC via first class mail. (AP Docket Nos. 87, 88).

On September 10, 2024, Mr. Bhola—who had withdrawn from representation in the adversary proceeding more than six months prior—filed a response the OSC on the adversary proceeding docket. (Bhola's Response to OSC, AP Docket No. 89 (reflecting that the document was filed by Vipan Bhola); *id.* at 1 (reflecting Bhola's name and information in document header); *id.* at 12 (reflecting that Bhola served the document to the relevant parties)). This filing was unauthorized and inappropriate given that Mr. Moda was proceeding in pro per.

Mr. Bhola's filing consisted of a declaration by Mr. Bhola and one exhibit. (Bhola's Response to OSC). Despite the fact that Mr. Bhola did not represent Mr. Moda at the time of June 4, 2024, hearing at issue in the OSC, Mr. Bhola declared that "Mr. Moda bears no fault in the nonappearance on June 4, 2024, as I had assumed the responsibility to appear in his stead." (*Id.* ¶ 14). The bulk of the declaration conveyed that Mr. Bhola did not appear for the hearing because he did not understand the importance of the hearing. (*Id.* ¶¶ 1-9; *see also* ¶¶ 16-22 (apologizing for actions

---

[4] As reflected later in this Order, having reviewed the Noticing Center's Certificate of Notice, the Bankruptcy Court later found that Mr. Moda was properly served with the OSC prior to the August 6, 2024, hearing and that Mr. Moda's statement that he had not been served with the OSC is not credible.

taken during litigation)). In the declaration, Mr. Bhola "acknowledged that [his] absence was not acceptable" and noted that he "did not fully understand the gravity of these proceedings or the respect due to this Court." (*Id.* ¶¶ 3-4). Mr. Bhola stated that "my failure to appear was a symptom of my previous ignorance, not a reflection of disregard for the Court's authority." (*Id.* ¶ 6).

In two paragraphs of his Declaration, Mr. Bhola put forth an alternative reason for his absence:

> On June 4, 2024, I arrived at the Los Angeles Courthouse wheelchair ramp with nearly 25 minutes to spare to make it from that building to the Courthouse. On the way up the wheelchair ramp, I tipped sideways and fell off my chair and my chair landed atop me. I could not move and had no way of alerting anyone of my fall as the chair was atop me. My failure to appear at the June 4, 2024, status conference, which resulted in Mr. Moda's subsequent nonappearance, was due to a physical disability that required urgent medical attention. I have attached the corresponding medical record hereto and incorporate it herein by reference as Exhibit A.

(*Id.* ¶¶ 10-11). Exhibit A appears to reflect "Appointment Details" from a June 8, 2024, visit to the Santa Clarita Imaging & Interventional Center. (Exhibit A to Bhola's Response to OSC). The exhibit appears to reflect orders for x-rays and either a preliminary or final diagnosis of "splintered middle finger of right hand; pelvic fracture." (*Id.*). The exhibit reflects that the visit occurred four days after the June 4, 2024, status conference. (*Id.*).

Mr. Moda failed to file his own response the OSC. (Memo Denying Reconsideration at 7). On September 24, 2024, the Court held the continued OSC hearing. Mr. Moda appeared alongside attorney Felix J. Woo.[5] (Excerpt of Record Volume 5 at ER 592:11-16). The Bankruptcy Court confirmed that Mr. Woo was

---

[5] This Court discloses that it has a professional friendship with Mr. Woo having served together for years on the board of a large bar association. Nothing about this relationship requires recusal, however.

7

representing Mr. Moda in the bankruptcy action but not the adversary proceeding in which the OSC was issued. (Excerpt of Record Volume 5, at ER 592:11-595:10 (reflecting exchange between Bankruptcy Court and Mr. Woo)). Mr. Bhola appeared telephonically (*id.* at ER 595:12-596:18) and the Bankruptcy Court clarified, on the record, that Mr. Bhola was only properly appearing regarding contempt sanctions unrelated to the OSC re: dismissal. (*Id.* at ER 611:1-24).

At the conference, the Bankruptcy Court addressed Mr. Moda's claim, made at August 6, 2024 hearing, that Mr. Moda had not received the first OSC. (*Id.* at ER 603:7-604:13). The Bankruptcy Court explained that upon review of the Court's record, the Court determined that Mr. Moda had been served with the initial OSC prior to the conference on August 6, 2024, and that Mr. Moda's statement to the contrary was not credible. (*Id.*) The Bankruptcy Court noted that Mr. Moda was also properly served the renewed OSC. (*Id.* at ER 607:12-19). The Bankruptcy Court further explained that because Mr. Bhola did not represent Mr. Moda in the Adversarial Proceeding at the time that Mr. Bhola filed a response to the renewed OSC, the filing was improper such that Mr. Moda did not respond to the Renewed OSC. (*Id.* at ER 603:17-612:21 (reflecting exchange between Bankruptcy Court, Mr. Moda and Mr. Bhola on the matter)). Because Mr. Moda had twice been served with the OSC and failed to respond to it, the Bankruptcy Court dismissed Mr. Moda's complaint in the adversary proceeding for lack of prosecution. (*Id.* at ER 607:12-608:11).

On October 15, 2024, the Bankruptcy Court entered the Dismissal Order. (Dismissal Order). On October 29, 2024, Mr. Moda, through Mr. Woo,[6] filed a Motion to Reconsider the Dismissal Order. (Mot. to Reconsider, AP Docket No. 104). The Motion to Reconsider tolled Mr. Moda's time to appeal the Dismissal Order until resolution of the Motion to Reconsider. Fed. R. of Bankr. P 8002(b)(b).

---

[6] Mr. Felix Woo entered a Notice of Appearance for Mr. Moda on October 3, 2024. (AP Docket No. 94).

8

On March 5, 2025, the Bankruptcy Court issued the Memo Denying Reconsideration of Dismissal and the Order Denying Reconsideration. (Memo Denying Reconsideration; Order Denying Reconsideration). The Bankruptcy Court's Memo Denying Reconsideration addressed many of the same arguments before the Court in the instant Motion. (*See generally id.*). The Bankruptcy Court further emphasized the following:

> Moda's willful failure to file a status report or appear at the June 4, 2024 status hearing resulting in the dismissal did not occur in a vacuum. Rather, it was a continuation of months of his abusive conduct, including knowing violating Court orders, filing numerous frivolous pleadings in both this Court and in the District Court and being found in contempt of this Court's orders, which will be discussed in detail [in the Memo]. His history of defiance of numerous court orders resulting in sanctions now in the amount of approximately $500,000, without a dollar being paid, has not acted as a deterrent to Moda's abuse of the judicial system. As discussed [in the Memo], the only appropriate sanction for Moda's conduct was the dismissal of his adversary proceeding with prejudice.

(*Id.* at 1-2). Eight days later, Mr. Moda filed a Notice of Appeal regarding the Dismissal Order, the Memo Denying Reconsideration of Dismissal and the Order Denying Reconsideration. (Notice of Appeal, Docket No. 1). All briefing was submitted by July 9, 2025, and the Court took the matter under submission on August 14, 2025. (Docket Nos. 20, 22).

**II. DISCUSSION**

**A. Legal Standard**

"A district court reviews a bankruptcy judge's decision by applying the same standard of review used by circuit courts when reviewing district court decisions." *In re Wlodarczyk*, 604 B.R. 863, 868 (S.D. Cal. 2019). A bankruptcy court's decision to dismiss an action for failure to prosecute is therefore reviewed under the "abuse of discretion" standard. *See Carey v. King,* 856 F.2d 1439, 1440 (9th Cir. 1988)

(reflecting appellate standard for abuse of discretion outside of the context of bankruptcy appeals).[7] Under the abuse of discretion standard, the district court first determines if a bankruptcy court identified the correct legal rule. *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (outlining abuse of discretion test generally). If the bankruptcy court applied the correct legal rule, the district court may only reverse the bankruptcy court's decision if the bankruptcy court reached a result that is "illogical, implausible, or without support in inferences that may be drawn from the record . . . ." *Id.* When evaluating a bankruptcy court's decision, the district court reviews the bankruptcy court's finding of facts for clear error, meaning the district court accepts the findings "unless these findings leave the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *In re Straightline Invs., Inc.*, 525 F.3d 870, 876 (9th Cir. 2008). The district court, however, "need not adopt the bankruptcy court's rationale and may affirm on any basis supported by the record." *In re Wlodarczyk*, 604 B.R. at 868.

**B.     Analysis**

Based on a review of the Dismissal Order, the Memo Denying Reconsideration of Dismissal, the Order Denying Reconsideration, the record before the Court and all briefing, the Court concludes that the Bankruptcy Court did not abuse its discretion in dismissing with prejudice Mr. Moda's adversary proceeding.

*1. The Bankruptcy Court Applied the Correct Legal Rule*

Mr. Moda has not argued that the Bankruptcy Court applied the incorrect legal rule. (*See generally* Mot. for Reconsideration; Opening Brief, Docket No. 14). The

---

[7] Appellant contends both that "[i]t is well settled that the standard for review of a dismissal for failure to prosecute is whether the lower court abused its discretion" and "[b]ecause an appeal of a dismissal for failure to prosecute necessarily involves a question of due process the question of whether the appellant has been afforded due process is reviewed de novo." (Mot. at 13). *Carey*, which Mr. Moda cites to, articulates that the proper appellate standard of review for dismissals for lack of prosecution. *See Carey*, 856 F.2d at 1440 ("We review a district court's order dismissing an action for failure to prosecute for an abuse of discretion."). The Court, however, would also affirm the Bankruptcy Court's orders under a *de novo* standard.

Court thus treats any such argument as waived. *In re Mortg. Store*, 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive an issue by failing to raise it in a bankruptcy court."). For good measure, the Court notes that the Bankruptcy Court applied the correct legal rule when issuing the Order and Memo at issue on appeal. The Ninth Circuit outlines five factors that courts must weigh to determine whether to dismiss a case for lack of prosecution: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Eisen*, 31 F.3d 1447, 1451 (9th Cir. 1994). The Memo Denying Reconsideration reflects that the Bankruptcy Court considered all five factors in rendering the decisions which Mr. Moda now appeals.

### *2. The Bankruptcy Court's Findings of Fact are Not Clearly Erroneous*

The Bankruptcy Court made the following factual findings in its Dismissal Order: (1) Plaintiff did not file a Status Report for the June 4, 2024, status conference and did not appear for the conference; (2) the Bankruptcy Court Noticing Center served Mr. Moda the initial OSC on June 6, 2024; (3) Mr. Moda's statement to the contrary is not credible; (3) Mr. Moda did not respond to the initial OSC; (4) Mr. Moda was twice served the Renewed OSC; (5) Mr. Moda did not respond to the initial OSC. (Dismissal Order at 2). In its Memo Denying Reconsideration of the Dismissal Order, the Bankruptcy Court confirmed many of these factual findings. (Memo Denying Reconsideration at 6-8). The Bankruptcy Court further found that (a) Mr. Moda intentionally failed to file a status report for the June 4, 2024, hearing and intentionally failed to attend the status conference (*id.* at 9); (b) Mr. Moda did not intend to appear nor have Mr. Bhola appear on his behalf on the June 4, 2024, hearing (*id.* at 6); (c) Mr. Bhola's declaration that he fell and was injured on the way to Court on June 4, 2024, was not credible (*id.* at 7); (d) Mr. Moda's failure to appear "was a continuance of his many months of his abuse of the judicial system." (*Id.* at 8).

Based on a careful review of the record, the Court finds that none of these findings are clearly erroneous and therefore accepts the findings.

### 3. *The Bankruptcy Court's Decision was Supported by the Record and Neither Illogical nor Implausible*

In its Memo Denying Reconsideration of the Dismissal, the Bankruptcy Court's explained why the public interest, the court's need to manage its docket, the risk of prejudice to the defendants, the public policy favoring decisions on the merits and the availability of less drastic sanctions weighed in favor of dismissal with prejudice. (Memo Denying Reconsideration at 16-18 (analyzing factors)). Based on the above factual findings, the Bankruptcy Court's conclusions were supported by the record and neither illogical nor implausible. *Hinkson*, 585 F.3d at 1262. The Court, therefore, must affirm the Bankruptcy Court's Orders and Memo under the abuse of discretion standard. Even if the Court were to conduct a *de novo* review, the Court would affirm the Bankruptcy Court's Order for the same reasons articulated in the Memo Denying Reconsideration of Dismissal. (Memo Denying Reconsideration at 16-18 (analyzing factors)). The Court notes that even if it or the Bankruptcy Court found Mr. Bhola's account of his declared accident credible, the Bankruptcy Court's Dismissal Order and Memo and Order Denying Reconsideration would still stand. Mr. Bhola did not represent Mr. Moda at the time of the June 4, 2024, hearing. Mr. Bhola would not have been able to properly appear for Mr. Moda and, even if he had, Mr. Moda still failed to file a status report and twice failed to respond to the Bankruptcy Court's OSC.

### 4. *The Bankruptcy Court's Decisions may be Affirmed on an Additional Ground*

The Court also affirms the appealed decisions on other grounds: three local rules justify dismissal. Under Local Bankruptcy Rule 7041-1, "if a party fails to appear at the noticed hearing of a motion, a status conference, a pretrial conference or trial of the proceeding, the court may make such orders in regard to the failure as are

just, including dismissal of the matter for want of prosecution." Local Bankr. R. 7041-1(b) (describing dismissals of adversary proceedings). Under Local Bankruptcy Rule 7016-1, "[t]he failure of a party's counsel (or the party, if not represented by counsel) to appear before the court at the status conference or pretrial conference, or to complete the necessary preparations therefor . . . may be considered an abandonment or failure to prosecute or defend diligently, and judgment may be entered against the defaulting party . . . or the proceeding may be dismissed."[8] Local Bankr. R. 7016-1(g). Also under Bankruptcy Local Rule 7016-1, "if a status conference statement . . . is not [timely] filed or lodge . . . the court may order . . . entry of judgment of dismissal . . . ." Local Bankr. R. 7016-1(f). Based on the facts presented above, any one of the three of these rules would justify the Bankruptcy Court's Dismissal Order, and subsequent denial of reconsideration. These three local rules, therefore, each provide an independent ground on which this Court affirms the orders at issue on appeal.

### III. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's Dismissal Order, Memo Denying Reconsideration of Dismissal, and Order Denying Reconsideration. The Court **ORDERS** the Clerk to close the case.

**IT IS SO ORDERED.**

Dated: August 15, 2025

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

---

[8] While the Bankruptcy Court applied the Ninth Circuit's factors for dismissal for lack of prosecution in its Memo Denying Reconsideration of Dismissal, the record suggests that the Bankruptcy Court's Dismissal Order may have been made pursuant to the local rules. (*See* Memo Denying Reconsideration at 9 n.2 (citing Local Bankr. R. 7016-1(g)); *see* Dismissal Order (noting "Order Dismissing Adversary Proceeding" and describing Mr. Moda's failure to attend the June 4, 2024, hearing and failure to submit responses to the OSCs)).

13